# EMERGENCY COALITION OF
# SPECIAL EDUCATION ATTORNEYS
# FOR A FAIR DUE PROCESS SYSTEM

February 13, 2020

OPPOSITION MEMORANDUM TO
THE PROPOSED USE OF NONLAWYERS
AS IMPARTIAL HEARING OFFICERS IN NEW YORK CITY

To:     Chancellor Betty A. Rosa
        Vice Chancellor T. Andrew Brown
        Members, New York State Board of Regents
        Shannon Tahoe, Interim Commissioner, New York State Education Department
        Christopher Suriano, Assistant Commissioner for Special Education
        Kimberly Wilkins, Assistant Commissioner for Innovation and School Reform

As members of the special education bar that represent significant numbers of children whose parents file due process hearings in New York City, we write to voice our unanimous opposition to the proposal to revert back to using non-lawyer hearing officers.  This proposal was described in the memorandum authored by Kimberly Young Wilkins on January 7, 2020 entitled "Expanding the Pool of Applicants to Serve as Impartial Hearing Officers to Hear Special Education Due Process Complaints Filed in New York City" and was discussed at the January 13, 2020 Regents meeting ("Wilkins Memorandum"), as well as by Interim Commissioner Tahoe at the New York State budget hearing on February 11, 2020.

The special education bar is deeply concerned about the shortage of qualified, knowledgeable hearing officers available to hear IDEA complaints in New York City.  We are all well versed in the range of problems outlined in the Wilkins Memorandum, as well as the "External Review of The New York City Impartial Hearing Office," dated February 22, 2019, authored by Deusdedi Merced ("Merced Report"), that was referenced in the Wilkins Memorandum.

We understand that these problems are challenging.  However, the problems require real solutions, and not a return to a policy that has already failed in New York.  This proposal does not address the underlying causes of the problems in New York City and will cause further injury to the due process rights of families and their vulnerable children who are entitled to a fair and IDEA-compliant due process system.

We strongly believe that there is a pool of available and trained hearing officers, as well as potential hearing officers who are lawyers, that would be available to take cases if the regulations and policies that require multiple 30 day extensions, mountains of unnecessary and unpaid paperwork and sanctions for late cases when all parties agree to adjournments were

revoked and the unfair hearing officer payment issues were resolved.[1]    Further, there would be far less hearings and more settlements if certain practices were revised and unconscionable delays in settlement processing were addressed.  However, those issues are not the subject of this letter and we will not be discussing them in detail at this time.

The New York State Education Department and the New York State Regents should not reinstate regulations to allow non-lawyer hearing officers who have not completed law school to preside over hearings.  The diverse constituents of the special education bar are united in opposition to this proposal.

**Importance of Due Process that Conforms to Legal Standards**

Absent an emergency or other limited exceptions, parents must use the hearing and appeals process before filing in Court.  Over the past fifteen years, special education litigation following the administrative process has expanded.  In the federal Second Circuit (which covers New York), a body of case law has developed which underscore the importance of developing a legally sound and factually detailed record, consistent with standard legal practice.  The record built at the hearing is generally the record that is used in federal court cases that may make their way up to the Second Circuit Court of Appeals, or even the United States Supreme Court.

It is for this reason that Courts have underscored the importance of developing a record at the hearing.  In general, Courts have ruled that exhaustion of administrative remedies through the impartial hearing process is required, in part, to "serve the underlying purposes of the IDEA's administrative scheme," which includes assisting federal courts by establishing a factual record reflecting agency expertise through "full exploration of technical educational issues." *See Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478 (2d Cir. 2002).  Further, this "development of a complete factual record . . . promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.*

Beyond the above, the Courts in the Second Circuit have developed a body of case law pursuant to which deference is given to the decisions of the impartial hearing officer or State Review Officers. While the Courts are not required to accept legal interpretations made by IHOs and SROs, the Second Circuit has held that due weight must be afforded certain legal conclusions. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 243–44 (2d Cir. 2012) (rejecting the argument that the Court must "review legal conclusions of administrative decisions de novo without giving due weight to the administrative decisions" because "subsequent decisions of this Court favor a different approach").  Using non-lawyer hearing officers without the ability to analyze the complex body of law that has developed in the area of special education will undermine the due process system in the Courts.

**Non-lawyers who Have Not Completed Law School Cannot Meet IDEA Requirements**

Under the IDEA, a hearing officer shall not be (a) an employee of the State educational agency or the local educational agency involved in the education or care of the child; or (b) a

---

[1] We are aware that a new hearing officer compensation policy was just issued on February 7, 2020.  However, from

person having a personal or professional interest that conflicts with the person's objectivity in the hearing. *See* 20 U.S.C. §1415(f)(3)(A)(i)-(iv). Further, the hearing officer must have the following qualifications:

- Possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, *and legal interpretations of this chapter by Federal and State courts*;
- Possess *the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice*; and
- Possess the knowledge and *ability to render and write decisions in accordance with appropriate, standard legal practice*.

*See* 20 U.S.C. § 1415(f)(3)(A)(i)-(iv)(emphasis added).

New York abandoned the practice of using non-lawyers as hearing officers for many reasons before the IDEA was amended in 2004 to include the above requirements. At that time, there was broad consensus across the field that using non-lawyers as hearing officers failed to ensure a legally functioning due process system. The practice caused delays and significant appeals to the State Review Officer, which delayed children's remedies. The idea that the necessary expertise could be learned in a short training and then appropriately applied, given the wide range of legal issues that are addressed in hearings, by individuals lacking formal legal training and qualifications, is totally misplaced.

It is difficult to ascertain how a typical layperson who has not completed law school would be able to fulfill the mandates of 20 U.S.C. § 1415(f)(3)(A)(i)-(iv). This is particularly true in New York City where the special education bar is very active, has the resources to engage in litigation, and where the City's actions often compel litigation on claims that, upon information and belief, would likely settle were they to arise outside of the City.

The term "standard legal practice" in the IDEA requires that IHOs have the training, knowledge and capacity to operate the hearing in accordance with the IDEA, as well as general principles of trial practice. This includes but is not limited to the following responsibilities: (a) making on-the-spot rulings on objections during direct and cross examination; (b) rendering on-the-spot legal rulings about documentary evidence and addressing objections to evidence; (c) so ordering subpoenas and ruling on objections to subpoenas; (d) making decisions about the adequacy, sufficiency, reliability and credibility of evidence; and (d) deciding motions (i.e. applications by lawyers that are submitted before the final decision).[2] In fact, some IHOs have rules of procedure similar to those rules promulgated by judges in Court.

Further, many special education hearings involve complex technical clinical and legal issues, which require hearing officers to have a knowledge of law. Many lawyers submit legal briefs of up to thirty pages in hearings, which are filled with legal citations to statutes and

---

[2] Typical motions in hearings in New York City include motions to dismiss based upon statute of limitations (a complex area of the law), res judicata or collateral estoppel, motions for independent evaluations, motions for summary judgment, motions for a contested or substantially similar pendency and motions for interim relief.

regulations, as well as federal and state case law. As the IDEA mandates, IHOs must be able to search for, review, understand and rule upon case law, as they are charged with "knowledge of, and the ability to understand *legal interpretations" of the IDEA by State and Federal Courts. See* 20 U.S.C. § 1415(f)(3)(A)(i)-(iv).   Thus, a hearing officer has to have the skills and training to conduct research on state and federal case law in databases such as Westlaw and Lexis, review and analyze case law cited by parties and render a decision interpreting case law that is consistent with or that can distinguish the precedent cited by the parties.   These are skills that are generally taught in law school and honed through years of the practice of law.  These skills cannot be learned in a brief, turn-key training, or the state would not require lawyers to attend law school, pass the bar and take continuing education courses in order to engage in these activities.

**New York Should Not Look to Non-lawyer States To Set Policy**

Leaving aside whether permitting most non-lawyers to serve as hearing officers, given the history of problems that non-lawyer hearing officers has caused, the fact that three or four other states may still allow it is not a proper justification for rolling back this change.

New York is supposed to be a leader in the areas of civil rights, disability rights and children's rights.  As the Wilkins Memo indicates, an overwhelming majority of states only use lawyers as hearing officers.  Other than a few states where non-lawyers have been grandfathered in following policy changes, non-lawyers are used only in Arizona, Oklahoma, Indiana and South Carolina.[3]  In general, New York does not look to these states when setting other types of education, civil rights or disability rights policies.

Moreover, the states that currently use non-lawyers have very few hearings, which means that the states do not have an active special education bar.  In the most recent data reported by the United States Department of Education (2016-2017), there were only 16 complaints filed in the entire state of Oklahoma, 20 in South Carolina, 76 in Arizona, and 74 in Indiana.[4]  That same year, there were 6,282 complaints filed in New York City (*see Merced Report* at 13) and, upon information and belief, significantly more have already been filed in New York City for the

**Eliminate the Two Year Waiting Period for Lawyers who Represent Parents**

Beyond the adoption of a more equitable compensation plan for hearing officers, the pool of qualified hearing officers would expand if the regulations were amended to eliminate the waiting period for a lawyer who represented a parent in a due process hearing in New York City to preside over hearings in the City. Currently, a lawyer who represented a parent in a due process hearing in New York City cannot accept an appointment in New York City for two years.  *See* 8 N.Y.C.R.R. § 200.5(j)(3)(i)(c).   While it makes sense to have a longer waiting period for a lawyer who represented one of the parties (i.e. the school district), there should not be a two-year waiting period for a special education lawyer who handled a due process complaint. This two-year waiting period is arbitrary, as any hearing officer who is assigned to

---

[3] Jennifer F. Connolly, PhD, Perry A. Zirkel, PhD, and Thomas A. Mayes, JD, "State Due Process Hearing Systems Under the IDEA: An Update," Journal of Disability Policy Studies, March 2019, available at https://journals.sagepub.com/doi/abs/10.1177/1044207319836660
[4] https://www2.ed.gov/programs/osepidea/618-data/state-level-data-files/index.html

Hyman Decl.  Ex. EE- 4

preside over a former client's case would recuse in any event, regardless of when the hearing was held.  Given the current situation, it would make far more sense to eliminate this waiting period so that experienced special education lawyers could apply.

**Conclusion**

It would be a gross deprivation of due process to try to "solve" the systemic problems in the impartial hearing system by reverting to the failed practice of using non-lawyers to preside over IDEA hearings. In light of the fact that this coalition represents significant numbers of the parents who are being affected by the hearing delays, we strongly urge you to reject any regulatory change that would force any of our clients or *pro se* parents to proceed before a non-attorney hearing officer who did not complete law school. Such professionals will not be able to satisfy the requirements of the IDEA.

A list of signatories to this letter is attached.

