

**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

OFFICE OF SPECIAL EDUCATION
ASSISTANT COMMISSIONER
89 Washington Avenue, Room 301M EB  •  Albany, NY  12234
www.p12.nysed.gov/specialed/

Telephone: (518) 402-3353
Fax: (518) 402-3534

March 3, 2020

Ms. Karin Goldmark
Deputy Chancellor
New York City Department of Education
52 Chambers Street
Room 320
New York, NY  10007

Dear Karin:

Thank you for arranging the meeting with several Impartial Hearing Officers (IHOs) on Thursday, February 13, 2020 (the meeting). The meeting provided important insight from those IHOs, not only on the compensation policy, but also pertaining to the special education due process system in New York City. While the compensation policy is being held in abeyance until April 1, 2020, it is the New York State Education Department's (NYSED's) expectation that  the New York City Department of Education (NYCDOE) engage with the IHOs over the next several weeks to address their concerns regarding the compensation policy and complete any needed revisions to the policy so that a final revised policy can be issued on April 1, 2020. Further, it is expected that NYCDOE will complete training on the new policy before implementation.

Additionally, NYCDOE must address several other issues discussed during the meeting, including issues observed by our monitor after spending a substantial amount of time in the New York City Impartial Hearing Office (NYC IHO) and several outstanding issues identified in the  Compliance Assurance Plan (CAP).  Specifically, NYSED requires that NYCDOE address the following:

<u>New Forms:</u>

During the meeting, several IHOs complained about the new forms required by the NYC IHO.  They indicated that they were not able to access them on their computers. NYSED's Office of Special Education staff confirmed that they, too, were unable to open the forms and utilize them, until they converted the forms to a different format.  While NYSED agrees that the use of electronic forms could ultimately save time and resources, IHOs must be provided with the new forms in the necessary format and be provided assistance to navigate this change in procedure. Please also provide information on the availability of the computers in each of the hearing rooms, which may be of assistance to the IHOs in

State Def. 5034

Hyman Decl. Ex. NN - 1

connection with submitting these forms.  It has been reported to NYSED, and confirmed by our monitor, that these computers are not able to be used.

Resolution Meetings:

As you know, resolution meetings are required by 34 CFR §300.510 and 8 NYCRR §200.5 (j)(2).  NYSED's 2018-19 data indicates that NYCDOE reported 7,505 due process cases in which the resolution meeting had not been waived. NYSED has also noted that often attorneys file due process complaints seeking a resolution meeting *only if* NYCDOE sends an individual with settlement authority.  Both federal and State regulations require an individual "who has decision-making authority on behalf of the school district" to attend a resolution meeting. Resolution meetings, when staffed with individuals with decision-making authority, are an invaluable opportunity for NYCDOE to eliminate some of the numerous outstanding due process complaints, especially those where NYCDOE does not plan on disputing a failure to provide a Free Appropriate Public Education ("FAPE"). NYSED is concerned that NYCDOE is not utilizing the resolution meeting process to its fullest potential. Therefore, NYSED requires a plan from NYCDOE as to how it will increase the use of resolution meetings, which must also include an explanation on who conducts the resolution meeting on behalf of the NYCDOE and the extent and details of their authority to settle matters, both monetary and non-monetary.

Mediation:

NYCDOE's February 2020 CAP submission for Section III states that it is conducting focus groups with the eventual goal of promoting the use of mediation by NYCDOE staff. As stated in the CAP, NYCDOE must commit to using mediation as a tool to help reduce the number of its due process cases. If parents choose this alternative dispute method, when settlement is reached, as required under 34 CFR § 300.506, a legally binding agreement must be executed. Despite the volume of due process cases, 2018-19 NYCDOE data indicates only 130 mediations were held. However, NYCDOE's own data indicates mediation is an effective tool with 89 percent of those cases resulting in agreement between the parties. Therefore, it is NYSED's expectation that the individuals conducting mediations have the authority to enter into legally binding agreements for both non-monetary and monetary relief.

Settlement:

NYCDOE's December 31, 2019 CAP submission for Section III, which also included a description of the settlement process, stated that there are approximately 3,000 open due process complaints that are in the settlement process. However, during the meeting, several IHOs mentioned that delays in settling cases significantly contribute to the number of open cases in the due process system and that they believe there are approximately 6,000 cases pending settlement, therefore doubling the amount suggested by NYCDOE.

It is NYSED's position that NYCDOE's settlement process is too protracted, takes too long and is one of the major causes for the excessive amount of open due process cases.

State Def. 5035

Hyman Decl. Ex. NN - 2

The submission explains multiple steps wherein a case is reviewed broadly, then again in more detail upon receipt of information from a parent, and if an agreement is negotiated in principal, must be forwarded to the New York City Comptroller's office for approval before final execution. Despite your efforts to prospectively identify cases that are appropriate for settlements, it must be pointed out that NYSED's review of IHO decisions of NYCDOE cases indicates, alarmingly, that NYCDOE rarely defends itself in these matters.

NYCDOE must provide information as to how long the settlement process takes on average. Additionally, data must be provided on where the currently pending settlement cases stand in the settlement process, how long the current outstanding cases have been waiting for settlement, and how soon they are expected to settle. It is evident that stricter timelines must be implemented to make this process more responsive to the educational needs of students. Therefore, you must submit a plan to revise this settlement process.

Further, in that same CAP response, NYCDOE stated that it hired an additional 52 legal staff members for the Special Education Unit of NYCDOE Legal ("SEU"), but that the unit is still short 16 positions, due to attrition. Please explain how many attorneys and non-attorneys constitute a full staff in the SEU, and, more relevant, how many staff members are actually needed to process the approximate 8,000 to 10,000 settlements NYCDOE enters into between its Ten-Day Notice program and the due process complaint system.

Special Education Teacher Support Services (SETSS):

Again, in light of feedback received from IHOs at the meeting which supports the findings of NYSED's ongoing review of IHO decisions, many cases proceeding to due process involve inadequate funding of SETSS. These cases are usually resolved in the parent's favor since the NYCDOE was unable to provide the service. At least one IHO stated that these cases, in the past, had been settled, but that now a large amount of them proceed through the due process complaint docket. NYCDOE must provide data on how many cases proceeding to hearing involve SETSS reimbursement or provision of the service, if NYCDOE instituted a change in practice regarding settling these cases, and if so, why, and how NYCDOE plans to specifically address this type of case, including an analysis of whether increased reimbursement rates are needed to pay the actual rates charged by area providers.

Payment to IHOs upon Case Closure:

At the meeting NYSED was informed that IHOs are not compensated for working on a case until it is fully closed. This is problematic for several reasons. This payment policy does not incentivize IHOs to take cases at a time when there is an urgent need for IHOs to take more cases. Second, the long delay for cases to reach their conclusion further disincentivizes an IHO to accept a case, knowing they will not get paid for an indefinite amount of time. Third, this payment policy will also disincentivize the new class of IHOs who are expected to begin taking cases this spring, once they have completed their training and been certified by NYSED. In light of this problem, NYSED requires NYCDOE to revise its payment policy so that an IHO's work is compensated on a more reasonable time basis as

State Def. 5036

Hyman Decl. Ex. NN - 3

quickly as possible, so that IHOs are willing to get back on, and stay on, rotation and so that new IHOs are provided an incentive to work as an IHO in New York City.

Conditions at the New York City Impartial Hearing Office:

Although NYSED acknowledges that some changes have been made to the hearing rooms and office space at 131 Livingston Street in Brooklyn, NYSED heard additional concerns at the meeting regarding the lack of hearing space. Additionally, NYSED's on-site monitor confirms that there are still not enough hearing rooms, that the doors to the rooms are often kept open, sometimes because of poor ventilation, which leads to violations of the Family Educational Rights and Privacy Act confidentiality requirements, and that there appears to be no system for scheduling hearings consistent with hearing room availability. This was also confirmed by our observation that the IHOs we met with on February 13 were anxious to return to Brooklyn, so as to be able to secure a hearing room for their scheduled hearings that day. Of further concern, a new cohort of IHOs will be taking cases in the NYC IHO beginning this spring, with another cohort planned for the coming fall/winter. In anticipation of these additional IHOs, there must be sufficient hearing room availability. A hearing, once scheduled, should proceed at, or close to, the time scheduled. Finally, I note that the lack of NYCDOE representation at hearings is a recurring theme in NYSED's monitoring. Not only do cases typically proceed for only a portion of the day because of the limited hours NYCDOE representatives attend hearings, NYCDOE representatives are often called to attend or testify in several hearings a day, often with little, if any, forewarning as to which cases are proceeding. IHOs have often cited circumstances in which they are unsure whether they should default or adjourn a matter because there was no NYCDOE representation. NYCDOE must submit a plan for additional hearing space and a scheduling system, as well, it must address the issue of a lack of representation at hearings.

Documentation:

In light of the above, NYSED requires the following submissions from NYCDOE:

BY March 13, 2020:  A plan for ensuring that a revised compensation policy is developed after appropriate engagement with IHOs, and how input received from the IHOs was incorporated into the revisions. A timeline for training IHOs on the compensation policy. A timeline and method for training IHOs on the new forms that NYCDOE is requiring. A plan to ensure that IHOs may submit invoices and be paid on a case before it is fully closed.

BY March 20, 2020:  The types of cases that proceed to due process (i.e. what percentage are unilateral placement; what percentage are independent educational evaluations, what percentage are SETSS and/or other services).

BY March 20, 2020: A plan to add additional hearing rooms in the NYC IHO no later than September 2020.  Information regarding the use of computers in the hearing rooms at NYC IHO.

State Def. 5037

Hyman Decl. Ex. NN - 4

BY March 20, 2020: Data on how many cases proceeding to hearing involve SETSS reimbursement or provision of the service, if NYCDOE instituted a change in practice regarding settling these cases, and if so, why, and how NYCDOE plans to specifically address this type of case, such as increasing reimbursement rates.

BY April 3, 2020: A plan from NYCDOE as to how it will increase the use of resolution meetings and an explanation of who on behalf of the NYCDOE conducts the resolution meeting and what authority they have to settle matters, both monetary and non-monetary.

BY April 3, 2020: Written confirmation that individuals conducting mediations have the authority to enter into legally binding agreements for both non-monetary and monetary relief. Data on the number of mediations conducted during the 2018-19 school year and a plan to increase that amount by 20 percent for the 2020-21 school year.

BY April 10, 2020:
- A plan to implement a scheduling system for the NYC IHO by September 18, 2020 that is linked to specific hearing room availability
- A plan to address the issue of the lack of NYCDOE representation at hearings which will be implemented by the beginning of the 2020-20201 school year

BY April 10, 2020: Accurate data on settlements:
- The number of cases that are pending settlement approval (total number and breakout information for Ten-Day Notice versus due process system cases)
- How long the current outstanding cases have been waiting for settlement
- In accordance with our February 27, 2020 conference call with Senators Liu, Felder, Jackson and Mayer, among others, NYCDOE's plan as to how it will resolve all outstanding settlement cases through the 2018-19 school year by September 2020
- Plan for ensuring that settlement cases initiated in the 2019-2020 school year and each school year thereafter are handled in a timely manner
- Also, in accordance with the February 27, 2020 call, all documentation provided to the Senators must be submitted to my office

BY April 10, 2020: Data on SEU:

- The number of attorneys and non-attorneys that constitute a full staff in the SEU
- The number of staff members that are actually needed to process the approximate 8,000 to 10,000 settlements NYCDOE enters into between its Ten-Day Notice program and the due process complaint system
- The number of settlements SEU processed during the 2016-17, 2017-18 and the 2018-19 school years
- The number of staff members during each of those school years
- The rate of attrition at SEU

BY April 10, 2020: A plan to revise NYCDOE's settlement process so that it is faster, more efficient and captures matters NYCDOE does not intend to defend at hearing.

State Def. 5038

Hyman Decl. Ex. NN - 5

I thank you for your continued time and attention to this matter and appreciate the hard work in response to this crisis. However, with more than 1,900 parents and students awaiting assignment of an IHO, we must put forth all efforts toward eliminating unnecessary matters, such as those pending settlement, from the overwhelmed due process complaint system, getting current IHOs back in rotation, and enticing new IHOs to work in New York City - necessary steps towards the ultimate goal of building a functioning system for all of New York City's parents of students with disabilities who file due process complaints.

Sincerely,

Christopher Suriano

c:   Shannon Tahoe
     Joanne LaCrosse
     Louise DeCandia
     Judy Swierczewski
     Robyn Ryan
     Mary Wall
     Carrie Bateman
     Gabrielle Fraenkel
     Roberto Perez
     Cheryl Williams

6

State Def. 5039

Hyman Decl. Ex. NN - 6

_____



**NEW YORK CITY DEPARTMENT OF EDUCATION**
**SCHOOL PLANNING AND DEVELOPMENT**
**52 Chambers Street, Room 320**
**New York, NY 10007**

March 13, 2020

Christopher Suriano
Office of Special Education
Assistant Commissioner
89 Washington Avenue
Rom 301 MEB
Albany, NY 12234

Dear Assistant Commissioner Suriano:

This letter is in response to your March 3, 2020 letter.  In that letter, you asked that the New York City Department of Education provide:

1.      A plan for ensuring that a revised compensation policy is developed after appropriate engagement with IHOs, and how input received from the IHOs was incorporated into the revisions;
2.      A timeline for training IHOs on the compensation policy;
3.      A timeline and method for training IHOs on the new forms that NYCDOE is requiring; and
4.      A plan to ensure that IHOs may submit invoices and be paid on a case before it is fully closed.

This letter serves as our response to that inquiry.

**1.      A plan for ensuring that a revised compensation policy is developed after appropriate engagement with IHOs, and how input received from the IHOs was incorporated into the revisions; and**

**2.      A timeline for training IHOs on the compensation policy.**

The Impartial Hearing Office continues to collaborate with hearing officers to develop a revised Compensation Policy.  While developing the February 2020 Compensation Policy, the Impartial Hearing Office engaged with hearing officers over several months to solicit feedback through informational interviews.  Additionally, the Impartial Hearing Office convened a focus group on October 11, 2019 to gather additional feedback.  On November 22, 2019, a survey of Hearing Officers regarding compensation was conducted.  The February 2020 Compensation Policy

incorporated this feedback, making major changes to compensate hearing officers for interim decisions, extension orders, administrative fee, record review, remand review, and complex cases.

