UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

E.F., on behalf of himself and his minor child, O.F.;
J.R., on behalf of herself and her minor child, K.R.;
J.F., on behalf of himself and his minor child, H.F.;
L.V., on behalf of herself and her minor child, N.F.;
M.S. on behalf of himself and his minor children, J.S.;
and Q.S., and all other similarly situated,

Plaintiffs,

- against -

21 Civ. 11150 (ALC) (SN)

MAYOR ERIC ADAMS, in his Official Capacity;
THE CITY OF NEW YORK, CHANCELLOR
DAVID BANKS, in his Official Capacity; NEW
YORK CITY DEPARTMENT OF EDUCATION;
NEW YORK CITY BOARD OF EDUCATION;
COMMISSIONER BETTY ROSA, in her Official
Capacity; NEW YORK STATE EDUCATION
DEPARTMENT; COMMISSIONER JONI
KLETTER, in her Official Capacity; THE OFFICE
OF ADMINISTRATIVE TRIALS AND HEARINGS,

Defendants.

## THE STATE DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**LETITIA JAMES**
Attorney General
State of New York
*Attorney for the State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8910

ELYCE N. MATTHEWS
MARK R. FERGUSON
Assistant Attorneys General
*of Counsel*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 3

      A.   The IDEA's Procedural Framework and Due Process Rights ......................... 3

      B.   The Merced Report and the 2019 Compliance Assurance Plan ...................... 4

      C.   The 2021 Memorandum of Agreement and the OATH Plan ........................... 7

PROCEDURAL HISTORY .................................................................................................. 9

PRELIMINARY INJUNCTION STANDARD ................................................................... 10

ARGUMENT ........................................................................................................................ 11

POINT I:   PLAINTIFFS FAIL TO DEMONSTRATE IRREPARABLE HARM ABSENT
            INJUNCTIVE RELIEF ..................................................................................... 11

POINT II:  THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST
           STRONGLY FAVOR THE TRANSFER OF THE DUE PROCESS HEARING
           SYSTEM TO OATH ........................................................................................ 15

POINT III: PLAINTIFFS FAIL TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD
           OF SUCCESS ON THE MERITS ................................................................... 18

      A.   Plaintiffs Lack Standing Because They Cannot Demonstrate a Concrete
          Injury ............................................................................................................... 18

      B.   Plaintiffs' Claims are Not Ripe Because the Only Injury They Allege is
          Remote and Speculative .................................................................................. 22

      C.   The IDEA Does Not Prohibit the OATH Plan ................................................ 26

          1.   The OATH IHOs are Not Categorically Biased Simply Because They are
              Employed by New York City .................................................................. 26

          2.   The OATH IHOs Will Possess the Requisite Expertise and Training ...... 28

          3.   The MOA Does Not Improperly Delegate the Hearing Function ............. 30

i

D.   Plaintiffs Lack Standing to Enforce The 2002 Order and Stipulation ............ 34

E.   Plaintiffs Are Not Likely to Prevail on Their Equal Protection Claim Because There was a Rational Basis for the OATH Plan ............................................. 36

F.   Plaintiffs are Unlikely to Succeed on Their Remaining Causes of Action..... 37

CONCLUSION .................................................................................................................... 39

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*A.H. by & through Hester v. French*,
   985 F.3d 165 (2d Cir. 2021)............................................................................................18

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967), *overruled on other grounds by Califano v. Sanders*, 430
   U.S. 99 (1977)..................................................................................................23, 24, 25

*Allen v. Cuomo*,
   100 F.3d 253 (2d Cir. 1996)............................................................................................28

*Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*,
   347 F.3d 436 (2d Cir. 2003)............................................................................................25

*Askir v. Brown & Root Servs. Corp.*,
   1997 WL 598587 (S.D.N.Y. Sept. 23, 1997).........................................................35

*Avaras v. Clarkstown C.S.D.*,
   2018 WL 4964230 (S.D.N.Y. Oct. 15, 2018) .........................................................31

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*,
   692 F.3d 42 (2d Cir. 2012)....................................................................................35, 36

*Beal v. Stern*,
   184 F.3d 117 (2d Cir. 1999)............................................................................................11

*Blackman v. Dist. of Columbia*,
   277 F. Supp. 2d. 89 (D.D.C. 2003) ..............................................................................31

*Blackman v. Dist. of Columbia*,
   321 F. Supp. 2d. 99 (D.D.C. 2004) ..............................................................................32

*Burr by Burr v. Ambach*,
   863 F.2d 1071 (2d Cir. 1988), *vacated on other grounds, Sobol v. Burr*, 492
   U.S. 902 (1989)..............................................................................................................33

*Carver v. City of New York*,
   621 F.3d 221 (2d Cir. 2010)............................................................................................19

*Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-
   Medco Managed Care, L.L.C.*,
   433 F.3d 181 (2d Cir. 2005)............................................................................................21

*Cheung v. Bristol-Myers Squibb Co.*,
  282 F. Supp. 3d 638 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-
  Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019)......................................................31

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985)......................................................................................36

*City of Newburgh v. Sarna*,
  690 F. Supp. 2d 136 (S.D.N.Y. 2010)..............................................................10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..........................................................................19, 20, 21

*Connecticut v. Duncan*,
  612 F.3d 107 (2d Cir. 2010)............................................................................23

*Conway v. Icahn & Co., Inc.*,
  16 F.3d 504 (2d Cir. 1994)..............................................................................35

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019)............................................................................22

*Demirayak v. City of New York*,
  746 F. App'x 49 (2d Cir. 2018), *cert. denied sub nom.*, 139 S. Ct. 1600 (2019) ...................11

*Dizak v. Hawks*,
  No. 15 Civ. 1171, 2016 WL 4702438 (N.D.N.Y. Sept. 8, 2016) ...........................................12

*Doe v. N.Y.U.*,
  666 F.2d 761 (2d Cir. 1981)............................................................................11

*eBay, Inc. v. MercExchange*,
  547 U.S. 388 (2006)................................................................................15, 16

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*,
  733 F.3d 393 (2d Cir. 2013)............................................................................22

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993)......................................................................................37

*Feingold v. New York*,
  366 F.3d 138 (2d Cir. 2004)............................................................................38

*Flores v. Town of Islip*,
  382 F. Supp. 3d 197 (E.D.N.Y. 2019) ................................................................17

*Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*,
  No. 09 Civ. 0237, 2009 WL 790312 (E.D.N.Y. Mar. 23, 2009) ...........................................13

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007)..................................................................................................10

*Gronbach v. NYSED, et al.,*
  Index No. 910574-21 ...................................................................................................9, 13

*Hafez v. City of Schenectady,*
  No. 117 Civ. 0219, 2017 WL 6387692 (N.D.N.Y. Sept. 11, 2017) ......................................17

*Hanson Trust PLC v. SCM Corp.,*
  774 F.2d 47 (2d Cir. 1985)..................................................................................................10

*Harris v. Mills,*
  572 F.3d 66 (2d Cir. 2009)..................................................................................................38

*Heldman on Behalf of T.H. v. Sobol,*
  846 F. Supp. 285 (S.D.N.Y. 1994) ..................................................................................26, 27

*Heldman on Behalf of T.H. v. Sobol,*
  962 F.2d 148 (2d Cir. 1992)...........................................................................................26, 27

*Heller v. Doe,*
  509 U.S. 312 (1993)...........................................................................................................37

*Hoffman v. DiFalco,*
  424 F. Supp. 902 (S.D.N.Y. 1976) .......................................................................................22

*Holiday Inns of America, Inc. v. B & B Corp.,*
  409 F.2d 614 (3d Cir. 1969)................................................................................................13

*Honig v. Doe,*
  484 U.S. 305 (1988)...........................................................................................................14

*In re Corp. Res. Servs., Inc.,*
  849 F. App'x 320 (2d Cir. 2021) .........................................................................................35

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
  725 F.3d 65 (2d Cir. 2013)..................................................................................................22

*Isaacs v. Bowen,*
  865 F.2d 468 (2d Cir. 1989)................................................................................................25

*J.L. on behalf of J.P. v. New York City Dep't of Educ.,*
  324 F. Supp. 3d 455 (S.D.N.Y. 2018)...................................................................................38

*Jacky W. v. New York City Bd. of Educ.,*
  848 F. Supp. 358 (E.D.N.Y. 1994) .......................................................................................33

*Jane Does 1-10, et al. v. Harold Levy*,
    No. 02 Civ. 6495 (S.D.N.Y.) ................................................................. 35

*Kelly v. N.Y. Civil Serv. Comm'n*,
    632 F. App'x 17 (2d Cir. 2016) ............................................................. 38

*Lehr v. Robertson*,
    463 U.S. 248 (1983) ............................................................................. 36

*Levin v. Tiber Holding Corp.*,
    277 F.3d 243 (2d Cir. 2002) ................................................................. 35

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 19

*M.G. v. New York City Dep't of Educ.*,
    982 F. Supp. 2d 240 (S.D.N.Y. 2013) ................................................... 15

*M.W. v. New York City Dept. of Educ.*,
    No. 15 Civ. 5029, 2015 WL 5025368 (S.D.N.Y. Aug. 25, 2015) ........... 14

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) ................................................................... 19

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ................................................................. 22

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
    75 F. Supp. 3d 592 (S.D.N.Y. 2014) ............................................. 10, 12

*Marchi v. Bd. of Coop. Educ. Servs.*,
    173 F.3d 469 (2d Cir. 1999) ................................................................. 25

*Massey v. D.C.*,
    400 F. Supp. 2d 66 (D.D.C. 2005) ....................................................... 15

*Mayson by Mayson v. Teague*,
    749 F.2d 652 (11th Cir. 1984) ............................................................. 33

*McPherson v. Coombe*,
    992 F. Supp. 229 (W.D.N.Y. 1997) ..................................................... 12

*Moore v. Consol. Edison Co.*,
    409 F.3d 506 (2d Cir. 2005) ................................................................. 10

*Murphy v. New Milford Zoning Comm'n*,
    402 F.3d 342 (2d Cir. 2005) ......................................................... 22, 23

*Muth v. Cent. Bucks Sch. Dist.*,
    839 F.2d 113 (3d Cir. 1988), *rev'd sub nom. Dellmuth v. Muth*, 491 U.S. 223
    (1989) ................................................................................................................33

*N.Y. Civil Liberties Union v. Grandeau*,
    528 F.3d 122 (2d Cir. 2008)........................................................................23, 24