Sincerely,

THE EMERGENCY COALITION OF
SPECIAL EDUCATION ATTORNEYS
FOR A FAIR DUE PROCESS SYSTEM

/s/
By _____

*See* Attached Signatories

Cc:     Sharon Veltman, New York State Education Department
        Louise DeCandia Esq., Counsel, New York State Education Department
        Richard Carranza, Chancellor, New York City Schools
        Howard Friedman, Esq.
        Karen Goldmark
        Cheryl Williams, Esq.
        Deusdedi Merced, Esq.

# EMERGENCY COALITION OF
# SPECIAL EDUCATION ATTORNEYS
# FOR A FAIR DUE PROCESS SYSTEM

## SIGNATORIES (in Alphabetical Order of Firm Name)

Steven J. Alizio, Esq.
The Law Office of Steven Alizio, PLLC
80 Broad St., 5th Floor
New York, NY 10021
Phone: 347-395-4656
Email: salizio@edlawny.com

Vida M. Alvy, Esq.
Alvy Law, PLLC
1177 Avenue of the Americas, Suite 500
New York, NY 10036
Phone: 973-868-0449
Email: vmalvy@verizon.net

Paul N. Barger
Barger & Gaines
Irvington, New York
Phone: 914-902-5918
&
Barger & Gaines
Shrewsbury, New Jersey
Phone: 908-242-3635
&
Barger & Gaines
Ann Arbor, Michigan
Phone: 248-469-4920
&
Barger & Gaines
Norwalk, Connecticut
Phone: 203-883-6200
Email: Paul@bargergaines.com

Jaclyn Okin Barney, Esq.
Okin Barney, P.C.
8 West 126th Street
3rd Floor
New York, NY 10027
Phone: 347-559-5098
Email: jaclyn@jaclynokinbarney.com

Lauren A. Baum
Kristen M. Chambers
Susan Fingerle
Law Offices of Lauren A. Baum, P.C.
171 Madison Avenue, Suite 300
New York, New York 10016
Phone: 212-644-4414
Email:lbaum@nyspecialedlaw.com
Email:kchambers@nyspecialedlaw.com
Email:sfingerle@nyspecialedlaw.com

Scott M. Cohen, Esq.
The Law Office of Scott M. Cohen
PLLC
245 Saw Mill River Road, Suite #106
Hawthorne, NY  10532
Phone: 646-580-2281
Email: scott@scottmcohenlaw.com

Andrew Cuddy
Cuddy Law Firm, P.L.L.C.
Auburn Office
5693 South Street Rd.
Auburn, NY 13021
&
Westchester Office
400 Columbus Ave.
Suite 140S
Valhalla, NY 10595
Phone: 315-370-4020
Email: acuddy@cuddylawfirm.com

Gina DeCrescenzo, P.C.
Gina M. DeCrescenzo, Esq.
180 South Broadway, Suite 302
White Plains, NY 10605
Phone: 914-615-9177
Email: gina@decrescenzolaw.com

# EMERGENCY COALITION OF
# SPECIAL EDUCATION ATTORNEYS
# FOR A FAIR DUE PROCESS SYSTEM

## SIGNATORIES (in Alphabetical Order of Firm Name)

Michael Gilberg, Esq.
Michael Gilberg Attorney-at-Law
Somers, NY
Phone: 914-458-1849
Email: michaelgilbergesq@gmail.com

Steven L. Goldstein
Attorney-at-Law
111 John Street, Suite 800
New York, New York 10038
Phone: 212-812-8295
Email:slgattorney@verizon.net

Courtney Haas, Esq.
Law Office of Courtney L. Haas LLC
57 West 57th Street, Ste. 4364
New York, New York 10019
Phone: 718-578-2658
Email: courtney@haaseducationlaw.com

Gloria Bruzzano
Susan Cohen
Anishah Cumber
Jennifer Frankola
Elizabeth Hill
Elisa Hyman
Lauren Karalis
Jean Lucasey
Matthew McCann
Erin O'Connor
Aeri Pang
Ayodele Rashid
Charles Scholl
Kim Susser
The Law Office of Elisa Hyman, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
Phone: 646-572-9064
Email: elisahyman@gmail.com

Lisa Isaacs, Esq.
Law Office of Lisa Isaacs, P.C.
1250 Broadway, 36th Floor
New York, NY 10001
Phone: 917-553-7977
Email: lisaacs@lisaisaacs.com

Melissa Ayre
Joseph DaProcida
Michele Kule-Korgood
Kule-Korgood and Associates, P.C.
118-35 Queens Boulevard, 17th floor
Forest Hills, New York 11375
Phone: 718-261-0181
Email: mkule@educationlawny.com

Kyle Costello
Kira Epstein
Lisa Gibertoni
Marcy Hagen
Vanessa Jachzel
Nora Lynch
H. Jeffrey Marcus
Olga Vlasova
Wendy Zimny
Law Offices of H. Jeffrey Marcus, P.C.
NYC office:
Law Offices of H. Jeffrey Marcus, P.C.
2350 Broadway, Suite 212
New York NY 10024
&
WNY office:
Law Offices of H. Jeffrey Marcus, P.C.
19 Limestone Dr., Suite 3
Williamsville, N.Y. 14221
Phone: 716-634-2753
Email:specialedlaw@mac.com

# EMERGENCY COALITION OF
# SPECIAL EDUCATION ATTORNEYS
# FOR A FAIR DUE PROCESS SYSTEM

## SIGNATORIES (in Alphabetical Order of Firm Name)

Leslie Berson
Jackie DeVore
Noelle Forbes
Gary S. Mayerson
Maria McGinley
Susan Wagner
Mayerson & Associates
330 West 38th Street, Ste. 600
New York, New York 10018
Phone: (212) 265-7200
Email: gary@mayerslaw.com

Law Office of Neal Rosenberg
111 John Street
22nd Floor
New York, NY 10038
Phone: 212-732-9450

Law Offices of Nancy Rothenberg
PLLC
63 Kent Drive
Cortlandt Manor, New York 10567
Phone: 917-805-3377
Email: nancy@lawofficesnr.com

Randi M. Rothberg, Esq.
Thivierge & Rothberg, P.C.
NYC Office
5 Hanover Square, Suite 1201
New York, New York 10004
Phone: 212-397-6360
&
Long Island Office
200 Willis Avenue
Mineola, New York 11501
Phone: 516-280-4449
Email: Randi@trspecialedlaw.com
www.trspecialedlaw.com

Nicole Q. Saldana
Law Office of Nicole Q Saldana PLLC
30 Wall Street, 8th Floor
New York, NY 10005
Phone: 212-709-8070
Email: nicole@nsaldanalaw.com

Bonnie Spiro Schinagle,Esq.
Law Offices of Bonnie Spiro Schinagle
6800 Jericho Turnpike, 120W
Syosset, N.Y. 11791
Phone: 516-967-5874
Email: Bschinagle@schinaglelaw.com

Michele Siegel
Law Office of Michelle Siegel
300 Elizabeth Street
Garden Suite
New York, NY 10012
Phone: 646-530-2130
Email: MichelleSiegel@msiegelaw.com

Regina Skyer
Jesse Cutler
Greg Cangiano
Diana Gersten,
Sonia Mendez-Castro,
Will Meyer,
Abbie Smith
The Law Offices of Regina Skyer and
Associates
142 Joralemon St #11c
Brooklyn Heights, NY 11201
Phone: (212) 532-9736
Email: jcutler@skyerlaw.com

Hyman Decl.  Ex. EE- 8

# EMERGENCY COALITION OF
# SPECIAL EDUCATION ATTORNEYS
# FOR A FAIR DUE PROCESS SYSTEM

## SIGNATORIES (in Alphabetical Order of Firm Name)

Jennifer Ratcliff
Ratcliff Law, P.L.L.C.
300 Park Ave., 12th Floor
New York, NY 10022
Phone: 646-741-3030
Email: Jennifer@Ratcliofflaw.org

Tamara Roff
Tuneria Taylor
Lauren Goldberg
Felipe Rendon
The Law Firm of Tamara Roff, P.C.
136 Madison Avenue, 5th Floor
New York, New York 10016
Phone: 646-722-3829
Email: tammi@rofflaw.com

Law Offices of Irina Roller, PLLC
40 Wall Street - Suite 2508
New York, NY 10005
Phone: 212-688-1100
Email: Irina@nycSpecialEducation.con

Tracey Spencer Walsh
Spencer Walsh Law, PLLC
625 W 57TH ST SUITE 1810
New York, NY 10019
Phone: 212-401 1959
Email: tracey@spencerwalshlaw.com

February 28, 2020

To:     Chancellor Betty A. Rosa
        Vice Chancellor T. Andrew Brown
        Members, New York State Board of Regents
        Shannon Tahoe, Interim Commissioner, New York State Education Department
        Christopher Suriano, Assistant Commissioner for Special Education
        Kimberly Wilkins, Assistant Commissioner for Innovation and School Reform

**Re: Proposal to Allow Non-Attorneys to Qualify as Impartial Hearing Officers**

Dear Chancellor Rosa, Vice Chancellor Brown, Members of the Board of Regents, Interim Commissioner Tahoe, Assistant Commissioner Suriano, and Assistant Commissioner Wilkins:

We are a group of legal services organizations that advocate daily for some of the most vulnerable and critically disadvantaged children with disabilities requiring special education in New York City.  The purpose of this letter is to voice our concern regarding an emergency proposal under consideration by the Board of Regents to include non-attorneys in the pool of people who can qualify to serve as impartial hearing officers ("IHOs") in New York.

We are aware of the Emergency Coalition of Special Education Attorneys for a Fair Due Process System letter dated February 13, 2020 ("ECFDP Letter") and other letters submitted to your attention, and agree generally with the many concerns raised by our colleagues regarding the certification of non-attorneys to serve as IHOs.

Our clients, all of whom are low income, are uniquely disadvantaged by the crisis at the New York City Impartial Hearing Office.  Unlike families with the financial resources to front the cost for an educational service or evaluation and seek reimbursement at a later time from the New York City Department of Education, our clients almost never have the ability to access crucial resources while they wait for their claims to be resolved.  As a result, our clients often suffer for months—and in some cases, more than a year—until an IHO renders a decision in their case.

While we are deeply concerned about the delays at the Impartial Hearing Office, we are nevertheless concerned that the use of non-attorney IHOs will only compound the problems that our clients face.  Two goals must be met when addressing the unprecedented crisis at the New York City Impartial Hearing Office: (1) adjudicating claims within federally mandated timelines while (2) faithfully protecting and preserving families' due process rights and their substantive rights under the Individuals with Disabilities Education Act ("IDEA").  While we agree that the extreme delays prohibiting the timely resolution of our clients' claims must be addressed with urgency, we nevertheless fear that adopting an emergency regulation that would allow non-attorneys to serve as IHOs—even as a stopgap measure—would compromise the quality and integrity of the hearing process and further harm a student population that is the most severely injured by the Hearing Office's current crisis.  Permitting non-attorneys to serve as IHOs creates

a grave risk that our clients' cases would be adjudicated in a manner that does not conform to statutory and regulatory requirements, case law, rules of evidence, and principles of due process.