Under the direction of NYSED, the Impartial Hearing Office issued the Compensation Policy on February 7, 2020 with an effective date of February 10, 2020 with the goal of providing hearing officers with an immediate increase in compensation.  After issuing the February 2020 Compensation Policy, the Impartial Hearing Office received mixed feedback from hearing officers.  Thus, a second survey was sent to hearing officers on February 10, 2020 and a joint meeting with hearing officers, NYCDOE, and NYSED was held on February 13, 2020.  The joint meeting provided a forum to gain additional insight from hearing officers.  Subsequently, a third survey was issued to the hearing officers to determine whether the Compensation Policy should be suspended.  In light of the hearing officers' additional feedback and survey results, NYCDOE and NYSED jointly agreed to suspend the February 2020 Compensation Policy on February 18, 2020.

Due to the evolving situation around the novel coronavirus (COVID-19) in New York City, the New York City Department of Education has issued guidance that professional development that cannot be offered via a web-based opportunity should be cancelled or rescheduled for a later date. Due to the importance of this training, we are working to transition it to a web-based opportunity.  The New York City Department of Education Impartial Hearing Office will propose to hearing officers the following three (3) dates for new training and feedback sessions regarding the Compensation Policy and New Forms:

•       Session #1: April 27, 2020 [time to be determined]
•       Session #2: April 28, 2020 [time to be determined]
•       Session #3: May 6, 2020 [time to be determined]

In addition to scheduling these sessions, our office has asked that hearing officers provide any questions or feedback regarding the Compensation Policy that they would like to be addressed at the training/feedback sessions, via email to ihocompquest@schools.nyc.gov.  Impartial Hearing Office staff is monitoring this email address and compiling the feedback received.

**3.       A timeline and method for training IHOs on the new forms that NYCDOE is requiring**. Since implementing new forms and electronic submission on February 10, 2020, the Impartial Hearing Office has provided technical assistance to hearing officers to transition to electronic forms.  Our office is available to answer any questions that hearing officers may have regarding submitting invoices, completing new forms for extensions, and scheduling hearings.  On March 2, 2020, the Impartial Hearing Office also notified all hearing officers via email that they have the option of emailing Impartial Hearing Office Staff --Akil Joseph and Sharon Ainspan--with their questions about the office forms.  In addition, the Office offered in-person technical

assistance between the hours of 10:00 am – 12:00 pm, and by appointment, on the following dates – Tuesday, March 3, 2020 through Friday, March 13, 2020.  Staff will continue to provide assistance to hearing officers who request help on a case-by-case basis after these dates. These forms will also be discussed at the three previously mentioned training dates.

**4.      A plan to ensure that IHOs may submit invoices and be paid on a case before it is fully closed.**

With regard to invoice payments for hearing officers while the case is still open, the Impartial Hearing Office is researching an option in which hearing officers can be paid for cases that remain open across a fiscal year.  For example, if a case is filed in fiscal year 2019 (FY '19) and hearing activity continues into fiscal year 2020 (FY '20), then the hearing officer may submit an invoice for the work that has been completed in FY '19, after the close of FY'19, even if the case remains open in FY'20.

We believe that the above answers your inquiry.  The New York City Department of Education continues be a collaborative partner with you in this process. If you have any questions, please feel free to follow up.

Best,

*Cheryl N. Williams*

Cheryl N. Williams, Esq.
Senior Executive Director
Impartial Hearing Office

On behalf of
Karin Goldmark
Deputy Chancellor

Shannon Tahoe
Joanne LaCrosse
Louise DeCandia
Judy Swierczewski
Roby Ryan
Mary Wall
Carrie Bateman
Gabrielle Fraenkel
Roberto Perez



**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

OFFICE OF SPECIAL EDUCATION
CHIEF OF SPECIAL EDUCATION SERVICES
Room 309 EB, 89 Washington Avenue  •  Albany, NY  12234
www.p12.nysed.gov/specialed/

Telephone (518) 473-0170
Fax: (518) 473-5387

April 7, 2020

Cheryl Williams
Chief Administrator
Impartial Hearing Office
New York City Department of Education
131 Livingston Street, Room 201
Brooklyn, NY 11201

Dear Cheryl:

Assistant Commissioner Christopher Suriano requested that I respond to your letter dated March 13, 2020 and update the New York City Department of Education (NYCDOE) on the status of Section III of the Compliance Assurance Plan (CAP).  As you know, the New York State Education Department (NYSED) has imposed additional requirements, documented in correspondence between NYSED and NYCDOE, to assist in resolution of Section III of the CAP.  As we are all aware, these are extremely unprecedented and challenging times, especially since New York City is currently the center of the pandemic.  Our concern for our NYCDOE colleagues and the students and families of New York City is truly sincere.  However, we are also aware that eventually school will resume as usual and we must be prepared to address the needs of the students of the City of New York and finally resolve the outstanding noncompliance outlined in a CAP that has been in place for nearly a year.  Therefore, please take note of the following revised deadlines and requirements:

**<u>Hearing Officers and New York City Impartial Hearing Office</u>:**

**Impartial Hearing Officer Compensation Policy**:

As a point of clarification, I would be remiss if I did not mention that NYSED did not direct NYCDOE to implement the last proposed Impartial Hearing Officer (IHO) compensation policy on February 7, 2020 with an effective date February 10, 2020 as your March 13, 2020 letter indicates.   Be that as it may, the new training/feedback sessions you have proposed for the IHOs of April 27, 28, 2020 and May 6, 2020 are acceptable contingent upon an implementation date for the IHO Compensation Policy of Monday, June 1, 2020. Additionally, it is expected that these trainings continue to be done remotely if it is not viable to do them in person because of health and safety reasons. No further extensions will be granted.  At this point NYSED has trained 42 potential new IHOs and is currently working to certify them.  These IHOs are being certified to work in NYC and agreed to become IHOs

with the understanding that a new compensation policy was being implemented.  To date, no new compensation policy is in place.  In order to ensure NYCDOE meets the June 1, 2020 deadline, you must outline the changes being considered in light of the numerous comments received from IHOs to date. The revised compensation plan must be submitted to my office by April 17, 2020.  Any additional changes that need to be made after the IHO training/feedback sessions must be submitted to my office by May 15, 2020.

**Impartial Hearing Officer Invoicing**:

Your March 13, 2020 letter did not address NYSED's concern regarding the timing of payments to IHOs. During the February 13, 2020 meeting with IHOs, several IHOs stated that they are not paid until a case is closed.  In other words, if a case lasts eight months (whether or not in the same fiscal year), IHOs are not paid for eight months.  If this is true, this policy needs to change immediately.  Lags in payment will make it more difficult to retain new IHOs.  Attached to this letter as Attachment A is a summary of information regarding the 2014 and 2018 IHO trainings documenting the retention rate of IHOs post certification. Once NYSED certifies the newest cohort of IHO's it is incumbent upon the NYCDOE to retain them by treating them professionally and with respect.  To that end, IHOs must be paid an appropriate salary on time and without excessive delays.  Although the CAP was issued in May 2019 and included directives about IHO payment, IHOs are still not paid an appropriate salary, on time and without excessive delays. Thus, by April 17, 2020, NYCDOE must address how it will pay IHOs throughout a due process case and not just upon case closure.

**Additional Hearing Rooms:**

The March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark required that a plan to add additional hearings rooms to the New York City Impartial Hearing Office (NYC IHOffice) be submitted by March 20, 2020.  To date, NYSED has not received information responsive to this directive.  Therefore, this plan should be submitted immediately, but no later than April 17, 2020. The plan must also address the poor ventilation in the hearing rooms leading to confidentiality concerns because of open doors.

**Implementing a New Rotation System:**

Submission of a response to NYSED's Fall 2019 comments on the screen shots must be submitted by April 8, 2020.

**Scheduling:**

In accordance with the March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark the scheduling plan that was required to be submitted by April 10, 2020 must now be submitted no later than April 24, 2020.

2

**Data Entry:**

NYSED fully understands the impracticality and complexities of having all staff work from home temporarily during the pandemic and, indeed, NYSED itself is working tirelessly and relentlessly to meet its deadlines and requirements regardless of where staff are physically located.  This is a reminder that data entry must be kept up to date and the 2019 decisions must be redacted and submitted by July 1, 2020.

**Analysis of Cases:**

The March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark required that NYCDOE analyze the types of cases that proceed to due process (i.e. what percentage are unilateral placement; what percentage are independent educational evaluations, what percentage are SETSS and/or other services). It is imperative that the NYCDOE have access to this information as it works to reduce the volume of due process cases filed annually.   To date, NYSED has not received information responsive to this directive.  Therefore, a plan on how NYCDOE will analyze the types of cases that proceed to due process, so it can address the underlying noncompliance identified in sections I and II of the CAP regarding access to a free and appropriate public education must be submitted immediately but no later than April 17, 2020.

**Alternate Dispute Resolution:**

**IEP Facilitation:**

NYCDOE's IEP Facilitation document submitted on January 31, 2020 is not acceptable.  It must be revised using the correct link to current information which can be found at http://www.p12.nysed.gov/specialed/dueprocess/iep-facilitation/IEPFacilitation.html. This document must be resubmitted by April 24, 2020.

**Mediation:**

NYCDOE must update the information it submitted on January 31, 2020 which stated that NYCDOE is in the process of completing focus groups through February. Additionally, the March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark required NYCDOE to submit data on the number of mediations conducted in 2019-2020 and its plan to increase that amount by 20%.  At a minimum, the plan must include an explanation of what authority the individuals conducting mediations have to enter into binding agreements.  To date, NYSED has not received information responsive to this directive.

It is NYSED's understanding that new staff are being hired in the NYC IHOffice to work on mediation issues.  Please provide a description of their duties and how they will

3

increase the number of mediations in New York City.  The mediation information described above must be submitted by April 24, 2020.

**Resolution Meetings:**

The March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark required NYCDOE to submit a plan to increase the use of resolution meetings be submitted by April 3, 2020.  To date, NYSED has not received information from NYCDOE responsive to this directive.  This information must now be submitted no later than April 24, 2020.


**Settlement:**

**SETSS Cases:**

The March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark required that NYCDOE submit data on how many cases proceeding to hearing involve SETSS reimbursement or the provision of the service to NYSED and address implications of NYCDOE implementing a change in practice regarding the settlement of these cases. To date, NYSED has not received information from NYCDOE responsive to this directive.   This information must be submitted to my office by May 8, 2020.


**DOE Representation at Hearing:**

The March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark also required NYCDOE to submit a plan to address the issue of the lack of NYCDOE representation at hearings with implementation for the 2020-2021 school year.  To date, NYSED has not received information from NYCDOE responsive to this directive.   This must be submitted to my office by May 8, 2020.


**Settlement Data:**

The March 3, 2020 letter from Assistant Commissioner Christopher Suriano to Deputy Chancellor Karin Goldmark also required NYCDOE to submit accurate data on settlements including any information submitted to Senators Liu, Felder, Jackson and Mayer by April 10, 2020.  To date, NYSED has not received information from NYCDOE responsive to this directive.  Therefore, the information required in the March 3, 2020 letter that was due by April 10, 2020 under the heading "Accurate data on settlements" must be submitted to my office by May 8, 2020.

State Def. 5046

Hyman Decl. Ex. NN - 13

**SEU Data:**

The March 3, 2020 letter from Assistant Commissioner Chris Suriano to Deputy Chancellor Karin Goldmark also required NYCDOE to submit further information and data pertaining to the Special Education Unit of NYCDOE Legal.  To date, NYSED has not received information from NYCDOE responsive to this directive.  This information must now be submitted to my office by May 8, 2020.

**Pendency:**

As discussed at our IDEA meeting in January, NYSED would like to have further discussions with NYCDOE to ascertain how a better pendency system can be implemented as soon as possible without the necessity of an IHO order.  By April 24, 2020 please send me a list of available dates and times so that NYSED can schedule meetings devoted to this topic.

**Wait List:**

Attached as Attachment B is a revised system of priorities for the waitlist.  This revision is based on regulatory requirements, data, and input from the field as well as information ascertained when handling state complaints. If you have any questions or concerns regarding the wait list, please let me know.

Thank you for your continued assistance toward compliance. Stay safe and well.

Sincerely,

*Louise DeCandia*

Louise DeCandia

c: Christopher Suriano
  Joanne LaCrosse
  Judy Swierczewski
  Robyn Ryan
  Karin Goldmark
  Carrie Bateman
  Gabriel Fraenkel
  Emily Minarcik
  Roberto Perez

5

State Def. 5048

Hyman Decl. Ex. NN - 15

**Attachment A**

2014 Training:

70 applicants
34 invited to training
30 certified for NYC
12 resigned/revoked
18 still active in NYC

2018 Training:
47 applicants
13 invited to training
7 certified for NYC
3 resigned
4 active, however, 2 have one case each

Attachment B

# Revised Wait List Procedures

  As stated in the November 18, 2019 letter from New York State Education Department (NYSED) Interim Commissioner Shannon Tahoe to Chancellor Richard Carranza, the general rule is that oldest cases will get assigned first. However, in response to concerns with its implementation as well as input from the field, the New York City Impartial Hearing Office (NYCIHO) must implement the following changes to the wait list as it is currently operating. As an initial matter, the waitlist needs to be prioritized as follows:

  **Expedited cases** in accordance with 8 NYCRR §201.11, these cases must be the first priority. Therefore, expedited cases will not be added to the wait list, but, rather immediately assigned to the first available Impartial Hearing Officer (IHO). By way of context, during the 2018-2019 school year there were eight (8) expedited hearings in New York City Department of Education (NYCDOE).

  **Remanded cases** are the second priority. Again, by way of context, during the 2018-2019 school year there were 13 remanded cases in NYCDOE.  These cases will not be added to the waitlist, but rather, immediately assigned, following appointment of any outstanding expedited cases, as per the direction of the State Review Officer

  **Potential consolidation cases** in accordance with 8 NYCRR §200.5 (j)(3)(ii)(a)(2), should be assigned to the same IHO, without placing the second case (to be consolidated) on the waitlist.