*New York State Rifle & Pistol Ass'n v. City of New York*,
    86 F. Supp. 3d 249 (S.D.N.Y. 2015), *aff'd sub nom. New York State Rifle &*
    *Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45 (2d Cir. 2018) ........................16

*New York v. United States Dep't of Health & Hum. Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019)........................................................22, 24

*New York v. United States Dep't of Homeland Sec.*,
    408 F. Supp. 3d 334 (S.D.N.Y. 2019), *aff'd as modified*, 969 F.3d 42 (2d Cir.
    2020) ................................................................................................................22

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................................10

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)........................................................................................21

*OurBus, Inc. v. City of Ithaca, New York*,
    No. 19 Civ. 0356, 2019 WL 2710111 (N.D.N.Y. June 28, 2019) ....................17, 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..........................................................................................38

*People ex. rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)............................................................................11

*Purcell v. New York City Dep't of Corr.*,
    111 F. App'x 57 (2d Cir. 2004) ........................................................................26

*Robert M. v. Benton*,
    634 F.2d 1139 (8th Cir. 1980) ........................................................................33

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)..............................................................................22

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999)........................................................................11, 13

*Romer v. Evans*,
    517 U.S. 620 (1996)........................................................................................37

*Ross v. Bank of Am., N.A.*,
   524 F.3d 217 (2nd Cir. 2008)..............................................................................22

*Rothenberg v. Daus*,
   No. 08 Civ. 567, 2010 WL 3860425 (S.D.N.Y. Sept. 8, 2010), *report and
   recommendation adopted*, 2010 WL 3860417 (S.D.N.Y. Sept. 30, 2010), *aff'd
   in part, vacated in part, remanded*, 481 F. App'x 667 (2d Cir. 2012), as
   amended (July 27, 2012)...............................................................................26, 27

*Rothenberg v. Daus*,
   No. 08 Civ. 567, 2014 WL 3765724 (S.D.N.Y. July 31, 2014) ................................27, 28, 34

*S.W. by J.W. v. Warren*,
   528 F.Supp.2d 282 (S.D.N.Y. 2007)......................................................................38

*Saget v. Trump*,
   375 F. Supp. 3d 280 (E.D.N.Y. 2019) .................................................................15

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010).........................................................................10, 15

*Scaggs v. N.Y. Dep't of Educ.*,
   No. 06 Civ. 799, 2007 WL 1456221 (E.D.N.Y. May 16, 2007)...........................................38

*Simmonds v. INS*,
   326 F.3d 351 (2d Cir. 2003)........................................................................24, 25

*Simon v. Eastern Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976)....................................................................................21

*Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*,
   468 F. App'x 43 (2d Cir. 2012) .......................................................................12

*State of N.Y. v. Nuclear Regul. Comm'n*,
   550 F.2d 745 (2d Cir. 1977)...........................................................................13

*T-Mobile Ne. LLC v. Riverhead Water Dist.*,
   No. 15 Civ. 6310, 2016 WL 373968 (E.D.N.Y. Jan. 29, 2016)............................................13

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
   60 F.3d 27 (2d Cir. 1995)..........................................................................11, 12

*Triebwasser & Katz v. AT&T Co.*,
   535 F.2d 1356 (2d Cir. 1976).........................................................................10

*United States v. Am. Trucking Ass'ns*,
   310 U.S. 534 (1940)..................................................................................31

*United States. v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) ......................................20

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)......................................................................19

*Warth v. Seldin*,
    422 U.S. 490 (1975)...........................................................................19, 21

*Weinberger v. Romero–Barcelo*,
    456 U.S. 305 (1982)..................................................................................16

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)..................................................................................20

*Windsor v. United States*,
    833 F. Supp. 2d 394 (S.D.N.Y.), *aff'd*, 699 F.3d 169 (2d Cir. 2012), *aff'd*, 570
    U.S. 744 (2013)........................................................................................36

*Winston v. City of Syracuse*,
    887 F.3d 553 (2d Cir. 2018)......................................................................36

*Winter v. Natural Resources Defense Counsel*,
    555 U.S. 7 (2008)........................................................................10, 12, 15

*Withrow v. Larkin*,
    421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)..................................27

*Y.D. v. N.Y.C. Dept. of Education*,
    2016 WL 698139 (S.D.N.Y Feb. 19, 2016)..............................................31

*You, Xiu Qing v. Nielsen*,
    321 F. Supp. 3d 451 (S.D.N.Y. 2018)......................................................10

**UNITED STATES CONSTITUTION**

U.S. Const.
    amend. XI...............................................................................................38
    amend. XIV.......................................................................................passim

**FEDERAL STATUTES**

20 U.S.C.
    § 1400 *, et seq.,* .................................................................................passim

§ 1401(32)............................................................................................................................3
§ 1412(a)(1)(A)....................................................................................................................3
§ 1412(a)(11)........................................................................................................................3
§ 1415..................................................................................................................................4
§ 1415(i)(2)(A).............................................................................................................4, 14
§ 1415(b)(6)–(7)..................................................................................................................3
§ 1415(f)(1).........................................................................................................................32
§ 1415(f)(1)(B).....................................................................................................................3
§ 1415(f)(1)(B)(ii)................................................................................................................4
§ 1415(f)(3).....................................................................................................................4, 30
§ 1415(f)(3)(A)...................................................................................................................20
§ 1415(g).............................................................................................................................32

29 U.S.C. § 794............................................................................................................38, 39

## STATE STATUTES

N.Y. Educ. Law
§ 4404..........................................................................................................20, 26, 30
§ 4404(1)-(3).........................................................................................................4
§ 4404(1)(c)..........................................................................................................29
§ 4404(3).........................................................................................................4, 14
§ 4404(c)..............................................................................................................30

## FEDERAL REGULATIONS

34 C.F.R.
§ 300.507(a)(2)......................................................................................................3
§ 300.510(a)............................................................................................................3
§ 300.510(b)(1).......................................................................................................4
§ 300.511(c)(1)......................................................................................................31
§ 300.511(c)(2)......................................................................................................30
§ 300.515(a)............................................................................................................4

## STATE REGULATIONS

8 N.Y.C.R.R.
§ 200.1(x).........................................................................................................7, 29
§ 200.1(x)(4)(vi)....................................................................................................7
§ 200.5...................................................................................................................4
§ 200.5(j)..............................................................................................................30
§ 200.5(j)(3)(i)(b)..................................................................................................4

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 65.........................................................................................................1, 12

**NEW YORK CIVIL PRACTICE LAW AND RULES**

CPLR § 7801.................................................................................................................................9, 10

Defendants the New York State Education Department ("SED") and SED Commissioner Dr. Betty A. Rosa (collectively, the "State Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Individuals with Disabilities in Education Act ("IDEA") prescribes myriad substantive and procedural protections for students with disabilities. Recognizing the importance of these protections, and in accordance with their supervisory responsibilities over local school districts, the State Defendants devote extensive time and resources to ensuring that local school districts provide students with the rights and processes afforded them by the IDEA. As part of their oversight obligations, the State Defendants monitor districts' policies and procedures, provide technical assistance, and, when necessary, take action to remedy noncompliance. In doing so, the State Defendants exercise their oversight obligations and ensure that students' rights are protected.

Plaintiffs now challenge the State Defendants' actions taken in furtherance of their goal of protecting students. Specifically, Plaintiffs challenge the State Defendants' efforts to ameliorate delays suffered by students availing themselves of their IDEA rights, and to implement a more modern, effective, efficient system to adjudicate students' requests for educational services.

The IDEA provides for a process to challenge any aspect of a child's services or to allege a deprivation of a free appropriate public education. This is accomplished by filing a due process complaint which, in cases that are not otherwise resolved, culminates in a hearing and decision. In New York City, the number of due process complaints filed has increased significantly over the past several years, and many of those cases are not getting resolved within the timelines set forth in the relevant statutes and regulations. SED has taken numerous steps to address this problem, as

1

set forth more thoroughly below, including, *inter alia*, the imposition of a Compliance Assurance Plan on the New York City Department of Education ("DOE"); the amendment of regulations; the recruitment, training, and certification of additional hearing officers; and the regular and consistent communication with DOE regarding improvements of the due process system.

As of January 21, 2022, there were 16,253 pending due process complaints. Of those complaints, 5,797 have not been resolved within the timelines set out in the relevant laws and regulations. And the numbers continue to climb. Despite having over 150 IHOs certified to accept cases in New York City, those IHOs operate as per diem independent contractors, and the sheer volume of complaints is simply too much for the system to handle. Accordingly, on December 1, 2021, recognizing that it was necessary to utilize full-time impartial hearing officers to effectively and efficiently manage the number of due process complaints, SED, DOE, and the Office of Administrative Trials and Hearings of the City of New York ("OATH") entered into a Memorandum of Agreement which memorialized the parties' intent to establish a specialized unit at OATH to adjudicate due process hearings in New York City (the "OATH Plan"). *See* Memorandum of Agreement between OATH, DOE, and SED, dated December 1, 2021 ("MOA"), ECF No. 5-1, Ex. A to Plaintiffs' Amended Complaint ("Am. Compl."). By entering into the MOA, the parties aim to facilitate the effective management of current and future due process complaints in New York City.

In bringing this action, Plaintiffs, parents of students with disabilities, claim that the OATH Plan violates the IDEA and other laws because the IHOs to be hired by OATH will, inherently, be biased rather than impartial, as required by the law. Plaintiffs fail to present any plausible legal or factual support for this assertion and are thus unable to meet any of the required elements for a preliminary injunction. First, Plaintiffs fail to show that they will be irreparably harmed in the

absence of a preliminary injunction, because they do not allege a concrete and imminent injury. *See* Point I, *infra*. Second, Plaintiffs cannot show that the balance of hardships tips decidedly in their favor or that the proposed injunction is in the public interest. *See* Point II, *infra*. Finally, Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims because, *inter alia*, Plaintiffs lack standing, Plaintiffs' claims are not ripe, the OATH Plan does not violate the IDEA, and Plaintiffs cannot prevail on their remaining claims. *See* Point III, *infra*. Accordingly, the Court should deny Plaintiffs' motion for a preliminary injunction.