The responsibilities of an IHO are complex and require specific legal training. Among other skills, an IHO must be able to review and digest voluminous and complicated records, take testimony, and rule on objections. Following a hearing, an IHO must be able to apply law to the facts elicited at hearing, using legal analysis skills developed in law school and honed through legal practice. We share the concern raised in the ECFDP Letter regarding a non-attorney's ability to facilitate the development of a legally-sound and factually-detailed record. We likewise share the concerns raised in the ECFDP Letter regarding the ability of non-attorneys to understand the intricacies of relevant law, as well as the ways in which it has been (and is continually) interpreted by state and federal courts.

Allowing non-attorneys to serve as IHOs has the potential to further delay and diminish, rather than strengthen, our clients' access to justice. There will inevitably be an increase in the need to appeal IHO decisions due to flaws in non-attorneys' ability to render decisions in accordance with appropriate, standard legal practice, as required by the IDEA. As our clients wait for rulings on their appeals, they will continue to suffer without services because they are unable to pay for them out-of-pocket and await reimbursement.

Moreover, not only would the need to appeal lengthen the wait for remedies, but our clients' ability to effectively appeal their cases would almost certainly be adversely impacted by the quality of the record created and the decision rendered by a non-attorney IHO. Under current case law, the record maintained by an IHO is accorded deference, and weight is given to certain legal decisions the IHO makes. Our clients may not only be forced to endure longer wait times with no interim relief, but may be ultimately prejudiced by a non-attorney IHO's failure to make appropriate rulings and an adequate record at hearing.

Additionally, though by definition we do not represent *pro se* litigants, we are concerned that these problems would impact parents without legal representation to an even greater extent.

Finally, it should be noted that attorneys in New York State take a solemn constitutional oath upon admission to the bar. Attorneys are expected to adhere to specific practice-related and ethical rules and can be held accountable and disciplined by state bar disciplinary committees if they do not meet the appropriate standards. Attorneys are expected to participate in continuing legal education opportunities and to keep abreast of pertinent developments in their practice. Non-attorneys almost certainly will not have internalized the ethical obligations specific to the legal profession because, as non-attorneys, they have no cause to do so, and neither would they be subject to the very real accountability and threat of disciplinary action that every single barred attorney can face.

While we believe that students are being continually harmed by the delays at the Impartial Hearing Office, we strongly encourage the Board of Regents to reject any emergency proposal that would permit non-attorneys to serve as IHOs. A decision to the contrary would significantly compromise the ability of New York City's most vulnerable children to fully access their legal rights under the IDEA.

2

Sincerely,

| _____/s/_____ | _____/s/_____ |
|---|---|
| Nelson Mar<br>Amy Leipziger<br>LEGAL SERVICES NYC<br>    Bronx Legal Services<br>    Brooklyn Legal Services<br>    Queens Legal Services<br>    Staten Island Legal Services<br>40 Worth Street, Suite 606<br>New York, NY 10013<br>(646) 442-3600<br>nmar@lsnyc.org<br>aleipziger@lsnyc.org | Todd Silverblatt<br>MOBILIZATION FOR JUSTICE, INC.<br>100 William Street, 6th Floor<br>New York, NY 10038<br>(212) 417-3833<br>tsilverblatt@mfjlegal.org |
| _____/s/_____ | _____/s/_____ |
| Susan J. Horwitz<br>Education Law Project<br>THE LEGAL AID SOCIETY<br>Harlem Community Law Office<br>2090 Adam Clayton Powell Blvd., 3rd Floor<br>New York, NY 10027<br>(212) 426-3061<br>shorwitz@legal-aid.org | Cara Chambers<br>Education Advocacy Project<br>THE LEGAL AID SOCIETY<br>199 Water Street, 3rd Floor<br>New York, NY 10038<br>(212) 577-3342<br>cachambers@legal-aid.org |
| _____/s/_____ | _____/s/_____ |
| Matthew Knecht<br>NEIGHBORHOOD DEFENDER SERVICE<br>OF HARLEM<br>317 Lenox Ave, 10th Floor<br>New York, NY 10027<br>(212) 876-5500<br>mknecht@ndsny.org | Melissa Accomando<br>Anna Arkin-Gallagher<br>Gabriel Freiman<br>BROOKLYN DEFENDER SERVICES<br>177 Livingston Street, 7th Floor<br>Brooklyn, NY 11201<br>(718) 254-0700<br>maccomando@bds.org<br>aarkingallagher@bds.org<br>gfreiman@bds.org |

3

| | |
|---|---|
| _____/s/_____<br><br>Samantha C. Pownall<br>NEW YORK LAW SCHOOL LEGAL<br>SERVICES, INC.<br>185 W. Broadway<br>New York, NY 10013<br>(212) 431-2167<br>Samantha.Pownall@nyls.edu | _____/s/_____<br><br>Roberta Mueller<br>NEW YORK LAWYERS FOR THE<br>PUBLIC INTEREST<br>151 West 30th Street, 11th Floor<br>New York, NY 10001<br>(212) 244-4664<br>rmueller@nylpi.org |
| _____/s/_____<br><br>Karen Simmons<br>THE CHILDREN'S LAW CENTER<br>44 Court Street, 11th Floor<br>Brooklyn, NY 11201<br>(718) 522-3333 x 123<br>ksimmons@clcny.org | |

cc:      Hon. Andrew M. Cuomo
         (Governor, New York State)

         Hon. Letitia A. James
         (Attorney General, New York State)

         Hon. Thomas P. DiNapoli
         (Comptroller, New York State)

         Senator Shelley B. Mayer
         (Chair, Committee on Education, New York State Senate)

         Assemblyman Michael Benedetto
         (Chair, Committee on Education, New York State Assembly)

         Senator John C. Liu
         (Chair, Committee on New York City Education, New York State Senate)

         Alison B. Bianchi
         (Counsel and Deputy Commissioner for Legal Affairs, NYSED)

         Cathryn Tisenchek
         (Supervisor, Due Process Unit, NYSED Office of Special Education)

Sharon Veltman
(New York State Education Department)

Louise DeCandia Esq.,
(Counsel, New York State Education Department)

Hon. Bill de Blasio
(Mayor, City of New York)

Hon. Jumaane D. Williams
(Public Advocate, City of New York)

Hon. Scott M. Stringer
(Comptroller, City of New York)

Hon. Corey Johnson
(Speaker, New York City Council)

Hon. Mark Treyger
(Chair, Committee on Education, New York City Council)

Richard Carranza
(Chancellor, NYCDOE)

Zachary W. Carter
(Corporation Counsel, City of New York)

Howard Friedman
(General Counsel, NYCDOE)

Emily Minarcik, Esq.
(Director, Special Education Unit, Office of the General Counsel, NYCDOE)

Jordan Dressler, Esq.
(Civil Justice Coordinator, Office of Civil Justice, City of New York)

Karen Goldmark
(Deputy Chancellor of School Planning and Development, NYCDOE)

Cheryl Williams, Esq.
(Interim Acting Chief Administrator, Impartial Hearing Office, NYCDOE)

Deusdedi Merced, Esq

Hyman Decl.  Ex. EE- 14

June 29, 2021

Meisha Ross Porter
Chancellor
New York City Department of Education
52 Chambers Street
New York, NY 10007
mross@schools.nyc.gov

Dr. Betty A. Rosa
Commissioner
New York State Education Department
89 Washington Avenue
Albany, New York 12234
commissioner@nysed.gov

Lester W. Young, Jr.
Chancellor of the Board of Regents
55 Hanson Place, Suite 400
Brooklyn, N.Y. 11217
Regent.Young@nysed.gov

**Re: Special Education Due Process Resolution and Settlement Processes**

Dear Chancellor Porter, Commissioner Rosa, and Chancellor Young:

We are a group of legal services organizations and attorneys who advocate for the families of New York City children who have disabilities requiring special education services. We previously wrote to you on October 15, 2019 and write now to reiterate significant concerns about the New York City Department of Education's ("DOE") continuing failure to meet its obligations under the Individuals with Disabilities Education Act ("IDEA"), its implementing regulations, and New York State Education Department ("NYSED") regulations to resolve special education due process proceedings in a timely manner. In this letter, we offer some practical solutions for addressing the significant delays at the Impartial Hearing Office for your consideration.

In our October 15, 2019 letter we detailed the legal obligations of the DOE. For the sake of brevity, and in order to focus on solutions, we will not belabor those points and have attached the October 15, 2019 letter for your convenience. We will note, however, that the delays we highlighted in our 2019 letter—and which are documented by the February 22, 2019 External Review of the New York City Impartial Hearing Office conducted by Deusdedi Merced—persist. These issues pre-date the COVID-19 pandemic.

While there are innumerable areas for improvement in the New York City impartial hearing process, in this letter we focus on two aspects of the process that we believe, if addressed, could resolve a

significant number of cases without the need for an impartial hearing: the (I) resolution process and (II) settlement process.

## I.    Resolution Process

The IDEA and New York State regulations require local school districts to convene a resolution session within 15 days of receiving notice of the parents' due process complaint and to involve a representative of the school district with "decision-making authority" in the meeting. *See* 20 U.S.C. § 1415(f)(1)(B)(i); N.Y. Comp. Codes R. & Regs. tit. 8 § 200.5(j)(2). For the reasons outlined below, the DOE is failing to meet these obligations, and missing a crucial opportunity to resolve due process complaints quickly and efficiently, and without the need for impartial hearing.

### a.    Failure to Schedule

It has been our experience that, in many cases, the DOE has not convened a resolution session at all, in violation of the IDEA and New York State law. In a survey of special education legal advocates, over 80% of respondents reported that in the last two years they had at least one case in which they wanted a resolution session but the DOE did not convene one. Over 70% of respondents said that had happened in more than one case. This widespread failure to provide a resolution session deprives both families *and* the DOE of an opportunity to meaningfully engage about the facts that form the basis of the complaint and to speedily resolve issues in special education disputes.

We have noted through our practice that there is wide disparity across New York City in timely scheduling and holding resolution sessions, with some DOE offices more consistent about scheduling than others. The DOE must take measures to ensure that all offices contact parent representatives and/or parents to convene a resolution session within 15 days of the filing of a due process complaint.

Frequently, when resolution sessions *are* held, it is because a parent's attorney affirmatively reaches out to the DOE, often multiple times. It is the responsibility of the DOE, not the parent, to schedule the resolution session in all cases.