  **Refiled cases** A large category of cases represent a complaint involving the same parties and student that has been refiled in a new school year.  In response to complaints and input from the field, NYSED directs that these cases be placed on the wait list according to the date of the most recent due process complaint. Contrary to past implementation/practice, 8 NYCRR §200.5 (j)(3)(ii)(a)(1) necessitating that the same IHO be appointed to a subsequent due process complaint involving the same parties and student does not strictly apply, at this time, because 1) the New York City Department of Education is not yet operating a rotational selection system and 2)  IHOs remain off rotation and are therefore, unavailable.  By way of context, during the 2018-2019 school year there were 1,166 refiled cases in NYCDOE.

  **Recusals of an IHO from appointment to a complaint** must be processed immediately and the case placed back on the wait list according to the filing date of the due process complaint.  NYSED directs NYCDOE to immediately notify parents and their attorneys or advocates that an IHO has recused from their case.  While initially it appeared that IHOs were taking cases from which they had previously recused, this no longer appears to be the case. Additionally, the recently filed State Complaints document considerable confusion from parents and their representatives indicating they were not made aware that the appointed IHO has recused from their case.

**Contested Pendency Cases** that have a true contested pendency, in other words, NYCDOE is not seeking an IHO order to implement an otherwise agreed-upon pendency, or there is an uncontested pendency, must continue to be brought to NYSED's attention on a case by case basis.  Upon review of the complaint, a determination will be made as to whether the case can immediately be assigned an IHO.

**Assess and Prioritize Cases on Wait List** - Regarding the current wait list, in anticipation that COVID-19 will more than likely cause additional, prolonged delays regarding complaints on the wait list, which was initiated in November 2019, NYSED directs NYCDOE to assign at least two full-time attorneys from the Special Education Unit (SEU) of NYCDOE Legal to review the cases on the wait list and prioritize them on the wait list as follows (note that within these categories cases will be ordered by the date of the due process complaint):

1. Special education students with no special education placement/program or required special education services.   Students who have already been determined to be students with disabilities but, due to the underlying due process complaint, are not receiving any services and are currently not in a special education placement or program.
2. Students who have not had a Committee on Special Education (CSE) meeting in three or more years;
3. Students who have not had a Committee on Special Education (CSE) meeting in one or more years;
4. Students who seek and are requesting a Functional Behavioral Assessment (FBA) and/or Behavioral Intervention Plan (BIP);
5. Students who have sought an Independent Education Evaluations (IEE) and have been waiting for more than 18 months for the IEE;
6. Students seeking continued reimbursement when maintaining their unilateral nonpublic school placement who have continued into aa second school year without a hearing;
7. Students seeking increased fees for services for SETSS or related services

As the cases are reviewed the framework for assessing and prioritizing the cases on the wait list may change depending on the specific nature of the matters pending.  NYSED expects to be updated as to the types of cases that are on the waitlist, especially cases not included in this framework.

_____



**NEW YORK CITY DEPARTMENT OF EDUCATION**
**SCHOOL PLANNING AND DEVELOPMENT**
**52 Chambers Street, Room 320**
**New York, NY 10007**

April 9, 2020

Christopher Suriano
Office of Special Education
Assistant Commissioner
89 Washington Avenue
Room 301 MEB
Albany, NY 12234

Dear Assistant Commissioner Suriano:

This letter is the second letter in response to your March 3, 2020 communication. In that letter, you asked that the New York City Department of Education provide, by March 20, 2020, responses to the following items:

1) "The types of cases that proceed to due process (i.e. what percentage are unilateral placement; what percentage are independent educational evaluations, what percentage are SETSS and/or other services)."

2) "A plan to add additional hearing rooms in the NYC IHO no later than September 2020. Information regarding the use of computer in the hearing rooms at NYC IHO."

3) "Data on how many cases proceeding to hearing involve SETSS reimbursement or provision of the service, if NYCDOE instituted a change in practice regarding settling these cases, and if so, why and how NYCDOE plans to specifically address this type of case, such as increasing reimbursement rates."

We apologize for the delayed response; however, our agency has been immersed in the details of establishing a remote learning model for over 1 million students as a result of the physical closure of schools last month due to the COVID-19 pandemic. In response to your requests, please be advised of the following:

1) "The types of cases that proceed to due process (i.e. what percentage are unilateral placement; what percentage are independent educational evaluations, what percentage are SETSS and/or other services)."

The Impartial Hearing System contains data that we have compiled into an issue list, based on the issues raised in due process complaints as determined from an analysis of the DPC by NYCDOE Impartial Hearing Office staff during intake of a new DPC. We have provided data, for 2018-19 and 2019-20 school years to date, for each of these tracked issues and whether any hearing activity took place for the case in which that issue was raised. Please be advised  that this data does not reflect the total number of unique cases for each school year because a single DPC typically raises multiple issues. Additionally, as these issues are tracked at the onset of an impartial hearing, the quantity differs from the issues reported to NYSED via IHRS, which are derived from impartial hearing officers' decision cover sheets (administrative forms that lists the issues on which decisions are rendered). Lastly, we do not distinguish SETSS from other services, therefore we cannot separately report on the number of DPCs that contain SETSS and can only report services generally. The data is as follows:

| Issues Tracked in IHS | # of Times Issue Raised in DPC in SY 18-19 | # of Times Issue Proceeded to Due Process in 18-19 | # of Times Issue Raised in DPC in SY 19-20 | # of Times Issue Proceeded to Due Process in 19-20 |
|---|---|---|---|---|
| INDEPENDENT EVALUATION (by private provider) | 1246 | 1205 | 1110 | 994 |
| PAYMENT: SERVICES | 7467 | 7176 | 7385 | 6670 |
| PAYMENT: TUITION | 4910 | 4769 | 3831 | 3373 |
| PLACEMENT | 665 | 622 | 602 | 489 |

2) "A plan to add additional hearing rooms in NYC IHO no later than September 2020. Information regarding the use of computers in the hearing rooms at NYC IHO."

Because of the COVID–19 pandemic, since Monday, March 16, 2020, all special education due process hearings in New York City have been conducted remotely (outside of the Impartial Hearing Office) via telephone. The Impartial Hearing Office has received positive feedback concerning the use of telephonic hearings from hearing officers, the parents bar, and NYCDOE representatives. NYCDOE will prepare a proposal to expand the use of telephonic due process hearings after the NYCDOE is able to reopen its buildings. If the Board of Regents approves videoconferencing, this proposal could be expanded to include remote due process hearings via videoconferencing. We believe that the continuation of remote telephonic and/or video hearings would be beneficial to all parties, increase the efficiency of due process and expand NYCDOE's capacity to accommodate additional hearings, without a significant cost to the NYCDOE. With NYSED onboarding 40 new hearing officers in early spring, we anticipate that remote hearings will be a useful tool to ensure that all parents have the opportunity to participate in a timely

State Def. 5053

Hyman Decl. Ex. NN - 20

impartial hearing by allowing for a far greater capacity than could be achieved in any physical location. We look forward to discussing this further with NYSED.

3) "Data on how many cases proceeding to hearing involve SETSS reimbursement or provision of the service, if NYCDOE instituted a change in practice regarding settling these cases, and if so, why, and how NYCDOE plans to specifically address this type of case, such as increasing reimbursement rates."

As articulated above, NYCDOE does not maintain data on this category of cases; rather, SETSS reimbursement or provision would fall under the broader issue of "PAYMENT: SERVICES." Based on data tracking of orders issued involving SETSS reimbursement or provision of SETSS, impartial hearing decisions favorable to parents on the issue of SETSS represent 15.52% of such cases during the 2018-2019 and 2019-2020 school years.

Contrary to impartial hearing officer feedback, there has been no change in practice regarding settlement of these cases, and many are still recommended for settlement. Where such cases proceed to hearing, the cause is generally either delay in the settlement process or a dispute over the requested hourly rate. Rates sought for privately-provided SETSS have increased dramatically in recent years, and when cases for "enhanced rate" SETSS are litigated, NYCDOE frequently argues that such high rates are not justified. In resolution, settlement, and through litigation, NYCDOE frequently reduces the rates sought. NYCDOE has no plan to increase the standard rate for SETSS. However, we are working to document more precisely the rate necessary to secure providers in each area of the City, to facilitate service provision and avoid unnecessary hearings as much as possible.

Sincerely,

_____/s/_____
Cheryl N. Williams, Esq.
Senior Executive Director
On behalf of
Karin Goldmark
Deputy Chancellor

c:      Shannon Tahoe
        Joanne LaCrosse
        Louise DeCandia
        Judy Swierczewski
        Robyn Ryan
        Mary Wall
        Carrie Bateman

Gabrielle Fraenkel
Roberto Perez

State Def. 5055

Hyman Decl. Ex. NN - 22

_____


**Department of
Education**
*Richard Carranza, Chancellor*

**NEW YORK CITY DEPARTMENT OF EDUCATION
SCHOOL PLANNING AND DEVELOPMENT
52 Chambers Street, Room 320
New York, NY 10007**

April 24, 2020

Louise DeCandia
Office of Special Education
Chief of Special Education Services
89 Washington Avenue
Room 309 EB
Albany, NY 12234

Dear Louise:

As discussed last Friday, April 17, 2020, we have drafted several bullet points of how we propose to revise the 2020 IHO compensation policy in light of IHO feedback following the February rollout. We hope that the IHO feedback meetings scheduled for April 28 and May 5 will produce fruitful discussions to help us further revise the compensation policy.

PROPOSED REVISIONS TO FEBRUARY 2020 IHO COMPENSATION POLICY
•       Compensation policy effective date of June 1, 2020
o       Applies to all appointments on/after June 1, 2020
o       Does not apply retroactively
o       Planned feedback meetings with IHOs on April 28 and May 5.
o       Class of 42 IHOs will invoice exclusively under the new policy for all appointments, including appointments prior to June 1, 2020

•       Pendency Hearings
o       All pendency hearings billed at same rate as full hearings $100/hour minimum;
        $100 pro-rated 15 minute increments after first hour
o       Remove PHS ($50 for pendency hearings last less than 30 minutes)

•       Complexity of Final Decisions
o       In addition to the number of transcript pages, number of affidavit pages will be included to determine the total number of pages and complexity tier for a decision.

Sincerely,

*Cheryl N. Williams*

Cheryl N. Williams, Esq.
Senior Executive Director
On behalf of
Karin Goldmark
Deputy Chancellor


c:      Shannon Tahoe
        Joanne LaCrosse
        Louise DeCandia
        Judy Swierczewski
        Robyn Ryan
        Mary Wall
        Carrie Bateman
        Gabrielle Fraenkel
        Roberto Perez

April 24, 2020

Christopher Suriano
Office of Special Education
Assistant Commissioner
89 Washington Avenue
Room 301 MEB
Albany, NY 12234

Dear Assistant Commissioner Suriano:

This letter is in response to your March 3, 2020 letter and the April 7, 2020 letter from Louise
DeCandia, in regard to the following issues relating to Alternative Dispute Resolution: IEP
Facilitation, Resolution Meetings, and Mediation.

### IEP Facilitation
Please see the enclosed IEP Facilitation document, which has been updated to include the
following link: http://www.p12.nysed.gov/specialed/dueprocess/iep-
facilitation/IEPFacilitation.html. These materials will be published in the NYCDOE Special
Education Standard Operating Procedures Manual and on our parent-facing website.

### Resolution Meetings
Your March 3, 2020 letter requested the following:

> *A plan from NYCDOE as to how it will increase the use of resolution meetings and an
> explanation of who on behalf of the NYCDOE conducts the resolution meeting and what
> authority they have to settle matters, both monetary and non-monetary.*

*Explanation of resolution staff and their authority*
The NYCDOE staff who participate in resolution meetings varies based on the type of school in
which the student is enrolled at the time the due process complaint is filed. In general,
assignments are as follows:

- If the student is enrolled in a District 1-32 school, the Borough/Citywide Office
  Administrator of Special Education assigned to that school participates in the resolution
  meeting;
- If the student is enrolled in a District 75 or District 79 school, a representative from the
  respective district office participates in the resolution meeting;
- If the student is not enrolled in a DOE school, a representative of the NYCDOE
  Committee on Special Education (CSE) responsible for the student's IEP process
  participates in the resolution meeting.

NYCDOE staff who participate in resolution meetings have been trained in resolution by their respective offices. They are informed and trained on their responsibility to participate in a resolution meeting within 15 days of the filing of the due process complaint. NYCDOE's Special Education Standard Operating Procedures Manual (SOPM) makes this responsibility clear:

- *The resolution meeting must take place within 15 calendar days of receipt of the due process complaint. (Additional meetings or communications may take place following this initial 15 calendar day period.)*
- *The DOE and the parent have 30 calendar days from receipt of the request to resolve the case to the parent's satisfaction before the case is scheduled for hearing with a hearing officer. That 30 calendar day period is known as the "Resolution Period."*

The SOPM further stresses that "[t]he DOE staff assigned to schedule the resolution meeting (known in IHS as the Resolution Case Manager, or RCM) must make reasonable efforts to engage the parent in the resolution process in every case and to document all efforts to schedule and hold resolution in both the SESIS Events Log and IHS." Finally, it states that "if the parent seeks to waive the resolution meeting, the DOE does not need to consent" and that "[i]t is strongly recommended that field staff not waive the resolution meeting and participate in resolution for each case." (SOPM pp. 119.)

NYCDOE staff responsible for resolutions have the authority to enter into resolution agreements regarding certain non-monetary and monetary matters. Notably, relating to monetary issues, this authority includes (but is not limited to):

- Make-up instructional and/or related services (including SETSS at an enhanced rate) when the student has not received recommended services;
- Compensatory instructional and/or related services (including SETSS at an enhanced rate) when the student may have been denied a free appropriate public education;
- Independent educational evaluations at public expense.

The following items cannot be agreed upon through resolution: non-approved private school tuition; assessments and services at rates that exceed those typically necessary to procure the assessment/service; issues with broad legal or policy implications; attorneys' fees.

*Plan to increase the use of resolution meetings*

To increase the number of due process complaints addressed through the resolution process, NYCDOE is taking the following steps:

- We have developed guidance for resolution staff that makes clear the authority granted to them, along with guidance on how to use that level of authority. Among other things, this guidance reaffirms their responsibility to participate in a resolution meeting, as set out in the SOPM (noted above).
- We are centrally developing training materials and will schedule trainings for all DOE resolution staff. Trainings will be scheduled in due course as operational circumstances stabilize.