## STATEMENT OF FACTS

### A.  The IDEA's Procedural Framework and Due Process Rights

Pursuant to the IDEA and its implementing regulations, a local educational agency ("LEA") – here, DOE – must ensure that students with disabilities receive the educational supports and services mandated by their Individualized Education Program ("IEP"). *See*, *e.g.*, 20 U.S.C. §§ 1412(a)(1)(A); 1414(d)(2). The IDEA further requires that each State have a state educational agency ("SEA") that is responsible for overseeing and monitoring LEAs, ensuring that IDEA requirements are met, and that LEAs comply with the IDEA. *See*, *e.g.*, 20 U.S.C. § 1401(32); § 1412(a)(11). In New York State, SED is the SEA charged with this oversight and monitoring.

Pursuant to the IDEA's due process protections, parents have the right to challenge any aspect of their child's IEP or allege a deprivation of a free appropriate public education ("FAPE") by filing a due process complaint. 20 U.S.C. § 1415(b)(6)–(7); 34 C.F.R. § 300.507(a)(2).[1] To adjudicate these due process challenges, parents are entitled to a due process hearing before an

---

[1]     When a parent files a due process complaint, a 30-day "resolution period" is commenced, during which the LEA must have a settlement meeting with the parent within 15 days of receiving a complaint. *See* 34 C.F.R. § 300.510(a); *see also* 20 U.S.C. § 1415(f)(1)(B). If the LEA and parent do not resolve the due process complaint to the parent's satisfaction by the close of the 30-day resolution period, the matter proceeds to an impartial hearing. 20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b)(1). The resolution period is not at issue in this case.

impartial hearing officer ("IHO"). *See* generally 20 U.S.C. § 1415; N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 8 § 200.5. New York State has a two-tier administrative system for adjudicating due process complaints, which means that IHOs hear cases at the district level and issue decisions. Either party may appeal those decisions to a state review officer ("SRO"), who issues a final, State-level decision. N.Y. Educ. Law § 4404(1)-(3). An SRO's decision may be appealed in state or federal court. *Id.* § 4404(3); 20 U.S.C. § 1415(i)(2)(A). The hearing "may not be conducted by an employee of the State educational agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3). The implementing regulations further set forth minimum procedures for the conduct of impartial due process hearings and minimum requirements for IHOs. The applicable regulations require that a final decision is reached in the hearing and that such decision is provided to the parties "not later than 45 days after the expiration of the" resolution period. 34 C.F.R. § 300.515(a); 8 N.Y.C.R.R. § 200.5(j)(3)(i)(b).

In New York City, due process hearings are administered by the New York City Impartial Hearing Office, which controls the administrative functions related to due process hearings, including processing requests for hearings, appointing IHOs, calendaring dates, communicating with parties, and providing hearing-related services.[2]

**B.  The Merced Report and the 2019 Compliance Assurance Plan**

In January 2018, in furtherance of its oversight obligations as the SEA, SED engaged Deusdedi Merced of Special Education Solutions, a special education consultant, to conduct an independent review of the New York City Impartial Hearing Office. In February 2019, after conducting the review, Merced issued a report ("Merced Report"). *See* Merced Report, ECF No. 9-21, Ex. U to the Declaration of Elisa Hyman ("Hyman Decl."). With respect to due process

---

[2]     *See* https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings (last visited February 1, 2022).

hearings, specifically, the Merced Report found, *inter alia*, that, for school year 2016-17, the number of due process complaints filed in New York State nearly totaled the number of the six next largest states **combined** (California, Florida, Illinois, New Jersey, Pennsylvania, and Texas). *See* Merced Report at 11-12. Of the due process complaints filed in New York State in 2016-17, approximately 92% were filed in New York City. *Id.* at 12. In 2017-18, that number increased to 94% and in 2018-19 (as of the date of the report), approximately 96% of the due process complaints filed in New York State were filed in New York City. *Id*. The Merced Report also found that between 2014-15 and 2018-19, New York City had a 51% increase in the number of due process complaints filed, and that the average number of due process complaints filed per day increased from 19 per day in 2014-15 to 51 per day in 2018-19 (as of the date of the report). *Id*. at 14. The Merced Report found that between 2014-15 and 2018-19, the average number of matters listed on hearing calendars per day increased from 55 per day to 122 per day. *Id*. at 14. Moreover, as of the 2019-20 school year, the average case length in New York City was 259 days (up from 149 days in 2014-15). *Id*. at 18-19; Deusdedi Merced, Update on the NYC Impartial Hearing System, dated January 12, 2020, at 7 ("Merced Update"), Ex. A to the Declaration of Elyce N. Matthews ("Matthews Decl.").

In response, in May 2019, SED issued a Compliance Assurance Plan to DOE (the "CAP"). *See* CAP, ECF No. 9-27, Ex. AA to Hyman Decl. Section III of the CAP focused specifically on due process issues and documented the steady increase in due process complaint filings since the 2015-16 school year. *See* CAP, Section III.

The CAP stated that DOE had failed to provide parents access to adequate due process after a due process complaint had been filed. *See* CAP at 18. The CAP further noted that DOE had received an increasing number of due process complaints in the previous years; from 5,026 in

2015-16 to 7,448 (for only a portion of the 2018-19 school year). *Id.* at 19. The CAP also noted

that, at the time of the Merced Report in February 2019, New York City comprised 96% of due

process complaints filed throughout New York State for that school year. *Id.* at 19. The CAP also

identified other areas of noncompliance by DOE including failure to provide access to due process

data to SED, failure to ensure access to mediation, and failure to provide parents prior written

notice as prescribed by law. *Id.* at 20-22. SED issued the CAP to DOE to give DOE notice of

specific issues with the due process system that needed to be addressed and to provide guidance

and a roadmap to DOE to realize the required correction action. SED pledged to provide ongoing

and targeted support and technical assistance to aid DOE in developing a plan to address the issues

identified in the CAP and achieve the prescribed corrective action. *Id.* at 22-24.

Since SED issued the CAP, and through subsequent communications and meetings, SED

has continued to exercise oversight over DOE, identifying numerous issues with the due process

system and directing DOE to take a number of actions to remedy the flaws. *See* the Declaration of

Christopher Suriano ("Suriano Decl.") at ¶ 16. Despite these directives to DOE, and despite SED

nearly doubling the number of certified IHOs in the last two years, the number of pending due

process complaints continues to climb. For the 2019-20 school year, 10,798 due process

complaints were filed in New York City. Of those cases, the number of due process complaints in

New York City that were resolved, either by decision, dismissal, withdrawal, consolidation, or

settlement, within the time frame required by the IDEA was 5,551. Suriano Decl. at ¶ 18. For 2020-

21, the number of due process complaints filed in New York City increased to 14,264 and, of those

cases, the number resolved within the time frame required by the IDEA was 3,471. Suriano Decl.

at ¶ 19. As of December 1, 2021, there were 8,985 cases that had not been assigned to an IHO and

remained on a waitlist for assignment ("waitlist" or "backlog" cases). Suriano Decl. at ¶ 20.

SED has also devoted significant resources to the IHO certification and training process. In New York State's two-tier system, State regulations govern who may serve as an IHO. *See*, *e.g.*, 8 N.Y.C.R.R. 200.1(x). SED is responsible for training and certifying the Per Diem IHOs,[3] who work as independent contractors on a part time  basis. Since January 1, 2020, SED has held three trainings: in March 2020, October 2020, and April 2021 and, in that timeframe, has trained and certified 107 per diem impartial hearing officers. Suriano Decl. at ¶¶ 23, 24. As of January 30, 2022, the total number of impartial hearing officers certified to work in New York City is 154. Suriano Decl. at ¶ 24. Per the current regulations, IHOs must conduct one hearing every two years to remain certified. 8 N.Y.C.R.R. 200.1(x)(4)(vi).

### C.  The 2021 Memorandum of Agreement and the OATH Plan

Through SED's diligent monitoring of the situation, and its continual engagement with DOE on this issue, it recognized that further steps needed to be taken in order to address the mounting number of due process complaints in New York City. Suriano Decl. at ¶ 26. Specifically, in order to improve the effectiveness and efficiency of the system, SED determined that a cadre of full-time impartial hearing officers was necessary. Suriano Decl. at ¶ 27. To that end, on December 1, 2021, SED entered into a Memorandum of Agreement with the OATH and DOE that establishes a Special Education Unit at OATH to adjudicate due process hearings in New York City. *See* MOA, *generally*.[4] OATH, as New York City's "central, independent administrative law court," was a natural fit for this role, as it adjudicates a wide range of issues spanning multiple City agencies. It has the fundamental structures in place to hire and manage IHOs, maintain a modern

---

[3]     As referenced in this brief, "Per Diem" IHOs are the existing cadre of IHOs, currently certified by SED as independent contractors.

[4]     In conjunction with the MOA, Executive Order 91 ("EO 91"), signed by the mayor on December 27, 2021, designates OATH as the tribunal for the due process hearings and transfers them to OATH. *See* EO 91, ECF No. 5-2, Ex. B to Am. Compl.

case management system, ensure confidentiality where appropriate, and administer an impartial, effective adjudication system.[5] Suriano Decl. at ¶ 28.

As set forth in the MOA, as part of the transition of the due process hearing system to OATH, OATH will hire 40-50 full-time hearing officers to adjudicate due process complaints, establish an electronic case filing system, and take on the ministerial and administrative aspects of the due process hearings and decisions. *See* MOA, *generally*. The MOA provides that SED remains responsible for the certification and training of all IHOs, including OATH IHOs. MOA at 3. OATH will be responsible for the supervision and oversight of the OATH IHOs, rulemaking for the new unit, and management of the administrative aspects of the cases (i.e. case management); the details of this supervision and management will be assessed and, if warranted, revised during the transition period. *Id*. at 4.

The MOA includes a transition period of several months, the exact duration of which will be determined as the process unfolds. MOA at 2. During the transition period, newly filed due process complaints may be assigned to either a Per Diem IHO or an OATH IHO. MOA at 2. The transition period will terminate six months after (i) the staffing of 40 full-time OATH IHOs who are eligible to hear cases and (ii) the establishment of an office to manage the maintenance of operation of an electronic filing system. *Id.* The MOA provides that OATH, DOE, and SED may collectively agree to a different termination of the transition period if appropriate. *Id*.

Under the MOA, OATH will take on certain administrative and ministerial responsibilities, aimed at modernizing the process and ensuring greater efficiency. *See*, *e.g.*, MOA at 1-4. Finally, the MOA specifically provides that OATH's Special Education Unit "will conduct hearings that are consistent with applicable federal and state laws and regulations" in addition to applicable

---

[5]   *See* https://www1.nyc.gov/site/oath/about/about-oath.page (last visited February 1, 2022).

administrative rules promulgated, to the extent necessary, by SED or by OATH. MOA at 5. Put simply, the OATH Plan provides for a specialized unit of full-time, trained, independent adjudicators to effectively and efficiently handle the growing number of due process complaints filed by students in New York City within the timeframes established by law.