### b.    Lack of a DOE Representative with "Decision-making Authority"

In our experience, many resolution sessions result in either a partial resolution agreement or no resolution agreement at all due to the absence of a DOE representative who has appropriate decision-making authority. Routinely, the DOE representative lacks authority to resolve simple, much less crucial, aspects of families' due process complaints. In our survey of special education legal advocates, over **90% of respondents** stated that they had participated in at least one resolution session in which the DOE explicitly or implicitly lacked authority to offer reasonable relief. A combined 84% of respondents said that, in general, the DOE representative has decision-making authority either less than half of the time *or never*. It is important to note that in this area, too, there is disparity across DOE offices as to what DOE representatives have the authority to offer at a resolution session.

DOE representatives at resolution sessions regularly report that they lack authority to approve the following, among other things:

- "Enhanced"-rate or market-rate independent educational evaluations. Our understanding is the DOE has not raised its "standard" rates for independent testing such as neuropsychological evaluations, speech-language evaluations, and others to keep pace with the organically increasing market-based rates for these evaluations.
- "Enhanced"-rate or market-rate compensatory services, such as tutoring, occupational therapy, speech-language therapy, etc.
- Compensatory services based on what the student needs to place them in the position they would have been in but for the denial of free appropriate public education ("FAPE") (rather than based on an oversimplified and abstracted internal formula employed by the DOE)
- New York State-approved non-public school (NPS) placements
- Private school tuition
- Reimbursement for expenses incurred by parents, including meals and transportation

To resolve this problem, the DOE must ensure representatives at the resolution meetings have the authority to approve reasonable and regularly-sought forms of relief at resolution, such as the above. The DOE's systemic failure to reasonably fund evaluations and services not only unnecessarily prolongs legal cases, but it prevents students from receiving critical and high-quality services and evaluations in a timely way—*or at all*. In situations where a family decides to accept a "standard" rate through resolution, for example, because the need is urgent and they do not want to risk a substantial delay while waiting for a hearing, they are limited in their choice of provider to only those very few, if any, who are now willing to accept the DOE's antiquated rates. And, sadly, in our experience, many of the "standard" rate services or evaluations are often of lower quality, biased, do not make concrete recommendations, or simply suffer from more extreme delays, as market-rate services and evaluations are prioritized by providers.

Granting DOE representatives the authority to approve reasonable forms of relief at resolution will provide an "off-ramp" for an extraordinarily large number of cases, ensuring that the only cases and claims that continue on to an impartial hearing are those which truly require the intervention of a hearing officer. In our experience, the forms of relief often denied at resolution are later won during simple impartial hearings in which the DOE does not defend its provision of a FAPE to the student in question. In these situations, the failure to resolve issues at resolution results in damaging delays in the delivery of services for children, as well as steep costs to both parent advocates, the DOE, and Impartial Hearing Office staff in valuable time, resources, and fees.

In addition to a clear grant of authority to DOE representatives, one simple, across-the-board action the DOE should take to reduce further harm to children and resolve more cases at resolution is to formally increase "standard" rates for evaluations and services to more accurately reflect current market rates. In doing so, it should also build in an annual cost-of-living adjustment to prevent future rate lags.

II. **Settlement Process**

The resolution session is just one path for cases to resolve without the need for impartial hearing. The DOE can also resolve a larger number of cases through settlement, though it often does not. We suspect this may be owing in part to inadequate staffing.

A system for the swift settlement of appropriate cases would ameliorate delays at the Impartial Hearing Office. By settling cases expeditiously and removing them from the impartial hearing queue, the DOE could reduce the number of ultimately unnecessary hearings and ensure that advocates, the DOE, and Impartial Hearing Office staff are able to focus on those cases that truly require a hearing on the merits. Sadly, in our survey of special education legal advocates, over 85% reported that they had filed a due process complaint in the last two years that was appropriate for settlement but was not referred.

While reasonable parties can disagree about whether settlement is appropriate in any given case, the DOE has already identified a set of cases in which settlement is appropriate—private school placement cases falling under a special "fast-track" policy established under Chancellor Fariña—that it simply fails to actually implement. In addition to following through on its fast-track policy, the DOE should also *minimally* establish a priority settlement policy for another set of cases—cases with common fact-patterns and clear-cut failures that can be easily identified and resolved.

a. Private School Placements Falling Under the "Fast-Track" Settlement Policy

i. Single-Year Fast-Track Settlement Agreements

Although the fast-track settlement policy is well defined and limited in scope, it is in reality so protracted that some advocates have decided that it can be more expeditious to request a hearing and obtain an order than wait to finalize one-year stipulations of settlement. The fast-track settlement policy established under Chancellor Fariña involves only cases seeking tuition payment or reimbursement and is applicable where (a) there was a settlement or unappealed decision awarding the same unilateral placement in the prior year and the DOE program or placement recommendation remains the same as in the prior year, (b) there was a settlement the prior year for the same program, placement, or circumstances, or (c) the child is entering a terminal grade in a school that the DOE previously funded. Although when the procedure was established the goal was set to settle eligible cases within 90 days, the process unfortunately nearly always takes much longer—routinely months beyond the school year at issue. Failure to follow through on the fast-track policy results in an extra category of unnecessary impartial hearings, not to mention numerous collateral consequences, including the endangerment of low-income student's places in their schools due to the egregious delays in tuition payments.

ii. Multi-year Settlement Agreements

The DOE has not made genuine efforts to negotiate multi-year settlement agreements with families, a mechanism employed by jurisdictions outside New York City for the efficient settlement of certain

4

tuition cases. Rather than offer meaningful, binding multi-year agreements, the DOE *sometimes* offers parents what is called a "renewable" agreement. The terms of the DOE's standard renewable agreement are, by and large, one-sided and do not promote the efficiencies achieved by true multi-year agreements. Advocates who have tried to engage the DOE on the renewable agreements have been repeatedly told there is no room for modification.

The DOE's renewable agreement only settles the case in the first year; afterwards, the agreement *may be renewed by the DOE* if the IEP is not significantly changed from the previous year, if the parent is fully cooperative in the IEP process, if the parent enrolls the student in the same school, and if the Office of the New York City Comptroller ("Comptroller") approves the settlement. Nothing, essentially, guarantees that the DOE will settle the case in the second and third years. Critically, the maximum amount paid in years two and three of the renewable agreement are tied to shifts in the Consumer Price Index, rather than realistic tuition increases tied to actual increases and costs in New York City. The renewable agreement also makes no allowance for increases in tuition due to the addition of services (such as a 1:1 paraprofessional) or programming extensions (such as summer school). The low-income families we serve would be unable to cover the difference between what the renewable agreement covers in years two and three and the actual increases in tuition in years two and three.

The renewable agreement also does little to hasten the settlement process in the second and third years. Parents must still file Ten Day Notices or Due Process Complaints. The DOE must still review the claim and determine whether there is a "legal basis" for settlement. The DOE must still seek approval of the Comptroller which, as we note below, can be time consuming.

The DOE must revisit its standard renewable agreement and work meaningfully and reasonably with parent advocates to create a template multi-year settlement agreement that will work in the best interest of both parties. Doing so in appropriate cases will not only promote efficiency and ease the caseload of the DOE, but will, among other things, provide families and students much needed educational stability and security.

   b. <u>"Common" Failure Cases</u>

     i. *Referral*

After an impartial hearing request is submitted, and even after the resolution session process has failed, there are some cases that are eventually referred for settlement by DOE attorneys or Impartial Hearing Representatives.  However, it often takes months for the assigned DOE representative to focus on and investigate a case in order to determine whether referral for settlement is appropriate. Many times, the DOE representative never investigates the case and, often after many, many months, an impartial hearing is held as a default, at great expense to all parties.

In our survey of special education legal advocates, a staggering **95% of respondents** stated that they participated in an impartial hearing within the last two years in which the DOE either explicitly conceded that it did not provide a FAPE or else did not present a case to prove that it provided a

FAPE. **Nearly half of respondents said that the DOE conceded FAPE or did not put on a case** *in all of their impartial hearings within the last two years*.

With some guiding principles, these cases could be identified and referred for settlement early and without need for involving a hearing officer, decreasing the burden and cost of litigation for all. We recommend that the DOE develop a protocol for identifying common failures and/or circumstances in which there is a high probability that the DOE denied the student a FAPE, and designate staff members with the sole responsibility of flagging and investigating cases for settlement referral according to that protocol.

In our opinion, some common and easily identifiable failures that would warrant settlement include, but are not limited to:

- the student did not have an IEP in effect in accordance with the IDEA;
- the DOE did not timely (or ever) offer a placement for the student;
- the DOE placed the student in a program different from the program mandated on the IEP;
- the DOE did not timely (or ever) evaluate the student;
- the DOE did not provide services mandated on the student's IEP; and
- any other situations in which the allegations of a denial of FAPE are simple to verify.

Once the DOE determines that the denial of FAPE will not be contested, the DOE and the family should be able to negotiate a settlement.

      ii.  *Settlement Negotiations*

Unfortunately, when cases are referred for settlement, the process of finalizing an agreement often takes many months, sometimes for no discernible reason. In cases involving agreements implicating over $25,000.00, advocates have often been told by DOE staff that the delay is due to delays in securing approval from the Comptroller. However, in our experience, the delay results in large part from the time it takes for DOE legal staff to prepare and submit memoranda to the Comptroller to justify the settlement. The requirements of collaboration with the Comptroller must be streamlined and simplified in order to decrease the burden on DOE legal staff. Again, we suspect the delay in submitting legal memoranda is due in part to lack of staff and not related to whether a case is appropriate for settlement. Accordingly, we recommend that the DOE augment its staff in the Office of Legal Services to efficiently process cases identified as appropriate for settlement in accordance with the above recommendations.

Additionally, a separate factor that contributes to delays and lack of efficiency in the settlement process is the DOE's unnecessary compartmentalization of various aspects of the impartial hearing process. The DOE is typically represented by one individual in the impartial hearing process and a completely different individual in the settlement process, with apparently limited to no communication between the two. In other legal contexts, the pressure of impending litigation often promotes urgency and efficient progress towards settlement. This urgency is nearly always absent when dealing with the DOE, however, because the individual representing the DOE in the settlement

negotiation does not bear the burden or responsibility of representing the DOE in the impartial hearing and does not face any direct pressure from the Impartial Hearing Officer. On the flip side, the person representing the DOE in the hearing is often unable to introduce relevant updates from the settlement process into the impartial hearing process. Requiring the settlement representative to appear during status conferences, or ensuring that only one individual handles hearing <u>and</u> is authorized to enter into settlements in lieu of hearing, would incentivize a more efficient settlement process overall.