Please note that NYCDOE cannot compel a parent to enter into a resolution agreement. Even when we are prepared to resolve for all relief requested in a due process complaint, parents may elect to proceed to hearing on the advice of counsel, who will seek an award of attorney fees (cases in which this has occurred are not noted in data on impartial hearings).

## Mediation

Your March 3, 2020 letter requested the following:

> *Written confirmation that individuals conducting mediations have the authority to enter into legally binding agreements for both non-monetary and monetary relief. Data on the number of mediations conducted during the 2018-19 school year and a plan to increase that amount by 20 percent for the 2020-21 school year.*

The April 7, 2020 letter also requests an update to the information submitted on January 31 regarding mediation focus groups.

### *Mediation authority*

All agreements entered into during mediation are legally binding, pursuant to Section 200.5(h)(1)(vi) of the Commissioner's Regulations. NYCDOE representatives in mediation have wide latitude to resolve disputes. Most often, the subject of mediation is a "non-monetary" issue, such as a disagreement about the student's classification, special education program and/or related services recommendation. NYCDOE representatives participating in mediations have the authority to agree to relief for certain types of monetary issues, including funding for additional special education instruction (e.g., independent SETSS, either at the standard rate or an enhanced rate), related services, or private assessments. NYCDOE representatives are not authorized to enter into mediation agreements for payment of non-approved private school tuition.

### *Mediation Plan*

In an effort to expand the use of mediation, NYCDOE Special Education Office (SEO) staff conducted focus groups regarding representatives' experience with and understanding of mediation on February 10 and February 13, 2020. Representatives who participated in the focus groups served all five boroughs and had experience working with families in both the public school and CSE context. Several of the focus group participants have been representing the DOE in mediations for many years. Given the breadth and depth of experience of the participants, SEO was able to understand representatives' perceptions of the benefits and limitations of the use of mediation, the areas in which additional guidance and support are needed, and a path forward for increasing the effective use of mediation.

Based on the findings from these focus groups, SEO is developing guidance on mediation for all DOE representatives. This guidance, and accompanying trainings, will include clear parameters around authority to enter into legally binding agreements, as well as best practices gleaned from the focus groups.

In addition, through our working group with INCLUDEnyc, community dispute resolution centers (CDRCs), and others, NYCDOE staff are working to increase community awareness of

special education mediation, so that families will be more inclined to participate in mediation as an alternative to an impartial hearing.

It should be noted that mediation requires the consent and participation of both parties. Parents who are already represented by counsel are less likely to participate in mediation, as a mediation agreement does not confer eligibility for attorneys' fees.

Sincerely,

*Josh Morgenstern*

Josh Morgenstern
Special Education Office
New York City Deptartment of Education

State Def. 5061

Hyman Decl. Ex. NN - 28



**Department of Education**
Chancellor Richard A. Carranza

Howard Friedman
General Counsel

April 29, 2020

Louise DeCandia
Office of Special Education
Chief of Special Education Services
89 Washington Avenue
Room 309 EB
Albany, NY 12234

Dear Louise:

I would like to thank you for the ongoing collaboration to address the outstanding impartial hearing requests that are awaiting appointment of an impartial hearing officer. This letter is in response to the Revised Wait List Procedures included as Attachment B to your April 7, 2020 letter addressed to Cheryl Williams at the Impartial Hearing Office (NYCIHO). We have carefully reviewed this proposal and have concerns about the feasibility of implementation, as drafted. Accordingly, we set forth below a revised proposal about how due process complaints should be assigned to hearing officers. If NYSED's April 7, 2020 proposal were to stand, NYCDOE would not be able to complete review and prioritization of the existing wait list before June, at which time we expect an influx of more than 1,500 new filings for the start of the new school year. Assessing cases to determine their priority as proposed in your letter would require the use of considerable resources which are currently devoted to other efforts. Moreover, many cases fall into more than one of the categories set forth by NYSED, which causes confusion about how to prioritize them. We think the proposed assignment procedures below will allow NYCDOE to more efficiently prioritize the present backlog of unassigned cases in preparation for the new school year and the certification of the new class of hearing officers this May. Additionally, NYCDOE believes the proposals below are less administratively burdensome, and therefore can be sustained when the volume of filings increases over the summer. This letter will address each topic in the order written in Attachment B.

**Expedited Cases**
We agree that expedited cases must be the first priority for appointment of an impartial hearing officer. NYCIHO will continue to ensure these cases receive immediate appoint of the first available impartial hearing officer.

**Remanded Cases**
We also agree that remanded cases should be the second priority; NYCIHO will immediately appoint the first available impartial hearing officer to an impartial hearing upon receipt of a State

Review Officer decision directing the district to re-open a case and appoint a new impartial hearing officer.

**Cases for Potential Consolidation**

We agree that, in accordance with 8 NYCRR §200.5(j)(3)(ii)(a), the impartial hearing officer presiding over a pending impartial hearing must be appointed to a subsequent impartial hearing request for the same school year. However, we find that the language of 8 NYCRR §200.5(j)(3)(ii)(a)(1), qualifying subsequent due process complaints is vague, saying simply, "involving the same parties and student with a disability." The language of the regulation unfairly prioritizes the DPCs of students who file complaints for different school years during the course of an unrelated pending impartial hearing. This priority status should be limited to new DPCs involving the same school year only. New DPCs for subsequent school years should be dealt with as discussed below.

**Refiled Cases**

Similar to potential consolidations, this priority should also be limited to instances where the refiled DPC raises the same or substantially similar claims for the same school year as the withdrawn complaint. NYCDOE has found that a broad interpretation of 8 NYCRR 200.5(j)(6)(iv), requiring the appointment of the previously appointed hearing officer to a matter which was withdrawn within the past year and is "based on or includes the same or substantially similar claims as made in a prior due process complaint," has created a situation where hearing officers are appointed to new impartial hearing requests with similar allegations for different school years.  This results in an unfair administration of due process for NYC families by prioritizing families who repeatedly file for a placement or services in which the student has pendency. NYSED has already advised that a new IHO must be appointed for claims seeking tuition reimbursement for a different school year based on the premise that, "the claim...would be based on the [IEP] developed for the student for the new school year..." (See *Questions Relating to Impartial Hearing Procedures Pursuant to Sections 200.1, 200.5, and 200.16 of the Regulations of the Commissioner of Education, as Amended Effective February 1, 2014 (Revised September 2016), #31*). The same reasoning should be applied to all DPCs to limit the reappointment of previously withdrawn cases to the prior IHO. Cases that are no longer considered potential refiles will be placed on the waitlist according to the proposed prioritization below.

**Recusals of an IHO from appointment to a complaint**

NYCIHO has processed all outstanding recusals and placed the cases on the wait list in order of oldest filed first. That data will be sent to NYSED via the normal channels at close of business today.

**Contested Pendency Cases**

We agree that cases in which pendency is contested must receive high priority, and we have incorporated such cases in our proposal below. Where pendency is contested, NYCDOE believes that cases must be prioritized for purposes of a pendency hearing. However, NYSED has previously expressed the concern that assigning these cases to a hearing officer for a full hearing may unfairly prioritize cases where students are seated in a unilateral placement and either receiving funding through pendency or seeking reimbursement. NYCDOE shares that concern and

further believes that parents may make a claim for pendency in a new program or placement where they otherwise would not simply to receive priority status. Because of that, NYCDOE proposes that DPCs with contested pendency claims be assigned to a hearing officer for a pendency hearing only. Once a pendency hearing is held, cases would be placed on the wait list for permanent assignment depending on the determination made at the pendency hearing, as described below.

**Prioritization of Cases on Wait List**

We have reviewed the proposed prioritization of the DPCs that remain after the DPCs discussed above. We believe that NYSED's proposal is complex and would involve a substantial delay caused by the necessary review. Additionally, dedicating SEU attorneys to this review would detract from progress on settlements. In lieu of NYSED's proposal, we have developed an alternative approach that will be straightforward to implement and ensures that students' claims are processed in an order that reflects the relative urgency of their cases. Students whose unilateral placement or services are currently funded through pendency are the least harmed by delays in due process. Conversely, students who do not have pendency in the program or services that they are seeking, especially those students not attending school and/or receiving services, are the most harmed by delays in due process. To protect the students most harmed by delays in due process, and ensure that we can quickly and efficiently prioritize impartial hearing requests, NYCDOE proposes prioritizing the remaining wait list into three categories:

1. DPCs filed on behalf of students who do not have pendency and are not attending school and/or receiving services.
2. DPCs filed on behalf of students who do not have pendency but are currently attending a unilateral placement and/or receiving unilateral services.
3. DPCs filed on behalf of students who have pendency in the unilateral placement and/or services they are seeking as relief.

To effectuate this new process without a substantial administrative burden going forward, we propose asking filers to identify at the top of a complaint whether the student is currently placed in a private school and/or receiving the services sought as relief and whether the student has pendency. Additionally, NYCDOE believes we must be fully transparent in how DPCs are being assigned from the waitlist. Ideally, this communication should come from NYSED, so that parents and their attorneys clearly understand that the November 18, 2019 directive from NYSED has been revised, and that NYCDOE is not acting unilaterally.

We understand that these procedures are a temporary measure in place until the IHO automated appointment system is in production in IHS, as per the November 18, 2019 letter from Acting Commissioner Tahoe to Chancellor Carranza. While NYCIHO continues to appoint hearing officers to address the waitlists in the interim, NYCDOE is working diligently to put the automated appointment system into production.

Please respond as soon as possible to advise whether NYCDOE may begin to implement assignment of cases pursuant to the above proposals. In the meantime, NYCIHO continues to assign cases in the order in which they were filed, pursuant to NYSED's November 18, 2019 directive.

Sincerely,

*Judy E. Nathan*

Judy Nathan, Esq.
Office of General Counsel
New York City Department of Education


c:      Shannon Tahoe
        Christopher Suriano
        Joanne Lacrosse
        Robyn Ryan
        Judy Swierczewski
        Mary Wall
        Karin Goldmark
        Gabrielle Fraenkel
        Roberto Perez
        Cheryl Williams



**Howard Friedman**
General Counsel

May 26, 2020

Christopher Suriano
Office of Special Education
Assistant Commissioner
89 Washington Avenue
Room 301 MEB
Albany, NY 12234

Dear Assistant Commissioner Suriano:

This letter is in response to your March 3, 2020 letter and the April 7, 2020 letter from
Louise DeCandia, requesting specific data regarding the settlement of special education claims and about
Special Education Unit (SEU) staffing. Please find our responses to the specific inquiries below.


**Settlement Data**

*The number of cases that are pending settlement approval (total number and breakout information for
Ten-Day Notice versus due process system cases)*

    As of April 30th, there were 3,349 pending settlements with an open Due Process Complaint
(DPC), and 3,283 pending settlements with no open DPC. Additionally, there were 4,652 DPCs
under review, some of which will be recommended for settlement.

*How long the current outstanding cases have been waiting for settlement*

    Settlements pending as of April 30 had been pending for a median of 234 days since being
recommended for settlement.

*NYCDOE'S plan as to how it will resolve all outstanding settlement cases through the 2018-2019 school
year by September 2020*

    NYCDOE is working to resolve all outstanding settlements through the 2018-2019 school year by
September 2020. Currently there are approximately 1,750 such settlements. However, NYCDOE
is constrained in its ability to complete these settlements because completion depends upon
cooperation from parents and their representatives and review by the NYC Comptroller.
Additionally, the COVID-19 pandemic and resultant closures of offices and schools has delayed
progress on these settlements by requiring a transition to remote work and electronic signature of
settlement agreements. NYCDOE will do its utmost to ensure that settlements from 2018-2019
and prior are completed by September 2020.

State Def. 5066

Hyman Decl. Ex. NN - 33

[Insert Addressee]
May 26, 2020
Page | 2

**SEU data**

*The number of attorneys and non-attorneys that constitute a full staff in the SEU*

The Special Education Unit of NYCDOE's Office of General Counsel (SEU) currently has 98 attorneys and 27 support staff. At the time of NYSED's request, SEU also employed 11 temporary attorneys and 1 temporary support staff member; however, those contracts were suspended on April 13, 2020, due to the budget crisis. There are 7 attorney vacancies and 1 support staff vacancy; however, those positions are not currently being filled due to the COVID-19 pandemic and New York City's hiring freeze.

*The number of staff members that are actually needed to process the approximate 8,000 to 10,000 settlements NYCDOE enters into between its Ten-Day Notice program and the due process complaint system*

It is unclear from NYSED's request what the "8,000-10,000 settlements NYCDOE enters into between TDN and DPC complaint system" referred to are or what timeline for completion NYSED's request contemplates. Regardless, New York City has a hiring freeze in light of the COVID-19 pandemic, and NYCDOE is currently unable to increase staff at SEU.

*The number of staff members during each of those school years and the rate of attrition at SEU*

During the 2016-2017 school year, NYCDOE completed 4,264 settlements. As of the end of the 2016-2017 school year, SEU had a staff of 71 and an attrition rate for the school year of 28.17%. During the 2017-2018 school year, NYCDOE completed 4,269 settlements. As of the end of the 2017-2018 school year, SEU had a staff of 75 and an annual attrition rate of 17.33%. During the 2018-2019 school year, NYCDOE completed 3,492 settlements. SEU received authority in November 2018 and again in April 2019 to hire additional staff, and by year end, SEU had a full-time staff of 100,c in addition to 17 temporary attorneys. The attrition rate for SEU's full-time staff during the 2018-2019 school year was 13%.

[Insert Addressee]
May 26, 2020
Page | 3

*A plan to revise NYCDOE's settlement process so that it is faster, more efficient and captures matters NYCDOE does not intend to defend at hearing*

Absent additional resources, which SEU will not have access to in light of NYC's budget crisis, the settlement process is as efficient as possible given the volume of filings and the constraints of the law. NYCDOE anticipates that as the backlog of settlements from previous school years is eliminated, SEU will be able to increase efficiency in addressing cases as they are filed in 2020-2021 and ensuing school years. Additionally, as NYCDOE makes efforts, as described above and in previous communications with your office, to address more cases which it does not intend to defend at hearing through the resolution process and mediation, the number of settlements will decrease.