## PROCEDURAL HISTORY

Plaintiffs are parents of students with disabilities who reside in New York City and are alleged to "ha[ve] filed" impartial hearings and who "plan[] to file" or who plan to "continue to [file impartial hearings]" on behalf of their children. *See* Am. Compl., ECF No. 5, at ¶¶ 42-47. Plaintiffs filed the Complaint in this action on December 29, 2021. ECF No. 1. On January 11, 2022, Plaintiffs filed an Amended Complaint and moved for a Temporary Restraining Order and Preliminary Injunction, with a proposed Order to Show Cause, seeking to enjoin Defendants "from taking any further action to (a) implement the Memorandum of Agreement dated December 1, 2021 (FAC, Ex. A); (b) implement the Executive Order 91 issued on December 27, 2021 (FAC, Ex. B); and (c) hire any new impartial hearing officers as employees of OATH, New York City or any of the Defendants." *See* ECF Nos. 5 – 13. On January 12, 2022, the Court denied Plaintiffs' motion for a Temporary Restraining Order and set a schedule for this motion. ECF No. 18.

The MOA was also challenged by Article 78 Petition brought in Albany County Supreme Court on December 24, 2021. *See Gronbach v. NYSED, et al.* (Index No. 910574-21). Petitioners in *Gronbach* – who are Per Diem IHOs – similarly sought a temporary restraining order, which was denied on December 29, 2021.[6]

---

[6]     The Return Date for the Article 78 proceeding is February 25, 2022. *See* NYCEF No. 29.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction "is an extraordinary remedy never awarded as of right," *Winter v. Natural Resources Defense Counsel,* 555 U.S. 7, 24 (2008), because it is "one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Hanson Trust PLC v. SCM Corp.,* 774 F.2d 47, 60 (2d Cir. 1985)). A Court has "wide discretion in determining whether to grant a preliminary injunction." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiffs cannot prevail on a motion for a preliminary injunction unless they establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff is likely to suffer irreparable injury in the absence of preliminary injunctive relief, (3) that the balance of hardships tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010); *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 604 (S.D.N.Y. 2014). The final two factors "merge when the Government is the opposing party." *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 462 (S.D.N.Y. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Further, it is well established that the purpose of a preliminary injunction "is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo." *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010) (internal quotation omitted); *see also Triebwasser & Katz v. AT&T Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976) (reversing issuance of preliminary injunction that "would in effect give the plaintiffs substantially the ultimate relief they seek ... before there has been any trial of the issues" and explaining that "the normal function of the preliminary injunction is to maintain the status quo pending a full hearing on the merits"). Indeed, when a plaintiff seeks a preliminary injunction that would provide the ultimate relief

sought in the underlying action, a heightened preliminary injunction standard applies. *See Demirayak v. City of New York*, 746 F. App'x 49, 51 (2d Cir. 2018), *cert. denied sub nom.*, 139 S. Ct. 1600 (2019); *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). Here, where Plaintiffs seek to reverse the MOA, which was signed more than two months ago, and seek the ultimate relief in the underlying action, they must show a "clear" or "substantial" likelihood of success on the merits, and a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. *People ex. rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. N.Y.U.*, 666 F.2d 761, 773 (2d Cir. 1981)); *see also Demirayak*, 746 F. App'x at 51 ("Under this heightened standard, plaintiff must make a clear showing that he is entitled to the relief requested, or that extreme or very serious damage will result from denial of preliminary relief." (internal citations omitted)). Plaintiffs fail to meet that burden.

Plaintiffs do not meet even the regular preliminary injunction standard, much less the heightened standard that applies to this case. They have not made (and cannot make) a showing of irreparable harm arising from the transition of the due process hearing system to OATH, the public interest weighs overwhelmingly in favor of denying the motion, and they fail to demonstrate a likelihood of success on the merits. Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO DEMONSTRATE IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF.

Plaintiffs cannot demonstrate irreparable harm, which is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*,

175 F.3d 227, 233–34 (2d Cir. 1999) (internal quotation marks and citation omitted). Absent "a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Id*. at 234; *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012); *Marblegate Asset Mgmt.*, 75 F. Supp. 3d at 605; *see also Winter*, 555 U.S. at 22. "Irreparable harm is an injury that is not remote or speculative but actual and imminent.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (internal quotations and citations omitted).

Plaintiffs fail to satisfy the irreparable harm requirement because the injury they allege – that their rights under IDEA will be violated if their due process complaints are assigned to OATH IHOs – is purely speculative. Plaintiffs have not demonstrated (i) that they have pending due process complaints; (ii) that they have pending due process complaints assigned to an OATH IHO; or (iii) that any assigned OATH IHO has taken any action that even suggests a modicum of impartiality. Indeed, Plaintiffs fail to submit a single affidavit or any other proof establishing any concrete, imminent injury. *See Dizak v. Hawks*, No. 15 Civ. 1171, 2016 WL 4702438, at *3 (N.D.N.Y. Sept. 8, 2016) ("Plaintiff's PI Motion must be denied because Plaintiff has failed to substantiate any allegations of irreparable harm with admissible evidence"); *McPherson v. Coombe*, 992 F. Supp. 229, 232 (W.D.N.Y. 1997) ("generalized allegations alone fall far short of the showing of irreparable harm necessary to obtain the "extraordinary remedy" of preliminary injunctive relief under Rule 65" where "Plaintiff has not alleged any specific harm, nor has he provided any affidavits other documentation to support a claim").

Instead, Plaintiffs' claims rest entirely on unfounded assumptions that are insufficient to satisfy their burden to demonstrate irreparable harm. Not a single named Plaintiff has submitted any evidence showing that Plaintiffs have a pending due process complaint before an OATH IHO, and, consequently, not a single named Plaintiff is currently experiencing, or can legitimately

expect to imminently experience any alleged bias by an OATH IHO. Moreover, beyond the fact that no Plaintiff is experiencing any actual or imminent injury, Plaintiffs fail to demonstrate how or why OATH IHOs will be biased in any way, much less in connection with their specific future due process complaints, except for the fact that they will be employees of New York City. Indeed, in the *Gronbach* case, the Court denied the Petitioners' request for a temporary restraining order because, in part, "the claim of lack of judicial independence … is contingent and speculative" and the "claim of lack of independence alone is insufficient to satisfy the irreparable harm prong." Transcript of the December 29, 2021 Court Conference in *Gronbach v. NYSED, et al.* at 49:8-11, Ex. B to Matthews Decl.

Plaintiffs' unsupported allegation that they "ha[ve] filed" or "plan[] to file" due process complaints is insufficient to meet their burden. *See State of N. Y. v. Nuclear Regul. Comm'n*, 550 F.2d 745, 755-56 (2d Cir. 1977) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights") (quoting *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)); s*ee also Rodriguez ex rel. Rodriguez*, 175 F.3d at 235 ("For the purposes of preliminary injunctions … the harm must be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm."); *T-Mobile Ne. LLC v. Riverhead Water Dist.*, No. 15 Civ. 6310, 2016 WL 373968, at *3 (E.D.N.Y. Jan. 29, 2016) (quoting *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09 Civ. 0237, 2009 WL 790312, at *6 (E.D.N.Y. Mar. 23, 2009) ("speculative and conclusory allegations are insufficient to establish irreparable harm."); *see also* Point III, A & B, *infra*.

Second, as the MOA sets forth, there is a transition period of several months, if not longer. *See* MOA, at ¶ 3. Thus, without any showing by Plaintiffs concerning the timing of their

hypothetical future due process complaints, there is no way to know whether their complaint will be assigned to a Per Diem IHO or an OATH IHO. As of today, no OATH IHO is currently hearing cases. Consequently, if Plaintiffs have a due process complaint that is currently assigned or assigned in the near future, it will be assigned to a Per Diem IHO, and there is no threat of any injury. And, during the transition period, cases may be assigned to either an OATH IHO or a Per Diem IHO. Thus, Plaintiffs' allegations of harm that may be incurred due to OATH IHOs who have not yet been hired or assigned due process complaints is pure speculation. And, critically, students who file due process complaints are not entitled to assignment to a particular IHO.

Moreover, Plaintiffs' alleged injury, while not imminent, is also *not* irreparable because there is an appeal process available to a party aggrieved by a decision rendered during the hearing process. N.Y. Educ. Law § 4404(3); 20 U.S.C. § 1415(i)(2)(A). Specifically, they may file an appeal with the SRO and, if not successful, a proceeding either in state or federal court. *Id*. Thus, to the extent Plaintiffs' purported harm stems from hypothetical bias of the presently unknown OATH IHOs, they will have the opportunity to redress any such harm through the administrative and appellate processes that are already in place.

Plaintiffs' reliance on the argument that "a child who is being denied special education services or rights under the IDEA suffers irreparable harm" is unavailing. P.I. Memo. at 50. Here, Plaintiffs have not shown that they are being denied special education services or rights under the IDEA. *See* Point III.A&B, *infra*. Plaintiffs' claims in this case are easily distinguishable from the cases they rely upon in their moving papers as none of the Plaintiffs have demonstrated that they are *currently* being denied a FAPE. In *Honig v. Doe*, 484 U.S. 305 (1988); *M.W. v. New York City Dept. of Educ.*, No. 15 Civ. 5029, 2015 WL 5025368 (S.D.N.Y. Aug. 25, 2015); *M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240 (S.D.N.Y. 2013); and *Massey v. D.C.*, 400 F. Supp. 2d

66 (D.D.C. 2005), the plaintiff students were able to demonstrate that they had been denied a FAPE either because they had been suspended or expelled or were denied an appropriate placement pursuant to their IEP. No such evidence has been, nor can be, provided here, because, as explained above, no OATH IHO has been assigned to a due process complaint, and therefore no student could have been denied a FAPE due to the MOA. Thus, those cases do not support Plaintiffs' position.

Finally, Plaintiffs' theory that the OATH Plan "involves significant hiring of a vast administrative staff … making their hiring impossible to reverse" and that "all the experienced hearing officers … will be scrambling to find other work and will no longer be available to serve," P.I. Memo. at 51, does not allege any injury *to Plaintiffs*. This fails to satisfy Plaintiffs' burden.

In sum, Plaintiffs fail to demonstrate irreparable harm, and their motion should be denied.