***

As you can imagine, the consequences of unnecessary delays weigh particularly heavily on students whose families' lack the economic resources to pay for private services or a unilateral school placement while they wait for their cases to be heard.  Many low- and middle-income students must do without needed programs and services for many months, and often *years*, for a resolution, during which time, of course, more damage has been done, on top of what they have already suffered. By facilitating and streamlining the resolution and settlement processes, the DOE could serve children more efficiently, decrease the burden on the Impartial Hearing Office, and make the hearing process more readily available to only those cases which genuinely require the intervention of an Impartial Hearing Officer.

We look forward to working with your offices to improve these processes and ensure that children receive a FAPE, no matter their financial means. We look forward to a reply and to scheduling a meeting with you at your earliest availability to discuss solutions. Please direct your reply to Todd Silverblatt, Supervising Attorney in the Warren Sinsheimer Children's Rights Project of Mobilization for Justice, at tsilverblatt@mfjlegal.org.

Sincerely,

| | |
|---|---|
| Advocates for Children of New York | Legal Services NYC |
| Brooklyn Defender Services | Mobilization for Justice |
| Cooke School and Institute | New York Lawyers for the Public Interest |
| Isaacs Bernstein, P.C. | Ratcliff Law, PLLC |
| The Legal Aid Society | |

cc:      Members, New York State Board of Regents

Encl.

October 15, 2019

Elizabeth Berlin
Interim Commissioner
New York State Education Department
89 Washington Avenue
Albany, New York 12234

Richard A. Carranza
Chancellor
New York City Department of Education
52 Chambers Street
New York, NY 10007
RCarranza@schools.nyc.gov

Dear Interim Commissioner Berlin and Chancellor Carranza:

We are a group of legal services organizations and attorneys who advocate for the families of New York City children who have disabilities requiring special education. We write to raise significant concerns that the New York City Department of Education ("NYCDOE") is habitually failing to meet its obligations under the Individuals with Disabilities Education Act ("IDEA"), its implementing regulations, and New York State Department of Education ("NYSED") regulations to provide impartial due process hearings, conducted by Impartial Hearing Officers ("IHOs"), in a timely manner.

The purpose of this letter is to reiterate NYCDOE's and NYSED's legal obligations to provide due process hearings in a timely manner; present real world examples of the educational impacts these delays are causing; offer practical solutions to begin to curb this problem; and **request an immediate meeting with State and City decision makers to discuss our concerns**.

Through our advocacy for children and parents, we have all personally witnessed these illegal delays and the impacts they have on some of the most vulnerable children in New York City. This letter should not come as a surprise. For years, NYSED has "documented that parents/guardians of students with disabilities are not being provided timely access to an impartial hearing upon the filing of a due process complaint notice with NYCDOE,"[1] and that

---

[1] New York City Department of Education Compliance Assurance Plan, May 2019 (New York State Education Department, Office of Special Education) ("CAP"), Attached as Exhibit A, at 2.

"NYCDOE fails to provide parents access to adequate due process after a complaint has been filed."[2]

NYSED has concluded that "NYCDOE has multiple outstanding findings of noncompliance involving the requirements to ensure proper procedural safeguards to students and parents, and the provision of programs and services to preschool and school-age students with disabilities," and that despite NYSED's efforts to work with NYCDOE to resolve these issues, those efforts have "not resulted in the systemic change necessary to sustain compliance and/or scale-up effective approaches to ensuring compliant policies, procedures, and/or practices in the identified areas."[3]

**NYCDOE Fails to Meet Its Obligations to Provide Timely Due Process Hearings**

The right to challenge adverse special education determinations through the complaint and hearing process is among the most critical protections the IDEA provides to parents. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 205 (1982) ("[T]he importance Congress attached to [IDEA's] procedural safeguards cannot be gainsaid."). Integral to these procedures are strict timelines imposed by federal and state law. Both federal and state regulations explicitly require that an IHO issue a final decision on any due process complaint no later than 45 days after the expiration of the 30-day resolution period. 34 C.F.R. § 300.515(a); 8 N.Y.C.R.R. § 200.5(j)(5). New York state law further protects parents' right to timely determinations on their due process complaints by, for example, requiring that the hearing process begin within the first fourteen days of the federally-mandated resolution period, prohibiting appointment of IHOs unable to meet that deadline, and severely curtailing the circumstances in which the mandated timeframes may be exceeded. *See, e.g.,* 8 N.Y.C.R.R. § 200.5(j)(3)(iii)(*b*) (fourteen-day requirement); *id.* § 200.5(j)(3)(i)(*b*) (IHOs); *id.* §§ 200.5(j)(5)(i)–(iv) (limits on granting extensions of time).

As courts routinely recognize, the time constraints on due process hearings are fundamental to the IDEA's statutory scheme. "[The] failure to provide a timely due process hearing to plaintiffs is not an unimportant or technical violation of the procedural safeguards provided for in the IDEA. Rather, it is the denial of a fundamental component of the due process protections afforded by the statute." *Blackman v. Dist. of Columbia*, 277 F. Supp. 2d 71, 78 (D.D.C. 2003). The reason is clear: delay causes immediate and real harm to the students IDEA is designed to protect. "[T]he brevity of the 45–day requirement indicates Congress's intent that children not be left indefinitely in an administrative limbo while adults maneuver over the aspect of their lives that would, in large measure, dictate their ability to function in a complex world." *Engwiller v. Pine Plains Cent. School Dist.*, 110 F. Supp. 2d 236, 240 (S.D.N.Y. 2000). As a practical matter, the failure to timely adjudicate due process complaints often has the effect of denying children their statutorily mandated free appropriate public education ("FAPE"), and a sufficiently egregious delay "can itself constitute the denial of a free appropriate education." *Blackman*, 277 F. Supp. 2d at 79; *see also Schmelzer ex rel. Schmelzer v. New York*, 363 F. Supp.

---

[2] *Id.*, at 18.

[3] *Id.*, at 1.

2d 453, 459 (E.D.N.Y. 2003) ("Inordinate delays in the decision making process deprive those students of the rights provided to them under the IDEA and cause those students to suffer irreparable harm.").

The responsibility for ensuring compliance with these critical deadlines rests with NYCDOE and, ultimately, with NYSED.  20 U.S.C. § 1412 (a)(11)(A); 34 C.F.R. § 300.149(a) *and* 300.515(a)–(b); and 8 N.Y.C.R.R. § 200.5(j)(3).  Egregious delay gives rise to liability by those actors, from which affected students may seek legal redress in court, including on a class basis. *See, e.g.*, *Blackman*, 277 F. Supp. 2d at 79, 85–89 (granting preliminary injunction in lengthy class litigation to redress systemic delays in District of Columbia due process hearings); *L.V. v. N.Y.C. Dep't of Educ.*, No. 03 Civ. 9917, 2005 WL 2298173, at *8 (S.D.N.Y. Sept. 20, 2005) (granting certification to class of students harmed or at risk of being harmed by systemic delays in implementing IHO decisions); *Schmelzer*, 363 F. Supp. 2d at 459–62 (certifying and granting summary judgment to class harmed by State Review Officers' violations of federal timeliness requirements).

NYCDOE has woefully failed to meet its obligations to timely provide due process hearings.  As described in the CAP, "NYCDOE has been identified as not meeting the requirements of IDEA for ***13 consecutive years*** due to performance and/or compliance outcomes for the subgroup of students with disabilities"[4] (emphasis added).  As NYSED put it, NYCDOE is "a district that needs intervention in implementing these requirements."[5]

The CAP is replete with descriptions of NYCDOE's failure to meet required deadlines, including specifically that "NYCDOE fails to afford students with disabilities and their parents with required procedural safeguards."[6]  An independent report commissioned by NYSED found that the "average number of days a case is open in New York State far exceeds the abbreviated timeline established in the IDEA and what is reasonable under an extended timeline."[7]  For example, in the 2017-2018 school year, the average number of days a case was open ("case length") in New York City was 202 days.[8]  In the 2018-2019 school year, it was 225 days.[9]  By comparison, the average case length in the rest of New York State was 120 and 140 days in 2017-2018 and 2018-2019, respectively.[10]  As described in the External Review, this "failure to

---

[4] *Id.*, at 2.

[5] *Id.*

[6] *Id.*, at 18.

[7] External Review of the New York City Impartial Hearing Office, February 22, 2019 (Deusdedi Merced, Special Education Solutions, LLC) ("External Review"), attached as Appendix B, at 18.

[8] *Id.*, at 19.

[9] *Id.* (as of January 2019).

[10] *Id.* (as of January 2019).

promptly resolve due process complaints keeps children in 'administrative limbo' and, for some, delays access to free appropriate public education to which they are entitled."[11]

The independent report found that in the 2016-2017 school year, of the due process complaints that resulted in written decisions, only 14% were decided within the mandatory 45-day timeline.[12] The majority—71%—were decided within extended timelines, and 15% were untimely.[13] The report assumed the extended timelines were based on valid requests, but stated that there have been allegations of IHOs unilaterally extending the timelines absent valid requests,[14] something we have experienced firsthand. Indeed, according to the External Review, the number of extensions granted in New York State is "exceptionally high," and New York City accounted for over 95% of all extensions granted in the 2015-2019 school years.[15] For example, in the 2017-2018 school year, of 36,369 extensions granted state-wide, 35,157 (or 97%) were in New York City.[16]

IHOs in New York City also have a "startling" number of recusals, with 5,634 in the 2017-2018 school year (compared with 30 in the rest of the state), and 6,968 recusals as of January 2019 in the 2018-2019 school year (compared with 11 in the rest of the state).[17] Significantly, the vast majority of these recusals relate to scheduling and availability, not substantive matters.[18] The "disproportionate number of recusals are an impediment to the timely completion of due process hearings."[19] Overall, the External Review concluded that "these systemic deficiencies are symptomatic of an unhealthy hearing system that requires immediate intervention."[20]

---

[11] *Id.*, at 18–19.

[12] *Id.*, at 15.

[13] *Id.*

[14] *Id.*, at 15 n.41. See, 34 CFR § 300.515(c); and 8 NYCRR 200.5(j)(5)(i) ("The impartial hearing officer shall not solicit extension requests or grant extensions on his or her own behalf or unilaterally issue extensions for any reason.").

[15] *Id.*, at 16–17.

[16] *Id.*, at 17.

[17] *Id.*, at 17–18.

[18] *Id.*, at 17 n.48 (explaining that the term "recusal" is a "misnomer" in this context, because IHOs are assigned "on an automatic rotational appointment basis" and "[a]n IHO who is appointed but simply unavailable, or . . . chooses not to accept the appointment, is deemed to have recused him/herself").

[19] *Id.*, at 17.