Sincerely,

*Judy E. Nathan*

Judy E. Nathan
Executive Deputy Counsel



**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

Senior Deputy Commissioner
Office of Education Policy

May 27, 2020

Karin Goldmark, Deputy Chancellor
New York City Department of Education
52 Chambers Street, Room 320
New York, NY  10007

Dear Deputy Chancellor Goldmark:

I am writing to respond to the information provided in the New York City Department of Education's (NYCDOE) April 9, 2020 letter from Ms. Cheryl Williams to Assistant Commissioner, Christopher Suriano, a copy of which is attached for your convenience.   The information and data contained in the letter helped shed some light on the problem regarding the volume of due process complaints filed in New York City.  As you know, it has been a year since the Comprehensive Compliance Assurance Plan (CAP) was issued and while we have seen some positive changes, this first year did not yield substantive systemic improvement in the NYCDOE special education due process system. While hearing rooms, a waiting area and an attorney consultation area have been added at the New York City Impartial Hearing Office, the number of due process complaints remains around 10,000 and approximately 2,000 parents await appointment of an Impartial Hearing Officer (IHO). Therefore, we must immediately move forward in this second year with more concrete actions to address the noncompliance identified in the Section III Due Process portion of the CAP.

First, the NYCDOE plan to increase access to hearings by telephone and video conference alone, without adding additional hearing rooms at 131 Livingston Avenue, Brooklyn is not an approach that the New York State Education Department (NYSED) supports and accepts as a path forward to resolve the space issues at this site.   As you know, NYSED placed a monitor in the NYC Impartial Hearing Office to provide NYSED leadership with insight into some of the many problems facing NYCDOE's special education due process system.  Amongst other issues, the monitor documented that there remains a serious need for additional hearing space, particularly given the recent certification of 36 new impartial hearing officers to serve in New York City and the anticipated increase in the number of due process complaints. As indicated several times in our recent conversations, NYSED expects an influx of due process complaints throughout the State once schools are back in session after COVID-19 restrictions are reduced and eventually eliminated. NYCDOE must be prepared to handle a substantial increase in due process complaint filings.  Thus, NYC Impartial Hearing Office's current arrangement of having only 14 hearing rooms for more than 10,000 due process complaints annually, with the likelihood that the number of complaints will substantially increase, is insufficient space to meet the current and potential demand. Telephone and video hearings may be helpful or convenient in certain circumstances but should not necessarily be how hearings are held in the first instance. For the above described reasons, NYCDOE must minimally add an additional 10 hearing rooms by October 16, 2020.[1]

---

[1] The number 10 was derived by calculating that approximately one half of the 10,000 annual due process complaint filings (5,000) necessitate at least 1 day of hearing for each (as per regulations [8 NYCRR §200.5 (j)(3)(xiii)] ÷ 200

State DOE 069

Second, the NYCDOE should cease requiring certain cases to proceed to a hearing. For example, NYCDOE should not be proceeding to hearing on certain cases such as "enhanced rate" cases for services that it is obligated to implement as part of a student's Individualized Education Program (IEP).  This practice must stop because it is the equivalent of requiring parents to justify the costs of special education services to be provided by a public agency, which parents are never required to do.  NYCDOE is obligated to provide the services on a student's IEP or Individualized Education Services Program (IESP). 8 NYCRR §200.4(e)(3) requires that the school district ensure that the recommendations on a student's IEP are implemented.  For dually enrolled students, Education Law §3602-c[2][a] places the responsibility of the implementation of the services of an IESP on the school district of location.  There is no legal authority to place the burden of finding a service provider, whether it be Special Education Teacher Support Services (SETSS) or a related service provider, on the parent.  Further, even if NYCDOE had such authority, to proceed to due process after a parent finally obtains a provider is an additional burden placed on the parents of students with disabilities.  NYSED has been conducting an ongoing and thorough review of hearing decisions and has documented that NYCDOE rarely puts on a legitimate defense in these types of cases often simply arguing that the parents' provider's fees are excessive, usually with no evidence.   In summary, there is no justifiable reason to proceed to an impartial hearing on a dispute in which NYCDOE:

1) knows or should know that it has failed to provide a required service on a student's IEP or IESP;
2) relies on a service delivery method that puts the onus on the parents to find a service provider;
3) lacks enough providers who are willing and able to provide the required services at the NYCDOE rate;
4) knowingly contributes to a lack of providers by authorizing a NYCDOE rate that is far below the market rate for reimbursement of providers; and
5) has no intent to meet its burden of production or defend its failure to deliver services through the impartial hearing process.

The actions of the NYCDOE unjustifiably clog the due process system with cases that lack any defense, and lead to an unacceptable waste of financial and staff resources associated with the administrative hearing processes that are needed for genuine disputes. They are a prime example of the type of case that should be resolved through a binding written agreement arrived at in the resolution meeting process required by the Individuals with Disabilities Education Act (IDEA). If NYCDOE cannot immediately correct the service delivery issue by increasing its independent provider rate to reflect market costs, (which on its own would likely reduce the amount of these types of hearing requests), then it must settle a substantial majority of these due process complaints in a written settlement agreement completed during the resolution period, but it cannot continue to proceed to hearing on these matters.

Third, NYCDOE should not be proceeding to hearing on cases involving independent educational evaluations (IEE) (which the NYCDOE data reflects comprise over 1,000 cases annually). 8 NYCRR §200.5(g) (iv) requires that if a parent requests an IEE at public expense,  the school district, without unnecessary delay, must ensure that it is provided at public expense or file a due process complaint notice to request a hearing to show that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria.  In contrast to the required process, parents in New York City are resorting to filing due process complaints to seek an IEE at public expense, or reimbursement for an IEE

---

work days (180 school days v. 261 average work days per year – we are averaging 200 per calendar year) = 25 hearing rooms are necessary.  Subtracting the 14 hearing rooms the NYC Impartial Hearing Office currently has and rounding 11 down to 10, NYSED has determined that 10 additional hearings rooms would be an absolute minimum that would be acceptable.

State Def. 5070

Hyman Decl. Ex. NN - 37

after they have requested one because they received no clear response from NYCDOE either granting or denying the requested IEE at public expense.  As the regulation cited above reflects, this is not how the IEE process works.  NYCDOE's process improperly places the burden on the parent and is, thus, not in accordance with State regulatory requirements; therefore, these cases for which there is no reasoned basis to continue to delay the parent's right to an IEE at public expense should also be concluded during the 30-day resolution period with a written settlement agreement and eliminated from the pool of cases that proceed to hearing.

Fourth, with respect to decreasing the number of due process complaints that proceed to an impartial hearing, the NYCDOE's April 24, 2020 letter indicates that "staff responsible for resolutions have the authority to enter into resolution agreements regarding certain non-monetary and monetary matters" and cites examples of makeup services, compensatory education and IEE request matters that can be resolved through the resolution meeting process. However, a vast number of matters are cited that the NYCDOE indicates that resolution process staff lack the authority to settle, including "non-approved private school tuition; assessments and services at rates that exceed those typically necessary to procure the assessment/service; … attorneys' fees"[2].

20 USC §1415(f)(1)(B)(i)(III),  8 NYCRR §200.5(j)(2)(a) and 34 CFR §300.510(a)(1)(i) require that an individual from the district with decision-making authority on behalf of the school district attend a resolution meeting with a parent. This statute and regulations are in place to ensure that parties can fully resolve a due process complaint with legally binding agreements without the need to resort to an impartial hearing to seek further authority.  School districts all over the country both within and outside of New York State send individuals with full decision-making authority to resolution meetings to resolve due process complaints regarding individual students.  While a district may decide it has legitimate defenses, that it is inadvisable to settle a case, and that there is a legitimate dispute that requires resolution through the fact finding process in which the district intends to present evidence to meet its burdens of production and persuasion, it is inconsistent with the statute and regulations to proceed to a hearing simply because the school district personnel lack the authority to resolve a case with a written resolution agreement as envisioned by law.  Cases involving a particular student and issues such as classification, evaluation, elements of an IEP or IESP, public or private educational placements (approved or not), charter schools and special education, <u>Carter</u> reimbursement disputes, service delivery and IEP or IESP implementation disputes and attorney fees are all proper subjects of the resolution process and an individual with decision making authority to bind the district in a written settlement agreement on such issues should be present at a resolution meeting with the parent convened within 15 days of the filing of a due process complaint.

Lastly,  Assistant Commissioner Suriano's March 3, 2020 letter to you requested that, in accordance with the call with Senators Felder, Liu, Jackson and Mayer on February 27, 2020, your office copy Assistant Commissioner Suriano on all documentation provided to the Senators as well as the plan you described wherein NYCDOE stated it would resolve all outstanding settlement cases through the 2018-19 school year by September 2020.  To date, NYSED has not received this information, nor, as confirmed by NYSED's Office of Legislative Affairs, has Senator Mayer.  This information was also   sought in the April 7, 2020 letter from Chief of Special Education Services, Louise DeCandia to Ms. Williams.  The

---

[2] The letter also identifies "issues with broad legal or policy implications" as matters that cannot be addressed in the resolution process, however that terminology is vague and could cover almost any complaint brought under IDEA. IHOs are consistently asked to resolve disputes that can have broad policy or legal implications, and the only "broad issue" in the area of special education that cannot be reasonably be addressed in the resolution process, or by an IHO, is a systemic complaint.

State Def. 5071

Hyman Decl. Ex. NN - 38

May 26, 2020 letter sent to Assistant Commissioner Suriano from Executive Deputy Counsel Judy E. Nathan states that NYCDOE will "do its utmost to ensure that settlements from 2018-19 and prior are completed by September 2020."  While NYSED acknowledges that NYCDOE is constrained by COVID-19, a statement that NYCDOE will "do its utmost," alone is not sufficient and more detail must be provided as to how NYCDOE will secure these settlements by September 2020. Please submit this no later than June 15, 2020 to Louise DeCandia.

For all of the above described reasons, NYSED is requiring NYCDOE to eliminate its outstanding 2018-19 and prior settlement cases by September 15, 2020 (a commitment it already made) and reduce its outstanding 2019-20 cases (not just settlement cases) by 50 percent by October 16, 2020.  A closure sheet will be created by NYSED for NYCDOE to submit with each 2019-20 resolved case documenting the type of case it was and how it was resolved. Ultimately, NYSED will be using this information to monitor for systemic changes, such as increasing the use of resolution sessions and mediation to ensure that substantially more cases are removed from the due process docket through settlement and resolution processes, therefore reducing the number of cases that proceed to hearing.

I thank you in advance for your attention to this important matter and look forward to speaking with you should you require clarification or have questions.

Sincerely,

John L. D'Agati

Attachment

c:      Senator Felder
        Senator Liu
        Senator Jackson
        Senator Mayer
        Chancellor Rosa
        Shannon Tahoe
        Kimberly Wilkins
        Kevin Smith
        Christopher Suriano
        Joanne LaCrosse
        Louise DeCandia
        Judy Swierczewski
        Robyn Ryan
        Mary Wall
        Carrie Bateman
        Gabrielle Frankel
        Roberto Perez
        Cheryl Williams

State Def. 5072

Hyman Decl. Ex. NN - 39



**NEW YORK CITY DEPARTMENT OF EDUCATION**
**SCHOOL PLANNING AND DEVELOPMENT**
**52 Chambers Street, Room 320**
**New York, NY 10007**

April 9, 2020

Christopher Suriano
Office of Special Education
Assistant Commissioner
89 Washington Avenue
Room 301 MEB
Albany, NY 12234

Dear Assistant Commissioner Suriano:

This letter is the second letter in response to your March 3, 2020 communication. In that letter, you asked that the New York City Department of Education provide, by March 20, 2020, responses to the following items:

1) "The types of cases that proceed to due process (i.e. what percentage are unilateral placement; what percentage are independent educational evaluations, what percentage are SETSS and/or other services)."

2) "A plan to add additional hearing rooms in the NYC IHO no later than September 2020. Information regarding the use of computer in the hearing rooms at NYC IHO."

3) "Data on how many cases proceeding to hearing involve SETSS reimbursement or provision of the service, if NYCDOE instituted a change in practice regarding settling these cases, and if so, why and how NYCDOE plans to specifically address this type of case, such as increasing reimbursement rates."

We apologize for the delayed response; however, our agency has been immersed in the details of establishing a remote learning model for over 1 million students as a result of the physical closure of schools last month due to the COVID-19 pandemic. In response to your requests, please be advised of the following:

State Def. 5073

Hyman Decl. Ex. NN - 40

1) "The types of cases that proceed to due process (i.e. what percentage are unilateral placement; what percentage are independent educational evaluations, what percentage are SETSS and/or other services)."

The Impartial Hearing System contains data that we have compiled into an issue list, based on the issues raised in due process complaints as determined from an analysis of the DPC by NYCDOE Impartial Hearing Office staff during intake of a new DPC. We have provided data, for 2018-19 and 2019-20 school years to date, for each of these tracked issues and whether any hearing activity took place for the case in which that issue was raised. Please be advised  that this data does not reflect the total number of unique cases for each school year because a single DPC typically raises multiple issues. Additionally, as these issues are tracked at the onset of an impartial hearing, the quantity differs from the issues reported to NYSED via IHRS, which are derived from impartial hearing officers' decision cover sheets (administrative forms that lists the issues on which decisions are rendered). Lastly, we do not distinguish SETSS from other services, therefore we cannot separately report on the number of DPCs that contain SETSS and can only report services generally. The data is as follows:

| Issues Tracked in IHS | # of Times Issue Raised in DPC in SY 18-19 | # of Times Issue Proceeded to Due Process in 18-19 | # of Times Issue Raised in DPC in SY 19-20 | # of Times Issue Proceeded to Due Process in 19-20 |
|---|---|---|---|---|
| INDEPENDENT EVALUATION (by private provider) | 1246 | 1205 | 1110 | 994 |
| PAYMENT: SERVICES | 7467 | 7176 | 7385 | 6670 |
| PAYMENT: TUITION | 4910 | 4769 | 3831 | 3373 |
| PLACEMENT | 665 | 622 | 602 | 489 |

2) "A plan to add additional hearing rooms in NYC IHO no later than September 2020. Information regarding the use of computers in the hearing rooms at NYC IHO."