## POINT II

## THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST STRONGLY FAVOR THE TRANSFER OF THE DUE PROCESS HEARING SYSTEM TO OATH.

The balance of the equities and the consideration of the public interest decidedly weigh in favor of continuing the OATH Plan for the protection of students with disabilities.

Here, because "the Government's interest *is* the public interest," the balance of hardships and public interest merge as one factor. *Saget v. Trump*, 375 F. Supp. 3d 280, 339–40 (E.D.N.Y. 2019) (emphasis in original).  In making a determination as to the equities, a court may only issue an injunction if the balance of hardships tips in the plaintiffs' favor. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (citing *Winter*, 555 U.S. at 20 and *eBay, Inc. v. MercExchange,* 547 U.S. 388, 391 (2006)). Further, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction. *Salinger*, 607 F.3d at 80 (citing *eBay,* 547 U.S. at 391).  Finally, courts "should pay particular regard for the public consequences in employing the

15

extraordinary remedy of injunction." *New York State Rifle & Pistol Ass'n v. City of New York*, 86 F. Supp. 3d 249, 258 (S.D.N.Y. 2015), *aff'd sub nom. New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45 (2d Cir. 2018) (quoting *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312 (1982)).

Here, the balance of the equities weighs in favor of the Defendants. Plaintiffs' own purported reason for seeking delay of the implementation of the MOA, so that the backlog of pending due process complaints can be cleared before cases are transferred to OATH, is contradicted by the reality of the current due process system. *See* P.I. Mem. at 51. As demonstrated by the data, the Per Diem IHO system has proven inadequate to address the needs of all students who filed due process complaints. *See* CAP at 18. DOE has received an increasing number of due process complaints year after year, and the number continues to grow. The number of due process complaints steadily increased from 5,026 in 2015-16 to 7,448 for only a portion of the 2018-19 school year. *Id*. at 19. During the last school year, 14,264 due process complaints were filed in New York City, and, as of December 1, 2021, nearly 9,000 remained on a waitlist for assignment to an IHO. *See* Suriano Decl. ¶¶ 19, 20. It is patently absurd that Plaintiffs would argue that the prior system must be kept in place to "wait for the backlog to be cleared," (P.I. Memo. at 51) when that system is the *source* of the backlog.[7]

Under the prior system, students and their parents were unable to receive timely hearings in greater and greater numbers each year. Indeed, the backlog caused SED, DOE, and OATH to enter into the MOA in order to ameliorate issues with an overwhelmed system. *See* MOA at 1. A

---

[7]    Plaintiffs' claim that new legislation providing an "expedited" track for certain delayed filings will resolve the backlog is a red herring. That legislation applies to cases when IHOs have not been appointed within 196 days of filing a complaint (P.I. Memo. at 51) and will continue to apply moving forward, throughout, and after the transition. Further, and more importantly, the Defendants are not obligated to use only a single approach in their efforts to improve the due process hearing system and, indeed, are attempting to resolve the backlog and improve the system with whatever mechanisms they believe will be effective.

preliminary injunction here would consign New York City students and parents to further delay.

The balancing of the equities clearly favors the governmental entities. There are thousands of unassigned cases that require the assignment of hearing officers assigned and resolution. The creation of the OATH IHO system is part of the State Defendants' response to the challenges and failures of the prior system; an action clearly aligned with the public interest and the parties' duties under the IDEA.

When government actors are acting in the public interest, courts routinely find that the balance of the equities weighs strongly in their favor. *See OurBus, Inc. v. City of Ithaca, New York*, No. 19 Civ. 0356, 2019 WL 2710111, at *21 (N.D.N.Y. June 28, 2019); *Flores v. Town of Islip*, 382 F. Supp. 3d 197 (E.D.N.Y. 2019) (denying a motion for a preliminary injunction delaying an election and imposing a new temporary system because it was not in the public interest); *Hafez v. City of Schenectady*, No. 117 Civ. 0219, 2017 WL 6387692 (N.D.N.Y. Sept. 11, 2017) (denying a motion for a preliminary injunction that would impair defendants' efforts towards the public interest of tenants' safety via accountability measures for landlords).

In *Ourbus*, after recognizing that there were serious problems with both congestion and pedestrian safety, the city of Ithaca put into place new restrictions on where buses were permitted to pick up passengers. *See OurBus,* 2019 WL 2710111, at *2-11. This new system of permits replaced a prior system that had proved unworkable. *Id.* Ourbus moved for a preliminary injunction to prevent Ithaca from enforcing the new permit rules, which Ourbus contested were a violation of interstate commerce and would cause irreparable harm. *Id.* at *15. The court held that even if Ourbus was able to establish both irreparable harm and a likelihood of success on the merits, its motion for a preliminary injunction must be denied because Ithaca was acting in the public interest of addressing safety concerns and significant traffic congestion in its streets. *Id.* at *21.

A similar situation is present here. There was a serious problem with the prior, non-OATH IHO system that resulted in a backlog and unacceptable delays in holding hearings for special education students. *See* CAP, Section III, *generally*. In an attempt to correct that problem, Defendants created a new system, the OATH IHO system, to address the issues inherent in the prior system for the public good. Just as the court in *Ourbus* held that the balance of the equities was in the government's favor because it was acting in the public interest by addressing the congestion in the streets, so too should the Court here find that the balance of the equities is in Defendants' favor because Defendants' actions address the congestion in the backlog of New York City's due process complaint system. Therefore, Plaintiffs' motion should be denied.

## POINT III

## PLAINTIFFS FAIL TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiffs' motion for a preliminary injunction should be denied because they have not demonstrated a likelihood of success on the merits, much less a clear or substantial likelihood. *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021). For the reasons set forth below, Plaintiffs cannot establish a likelihood of success on the merits because, *inter alia*: (i) Plaintiffs lack standing to bring their claims; (ii) Plaintiffs' claims are not ripe; (iii) Plaintiffs fail to demonstrate that the OATH Plan violates the IDEA; and (iv) Plaintiffs will not prevail on their remaining claims. Accordingly, Plaintiffs have not met their burden, and their motion for a preliminary injunction should be denied.

### A. Plaintiffs Lack Standing Because They Cannot Demonstrate a Concrete Injury.

Plaintiffs do not have standing to bring their claims in this Court. Article III of the United States Constitution limits the subject-matter jurisdiction of the federal courts to "cases" and "controversies." U.S. Const., art. III, § 2; *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir.

2012). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original). Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), Plaintiffs must demonstrate three elements: "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff*, 549 F.3d at 106-07 (citing *Lujan*, 504 U.S. at 560-61).[8]

Plaintiffs have the burden of establishing these essential Article III requirements for each plaintiff, as against each defendant, for each claim asserted, and for each type of relief sought. *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  Nevertheless, Plaintiffs purport to bring claims on behalf of themselves and "[p]arents of children with IEPs who live in New York City who are entitled to impartial hearings conducted by the LEA and presided over by hearing officers who (a) are neutral, independent, and free from an existing conflict or an appearance of a conflict; (b) are not employees of the Defendants, or its agencies, including OATH, or any

---

[8]      Plaintiffs do not satisfy any of the three elements of standing. However, because Plaintiffs fail to satisfy even the first element – an injury-in-fact – the State Defendants will not address the causation and redressability elements on this motion.

contracted agency or division over whom any of the Defendants would have control, management, oversight, supervision and influence; and (c) otherwise satisfy the requirements of 20 U.S.C. § 1415(f)(3)(A) and New York State Education Law Section 4404" even though standing is entirely lacking. Am. Compl. ¶ 326.

Plaintiffs bring this action challenging the transfer of the adjudication of due process complaints to OATH. They claim that the OATH IHOs will be biased and will therefore deprive them of statutorily conferred rights. *See*, *e.g.*, Am. Compl. ¶¶ 14, 21, 33, 254. However, not one of the named Plaintiffs currently has a pending due process complaint in front of an OATH IHO, and thus not one of the named plaintiffs is currently experiencing any alleged bias by an OATH IHO. There is not a single allegation connecting any of the named Plaintiffs to a current biased OATH IHO who is in any way impacting their rights under the IDEA or any other statute. Am. Compl. ¶¶ 1-384. Further, the OATH Plan has a transition period of months, if not longer, and during the transition period, cases may be assigned to OATH IHOs or Per Diem IHOs. MOA at 2. And, finally, Plaintiffs do not allege how or why they claim OATH IHOs will be biased, except for the fact that they will be employees of the City of New York, which is insufficient. *See* Point I, *supra*; Point III.C, *infra*. Accordingly, there is no "case or controversy," and Plaintiffs lack standing.

Plaintiffs' hypothetical and unsupported fear that the OATH IHOs will lack impartiality is precisely the sort of "highly speculative fear" that does not meet the requirements of Article III. *See Clapper*, 133 S. Ct. at 1148. The Supreme Court has made clear that "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Id*. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in *Clapper*); *see also United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012). None of the

Plaintiffs meets that strict standard. Instead, Plaintiffs merely rely on hypothetical assertions of future filings and hypothetical bias, none of which are "certainly impending," and all of which are based purely on conjecture and speculation.  Am. Compl. ¶¶ 43-47.

The fact that Plaintiffs bring this action as a putative class action does not salvage their lack of standing. Named plaintiffs are required to plead facts showing that they personally suffered an injury-in-fact regardless of whether they bring their action individually or on behalf of a putative class. "'[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[ ], none may seek relief on behalf of himself or any other member of the class.'" *Cent. States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "'[T]he named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id*. (quoting *Warth*, 422 U.S. at 502); *see also Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 40 n. 20 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing. ..."). Therefore, because Plaintiffs have not suffered an injury-in-fact, they lack standing and the complaint should be dismissed.

While Plaintiffs may have preferred the prior system and may disagree with policy decisions made by the State Defendants, that alone does not constitute an injury, Plaintiffs' rhetoric notwithstanding. *See* Pl. Memo. at 38 (arguing that the OATH Plan will create "a 'tainted' system that would chill and deter parents from filing claims."). Neither general citizen interest nor allegations of a chilling effect are sufficient to establish standing. *See Hoffman v. DiFalco*, 424 F. Supp. 902, 906-908 (S.D.N.Y. 1976). Again, the OATH transition is still ongoing, and at this stage,

not a single case has been assigned to an OATH IHO. Therefore, no named Plaintiff, even if they had provided evidence of having a pending due process complaint (which they have not), would be subject to the decision of an OATH IHO, and therefore there can be no concrete or imminent harm. Accordingly, Plaintiffs lack standing, and their motion should be denied.