[20] *Id.*, at 20.

**These Delays Cause Serious Harm to New York City Children**

These egregious and systemic delays are continuing to cause material, demonstrable harm to the children we represent.  Every day of delay is another day that these children miss out on critical services they need to develop and learn.  And these delays disproportionately affect low income children whose families do not have the means to pay for the services they require on their own while waiting for their claims to be processed.  Below are several examples of children experiencing real injury from NYCDOE's delays.  As these families' experiences make clear, many compounding dysfunctions contribute to the delays, including multiple recusals by successive IHOs, overburdened and overscheduled IHOs, unexplained gaps between hearing dates, delayed transcripts, improperly entered compliance deadline extensions, poor communication from NYCDOE and the Impartial Hearing Office, and an inefficient process and protocol for reaching settlement in uncontested cases.  These dysfunctions led to between six and twelve months of delay in the below examples, including one student whose hearing still has not yet been completed and another who is still waiting on a decision after a hearing.

**Zachary Wang**[21] is a 10-year-old boy with emotional disturbance whose school failed to implement his IEP.  Zachary's aunt requested a due process hearing in February 2019.  An IHO was assigned immediately, but replaced without explanation three weeks later by a new one, who in March scheduled a hearing in late June.  The night before the June hearing, the IHO recused himself, citing an inability "to conduct the hearing in a timely manner."  Several IHOs subsequently were assigned and recused themselves without explanation.  Counsel later learned that many of these IHOs had, on their own and without a request from either party, extended the compliance deadline without notice to either party.  The seventh assigned IHO scheduled a telephonic hearing in August, but then, without notice, failed to appear for it because, as he later acknowledged, he had seven other matters that morning.  Only after counsel wrote NYSED was an IHO assigned who could timely hear the matter.  At the pre-hearing conference in August, NYCDOE offered a settlement for the first time, after other NYCDOE representatives had refused Zachary's settlement requests for months on the ground that they lacked authority to agree to a settlement.

**Matthew Adebayo** is a non-verbal 8-year-old with autism and developmental delay, who engages in constant aggressive behaviors.  For two years, NYCDOE paid an independent agency to provide Matthew 20 hours per week of home-based behavior management services, leading to significant progress.  In March 2019, NYCDOE issued an IEP discontinuing the services.  Matthew's parent filed a due process complaint in April 2019, but the earliest hearing date permitted by the assigned IHO's packed schedule was September—and even then, for only two hours a day, so the hearing would take three nonconsecutive days spanning three weeks.  Matthew's services ended in June 2019, but the hearing was completed only on September 19.  No decision has yet been issued. Because his family has been unable to pay for services in the meantime, Matthew has regressed nearly to his levels of aggressive behavior from two years ago.

---

[21] The names and certain identifying features have been changed to protect the privacy of the students.

**Paul Stoddard** is a 12-year-old with autism, attention-deficit/hyperactivity disorder, and intellectual development and adjustment disorders. Following severe academic and behavioral problems, Paul's parents requested a due process hearing on June 29, 2016. A hearing was calendared for September, but in late August NYCDOE told Paul's parents the case would settle, and thus requested an adjournment to October 31. NYCDOE did not follow up, however. In November 2016, the IHO recused himself and a new one was appointed. Then, the parents heard *nothing* until February 2017. After counsel's inquiry, the Impartial Hearing Office stated that two adjournments had been granted to prepare witnesses—but no party had requested or even knew about those. That IHO recused himself, on Paul's parents' request, and a third IHO scheduled a hearing for May 1. In April, NYCDOE first told counsel the case had been settled, but a week later, NYCDOE informed parents that the case was in fact rejected for settlement. The hearing began on May 1, but was continued until June 21 because of the IHO's schedule. Ultimately—more than a year from the filing date, during which time Paul struggled behaviorally and academically—the IHO ruled for Paul's parents.

**Dario Kahler** is a third grader with a speech and language disability. His mother's requests to restore speech and language therapy, which NYCDOE had discontinued, and for a paraprofessional, were denied. Dario's mother filed an impartial hearing request in February 2018 and subsequently amended it, but the Impartial Hearing Office apparently never received the amended request. Counsel resubmitted it in July 2018. Although NYCDOE conceded it had denied Dario a free appropriate public education, and granted the services and a paraprofessional in December 2018, it refused compensatory services. The IHO did not hold a hearing until the end of January 2019, and the Impartial Hearing Office did not provide the transcripts until *June* 2019—almost *six months* after the hearing and eighteen months after the original request. To date, the IHO has not issued a decision. Dario has thus started school without the services he needs to compensate for NYCDOE's admitted denial of a free appropriate public education.

**Maria Mulloy** is a 12-year-old with emotional disturbance whose self-contained class and related services were inadequate to meet her needs. On August 31, 2018, Maria's mother filed a due process complaint. On September 10, 2018, an IHO was assigned, but the IHO did not hold the hearing until seven months later, on April 10, 2019. NYCDOE did not appear or contest the allegations. The Impartial Hearing Office did not provide the transcript until almost three months later, and did not issue a final decision granting her services until August 30, 2019—*a full year* after her mother filed the hearing request.

**Recommended Priorities**

In light of the deficiencies in the current process, NYSED and NYCDOE must take immediate steps to address the following priorities, each of which is critical to protecting our clients' federal and state rights to timely obtain hearings and resolutions of their cases.

### Timely Obtaining a Hearing

1. **Appoint Additional IHOs.** NYSED should appoint substantially more IHOs to meet the need for adjudicating complaints, including by increasing its recruiting outreach

efforts.  The current number of IHOs—71 in fiscal year 2018[22]—is vastly insufficient to meet the number of hearings requested in New York City:  over 7,100 during the 2017-2018 school year.[23]

2.  **Improve IHO Compensation.**  NYCDOE should (a) revise the IHO compensation scheme to fairly compensate officers; (b) timely compensate IHOs; and (c) develop compensation approaches that will incentivize IHO conduct that promotes timely and compliant resolution of complaints.  Currently, "[i]nadequate compensation has resulted in IHOs engaging in widespread practices that are inconsistent with appropriate, standard legal practice and best practices."[24]

3.  **Improve Case Management for IHOs.**  NYSED/NYCDOE should limit the  number of cases that can be assigned at one time to an IHO, limit the number of cases IHOs can calendar on one day, and create transparency in case selection so as to limit unnecessary and multiple recusals.  Currently, for example, NYCDOE "automatically appoint[s] an IHO to a due process complaint without first confirming his/her availability," which "is inconsistent with the regulatory requirement" and "is the primary reason for the high number of recusals in New York City."[25]

4.  **Additional Hearing Offices.**  NYCDOE should establish a hearing office in each borough, similar to the structure of the NYCDOE suspension hearing offices.  Having multiple locations would help with the overcrowding in the current hearing office and streamline the hearing process.  "[Eleven] hearing rooms is simply not enough, when on average in the past two school years, there have been over 100 matters on the calendar per day."[26]

5.  **Improve the Hearing Spaces.**  NYCDOE should provide additional space to conduct hearings, as well as separate waiting rooms for NYCDOE and parents/representatives so that the parties can have confidential conversations.  "The absence of a designated area for parent attorneys/advocates to have confidential discussions with their clients hinders the right of parents to be" advised by counsel.[27]

6.  **Hire Additional Hearing Office Staff.**  Given the delays experienced in the Impartial Hearing Office, NYSED/NYCDOE should hire more personnel for the office.

---

[22] External Review, at 34.

[23] CAP, at 19.

[24] External Review, at 31.

[25] *Id.*, at 43.

[26] *Id.*, at 37.

[27] *Id.*, at 39.

### Timely Obtaining Resolution

7. **Improve the Settlement Process.**   NYSED/NYCDOE should implement a streamlined settlement protocol that clearly delineates which entities/actors are responsible for milestones in the process and authorizes the individual representing NYCDOE in the impartial hearing to settle cases.  This process should include a commitment from NYCDOE to empower its representatives to engage in true settlement discussions and settle cases, particularly where NYCDOE does not intend to put on a case.[28]

8. **Implement Pendency Automatically.**  NYSED/NYCDOE should end the practice of requiring hearings and pendency orders where pendency is uncontested.[29] Alternatively, NYSED and NYCDOE should investigate the development of an alternative track to handle pendency hearings with separate dedicated staff.

9. **Make Mediation and Alternative Dispute Resolution More Readily Available.** NYSED/NYCDOE should make mediation more readily available and accessible as a means to resolve cases without going to hearing, including by training Impartial Hearing Office staff and NYCDOE employees on the availability of alternative dispute resolution.  Currently, NYCDOE "is not resolving or attempting to resolve enough matters through mediation."[30]

10. **Permit IHOs to Enter So-Ordered Judgments.**  IHOs should have the authority to enter a so-ordered judgment against NYCDOE if an NYCDOE representative represents that NYCDOE does not intend to defend its failure to provide a free appropriate public education or does not object to the parent's request for remedies. This judgment should then be directed to the Implementation Unit in order to streamline services and remedies for the student.

It is incumbent on both NYCDOE and NYSED to take immediate action on these priorities. The current pattern of extensive delays violates the procedural protections that federal and state law afford to our clients in precisely the manner these safeguards were designed to prevent. The legal responsibility for redressing these violations lies with both agencies.

We hope to work collaboratively with your offices to resolve our concerns and improve NYCDOE's hearing process for all New York City children.  Please note, however, that these egregious delays have impaired our clients' rights under federal and state law, and we will consider all action necessary to seek redress on their behalf. We look forward to a reply by November 15, 2019, and to scheduling a meeting (or meetings) with you within thirty days of

---

[28] CAP, at 19 ("NYCDOE does not defend numerous cases at hearing, but rather admits that it did not provide [free appropriate public education] and does not offer to settle these cases.").

[29] *Id.* ("NYSED has documented that NYCDOE requires a hearing or IHO determination for pendency, even when a student's pendency is not in dispute.").

[30] *Id.*, at 21.

this letter. Such a meeting should include, at a minimum, individuals from your agencies with knowledge of the problems described in this letter and the authority to commit to any agreed-upon solutions. Please address any reply to either Nelson Mar at nmar@lsnyc.org or Danielle Tarantolo at dtarantolo@nylag.org.