Because of the COVID–19 pandemic, since Monday, March 16, 2020, all special education due process hearings in New York City have been conducted remotely (outside of the Impartial Hearing Office) via telephone. The Impartial Hearing Office has received positive feedback concerning the use of telephonic hearings from hearing officers, the parents bar, and NYCDOE representatives. NYCDOE will prepare a proposal to expand the use of telephonic due process hearings after the NYCDOE is able to reopen its buildings. If the Board of Regents approves videoconferencing, this proposal could be expanded to include remote due process hearings via videoconferencing. We believe that the continuation of remote telephonic and/or video hearings would be beneficial to all parties, increase the efficiency of due process and expand NYCDOE's capacity to accommodate additional hearings, without a significant cost to the NYCDOE. With NYSED onboarding 40 new hearing officers in early spring, we anticipate that remote hearings will be a useful tool to ensure that all parents have the opportunity to participate in a timely

impartial hearing by allowing for a far greater capacity than could be achieved in any physical location. We look forward to discussing this further with NYSED.

3) "Data on how many cases proceeding to hearing involve SETSS reimbursement or provision of the service, if NYCDOE instituted a change in practice regarding settling these cases, and if so, why, and how NYCDOE plans to specifically address this type of case, such as increasing reimbursement rates."

As articulated above, NYCDOE does not maintain data on this category of cases; rather, SETSS reimbursement or provision would fall under the broader issue of "PAYMENT: SERVICES." Based on data tracking of orders issued involving SETSS reimbursement or provision of SETSS, impartial hearing decisions favorable to parents on the issue of SETSS represent 15.52% of such cases during the 2018-2019 and 2019-2020 school years.

Contrary to impartial hearing officer feedback, there has been no change in practice regarding settlement of these cases, and many are still recommended for settlement. Where such cases proceed to hearing, the cause is generally either delay in the settlement process or a dispute over the requested hourly rate. Rates sought for privately-provided SETSS have increased dramatically in recent years, and when cases for "enhanced rate" SETSS are litigated, NYCDOE frequently argues that such high rates are not justified. In resolution, settlement, and through litigation, NYCDOE frequently reduces the rates sought. NYCDOE has no plan to increase the standard rate for SETSS. However, we are working to document more precisely the rate necessary to secure providers in each area of the City, to facilitate service provision and avoid unnecessary hearings as much as possible.

Sincerely,

_____/s/_____
Cheryl N. Williams, Esq.
Senior Executive Director
On behalf of
Karin Goldmark
Deputy Chancellor

c:      Shannon Tahoe
        Joanne LaCrosse
        Louise DeCandia
        Judy Swierczewski
        Robyn Ryan
        Mary Wall
        Carrie Bateman

State Def. 5075

Hyman Decl. Ex. NN - 42

Gabrielle Fraenkel
Roberto Perez

State Def. 5076
Hyman Decl. Ex. NN - 43



**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

OFFICE OF SPECIAL EDUCATION
CHIEF OF SPECIAL EDUCATION SERVICES
Room 309 EB, 89 Washington Avenue • Albany, NY  12234
www.p12.nysed.gov/specialed/

Telephone (518) 473-0170
Fax: (518) 473-5387

June 26, 2020

*Via email and U.S. Mail*

Judy E. Nathan,
Executive Deputy Counsel
Office of Legal Affairs
New York City Department of Education
52 Chambers Street, room 308
New York, NY  10007

Dear Judy:

I am writing to follow up from our May 27, 2020 discussion and your letter of April 29, 2020 as well as to seek, once again, the information New York City Department of Education (NYCDOE) has repeatedly been directed to provide regarding its plan for settling outstanding settlement cases through the 2018-2019 school year.  While we are all aware of the tremendous challenges posed by the Covid-19 pandemic, I am sure that you share our understanding that it remains paramount to provide families of students with disabilities the due process that is required by State and federal law.

Regarding the cases awaiting appointment of an impartial hearing officer (IHO), as stated at the May 27, 2020 meeting, it appears that the New York State Education Department (NYSED) and NYCDOE are, in large part, in agreement about both the need for reevaluating the placement of complaints on the wait list, so as to ensure that the neediest cases receive priority attention, and the criteria to be used in assessing placement on the wait list. NYSED, however, is still waiting to receive NYCDOE's plan in writing on implementing pendency, an integral issue that must be resolved to facilitate meaningful reprioritization of cases on the wait list.  Further, there are several issues regarding the wait list that I want to clarify.

First, after prioritizing expedited and remanded cases, assessing potential case consolidation should be NYCDOE's next priority since this will eliminate those cases on the wait list that fall within the description of consolidation as outlined in §200.5 (j)(3)(ii)(a) of the Regulations of the Commissioner of Education. Contrary to NYCDOE's interpretation, the regulation does not limit consolidation to only cases filed for the same school year.  Further, instead of presenting a matter of unfair prioritization, consolidation serves judicial economy, which is of particular significance here given the limited resources available to adjudicate more than 10,000 due process complaints. Consolidating two complaints, pursuant to §200.5 (j)(3)(ii)(a), does not move either complaint to the front of the line, rather the consolidation merely avoids utilizing two impartial hearing officer assignments for what should be one due process complaint.

With regards to "refiled cases," §200.5(j)(6)(iv) of the Regulations of the Commissioner of Education were created to stymie forum shopping, which was a particular problem in New York City (NYC).  Thus, under this regulation, parents who filed a due process complaint and then

State Def. 5077

Hyman Decl. Ex. NN - 44

refiled because they did not like the assigned IHO would be assigned the same IHO if they refiled within the same year.   Not dissimilar from the scenarios described in your April 29th letter, my understanding is that the term "refiled" has been construed much more broadly in NYC to mean that a parent seeking unilateral placement annually would often be assigned the same IHO, who had become familiar with the student's history and, thus, could make a quick pendency determination.   Indeed, many IHOs have individual students whose cases they have overseen throughout the student's school career.   While NYSED agrees that this local practice is not necessarily how §200.5(j)(6)(iv) was meant to be interpreted or applied, this practice has assisted NYCDOE in implementing pendency in a somewhat timely manner when these cases, for whatever reason, are either not settled or settlement is delayed, wherein the student's placement is determined through pendency.   Therefore, cases that fall within the definition of §200.5(j)(6)(iv) should be prioritized after consolidations.

Contested pendency cases and determining the pendency status of the cases already on the wait list present particular challenges because it is unclear how pendency is currently applied regarding NYC special education due process complaints. The pendency process is meant to be automatic.   Therefore, as explained in our May 27, 2020 conference call, requiring a parent to proceed to a hearing before an IHO in *every instance* to obtain pendency is unacceptable.   Of course, proceeding to a pendency hearing when there is a true dispute regarding a student's pendency placement is to be expected, but NYCDOE appears to take the position that it contests pendency in every due process matter, other than those involving NYCDOE programs and services, and this position is not acceptable.   The comprehensive compliance assurance plan was issued a year ago and pendency has been brought up and discussed on numerous occasions.   No plan has been put into place by the NYCDOE to date.   This is particularly problematic now, as thousands of students wait on a list to have an IHO assigned to their due process complaint and the pendency status of many students is unclear.   Not only are these students being denied timely due process but many of them are probably being denied access to their appropriate educational placement.   As referenced above, please submit the pendency plan in writing that was outlined and discussed during our conference call on May 27, 2020 to my office by July 8, 2020.   This submission should also address how the Impartial Hearing Representation Office and the Impartial Hearing Implementation Unit will be able to handle this responsibility.

At this time, NYSED directs NYCDOE to review and prioritize the cases awaiting IHO appointment as per the three categories outlined in your April 29, 2020 letter.   As the cases are reviewed, the framework for assessing and prioritizing the cases on the wait list may need to change depending on the specific nature of the matters pending or the types of cases that are brought to NYCDOE's attention. Further, while I agree that your proposal of asking filers to make certain identifications at the top of the complaint is one that will help effectuate prioritization going forward, I want to stress that NYCDOE must undertake, as was directed in Attachment B of my April 7, 2020 letter to Cheryl Williams, an immediate individual review and prioritization for all cases already on the wait list.

Additionally, pursuant to your proposal, we agree that cases that are wait listed but have a contested pendency matter that needs to be resolved before an IHO, can be assigned an IHO on a temporary basis and then placed back on the wait list. Please understand that this proposed practice could yield an enormous amount of replicated work by IHOs, further adding to their frustration, as well as adding to NYCDOE's expense of proceeding to hearing.  Parents, however, are entitled to pendency, and this fundamental requirement of due process cannot be ignored. Therefore, until further notice, your office may implement this temporary practice.

Regarding the wait list, NYSED eagerly anticipates NYCDOE's July 8, 2020 submission outlining the pendency process NYCDOE discussed during the May 27, 2020 meeting.

Turning to the issue of settlement, the need for NYCDOE to finalize settlement on its oldest cases through the 2018-2019 school year is critically important.  The students with disabilities involved and their families are entitled to a resolution for these long-ago filed due process complaints. Moreover, finalizing these cases, which you indicated number 1,750, is a necessary, and clearly defined, action NYCDOE must take towards clearing its overwhelmed due process docket. As was outlined in the May 27, 2020 letter from Senior Deputy Commissioner John D'Agati to Karin Goldmark, NYCDOE was directed to provide to my office, no later than June 15, its plan for settling all outstanding cases through the 2018-2019 year. Despite this, June 15th passed without any submission or, indeed, any communication from NYCDOE about these cases that have been awaiting final settlement for over a school year.  It is important to note that NYCDOE leadership made a commitment to Senators Felder, Liu, Jackson and Mayer in a phone call on February 27, 2020 to finalize settlement on its oldest cases awaiting final approval.  Nonetheless, to date, NYSED has not received this information, nor as confirmed by NYSED's Office of Legislative Affairs, have the Senators.   NYCDOE's silence on its plans to settle cases long awaiting settlement approval is all the more troubling, given that the NYCDOE expects a large influx of new cases both stemming from the transition to online learning and relating to the upcoming school year.   Additionally, it has recently come to my attention that NYCDOE's settlement policies may be becoming increasingly protracted, potentially resulting in a larger than usual number of cases awaiting settlement approval being forced to return to the to the already overburdened due process system.

Therefore, I expect a communication from your office no later than July 10, 2020 as to NYCDOE's settlement plans regarding its cases through the 2018-2019 school year. Additionally, attached is the closure sheet referenced in the John D'Agati May 27, 2020 letter to Karin Goldmark.   As stated in that letter, this is to be used with each 2019-2020 resolved case documenting the type of case it was and how it was resolved.  This information will be used for monitoring purposes.

Sincerely,

Louise DeCandia

Attachment

c.    John D'Agati
      Kimberly Wilkins
      Kevin Smith
      Christopher Suriano
      Joanne LaCrosse
      Judy Swierczewski
      Robyn Ryan
      Cathryn Tisenchek
      Karin Goldmark
      Mary Wall
      Gabrielle Frankel
      Carrie Bateman
      Cheryl Williams

# CASE CLOSURE SHEET
## SETTLEMENT

The New York City Department of Education (NYCDOE) must submit this case closure sheet with each SY 2019-20 settled special education due process case, documenting case information and how the case was resolved.  The New York State Education Department (NYSED) will be using this information to monitor for systemic changes, such as the increased use of resolution sessions and mediation.

At the end of every month, return to NYSED a separate sheet for <u>each case</u> SY 2019-20 settled special education due process case.

**Case ID #**

**Mediation Case ID #, if relevant:**

| ISSUES: | √ |
|---|---|
| Stay Put/Pendency | |
| Child Find | |
| Eligibility | |
| Evaluation | |
| Procedural Violations | |
| Unilateral Placement | |
| Enhanced Rate Case (e.g., SETSS; RSA) | |
| Other IESP service(s) | |
| Appropriateness of IEP: | |
| -   Related Services | |
| -   Methodology | |
| -   Behavioral Interventions | |
| -   Accommodations | |
| -   LRE | |
| -   Transition | |
| -   ESY | |
| -   Other (e.g., assistive technology) | |
| -   Placement | |
| -   Location (place where service is provided) | |
| Failure to Implement IEP | |
| IEE reimbursement | |
| Discipline | |
| -   Challenge to MDR | |
| -   Change in placement (IAES) | |
| -   Expedited | |
| Transportation | |

| HOW RESOLVED? | √ |
|---|---|
| Resolution Session | |
| Mediation | |
| Settlement through SEU (ten day notice) | |
| Settlement before due process complaint filed (other than mediation) | |
| Settlement after due process complaint filed (other than resolution session or mediation) | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

NYSED form 06.16.2020

State Def. 5080

Hyman Decl. Ex. NN - 47

_____



**NEW YORK CITY DEPARTMENT OF EDUCATION**
**SCHOOL PLANNING AND DEVELOPMENT**
**52 Chambers Street, Room 320**
**New York, NY 10007**

June 30, 2020

Louise DeCandia
Office of Special Education
Chief of Special Education Services
89 Washington Avenue
Room 309 EB
Albany, NY 12234

Dear Chief DeCandia:

I am writing in response to the request for documentation provided to Senators Felder, Liu, Jackson, and Mayer as per the May 27, 2020 letter from Senior Deputy Commissioner D'Agati. This letter contains detailed data that we understand was requested by the Senators. Specifically, the following data based on the past three school years is included:

1. Due Process Complaints that are Classified as "Refile" Cases
2. Due Process Complaints from Repeat Filers
3. Number of Due Process Complaints Filed per Month
4. Average Number of Open Cases per Month
5. Number of Cases Closed per Month
    a. Method in which Cases were Closed
6. Number of Hearings Held per Month
    a. Type of Hearing Held
7. Number of Decisions and Orders Processed
8. Number of Decisions and Orders that Closed Cases Processed per Month

In addition to data pertaining to the impartial hearings, we have also included detailed information about impartial hearing officer payments. This information includes the total impartial hearing officer payments and individual impartial hearing officer payments for each school year from FY16 through FY20 (as of June 19, 2020).

Thank you in advance for reviewing this data and please feel free to reach out to me if you have any questions.