**B.  Plaintiffs' Claims are Not Ripe Because the Only Injury They Allege is Remote and Speculative.**

A claim is "properly dismissed for lack of subject matter jurisdiction … when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 563 (S.D.N.Y. 2019); *see also Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (holding that a court lacks constitutional authority to adjudicate a claim that is unripe because "[r]ipeness is a jurisdictional inquiry"). "The burden of proving jurisdiction is on the party asserting it." *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

Ripeness "encompasses two overlapping doctrines concerning the exercise of federal court jurisdiction." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 429 (2d Cir. 2013) (internal citations omitted). The first, constitutional ripeness, "overlaps with the standing doctrine, 'most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.'" *New York v. United States Dep't of Homeland Sec.*, 408 F. Supp. 3d 334, 344 (S.D.N.Y. 2019), *aff'd as modified*, 969 F.3d 42 (2d Cir. 2020) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (quoting *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 226 (2nd Cir. 2008)). Alternatively, prudential ripeness is "'an important exception to the usual rule that where jurisdiction exists a federal court must exercise it,' and allows a court to determine 'that the case will be better decided later.'" *Id.* Prudential

ripeness serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "At its heart is whether we would benefit from deferring initial review until the claims we are called on to consider have arisen in a more concrete and final form." *Murphy*, 402 F.3d at 347. Thus, ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 (2d Cir. 2008) (internal quotation marks and citation omitted). Plaintiffs' claims are unripe under both the constitutional and prudential doctrines.

For purposes of constitutional ripeness, Plaintiffs' claims are unripe because they do not allege an imminent and concrete injury. For the reasons set forth above in Points I and III.A, above, Plaintiffs' alleged injury is remote and speculative. Putting aside that Plaintiffs do not allege how or why they claim OATH IHOs will lack impartiality besides their status as employees of New York City, no named Plaintiff currently has a pending due process complaint in front of an OATH IHO, no named Plaintiff is currently experiencing any alleged bias by an OATH IHO, and, accordingly, there is not a single allegation connecting any of the named Plaintiffs to a biased OATH IHO currently presiding over a due process complaint. Am. Compl. ¶¶ 1-384.

Plaintiffs' claims are also prudentially unripe. To determine whether a dispute is ripe for review under the doctrine of prudential ripeness, a court must engage in a two-pronged analysis of (1) whether the issues presented to the district court are fit for review, and (2) what hardship the parties will suffer in the absence of review. *Connecticut v. Duncan*, 612 F.3d 107, 113 (2d Cir. 2010) (citing *Abbott Labs.*, 387 U.S. at 148-49); *New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d at 563–64. The "fitness" inquiry addresses "whether the issues sought

to be adjudicated are contingent on future events or may never occur." *Grandeau*, 528 F.3d at 132 (internal quotations omitted). The "hardship" inquiry addresses "whether the challenged action creates a direct and immediate dilemma for the parties." *Id*. at 134 (internal quotation marks and citation omitted). "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003). Plaintiffs' claims fail both inquiries.

Plaintiffs' claims are not fit for review, as they seek adjudication on issues that are contingent on future events; namely, the hiring of OATH IHOs and their adjudication of due process complaints.[9] Further, as described above, the OATH Plan includes a transition of, at a minimum, six months *after* 40 OATH IHOs are hired – and will benefit from more time to determine how the plan will be implemented including, potentially, implementing regulations by OATH and SED. *See* MOA at 2-3. While OATH has commenced the process of vetting candidates to serve as OATH IHOs (*see* OATH Job Posting, ECF No. 5-3, Ex. C to Am. Compl.), there is no formal timetable for when OATH IHOs will be available to hear cases. During the transition period, due process complaints may be assigned to OATH IHOs or Per Diem IHOs, depending on caseloads and availability. *See* MOA at 2. In general, OATH will be responsible for the daily supervision of the OATH IHOs, rulemaking for the Special Education Unit, and general oversight and management of the administrative aspects of the cases; the details of this supervision and management will be assessed, evaluated, and modified as necessary throughout the transition period. *Id*. at 4. "Issues are deemed ripe when they would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future

---

[9]     Plaintiffs' Order to Show Cause seeks to enjoin "Defendants" from "hir[ing] any new impartial hearing officers as employees of OATH, New York City or any of the Defendants[.]" ECF No. 13. The MOA does not contemplate SED would hire any of these OATH IHOs; the MOA contemplates that OATH IHOs would be hired by OATH.

than it is now." *Simmonds*, 326 F.3d at 359. Because the challenged OATH Plan is still in transition, Plaintiffs fail to satisfy that standard.

The Second Circuit's decision in *Isaacs v. Bowen*, 865 F.2d 468 (2d Cir. 1989) is illustrative. In *Isaacs*, plaintiffs brought a class action claiming, *inter alia*, a proposal by the Health Care Financing Administration to substitute an "in-house" Medicare Administrative Law Judge ("ALJ") unit in place of existing Social Security ALJs violated the Medicare Act. The court found that the claims were not ripe because the proposal had not been "formally promulgated and brought into operation." *Isaacs*, 865 F.2d at 477. Here, as in *Isaacs*, the Court should refrain from "entangling [itself] in abstract disagreements over administrative policies" and until the OATH Plan's "effects [are] felt in a concrete way by the challenging parties." *Isaacs*, 865 F.2d at 478 (quoting *Abbott Labs.*, 387 U.S. at 148-49). Unless and until then, Plaintiffs' claims are not fit for review.

Similarly, Plaintiffs will not suffer hardship. Hardship "involves an evaluation of 'whether the challenged action creates a direct and immediate dilemma for the parties.'" *Simmonds*, 326 F.3d at 360 (quoting *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999)); *Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436, 440 (2d Cir. 2003). For the same reasons that Plaintiffs do not satisfy the requirements for irreparable harm, standing, or constitutional ripeness, Plaintiffs' claims fail the hardship inquiry. Plaintiffs establish no injury at all, much less a concrete or imminent injury, and thus cannot make any showing of any direct and immediate dilemma. Further, Plaintiffs are ostensibly arguing that if the transition period ensues, there is no turning back, even if the OATH Plan is unsuccessful. This is simply untrue, and Plaintiffs provide no evidence otherwise.

In sum, the issues here are not ripe because the issues Plaintiffs seek to adjudicate are

contingent on future events, and Plaintiffs' fears concerning the OATH Plan may never come to fruition. Therefore, Plaintiffs cannot establish a likelihood of success on the merits.

## C. The IDEA Does Not Prohibit the OATH Plan.

### 1. The OATH IHOs are Not Categorically Biased Simply Because They are Employed by New York City.

Beyond vague conjecture that the OATH IHOs will be "infected with an insurmountable conflict of interest," Plaintiffs offer no concrete support for their contention that the OATH IHOs will lack impartiality merely because they will be employees of New York City. *See* P.I. Memo. at 20. Without any evidence of a disqualifying interest, the Court should reject Plaintiffs' bald claims of bias. Indeed, OATH IHOs are entitled to a presumption of impartiality absent some showing of a disqualifying interest. *See, e.g., Purcell v. New York City Dep't of Corr.*, 111 F. App'x 57, 59–60 (2d Cir. 2004) (finding that plaintiff's claim of partiality lacked merit because administrators serving as adjudicators are presumed to be unbiased); *Rothenberg v. Daus*, No. 08 Civ. 567, 2010 WL 3860425, at *11 (S.D.N.Y. Sept. 8, 2010), *report and recommendation adopted*, 2010 WL 3860417 (S.D.N.Y. Sept. 30, 2010), *aff'd in part, vacated in part, remanded*, 481 F. App'x 667 (2d Cir. 2012), as amended (July 27, 2012).

Plaintiffs' reliance on *Heldman* – which is "in simplest terms, the impetus for Plaintiffs' request for Emergency Relief" in this action – is unwarranted. *See* P.I. Memo. at 3, 38-39 (citing *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148 (2d Cir. 1992)). *Heldman* predated the 1993 amendments to New York Education Law § 4404 which, *inter alia*, mandated a plan to preclude school board employees from serving as hearing officers until two years after leaving such employment. *See, e.g., Heldman on Behalf of T.H. v. Sobol*, 846 F. Supp. 285, 287 (S.D.N.Y. 1994). The plaintiff in *Heldman* was challenging the then-current law which permitted boards of education to select hearing officers to hear due process complaints. *See, e.g., Heldman*, 962 F.2d

at 152 (referencing hearing officer found to have violated the conflict of interest provisions by serving both as a consultant and hearing officer for a school district).

Contrary to the circumstances in *Heldman*, the OATH Plan does not vest DOE with the power to select hearing officers. Moreover, under the OATH Plan, OATH will be responsible for compensating the OATH IHOs; under the current system, DOE pays the Per Diem IHOs. *See* DOE's Impartial Hearing Officer Compensation Policy, ECF No. 9-29, Ex. CC to Hyman Decl. Plaintiffs do not appear to object to this arrangement and do not – and cannot – claim that the Per Diem IHOs are economically incentivized to rule on behalf of the DOE.

In *Rothenberg*, former licensed taxicab drivers brought an action against the New York City Taxi and Limousine Commission ("TLC") alleging, among other due process claims, that because "of the nature of their employment and compensation, TLC judges in fitness hearings are systemically biased in favor of the agency." *Rothenberg*, 2010 WL 3860425*, at \*3 (internal quotations omitted). The plaintiffs claimed that TLC judges were not independent because they were hired by the TLC on a per diem basis and may be fired without cause. *Id.* at \*11. The court held that vague allegations of pecuniary interest was not sufficient to overcome the "the presumption of honesty and integrity accorded to adjudicators," because "[City] administrators are assumed to be [people] of conscience and intellectual discipline capable of judging fairly." *Id.* (internal citations and quotations omitted).[10] Indeed, during the pendency of *Rothenberg*, to *avoid* any appearance of bias or partiality, TLC transferred authority for conducting hearings to OATH.

---

[10]    On appeal, the Second Circuit remanded the case back to the district court to "consider to what degree any 'presumption of honesty and integrity' under *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), may be rebutted by the evidence proffered by plaintiffs, including financial incentives and a history of ALJs ruling for the agency." *Rothenberg v. Daus*, 481 F. App'x 667, 676 (2d Cir. 2012), as amended (July 27, 2012). On remand, the district court found that "[a]lthough plaintiffs have proffered considerable evidence of bias, the dispute remains in light of the presumption of honesty and defendants' countervailing evidence." *Rothenberg v. Daus*, No. 08 Civ. 567, 2014 WL 3765724, at \*25-27 (S.D.N.Y. July 31, 2014).