Sincerely,

| | |
|---|---|
| _____/s/_____ <br><br> Nelson Mar <br> Amy Leipziger <br> LEGAL SERVICES NYC <br>       Bronx Legal Services <br>       Brooklyn Legal Services <br>       Queens Legal Services <br>       Staten Island Legal Services <br> 40 Worth Street, Suite 606 <br> New York, NY 10013 <br> (646) 442-3600 <br> nmar@lsnyc.org <br> aleipziger@lsnyc.org | _____/s/_____ <br><br> Danielle F. Tarantolo <br> Elizabeth Curran <br> Sandra Robinson <br> Laura Davis <br> NEW YORK LEGAL ASSISTANCE GROUP <br> 7 Hanover Square <br> New York, NY 10004 <br> (212) 613-6551 <br> dtarantolo@nylag.org <br> ecurran@nylag.org |
| _____/s/_____ <br><br> Susan J. Horwitz <br> Education Law Project <br> THE LEGAL AID SOCIETY <br> Harlem Community Law Office <br> 2090 Adam Clayton Powell Blvd, 3rd Floor <br> New York, NY 10027 <br> (212) 426-3061 <br> shorwitz@legal-aid.org | _____/s/_____ <br><br> Cara Chambers <br> Education Advocacy Project <br> THE LEGAL AID SOCIETY <br> 199 Water Street, 3rd Floor <br> New York, NY 10038 <br> (212) 577-3342 <br> cachambers@legal-aid.org |
| _____/s/_____ <br><br> Rebecca Shore <br> ADVOCATES FOR CHILDREN <br> 151 West 30th Street, 5th Floor <br> New York, NY 10001 <br> (212) 822-9574 <br> rshore@advocatesforchildren.org | _____/s/_____ <br><br> Roberta Mueller <br> NEW YORK LAWYERS FOR THE PUBLIC INTEREST <br> 151 West 30th Street, 11th Floor <br> New York, NY 10001-4017 <br> (212) 244-4664 <br> rmueller@nylpi.org |

| _____/s/_____ | _____/s/_____ |
|---|---|
| Todd Silverblatt | Melissa Accomando |
| MOBILIZATION FOR JUSTICE, INC. | Anna Arkin-Gallagher |
| 100 William Street, 6th Floor | BROOKLYN DEFENDER SERVICES |
| New York, NY 10038 | 177 Livingston Street, 7th Floor |
| (212) 417-3833 | Brooklyn, NY 11201 |
| tsilverblatt@mfjlegal.org | (718) 254-0700 |
| | maccomando@bds.org |
| | aarkingallagher@bds.org |

cc: Hon. Andrew M. Cuomo
   (Governor, New York State)

   Hon. Letitia A. James
   (Attorney General, New York State)

   Hon. Thomas P. DiNapoli
   (Comptroller, New York State)

   Alison B. Bianchi
   (Counsel and Deputy Commissioner for Legal Affairs, NYSED)

   Christopher Suriano
   (Assistant Commissioner, Office of Special Education, NYSED)

   Cathryn Tisenchek
   (Supervisor, Due Process Unit, NYSED Office of Special Education)

   Hon. Bill de Blasio
   (Mayor, City of New York)

   Zachary W. Carter.
   (Corporation Counsel, City of New York)

   Howard Friedman
   (General Counsel, NYCDOE)

   Mariam Qureshi
   (Director, Special Education Unit, Office of the General Counsel, NYCDOE)

   Jordan Dressler, Esq.
   (Civil Justice Coordinator, Office of Civil Justice, City of New York)

Hon. Jumaane D. Williams
(Public Advocate, City of New York)

Hon. Scott M. Stringer
(Comptroller, City of New York)

Hon. Corey Johnson
(Speaker, New York City Council)

Hon. Mark Treyger
(Chair, Committee on Education, New York City Council)



November 5, 2021


New York State Education Department
89 Washington Avenue
Albany, New York 12234
**VIA EMAIL: NYCIHOSYSTEM@nysed.gov**

Dear New York State Education Department Staff,

The undersigned legal services organizations, Legal Services NYC and Mobilization for Justice, Inc., represent low-income and marginalized New York City (NYC) residents with special education due process hearings and other education matters.  Our clients include some of the most vulnerable and disadvantaged children with disabilities across the City.  We write to respond to Request for Information (RFI) #21-003, regarding the Office of Special Education: Impartial Hearing Officer (IHO) System in New York City, recently issued by the New York State Education Department (NYSED).

The context and primary motivation for the RFI appears to be the increasingly high number of impartial due process hearings filed in New York City (NYC) in recent years, and the lack of compliance, within that system, with federal and state laws regarding special education and the timelines for processing special education hearings and decisions.  The RFI presupposes that to correct the situation NYSED must create a "new system" for special education due process hearings and any system must require the engagement of full-time IHOs and mandatory minimum caseloads, either through contract with the State or other management entity.  The RFI further suggests that development of such a new system must occur to meet the requirements of the Individuals with Disabilities Education Act (IDEA) and to resolve "NYCDOE's outstanding noncompliance with respect to maintaining a functional special education due process system."[1]

While we appreciate NYSED's interest in improving and facilitating a more successful and functional special education due process system, we believe that development of a completely new system or a dramatic shift of the IHO system at this time would not be beneficial for our clients.  However, we would like to address a few issues that the RFI appears to presuppose must happen.  We would also like to address some policy and practical issues and circumstances that we believe more seriously impact the hearing backlog, special education compliance, and timeline issues, and would have a more immediate impact on resolving the compliance and other legal issues you seek to address.

---

[1] See Request for Information #21-003, Directions at 3.

**Legal Services NYC** | 40 Worth Street, Suite 606, New York, NY 10013
Phone: 646-442-3600 | Fax: 646-442-3601 | www.LegalServicesNYC.org
**Raun J. Rasmussen,** Executive Director | **Susan J. Kohlmann,** Board Chair

Hyman Decl.  Ex. EE- 33

First, we caution that giving IHOs under the existing due process hearing system, or any new or retooled system, a fixed or mandatory number of roughly 300 cases assigned to them in order to deal with case backlogs could have serious adverse implications for parents and their children. Special education cases can be complex and nuanced.  IHOs must take testimony, rule on objections, review records and transcripts, understand and apply the law and write decisions. Cases differ significantly from situation to situation.  Our clients have complex needs and often require language interpretation, translation, and patience.  Mandatory or unduly high caseloads have the potential to compromise the process and outcomes for our clients and the countless unrepresented individuals that rely on the hearing system.  Low-income and marginalized communities need and deserve access to quality as well as timely due process.

Second, we believe that requiring IHOs to work full-time with a fixed pay scale also has great potential for highly adverse impacts.  Based on the documents provided with the RFI, many IHOs make higher salaries with more moderate caseloads than what appears to be on the table for any new system, which locks in modest annual salaries with extremely high mandatory caseloads.  We have concerns that many of the more experienced IHOs would not find it worth their while to continue in their jobs and that NYSED would not be able to certify large numbers of qualified IHOs under such a model.  Furthermore, based on the documentation you have provided with the RFI and our knowledge of the IHO pool, the vast majority of trained and certified IHOs operate in a part-time capacity.  After having just recently expended resources to train some 100 or so new hearing officers,[2] it does not make sense to either terminate these IHOs or force them to work full-time, especially as they begin to come up to speed with the job.

Third, we believe that the rise in the number of cases filed in recent years is directly related to NYCDOE's improper practice of failing to comply with students' pendency rights, failing to consolidate cases, failing to engage in good faith negotiations to settle cases, and failing to increase the rates for Special Education Teacher Support Services (SETSS), Special Education Itinerant Teachers (SEITs), Independent Education Evaluations (IEEs) and other outside services providers.  The various not-for-profit organizations making up our Education Law Task Force (ELTF) and private attorneys have raised these and other issues with NYCDOE and NYSED several times, and we maintain that addressing them would reduce the number of case filings and improve the movement of case dockets.  Therefore, instead of expending scarce resources to create a new system, it would be better to focus on fixing and improving upon the current system.

The following reforms would save the NYCDOE and NYSED money and time, while addressing many of the issues in the hearing system:

1) Require all Administrators of Special Education (ASEs) and Committees on Special Education (CSE) to permit payment to providers via "pay memos."  Due to severe delays in payment, numerous agencies refuse to work with any NYCDOE students unless a pay memo is issued.  As a result, parents must file impartial hearings to secure providers and get relief.

---

[2] RFI at 5.

Hyman Decl.  Ex. EE- 34

2) Return to the NYCDOE's previous practice of issuing pendency automatically on the day a due process complaint is submitted.  The IDEA requires pendency to issue automatically, and the NYCDOE has not complied with the law or its own prior internal policy.  As a result, parents must routinely request pendency hearings to secure pendency orders, which increases the case backlog at the hearing office.

3) Raise the rate for monolingual occupational therapy, physical therapy, and speech therapy related service authorizations (RSAs) from $45/hour[3] to $200/hour.  The $45/hour rate has not been updated for many years, while the $200/hour rate is at or below the standard market rate routinely awarded at impartial hearings.

4) Raise the rate for neuropsychological evaluations, from $1,000[4] to $5,000; for occupational therapy, speech-language therapy, and physical therapy evaluations, from $200[5] to $1,500.  Similar to the RSA rates, the $1,000 and $200 rates have not been updated for many years, while the $5,000 and $1,500 rates are at or below the standard market rate routinely awarded at impartial hearings.

5) Raise the rate for SETSS tutoring to $150/hour.  Similar to the RSA and evaluation rates, the SETSS rate has not been updated for many years, while the $150/hour rate is at or below the standard market rate routinely awarded at impartial hearings.

6) Facilitate a less cumbersome and time-consuming settlement process.  This would drastically reduce the number of cases filed and litigated.

We hope that you will consider fixing the system currently in place and the issues that contribute to its malfunctions rather than prematurely contemplating a move to the New York City Office of Administrative Trials and Hearings (OATH) or creating a new system.  To the extent that the State contemplates moving Impartial Hearing Officers under the control of the City or the State, they should reconsider and know that this would likely result in litigation.  IHOs must remain independent to avoid violations of law and even the appearance of impropriety or bias.[6]

NYSED should focus on solutions to address issues in the special education hearing process that contribute to high case filings.  NYSED should also have a more open and transparent dialogue with the not-for-profit and other advocacy organizations that work closely with the City's most vulnerable students.

---

[3] See DOE Office of Related Services, Letter and Memorandum, "School-Age Related Services Scheduling" (July 19, 2013) at 4 (attached as Exhibit A).
[4] See DOE Assessment Rate Chart (attached as Exhibit B).
[5] Id.
[6] Any discussion of an RFP is also premature since one cannot begin to discuss proposals without specific criterion and the RFI does not adequately articulate same.

Thank you for your consideration.


Sincerely,

*Tara Foster*                               */s/ Todd Silverblatt, /s/ Andrew Gerst*
Tara Foster                                 Todd Silverblatt, Andrew Gerst
Legal Services NYC                          Mobilization for Justice, Inc.
(347) 592-2234                              (212) 417-3833
tfoster@lsnyc.org                           tsilverblatt@mfjlegal.org

4

NYC
Department of
Education
Chancellor Richard A. Carranza

Ketler Louissaint
Superintendent
District 75 Citywide Programs



Dear Parents:

The school which your child attends has advised the Office of Related and Contractual Services (ORCS) that your child is either unserved or underserved for one or more of their related services.