State Def. 5081
Hyman Decl. Ex. NN - 48

Sincerely,

/s/

Cheryl N. Williams
Senior Executive Director
Impartial Hearing Office

Attachment
c: Senator Felder
  Senator Liu
  Senator Jackson
  Senator Mayer
  Chancellor Rosa
  Shannon Tahoe
  Kimberly Wilkins
  Kevin Smith
  Christopher Suriano
  Joanne LaCrosse
  Judy Swierczewski
  Robyn Ryan
  Mary Wall
  Carrie Bateman
  Roberto Perez

State Def. 5082
Hyman Decl. Ex. NN - 49

1. **Due Process Complaints that are Classified as "Refile" Cases**

   Refiled cases are defined as those that are filed within 365 days of when a previous withdrawn case involving the same student and the same or similar issues. The exception to this data point is that if tuition reimbursement/payment is requested for a different school year than previously requested then the new filing is not considered a refiled case. Refile is important for determining whether the type of appointment for the impartial hearing officer. Please note that data is presented on a school year basis, but withdrawals of previous DPC may have taken place in the current or previous school year than the refiled DPC.

   | School Year | Total DPCs in SY (Cases Filed) | Number of Refile DPCs in SY | Percentage of Total DPCs Filed in SY | Unique Student Refiles | Percentage of Total Refiled DPCs That Are for Unique Students |
   |---|---|---|---|---|---|
   | SY17 | 5,781 | 486 | 8% | 463 | 95% |
   | SY18 | 7,145 | 833 | 12% | 793 | 95% |
   | SY19 | 9,646 | 1,159 | 12% | 1051 | 91% |
   | SY20* | 9,723 | 1,124 | 12% | 1,045 | 93% |

   | Withdrawn-Refiled | Number of DPCs for Students Who Both Withdrew and Re-filed in SY20 | Percent of total DPCs Filed in SY20 |
   |---|---|---|
   | SY20* | 550 | *6%* |

   **\* As of May 8, 2020**

2. **Due Process Complaints from Repeat Filers**

   A repeat filer is characterized as a student who filed a due process complaint in that school year and previously filed a due process complaint in at least one previous school year, dating back to SY05. The total number of filings includes both first-time filers and repeat filers. For instance, during SY20 the NYCDOE received a total of 10,283 filings. Within the set of total filings, 9,530 filings represent unique individual students. Of those unique students who filed a due process complaint in SY20 61.76%, or 5,886, have filed a due process complaint in a prior school year.

   | School Year | Total Number of Filings | Total Number of Filings Representing Unique Students | Percentage of Filings that are from Repeat Filers (Total number of filings from Repeat Filers) |
   |---|---|---|---|
   | SY17 | 5,783 | 5,232 | 53.23% (2,785) |
   | SY18 | 7,145 | 6,454 | 55.39% (3,575) |
   | SY19 | 9,696 | 8,625 | 59.22% (5,108) |
   | SY20* | 10,283 | 9,530 | 61.76% (5,886) |

   *As of June 12, 2020.

State Def. 5083
Hyman Decl. Ex. NN - 50

**3.  Number of Due Process Complaints Filed per Month**

| Month | School Year | | | |
|---|---|---|---|---|
| | **SY17** | **SY18** | **SY19** | **SY20*** |
| **JUL** | 683 | 784 | 1,203 | 1,467 |
| **AUG** | 475 | 515 | 594 | 787 |
| **SEP** | 1,275 | 1,628 | 2,123 | 3,505 |
| **OCT** | 552 | 730 | 901 | 714 |
| **NOV** | 503 | 528 | 855 | 641 |
| **DEC** | 343 | 530 | 841 | 628 |
| **JAN** | 342 | 539 | 599 | 606 |
| **FEB** | 243 | 376 | 450 | 527 |
| **MAR** | 246 | 303 | 432 | 444 |
| **APR** | 222 | 255 | 538 | 286 |
| **MAY** | 249 | 280 | 452 | 118 |
| **JUN** | 648 | 677 | 708 | - |
| **Total** | **5,781** | **7,145** | **9,696** | **9,723** |

**4.  Average Number of Open Cases per Month**
Once a due process complaint is filed, a case is created. Case is the colloquial term for an impartial hearing.

| Month | School Year | | | |
|---|---|---|---|---|
| | **SY17** | **SY18** | **SY19** | **SY20*** |
| **JUL** | 2,025 | 2,799 | 4,315 | 7,102 |
| **AUG** | 2,077 | 2,750 | 4,060 | 6,740 |
| **SEP** | 2,788 | 3,698 | 5,493 | 8,713 |
| **OCT** | 3,309 | 4,441 | 5,999 | 9,665 |
| **NOV** | 3,573 | 4,626 | 6,400 | 9,781 |
| **DEC** | 3,615 | 4,768 | 6,912 | 9,770 |
| **JAN** | 3,563 | 4,911 | 7,130 | 9,766 |
| **FEB** | 3,348 | 4,942 | 7,091 | 9,644 |
| **MAR** | 3,051 | 4,691 | 6,953 | 9,576 |
| **APR** | 2,786 | 4,374 | 6,886 | 9,419 |
| **MAY** | 2,614 | 4,050 | 6,799 | 9,238 |
| **JUN** | 2,450 | 3,786 | 6,597 | - |

* As of May 8, 2020.

State Def. 5084

Hyman Decl. Ex. NN - 51

**5.  Number of Cases Closed per Month**

Please note that cases are closed by withdrawal of the due process complaint by filing party, execution of a full resolution agreement, or decision and/or order of the impartial hearing officer.

| Month | School Year | | | |
|---|---|---|---|---|
| | **SY17** | **SY18** | **SY19** | **SY20\*** |
| **JUL** | 264 | 523 | 877 | 1,217 |
| **AUG** | 247 | 504 | 621 | 843 |
| **SEP** | 177 | 351 | 466 | 634 |
| **OCT** | 147 | 331 | 496 | 525 |
| **NOV** | 209 | 348 | 409 | 593 |
| **DEC** | 211 | 389 | 382 | 623 |
| **JAN** | 320 | 432 | 549 | 667 |
| **FEB** | 337 | 443 | 493 | 578 |
| **MAR** | 891 | 588 | 563 | 567 |
| **APR** | 617 | 622 | 514 | 578 |
| **MAY** | 680 | 571 | 626 | 101 |
| **JUN** | 907 | 814 | 793 | - |
| | **5,007** | **5,916** | **6,789** | **6,811** |

**A.  Method in which Cases were Closed**

| Withdrawn Reason | SY17 | SY18 | SY19 | SY20\* |
|---|---|---|---|---|
| Withdrawn - by the requesting party | 1,746 | 1,730 | 1,765 | 1,425 |
| Withdrawn - without prejudice | 712 | 913 | 1,006 | 573 |
| Withdrawn - Not ready to go forward | 18 | 25 | 16 | 11 |

| Case Closed | SY17 | SY18 | SY19 | SY20\* |
|---|---|---|---|---|
| Findings of Fact and Decision | 1,037 | 1,640 | 2,229 | 2,505 |
| Order of Dismissal | 196 | 359 | 207 | 169 |
| Termination Order | 2,037 | 2,538 | 2,489 | 2,781 |
| Resolution Agreement Signed | 147 | 115 | 101 | 77 |

Please note that while withdrawals are initiated by the filer of the case, since the amendment of 8 NYCRR 200.5(j)(6) in 2014, withdrawals requested after the commencement of the hearing may only be effectuated through an order of termination issued by the impartial hearing officer.

\*As of May 8, 2020.

State Def. 5085

Hyman Decl. Ex. NN - 52

**6. Number of Hearings held per Month**

| Month | School Year | | | |
|---|---|---|---|---|
| | **SY17** | **SY18** | **SY19** | **SY20*** |
| **JUL** | 799 | 1,048 | 1,409 | 2,007 |
| **AUG** | 921 | 1,292 | 1,655 | 2,085 |
| **SEP** | 1,102 | 1,298 | 1,570 | 2,322 |
| **OCT** | 1,160 | 1,595 | 2,467 | 2,350 |
| **NOV** | 1,289 | 1,722 | 2,193 | 2,115 |
| **DEC** | 1,206 | 1,461 | 2,017 | 2,644 |
| **JAN** | 1,320 | 1,764 | 2,584 | 2,848 |
| **FEB** | 939 | 1,378 | 2,195 | 2,320 |
| **MAR** | 1,463 | 1,586 | 2,444 | 2,884 |
| **APR** | 889 | 1,458 | 2,243 | 2,885 |
| **MAY** | 1,082 | 1,489 | 2,582 | - |
| **JUN** | 951 | 1,182 | 2,207 | - |
| **Total** | **13,121** | **17,273** | **25,566** | **24,460** |

A.  Type of Hearing Held

| Type of Hearing | School Year | | | |
|---|---|---|---|---|
| | **SY17** | **SY18** | **SY19** | **SY20*** |
| **Hearing** | 9,293 | 12,841 | 19,969 | 21,319 |
| **Pendency Hearing** | 929 | 1,282 | 1,677 | 1,449 |
| **Pre-Hearing** | 2,899 | 3,150 | 3,920 | 1,692 |
| **Total** | **13,121** | **17,273** | **25,566** | **24,460** |

* As of May 8, 2020.

State Def. 5086
Hyman Decl. Ex. NN - 53

### 7.   Number of Decisions and Orders Processed

| Decisions | Type | SY2017 | SY2018 | SY2019 | SY2020* |
|---|---|---|---|---|---|
| Amended Findings Of Fact and Decision | Final | 53 | 40 | 68 | 53 |
| Corrected Findings of Fact and Decision | Final | 37 | 63 | 69 | 87 |
| Corrected Order of Dismissal | Final | 2 | 1 | 1 | 2 |
| Corrected Statement of Agreement and Order | Final | 0 | 1 | 3 | 2 |
| Findings of Fact and Decision | Final | 1,037 | 1,640 | 2,229 | 2,505 |
| Order of Dismissal | Final | 196 | 359 | 207 | 169 |
| Statement Of Agreement | Final | 19 | 18 | 63 | 1 |
| Statement Of Agreement and Order | Final | 81 | 24 | 128 | 77 |
| Termination Order | Final | 2,037 | 2,538 | 2,489 | 2,781 |
| Amended Interim Decision | Interim | 72 | 92 | 88 | 69 |
| Amended Interim Order On Pendency | Interim | 17 | 16 | 12 | 18 |
| Corrected Interim Order | Interim | 51 | 60 | 72 | 112 |
| Fourth Interim Order | Interim | 10 | 3 | 13 | 11 |
| Interim Order | Interim | 803 | 1,192 | 1,919 | 2,815 |
| Interim Order on Pendency | Interim | 506 | 667 | 753 | 1,252 |
| Order on Motion | Interim | 1 | 2 | 1 | 3 |
| Order on Pendency | Interim | 1,275 | 1,939 | 2,783 | 3,825 |
| Second Interim Order | Interim | 43 | 35 | 53 | 20 |
| Third Interim Order | Interim | 14 | 6 | 11 | 3 |
| **Totals** | | **6,254** | **8,696** | **10,962** | **13,805** |

\* As of May 8, 2020.

Note: Decisions and orders can be corrected (fixing a typographical, formatting or superficial error) or amended (a material change to the decision or order).

| | |
|---|---|
| **Findings of Fact and Decision** | Final decision based upon hearing record and law, setting forth reasons and factual basis for determination |
| **Statement of Agreement and Order** | Records the terms of settlement agreements between the parties |
| **Order of Dismissal** | Order ending a lawsuit without a decision on the merits |
| **Termination Order** | Order effectuating withdrawal of a due process complaint after the hearing has commenced |
| **Interim Order** | Temporary order that remains in effect for a specified time or until a specified event occurs |
| **Order on Pendency** | Order that provides the student with the last agreed upon placement and services for the duration of the impartial hearing |
| **Order on Motion** | Ruling on an issue raised in a motion by the parties |

State Def. 5087

**8.   Number of Decisions and Orders that Closed Cases Processed per Month**

| Findings of Fact and Decision | | | | |
|---|---|---|---|---|
| | SY17 | SY18 | SY19 | SY20* |
| JUL | 53 | 80 | 139 | 204 |
| AUG | 94 | 109 | 168 | 360 |
| SEP | 65 | 97 | 125 | 203 |
| OCT | 52 | 76 | 128 | 178 |
| NOV | 66 | 82 | 123 | 186 |
| DEC | 74 | 127 | 135 | 260 |
| JAN | 94 | 107 | 197 | 270 |
| FEB | 93 | 138 | 178 | 215 |
| MAR | 110 | 208 | 228 | 257 |
| APR | 93 | 198 | 226 | 302 |
| MAY | 107 | 197 | 286 | 70 |
| JUN | 136 | 221 | 296 | - |
| | 1,037 | 1,640 | 2,229 | 2,505 |

| Order of Dismissals | | | | |
|---|---|---|---|---|
| | SY17 | SY18 | SY19 | SY20* |
| JUL | 13 | 17 | 23 | 6 |
| AUG | 11 | 9 | 17 | 39 |
| SEP | 10 | 9 | 12 | 12 |
| OCT | 5 | 18 | 14 | 4 |
| NOV | 8 | 29 | 20 | 25 |
| DEC | 13 | 24 | 15 | 10 |
| JAN | 15 | 30 | 23 | 28 |
| FEB | 16 | 60 | 6 | 14 |
| MAR | 53 | 46 | 26 | 12 |
| APR | 18 | 64 | 17 | 15 |
| MAY | 19 | 8 | 18 | 4 |
| JUN | 15 | 45 | 16 | - |
| | 196 | 359 | 207 | 169 |

| Statements of Agreement and Order | | | | |
|---|---|---|---|---|
| | SY17 | SY18 | SY19 | SY20* |
| JUL | 1 | 1 | 1 | 11 |
| AUG | 1 | 1 | 1 | 12 |
| SEP | 1 | 0 | 3 | 6 |
| OCT | 4 | 5 | 5 | 6 |
| NOV | 9 | 3 | 5 | 6 |
| DEC | 19 | 1 | 2 | 8 |
| JAN | 10 | 2 | 9 | 10 |
| FEB | 10 | 3 | 14 | 3 |
| MAR | 10 | 1 | 11 | 6 |
| APR | 5 | 3 | 27 | 7 |
| MAY | 7 | 2 | 20 | 2 |
| JUN | 4 | 2 | 30 | - |
| | 81 | 24 | 128 | 77 |

| Termination Orders | | | | |
|---|---|---|---|---|
| | SY17 | SY18 | SY19 | SY20* |
| JUL | 190 | 176 | 386 | 644 |
| AUG | 161 | 120 | 517 | 401 |
| SEP | 75 | 79 | 162 | 220 |
| OCT | 68 | 256 | 155 | 172 |
| NOV | 73 | 245 | 103 | 313 |
| DEC | 162 | 194 | 85 | 217 |
| JAN | 179 | 165 | 194 | 238 |
| FEB | 179 | 205 | 134 | 240 |
| MAR | 334 | 202 | 179 | 145 |
| APR | 194 | 326 | 144 | 157 |
| MAY | 197 | 269 | 234 | 34 |
| JUN | 225 | 301 | 196 | - |
| | 2,037 | 2,538 | 2,489 | 2,781 |

* As of May 8, 2020.