*See Rothenberg*, 2014 WL 3765724, at *2, 27. This was accomplished despite the fact that TLC was a City agency. Indeed, OATH ALJs currently hear cases where the City is an adverse party, including contract disputes and allegations of human rights violations.

In the present case, Defendants have transferred authority to hear due process complaints to OATH, an entity already relied upon for its judicial independence. OATH IHOs are bound by the OATH Rules of Conduct, which includes that ALJs "shall avoid impropriety and the appearance of impropriety in all of his or her activities." *See* OATH Rules of Conduct.[11] Plaintiffs' claims, presented without any evidence of actual bias, merely assert that because OATH IHOs will be paid by the City, they will necessarily be biased against the students and families bringing due process complaints. This sweeping, unsupported allegation cannot overcome "the presumption of honesty and integrity" and should be given no weight by this Court.[12] *See Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (rejecting claim of systemic bias of hearing officers because pecuniary incentive was too remote and attenuated). It is also nonsensical, as the Per Diem IHOs are *already* paid by the City.  Therefore, Plaintiffs are unlikely to prevail on their claims, and their motion should be denied.

### 2.   The OATH IHOs Will Possess the Requisite Expertise and Training.

Plaintiffs' unsubstantiated assertion that the OATH IHOs will lack the special education expertise required by the IDEA and its implementing regulations is groundless. *See* P.I. Memo. at 42-44. As a preliminary matter, Plaintiffs have no legal claim based on their opinions of the hiring qualifications of IHOs, no matter the entity hiring them. Moreover, Plaintiffs' complaints that the

---

[11]      *See* https://www1.nyc.gov/site/oath/institute/rules-of-conduct.page (last visited February 1, 2022).

[12]      The lack of any actual evidence of bias, as no OATH IHO has heard any cases, is further indicative of this case's lack of ripeness for judicial intervention.

OATH employment application requires "only 'four years' admission to the bar" and contains a New York City residency requirement (P.I. Memo. at 34-35) are arbitrary and have no bearing on an individual's ability to competently adjudicate due process complaints. Further, to the extent Plaintiffs argue that a starting salary of $130,000 is insufficient compensation to attract qualified candidates, such argument is, again, purely speculative and Plaintiffs provide no support for their contention. *Id*. at 36.[13]

Regardless, Plaintiffs do not, and indeed cannot, show how the OATH IHOs lack the necessary experience and expertise since these IHOs *have not even begun to hear cases*. It is thus impossible for Plaintiffs to legitimately allege that the OATH IHOs lack the requisite qualifications and training. Moreover, once the OATH IHOs are hired, Plaintiffs' argument that they will be categorically unqualified is similarly baseless. OATH is required to hire IHOs in accordance with the applicable laws and regulations setting forth the requisite qualifications for hearing officers and Plaintiffs have no grounds to claim any semblance of partiality on the part of the OATH IHOs. 8 N.Y.C.R.R. 200.1(x); *see also* OATH Posting Job, ECF No. 5-3, Ex. C to Am. Compl.

Moreover, SED will continue to train the OATH IHOs and to certify them (and, if warranted, de-certify them) pursuant to N.Y. Educ. Law § 4404(1)(c) and the applicable implementing regulations. *See* MOA, at 3. Accordingly, SED will be responsible for certifying that the IHOs hired by OATH are adequately trained to adjudicate cases to the satisfaction of the SEA.[14]

In sum, there has not been – nor can there be – any showing that any IHO hired by OATH

---

[13]     Plaintiffs' back-of-the-napkin math regarding caseloads and hours spent on cases, based on nothing except hypothetical assumptions and for which they provide no actual evidence or support, should not be considered by the Court.

[14]     Notably, Plaintiffs do not object to the current training and certification process.

is unqualified or that the training is insufficient.

### 3.  *The MOA Does Not Improperly Delegate the Hearing Function.*

The OATH Plan does not violate the IDEA; the delegation of the due process hearing function to OATH is permissible under the law. Plaintiffs' argument is essentially that because the City Defendants "are inextricably intertwined and impermissibly so relative to the OATH plan, particularly since the City is the real financial party interest," the OATH IHOs will be biased. *See* P.I. Memo. at 17. Plaintiffs fail to provide any actual support for this claim and, neither the facts nor the law sustain Plaintiffs' claim.

As described above, New York State has a two-tier system for adjudicating due process complaints. *See generally* N.Y. Educ. Law § 4404. The IDEA and relevant state law and regulations provide that a hearing may not be conducted by an employee of the SEA or LEA. *See*, *e.g.*, 20 U.S.C. § 1415(f)(3); N.Y. Educ. Law § 4404(c); 8 N.Y.C.R.R. § 200.5(j). The regulations clarify that "a person who otherwise qualifies to conduct a hearing ... is not an employee of the agency solely because he or she is paid by the agency to serve as a hearing officer."  34 C.F.R. § 300.511(c)(2).

Under the OATH Plan, the adjudication of due process complaints will be transferred from the New York City Impartial Hearing Office to OATH. *See* MOA, *generally*. SED, as the SEA, will continue to certify and train the OATH IHOs, just as it does for Per Diem IHOs, in accordance with the relevant statutory and regulatory requirements. *See* MOA at 3. The statutorily mandated appeal process – first to the Office of State Review and then to state or federal court – will remain unaffected, except that OATH will be responsible for assembling the record on appeal (rather than DOE). *See* MOA at 4.[15]

---

[15]      To the extent that Plaintiffs did file such a claim, SED would not be a proper party to that action. *See*, *e.g.*,

In short, Plaintiffs' IDEA claim is premised on a fundamental mischaracterization of the IDEA. Under the IDEA and related regulations, a hearing officer "must not be" "an employee of the SEA or the LEA" or a "person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 34 C.F.R. § 300.511(c)(1). Those are the only individuals prohibited from acting as an IHO, and Plaintiffs' strained attempt to expand that prohibition to OATH has no basis. *See Cheung v. Bristol-Myers Squibb Co.*, 282 F. Supp. 3d 638, 643 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) (citing *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542–43 (1940)) ("It is well and long established that courts apply the plain meaning of unambiguous statutory language."). Here, where the OATH IHOs will not be employees of the SEA or the LEA, and where there is no plausible claim that any OATH IHO will have any "personal or professional interest" that will conflict with their objectivity, there is no basis to Plaintiffs' claim that the OATH Plan violates the IDEA.

The limited case law supports the use of a centralized hearing panel as contemplated by the OATH Plan, as does federal guidance. In *Blackman v. Dist. of Columbia*, 277 F. Supp. 2d. 89 (D.D.C. 2003), a class action concerning the District of Columbia's compliance with IDEA requirements, the Court incidentally considered the question whether the District of Columbia's Office of Administrative Hearings ("OAH"), an administrative court that was created to provide centralized adjudication services for several District agencies, could be vested with authority to conduct hearings required by the IDEA "by taking the responsibility for providing administrative due process hearings required by the IDEA away from [the LEA] and giving it to a non-educational authority." *Id.* at 90. Ultimately, the *Blackman* court concluded that "the creation of a central

---

*Avaras v. Clarkstown C.S.D.*, 2018 WL 4964230 at *16-17 (S.D.N.Y. Oct. 15, 2018); *Y.D. v. N.Y.C. Dept. of Education*, 2016 WL 698139 at *5 (S.D.N.Y Feb. 19, 2016).

31

hearings panel to conduct administrative hearings for a municipality ... is permissible under the IDEA." *Blackman v. District of Columbia*, 321 F. Supp. 2d 99, 103 (2004). The OAH, just like OATH, is a neutral, independent tribunal that holds hearings and decides cases involving violations and claims of public benefits.[16] Therefore, similar to the OAH designation, the OATH Plan will be found to be lawful, and Plaintiffs will not succeed on their claims.

Further, the United States Department of Education ("USDOE") has issued guidance concurring with the practice of educational agencies contracting with centralized hearing offices to conduct impartial due process hearings. For example, USDOE's Office of Special Education Programs ("OSEP") explicitly addressed the question of delegation to administrative law panels, stating that "[g]enerally, neither the courts nor [the Office of Special Education and Rehabilitative Services] have interpreted the 'conducted by' language in 20 U.S.C. 1415(f)(1) and (g) to literally mean that only individuals under contract to the State educational agency (SEA) or local educational agency (LEA) can preside at IDEA due process hearings." *See* Letter, dated September 12, 2002, from Stephanie S. Lee, Director of OSEP, to David K. Greer, Ex. C to Matthews Decl. OSEP has similarly explained that while the SEA or LEA must conduct the due process hearing, "[i]in carrying out this responsibility," it may "retain [IHOs] under contract to conduct hearings" so long as the regulatory requirements are met. OSEP concluded that, in this situation, the agency who holds the due process hearing "does so at the request of, and under contract with" the SEA. An agency that requests and contracts with a central hearing panel to conduct impartial hearings is *itself considered* to be the agency conducting the hearings. *See* Letter, dated October 25, 2007 from Patricia J. Guard, Acting Director of OSEP, to Robert Jacobs, Ex. D to Matthews Decl.

---

[16]    *See* OAH, https://oah.dc.gov/page/about-oah (last visited February 1, 2022); OATH Hearings, https://www1.nyc.gov/nycbusiness/description/environmental-control-board-violations (last visited February 1, 2022); and OATH Trials, https://www1.nyc.gov/site/oath/trials/overview.page (last visited February 1, 2022).

Plaintiffs repeatedly raise the argument that OATH IHOs must be considered biased because they allegedly have a personal or professional interest which would conflict with their objectivity in the hearing. In an attempt to support that argument, Plaintiffs cite cases where local education board members, superintendents, or state education commissioners were held to be "involved in the education or care of the child" and thus ineligible to serve as hearing officers. *See* P.I. Memo. at 40-42 (citing *Robert M. v. Benton*, 634 F.2d 1139, 1142 (8th Cir. 1980); *Muth v. Cent. Bucks Sch. Dist.*, 839 F.2d 113 (3d Cir. 1988), *rev'd sub nom. Dellmuth v. Muth*, 491 U.S. 223 (1989); *Mayson by Mayson v. Teague*, 749 F.2d 652 (11th Cir. 1984); *Burr by Burr v. Ambach*, 863 F.2d 1071 (2d Cir. 1988), *vacated on other grounds*, *Sobol v. Burr*, 492 U.S. 902 (1989)). In contrast, here, none of the OATH IHOs will be "involved in the education or care of the child" nor are they employees of DOE or any other education agency. Further, unlike the cases cited by Plaintiffs, here, there is no evidence that any OATH officer will have any personal or professional interest to impair their objectivity. *See Mayson by Mayson*, 749 F.2d at 658 (affirming judgment where there was evidence of influence of officers and employees of local school boards that "would seem to interfere with objectivity" and "ample evidence of a 'professional interest' which had interfered with the impartiality.").