In the enclosed packet you will find:

- Related Service Authorization (RSA-1) Form which identifies service to be provided.
- RSA-2 Form to be completed by you and the independent provider you selected. This form must be returned to my office along with copies of the provider's credentials. All providers working with students have to be pre-approved in PETS (Provider Eligibility Tracking System). If provider is not registered, they must contact DOE Central Office of Related Services and process their pre-approval with Rita Venekas by email at rveneka@schools.nyc.gov, or call (718) 391-8391.
- Related Services Transportation Information – (Form TRV-1):
- Registry of Independent Providers of related service.
- Municipality list of approved DOE related service providers.
- Credentials Required/Rate Schedules.

To access registries and transportation information online, please visit the DOE website at http://schools.nyc.gov/Academics/SpecialEducation/programs/relatedServices/RSinformation.htm.

For general information about District 75 Citywide Programs, please visit the DOE website at http://schools.nyc.gov/Offices/District75/default.htm.

If you have any further questions or require assistance in this matter, please contact the District 75 ORCS office at (917) 256-4249.

Thank you,

Angela Torres
District 75/ORCS/Director

DISTRICT 75 * ANGELA TORRES * DIRECTOR OF THE OFFICE OF RELATED & CONTRACTUAL SERVICES
400 FIRST AVENUE, NEW YORK, NY 10010
PHONE: (212) 802-1535 * FAX: (917) 256-4216 * ATORRES21@SCHOOLS.NYC.GOV



**Department of
Education**
Dennis M. Walcott, Chancellor

NEW YORK CITY DEPARTMENT OF EDUCATION
OFFICE OF THE CHANCELLOR
52 Chambers Street, Room 320
New York, NY 10007

MEMORANDUM

July 19, 2013

**From:** Office of Related Services

**Subject:** School-Aged Related Services Scheduling

Set forth below is the policy of the New York City Department of Education ("DOE") regarding the scheduling of related services and paraprofessional services for school-aged students, effective August 19, 2013. The policy applies to services provided by the DOE directly, through a contracted agency, or through a Related Service Authorization.

1. Related services, including but not limited to: counseling; occupational, physical and speech therapy; hearing and vision education services. (This section applies to IEP/IESP–mandated services only; in the event the DOE authorizes make-up/compensatory services, applicable provisions will be specified and may vary.)

    a. Related services may be provided only on days on which the student's school is in session for students (each, an "Instructional Day").

        i. For students attending a DOE high school, Regents testing days shall not be considered Instructional Days.

        ii. For students attending non-DOE schools, Instructional Days may include legal or other holidays.

    b. Except for students attending a New York State–approved Extended School Year program, summer services may be provided only on DOE Instructional Days, in accordance with the District 75 Extended School Year Calendar.

    c. The number of sessions provided in a week may not exceed the number mandated by the student's IEP/IESP. A "week" is defined for this purpose as beginning on Monday and ending on Sunday.

    d. Unless mandated by the student's IEP/IESP, multiple sessions of the same related service may not be provided on the same day.

    e. For students with IESPs: services for the 10-month school-year may not begin before September 1 and may not continue after June 30; and the total number of sessions provided during the 10-month school year may not exceed the total number of sessions that would be provided to a student with the same mandate attending a DOE school, based on a 180-day school year. For example, if a student's mandate is once per week (i.e., 1 session per 5 school days), total sessions may not exceed 36; if a student's mandate is 2 times per week, total sessions may not exceed 72, etc.

2. Paraprofessional services

    a. Paraprofessional services may be provided on any Instructional Day.

    b. Unless the student's IEP/IESP specifies a number of hours of service per day in excess of seven, service in excess of seven hours per day requires specific authorization from the relevant Committee on Special Education chairperson (or his/her designee), Network administrator of special education, or District 75 administrator. The sole purpose of such an authorization shall be to confirm that the proposed number of hours is consistent with the IEP/IESP mandate and the school's schedule.

RSCAL1002.0

**What credentials are necessary to become an independent provider in various discipline areas?**

**Counseling** Services must be provided by a New York State licensed Psychologist, Clinical Social Worker, or Mental Health Counselor. Bilingual Counseling can only be provided by an individual meeting the aforementioned requirements who also possesses the appropriate bilingual proficiency requirements.

**Occupational Therapy** must be provided by a New York State licensed Occupational Therapist.

**Physical Therapy** must be provided by a New York State licensed Physical Therapist.

**Speech Therapy** Services must be provided by a New York State licensed Speech/Language Pathologist, who is also a Certified Teacher of Speech and Language Disabilities or Teacher of the Speech and Hearing Handicapped. Bilingual Speech Therapy can only be provided by an individual meeting the aforementioned requirements who also possesses the appropriate bilingual proficiency requirements.

**Vision Education Services** must only be provided by a New York State certified Teacher of the Blind and Partially Sighted or Teacher of the Blind and Visually Impaired or Orientation/Mobility Specialist. Bilingual Vision Education Services can only be provided by an individual meeting the aforementioned requirements who also possesses the appropriate bilingual proficiency requirements.

**Hearing Education Services** must only be provided by a New York State certified Teacher of the Deaf and Hearing Impaired, a Teacher of the Deaf and Hard of Hearing, or an appropriately trained, licensed or certified Sign Language Interpreter. Bilingual Hearing Education Services can only be provided by an individual meeting the aforementioned requirements who also possesses the appropriate bilingual proficiency requirements.

**Health Services by a Registered Nurse** must only be provided by a New York State licensed or certified Registered Nurse with current certification in Cardio-Pulmonary Resuscitation as well as Automated External Defibrillation (CPR/AED). **Health Services by a Health Aide** must be provided by an appropriately trained, licensed or certified Health Aide.

**Please Note:** Any individual who is a current employee of the Department (unless they have been approved to be placed on the Municipality List of NYCDOE Therapists) or any other city agency may not provide services under this agreement except in rare instances when a waiver has been granted by the New York City Conflicts of Interest Board based on a request from the Department. Agencies may not employ Department employees, including on the Municipality List of NYCDOE Therapists, as a provider. Any individual who leaves the employ of the Department may not provide services under this agreement (either as an individual provider or as an employee/contractor with an agency) for one full year after leaving the Department. If the individual has done "F" status work, the individual is considered to have been an employee of the Department and must wait a full year after completing the "F" status work before providing service under this agreement. These restrictions are contained in Chapter 68 of the New York City Charter. In addition, the provider must not be the evaluator who completed the assessment unless permission has been granted by the Department.

**Related Service Authorization - 4 Form:**
**Rate Schedule for Independent Providers of Related Services**

The rate schedule below represents the maximum allowable rate for Related Services. The rates charged by independent providers must be no higher than the lowest rate normally charged by you. Rates should be pro-rated as necessary. Services provided must comply with the frequency, duration, and language specified by the New York City Department of Education. This rate schedule does not apply to agencies under contract to the DOE providing services as an independent provider.

Speech providers should be aware that group speech therapy is recommended to address the specific IEP needs of students. Group therapy fosters the student's ability to develop the speech and language skills (e.g. pragmatics, expressive language, auditory processing, etc.) that are necessary to access the school curriculum. To meet these needs, every possible effort should be made by the provider to see students in the group sizes recommended on their IEPs. The maximum rates of payment per session will increase depending on the group size. The group size may not exceed the group size specified on each student's IEP.

| Type of Related Service | Language | Group Size | Maximum Rate | Session Length |
|---|---|---|---|---|
| Counseling: Licensed Psychologist | Monolingual/ Bilingual | Individual/ Group | $45 | 30 minutes |
| Counseling: Mental Health Counselor | Monolingual/ Bilingual | Individual/ Group | $45 | 30 minutes |
| Counseling: Licensed Clinical Social Worker | Monolingual/ Bilingual | Individual/ Group | $40 | 30 minutes |
| Health: Registered Nurse | Monolingual | Individual/ Group | $45 | 30 minutes |
| Health: Health Aide | Monolingual | Individual/ Group | $20 | 60 minutes |
| Hearing Education Services | Monolingual/ Bilingual | Individual/ Group | $45 | 30 minutes |
| Sign Language Interpreter | Monolingual/ Bilingual | Individual/ Group | $30. | 30 minutes |
| Occupational Therapy | Monolingual | Individual/ Group | $45 | 30 minutes |

| Physical Therapy | Monolingual | Individual/ Group | $45 | 30 minutes |
|---|---|---|---|---|
| Speech Therapy | Monolingual | Individual | $45 | 30 minutes |
| Speech Therapy | Monolingual | Group of 2 | $56.25 | 30 minutes |
| Speech Therapy | Monolingual | Group of 3 | $67.50 | 30 minutes |
| Speech Therapy | Monolingual | Group of 4 | $78.75 | 30 minutes |
| Speech Therapy | Monolingual | Group of 5 or more | $90 | 30 minutes |
| Speech Therapy | Bilingual | Individual | $54 | 30 minutes |
| Speech Therapy | Bilingual | Group of 2 | $67.50 | 30 minutes |
| Speech Therapy | Bilingual | Group of 3 | $81 | 30 minutes |
| Speech Therapy | Bilingual | Group of 4 | $94.50 | 30 minutes |
| Speech Therapy | Bilingual | Group of 5 or more | $108 | 30 minutes |
| Vision Education Services | Monolingual/ Bilingual | Individual/ Group | $45 | 30 minutes |
| Orientation/Mobility Specialist | Monolingual/ Bilingual | Individual/ Group | $45 | 30 minutes |

A-5

Hyman Decl.  Ex. EE- 41

| TYPE OF ASSESSMENT | MAXIMUM RATE PER ASSESSMENT |
|---|---|
| Assistive Technology Evaluations | $350 |
| Audiological Evaluations | $200 |
| Medical Evaluations | $250 |
| Neurological Evaluations | $650 |
| Neuropsychological Evaluations | $1,000 |
| Occupational Therapy Evaluations | $200 |
| Optometric Evaluations | $150 |
| Orientation and Mobility Evaluations | $490 |
| Physical Therapy Evaluations | $200 |
| Psychiatric Evaluations (monolingual) | $650 |
| Psychiatric Evaluations (bilingual) | $750 |
| Psychoeducational Evaluations (monolingual) | $550 |
| Psychoeducational Evaluations (bilingual) | $650 |
| Social History Evaluations (monolingual) | $250 |

| | |
|---|---:|
| Social History Evaluations (bilingual) | $350 |
| Speech Evaluations (monolingual) | $400 |
| Speech Evaluations (bilingual) | $550 |

B-2