State Def. 5088
Hyman Decl. Ex. NN - 55

**Total Hearing Officer Payments**

| Fiscal Year | Total Amount |
|:---:|:---:|
| 2016 | $3,096,190.00 |
| 2017 | $3,884,520.00 |
| 2018 | $4,221,955.00 |
| 2019 | $7,050,059.00 |
| 2020 | $6,459,524.10* |

* TOTAL HEARING OFFICER PAYMENTS THROUGH JUNE 19, 2020

9

State Def. 5089

Hyman Decl. Ex. NN - 56



**Judy Nathan**
Executive Deputy Counsel

July 8, 2020

Louise DeCandia
New York State Education Department
Chief, Special Education Services
89 Washington Avenue
Albany, NY 12234

Re:     Response to 6.26.20 Letter

Dear Louise:

This is in in response to SED's June 26, 2020 letter in which you direct NYCDOE to provide "settlement plans regarding its cases through the 2018-2019 school year," as detailed in SED's letter dated May 27, 2020.  In our letter dated May 26, 2020, DOE advised that it would make every effort to complete settlements from the 2018-19 school year by September 2020.  In SED's May 27th letter, SED advised that it was "requiring NYCDOE to eliminate its outstanding 2018-19 and prior settlement cases by September 15, 2020 (a commitment it already made)" and asked for DOE's plan to accomplish this result.

The commitment to which SED refers was made prior to the COVID-19 pandemic. The pandemic has disrupted every facet of NYCDOE operations for the past several months and hampered our efforts to meet this goal.  Prior to COVID-19, NYCDOE's Special Education Unit of the Office of General Counsel ("SEU") was on track to complete the settlements from previous school years by the end of the 2019-2020 school year. Indeed, as of March 1, 2020, NYCDOE had completed over 65% of the settlements for 2018-2019, and prior, that were open at the beginning of the 2019-2020 school year, and had 33% of the school year left to complete the remainder of the open settlements from these earlier school years.

The sudden closure of offices and schools due to COVID-19 necessitated a complete reworking of the settlement process, including a transition to remote work for the entire staff of SEU, the creation of a process for settlement stipulations to be signed and transmitted electronically, and arrangements for parents to re-send stipulations which had previously been mailed to NYCDOE offices. These delays were compounded by the loss of approximately 15% of SEU's staff due to the budget crisis resulting from COVID-19, and the ensuing cancellation of NYC's contracts with temporary staffing agencies in early April. The budget crisis from COVID-19 has also prevented SEU from filling any of its remaining vacancies.

Despite the limitations presented from the change to working from home, we have been able to establish a working system for approximately 100 DOE attorneys to continue to negotiate and enter into settlement agreements.  Between March 1, 2020 and June 30, 2020, the DOE reduced the number of

State Def. 5100

open settlements for the 2018-19 school year and prior by more than one third (constituting approximately 13% of the total settlements for the 18-19 school year and prior).

To ensure that SEU continues to make progress towards completing settlements, attorneys report monthly on their case progress and regularly check-in with supervisory staff. Progress on the cases from 2018-19 and earlier is reviewed by management on a semi-monthly basis.  However, completion of the open settlements for prior school years is dependent upon some factors outside of NYCDOE's control. Most critically, in nearly 20% of the remaining open settlements for 2018-2019 and previous school years, parents have not provided the necessary documentation in order to commence settlement negotiations. NYCDOE cannot do anything to advance the completion of settlements where parent or their counsel are not providing necessary information.

Finally, NYCDOE is currently receiving an influx of Ten Day Notices ("TDN") for 2020-2021 claims, which are reviewed by SEU on an expedited basis.

NYCDOE remains optimistic that, for the cases for which it has the necessary documentation from parents, SEU will complete the majority of open settlements for the 2018-2019 school year, and prior, by NYSED's September 15, 2020 deadline.

With respect to pendency, the DOE has implemented the following protocol:

NYCDOE developed a form for parents and advocates to set forth what they believe is pendency and the underlying basis for pendency.  On June 9, 2020, DOE communicated with parents' bar requesting that parents or their counsel submit this pendency determination form identifying student's pendency claim and the basis therefore, with their DPC or TDN (if they are filing one). A copy of this email, together with the PDF fillable form, is included with this letter.  Parents' bar has been complying with this request and have expressed no concerns about it.  Where the NYCDOE does not agree with the parent's pendency request, NYC IHO will be notified in order that the case can be assigned for a pendency hearing.  Pendency requests are being reviewed in accordance with the following protocol:

- **Public School cases**

The Impartial Hearing Representation Office ("IHRO") and District 75 litigators are continuing to review pendency determination forms on all public school cases and ensuring that uncontested pendency is implemented in DOE programs and services. To the extent that uncontested pendency is for non-DOE services/programs, IHRO and D75 will send the pendency determination form to the Impartial Hearing Office, which will be processed and implemented by the Impartial Hearing Order Implementation Unit (IHOIU).

- **Tuition requests with corresponding Ten day Notice (TDN) as required by the IDEA**

SEU is analyzing pendency requests during TDN review and determining whether pendency is uncontested. When a DPC is filed, SEU will send the pendency determination to the case manager at NYCIHO to be uploaded and implemented by Impartial Hearing Order Implementation Unit (IHOIU).

- **DPCs with no corresponding TDN**

The CSEs are reviewing pendency determination forms on all cases handled by the CSEs that do not have TDNs. After a resolution meeting is held on these cases, if the matter cannot be successfully

resolved, the CSE will send the pendency determination form to the case manager at NYCIHO if pendency is uncontested.  The pendency determination will then be referred to NYCIHO for processing to be implemented by IHOIU.

Sincerely,

*Judy Nathan*

Judy Nathan
Executive Deputy Counsel
Risk Management & Litigation

Cc:     John D'Agati
        Kimberly Wilkins
        Kevin Smith
        Christopher Suriano
        Joanne LaCrosse
        Judy Swierczewski
        Robyn Ryan
        Catheryn Tisenchek
        Karin Goldmark
        Mary Wall
        Carrie Bateman
        Cheryl Williams



**Department of Education**
Chancellor Richard A. Carranza

Judy Nathan
Executive Deputy Counsel

July 13, 2020

Louise DeCandia
New York State Education Department
Chief, Special Education Services
89 Washington Avenue
Albany, New York 12234

Dear Louise,

I am writing in reply to your June 26, 2020 letter regarding reprioritization of the cases awaiting assignment to an impartial hearing officer ("IHO").

### Appointment of IHO to Hear Contested Pendency

As described in my July 8, 2020 letter, NYCDOE is currently reviewing all new filings with the goal of implementing pendency internally where it is not contested. You indicate in your June 26 letter that NYSED consents to a temporary practice whereby IHOs will be assigned to conduct a pendency hearing on cases where pendency is contested, after which the case will be placed back on the waitlist. You note that this practice may create frustration amongst the hearing officers. For transparency, as well as to ensure that IHOs are aware that the cases are being assigned for pendency purposes only, and in order to prevent a backlash from the IHOs, NYCDOE asks that NYSED communicate this process to the IHOs. In the alternative, NYCIHO can send a communication to the hearing officers making clear that this practice was jointly agreed upon by NYSED and NYCDOE.

NYCDOE also seeks guidance from NYSED as to how contested pendency matters should be assigned to IHOs: (1) rotationally to all IHOs, or (2) to a dedicated IHO or group of IHOs who will handle pendency matters. In the absence of guidance from NYSED, NYCIHO proposes that IHOs who currently have fewer than 200 cases be asked to take on contested pendency hearings. Please note that there are currently a number of these cases that have been identified, and parents are anxious to know that their cases will be assigned for a pendency hearing, so NYCDOE believes this process must be finalized immediately.

### Refiled Due Process Complaints

NYCDOE agrees with the assertion that potential consolidations should be a high priority, after expedited hearing requests and remands, for the reasons set forth in your June 26 letter. However, NYCDOE disagrees that refiled cases, as defined by current practice at NYCIHO, are a high priority. NYCDOE proposes that refiled cases should be narrowly defined to include only

State Def. 5103

Hyman Decl. Ex. NN - 60

complaints based on the same or substantially similar claims for the same school year(s) as made in a prior due process complaint that was previously withdrawn by the party in the last year. The broad definition of refiled cases, as derived from NYSED guidance, has led to the provision of pendency in a somewhat timely manner but it currently allows forum shopping and unfair access to due process for filers who are savvy enough to manipulate the rules in their favor. NYCDOE has implemented robust pendency procedures which will work more efficiently to provide pendency to all students and not just those whose cases are refiled cases for a different school year.

### Proposed Reprioritization of the Waitlist

You have directed NYCDOE to "undertake…an immediate individual review and prioritization for all cases already on the waitlist." This is simply not feasible given the influx of Due Process Complaints at NYCIHO, as well as conflicting directives to complete outstanding settlements and internally process pendency. Instead, NYCDOE will reach out to Parents and their counsel for all cases on the waitlist and ask them to submit the attached coversheet identifying student's current attendance status and pendency. NYCDOE proposes to give Parents a deadline by which to respond, after which time all cases will be reprioritized based on the responses received. For cases filed by *pro se* parents, NYCIHO will review DPCs and assign a category if Parent does not respond or does not respond in a manner which conveys an understanding of the proposed categories. Until the deadline for response, NYCDOE will continue to prioritize by date of filing, pursuant to NYSED's November 18, 2019 directive. We have attached the proposed coversheet for your review.

NYCDOE also proposes to ask Parents to submit this coversheet with all new DPC filings, so that NYCIHO can prioritize for assignment to IHOs in an efficient manner. Within each category, cases will be prioritized by date of filing. NYCDOE believes it would be appropriate to designate an ombudsman who can address requests by Parents who believe that their individual circumstances necessitate a higher prioritization of their case than their category would otherwise merit is a reasonable suggestion. NYCDOE believes that ombudsman must be a NYSED employee, as NYCDOE lacks the authority to prioritize cases for assignment to an IHO outside of the agreed-upon protocol.

### 4. IHS Automated Appointment System

NYCDOE reiterates its understanding that these waitlist procedures are a temporary measure in place until the IHO automated appointment system in IHS is implemented. NYCDOE will provide updated screens to NYSED by July 29, 2020 with a view to implement the appointment system shortly thereafter. With the automated appointment system in place the waitlist will become moot because every case on the waitlist will be placed into the automated appointment system and appointments will be offered to hearing officers on the rotational list in accordance with 200.2(e)(1).

### 5. Case Closure Coversheet

NYCDOE is reviewing the information requested on the closure sheet attached to your June 26 letter. At present, providing this data to NYSED would delay case closure in all resolutions and

settlements, as this is not a format in which NYCDOE tracks data. NYCDOE is working on a proposed closure sheet which would align with the information NYSED is seeking as well as the data NYCDOE currently maintains. We hope to have a proposal to you shortly.


Sincerely,

*Judy Nathan* /EM

Judy Nathan
Executive Deputy Counsel
Risk Management & Litigation

cc:    John D'Agati
       Kimberly Wilkins
       Kevin Smith
       Christopher Suriano
       Joanne LaCrosse
       Judy Swierczewski
       Robyn Ryan
       Catheryn Tisenchek
       Karin Goldmark
       Mary Wall
       Carrie Bateman
       Cheryl Williams

SPECIAL EDUCATION IMPARTIAL HEARING REQUESTS RECEIVED IN THE
SPECIFIED SCHOOL YEAR

| New York State | 2013-14 | 14-15 | 15-16 | 16-17 | 17-18 | 18-19 |
|---|---|---|---|---|---|---|
| # Requests | 6551 | 5200 | 5464 | 6282 | 7635 | 10189 |
| # Adjudicated/Decisions Rendered | 1542 | 847 | 946 | 1438 | 1910 | 2968 |
| # non-adjudicated** | 4920 | 4352 | 4517 | 4826 | 5527 | 5683 |
| # not yet closed | 1 | 1 | 1 | 17 | 198 | 1538 |

| New York City | 2013-14 | 14-15 | 15-16 | 16-17 | 17-18 | 18-19 |
|---|---|---|---|---|---|---|
| # Requests | 6022 | 4734 | 5026 | 5779 | 7144 | 9694 |
| # Adjudicated/Decision Rendered | 1479 | 795 | 905 | 1381 | 1864 | 2929 |
| # non-adjudicated** | 4542 | 3938 | 4121 | 4381 | 5084 | 5249 |
| # not yet closed | 1 | 1 | 0 | 17 | 196 | 1516 |

**Extensions as of 1/14/19**
**NYS Trend Since SY 2014 – 2015**

|  | SY 2014-15 | SY 2015-16 | SY 2016-17 | SY 2017-18 | SY 2018-19 |
|---|---|---|---|---|---|
| **STATEWIDE** | 15067 | 17448 | 24781 | 36370 | 20569 |
| **NYC** | 14111 | 16599 | 23767 | 35157 | 19937 |
| **ROS** | 956 | 849 | 1013 | 1213 | 632 |

LEGEND:     STATEWIDE – ALL LOCAL EDUCATIONAL AGENCIES IN NYS
            NYC – NEW YORK CITY
            ROS – REST OF STATE

**Recusals as of 1/14/19**
**NYS Trend Since SY 2014 – 2015**

|  | SY 2014-15 | SY 2015-16 | SY 2016-17 | SY 2017-18 | SY 2018-19 |
|---|---|---|---|---|---|
| **STATEWIDE** | 3334 | 1705 | 3963 | 5674 | 6946 (so far) |
| **NYC** | 3310 | 1698 | 3946 | 5644 | 6935 |
| **ROS** | 24 | 7 | 17 | 30 | 11 |

LEGEND:     STATEWIDE – ALL LOCAL EDUCATIONAL AGENCIES IN NYS
            NYC – NEW YORK CITY
            ROS – REST OF STATE