Plaintiffs' argument rests on the unsupported presumption that because the OATH IHOs would work for New York City, they could not be sufficiently neutral or impartial. Yet, Plaintiffs rely on *Jacky W. v. New York City Bd. of Educ.*, 848 F. Supp. 358 (E.D.N.Y. 1994), which held that Per Diem IHOs could still be considered neutral even though they were paid by the Board of Education. Therefore, there is no basis for Plaintiffs' argument.

As addressed above in Point III.C.1, there is no reason to assume bias or that OATH will be compromised by New York City. OATH itself is an entity that is charged with neutrally

33

deciding cases that could impact the City's financial interest, including civil rights claims against City entities, City employee disputes, and whether businesses or individuals violated rules. OATH ALJs are appointed to five-year terms by the OATH Commissioner and Chief Administrative Law Judge, ensuring "absolute independence and impartiality in the judicial decision-making process and provides parties with a fair and impartial forum where complex administrative matters are adjudicated."[17] As such, Plaintiffs' arguments about OATH IHOs being "concerned about retribution and about being subjected to adverse decisions" (P.I. Memo. at 42) reflects a fundamental misunderstanding of the nature and purpose of OATH, which is to create an independent system to adjudicate claims involving the City and the City's financial interests. This is why, when the TLC ALJs were accused of bias in *Rothenberg*, in order to avoid any future claims of partiality or interference, TLC, a City agency, transferred its hearings to OATH. *See Rothenberg*, 2014 WL 3765724, at *2, 27. OATH's very purpose is to be free of interference and retribution by the City which is why it is a proper designee to hear due process claims. As such, Plaintiffs' claims that the City would be exerting control over the OATH IHOs is purely speculative and contradicted by the very purpose and regular day-to-day work of OATH.

Accordingly, Plaintiffs are not likely to succeed on the merits, and their motion for a preliminary injunction should be denied.

### D. Plaintiffs Lack Standing to Enforce The 2002 Order and Stipulation.

Plaintiffs cannot prevail on their claim for non-compliance of the "2002 Order and Stipulation." In August 2002, Plaintiffs' counsel (Gary Mayerson) brought a lawsuit on behalf of 20 children seeking to prevent the City of New York, NYC Board of Education ("BOE"), OATH,

---

[17]    *See* https://www1.nyc.gov/site/oath/trials/trials.page (last visited February 1, 2022).

and SED from transferring due process adjudication from IHOs to OATH.[18] In a stipulation of

dismissal, so-ordered on November 4, 2002, the plaintiffs agreed to withdraw and dismiss their

claims and defendants agreed to provide "plaintiffs' counsel with at least 45 days advance notice

if and when any plan to transfer the function of the New York City Board of Education's Impartial

Hearing Office to the New York City Office of Administrative Trials and Hearings." *See* 2002 so-

ordered Stipulation of Dismissal, at ¶2 (No. 02 Civ. 6495, ECF No. 13), Ex. E to Matthews Decl.

Now, nearly twenty years later, long after any of the 2002 plaintiffs' eligibility for a FAPE

under the IDEA expired, Plaintiffs in this action are attempting to enforce an agreement to which

none of them were parties, solely because the same attorney represents both groups. *See* P.I. Memo.

at 48. Plaintiffs cannot prevail on this claim.

Under New York law, a third party may enforce a contract when "recognition of a right to

performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the

circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised

performance." *In re Corp. Res. Servs., Inc.*, 849 F. App'x 320, 322 (2d Cir. 2021) (quoting

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir.

2012) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002)). Third

Party beneficiary status is established by showing that the parties to the contract intended at the

time of contracting to grant the benefit claimed. *See Askir v. Brown & Root Servs. Corp.,* 1997

WL 598587 at *4 (S.D.N.Y. Sept. 23, 1997) (citing *Conway v. Icahn & Co., Inc.,* 16 F.3d 504, 509

(2d Cir. 1994)). "The contract must clearly evidence an intent by the parties to permit enforcement

by the third party ... such that the benefit to the third party was sufficiently immediate, rather than

incidental, to indicate the assumption by the contracting parties of a duty to compensate [the third

---

[18]       *See* Complaint, *Jane Does 1-10, et al. v. Harold Levy*, No. 02 Civ. 6495 (S.D.N.Y.), at ECF No. 1.

party] if the benefit [was] lost." *Bayerische*, 692 F.3d at 52 (internal quotations and citations omitted).

Notably, the 2002 lawsuit was *not* a class action nor did the 2002 stipulation make *any* reference to other similarly situated plaintiffs who might have a present or future interest in the stipulation. There is no language in the stipulation suggesting that any future student would have standing to enforce the agreement between the parties. In the 2002 lawsuit, no such contractual intention was set into the stipulation and therefore there is nothing to support a finding that *every* NYC schoolchild for all time was intended to have standing to enforce the stipulation. Therefore, as the 2002 lawsuit plaintiffs lack standing to sue because they are no longer entitled to a FAPE under the IDEA (and therefore cannot file a due process complaint), and Plaintiffs in this separate action were not anticipated beneficiaries, the 2002 stipulation is irrelevant to this action and does not support the granting of a preliminary injunction.

### E. Plaintiffs Are Not Likely to Prevail on Their Equal Protection Claim Because There was a Rational Basis for the OATH Plan.

The fact that the OATH Plan treats students in New York City differently than students outside New York City is not a violation of the Fourteenth Amendment. *See* P.I. Memo. at 49. While equal protection requires that the government treat all similarly situated persons alike, it only prohibits the government from drawing "distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective." *Windsor v. United States*, 833 F. Supp. 2d 394, 400 (S.D.N.Y.), *aff'd*, 699 F.3d 169 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) and quoting *Lehr v. Robertson*, 463 U.S. 248, 265 (1983)). "Whether a state law or policy satisfies this general principle, and what sort of review a court must apply, depends on the nature of the class of individuals the state or local government treats differently or the rights at issue." *Winston v. City*

*of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018). "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *see also Heller v. Doe*, 509 U.S. 312, 320 (1993) ("[A] classification [not involving a suspect class or fundamental right] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

The OATH Plan neither burdens a fundamental right nor targets a suspect class. Therefore, rational basis review, the "paradigm of judicial restraint," applies here. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993).

For the reasons set forth above, the OATH Plan was adopted because due process complaints in New York City were not being handled and resolved in accordance with the law, generating a massive backlog. The filings continued to increase each year, and the Defendants determined that (i) a slate of full-time IHOs is necessary to manage the due process complaints and (ii) OATH has the administrative and ministerial competence to serve as the adjudicatory body. Accordingly, because the OATH Plan bears a rational relation to a legitimate government interest, there is no equal protection violation. Therefore, Plaintiffs are unlikely to succeed on their claim, and their motion for a preliminary injunction should be denied.

## F.  Plaintiffs are Unlikely to Succeed on Their Remaining Causes of Action[19]

Plaintiffs are similarly unlikely to succeed on their claims under the New York State Education Law, the New York City Charter, Section 504 of the Rehabilitation Act of 1973, 29

---

[19]  To the extent there are claims asserted in the Amended Complaint that Plaintiffs fail to address in their motion for a preliminary injunction, the State Defendants do not address those here since they do not form the basis for Plaintiffs' motion. Plaintiffs are similarly unlikely to succeed on those claims, and the State Defendants will address them at the appropriate time in the litigation.

U.S.C. § 794 ("Section 504"), and the due process clauses of the U.S. and New York State Constitutions.[20]

First, Plaintiffs' claims under the New York State Education Law are barred by the Eleventh Amendment, which "does not allow a federal court to issue an injunction for a violation of state law." *Kelly v. N.Y. Civil Serv. Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016). Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Similarly, the State Defendants cannot be held liable under the City Charter. *See Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("The City of New York does not have the power to abrogate the immunity of the State.").

Further, Plaintiffs cannot succeed on their Section 504 claim, because they will be unable to prove that they were denied the opportunity to participate in or benefit from any services, programs, or activities, or were otherwise discriminated against by the State Defendants by reason of their disability. *J.L. on behalf of J.P. v. New York City Dep't of Educ.*, 324 F. Supp. 3d 455, 467 (S.D.N.Y. 2018) (citing *Harris v. Mills*, 572 F.3d 66, 73–74 (2d Cir. 2009)). In order to prevail on a Section 504 claim, Plaintiffs must show that the State Defendants acted in bad faith or with gross misjudgment. *See, e.g., S.W. by J.W. v. Warren*, 528 F.Supp.2d 282, 290 (S.D.N.Y. 2007); *J.L.*, 324 F. Supp. 3d at 467. There must be "something more than a mere violation of the IDEA ... in order to show a violation of [either statute] in the context of educating children with disabilities." *Scaggs v. N.Y. Dep't of Educ.*, No. 06 Civ 799, 2007 WL 1456221, at *15 (E.D.N.Y. May 16,

---

[20]     These claims also fail for the reasons discussed above, including lack of standing and ripeness.

2007). Plaintiffs will be unable to show that the State Defendants acted in bad faith or with gross misjudgment, and thus they will be unable to prevail on their Section 504 claim.

Finally, Plaintiffs offer no independent basis for their due process claims. Instead, those allegations mirror the allegations underpinning their IDEA and Equal Protection claims. Thus, for the same reasons Plaintiffs are unlikely to succeed on their IDEA and Equal Protection claims, they are unlikely to succeed on their due process claims.

Accordingly, Plaintiffs cannot establish a likelihood of success on the merits, and their motion for a preliminary injunction should be denied.

## CONCLUSION

For the reasons herein, the State Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

Dated: New York, New York
      February 2, 2022

                                  LETITIA JAMES
                                  Attorney General
                                  State of New York
                                  *Attorney for the State Defendants*
                                  By:

                                           /s/
                                  Elyce N. Matthews
                                  Mark R. Ferguson
                                  Assistant Attorneys General
                                  28 Liberty Street
                                  New York, New York 10005