UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

E.F., on behalf of himself and his minor child, O.F.; J.R. on behalf of herself and her minor child, K.R.; J.F., on behalf of himself and his minor child, H.F.; L.V., on behalf of herself and her minor child, N.F.; M.S. on behalf of himself and his minor children, J.S.; and Q.S., and all other similarly situated,

                                      Plaintiffs,

- against -

MAYOR ERIC ADAMS, in his Official Capacity; THE CITY OF NEW YORK, CHANCELLOR DAVID BANKS, in his Official Capacity; NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK CITY BOARD OF EDUCATION; COMMISSIONER BETTY ROSA, in her Official Capacity; NEW YORK STATE EDUCATION DEPARTMENT; COMMISSIONER JONI KLETTER, in her Official Capacity; THE OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS,

                                      Defendants.
------------------------------------------------------------------- x

21 CV 11150 (ALC) (SN)

**DECLARATION OF OLGA STATZ**

       **OLGA STATZ**, under penalty of perjury, declares pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

       1.    I am Deputy Commissioner and General Counsel of the Office of Administrative Trials and Hearings (hereinafter "OATH"), one of the Defendants in the case captioned above. I submit this declaration in opposition to Plaintiffs' motion for a preliminary injunction.

       2.    This declaration is based on my personal knowledge and conversations with employees of OATH.

Origins and Purposes of OATH

3. For 40 years, OATH has been New York City's independent central tribunal. Established by executive order in 1979, OATH was made a Charter agency in 1988. NYC Charter 1048(1).

4. The Report of the Charter Revision Commission, Vol. 2 at p. 103 (April 1989) was clear about OATH's mandate and role: "[t]he purpose of formalizing OATH in the charter is to establish *an independent adjudicative body* that can be a resource to agencies in conducting their adjudications, while at the same time establishing an independent structure outside of the agency *to provide an unbiased assessment of the matters to be adjudicated*." (Emphasis added.)

5. In traditional administrative law proceedings, the hearing officers heard only cases involving the agency that employed the hearing officer. By contrast, OATH, as New York City's central administrative tribunal, has the authority to conduct adjudications on behalf of any city agency, board or commission, or any state-created authority or other entity that is fully or partly city-funded.

6. Since its establishment, OATH has expanded. It is now made up of two Divisions, Trials and Hearings, and between them, these divisions conduct nearly all of the city's adjudications.

7. In each division, the parties are normally represented by attorneys or knowledgeable non-attorney representatives. However, OATH's rules of procedure published in 48 RCNY Chapters 1 and 6 are such that they are easily usable by the self-represented.

8. In neither division does OATH act as agent to other agencies. It functions solely as a neutral forum before which the two parties may bring their claims and defenses. The

Tribunal also takes very seriously its obligation to make the process transparent and accessible to the self-represented. OATH offers free interpretation services to all who request them and has established the Help Center to counsel *pro se* litigants and help usher them through the process.

Structure and Jurisdiction of the Trials Division

9.  The Trials Division is the more formal of the two branches of the tribunal. It originally had jurisdiction over only employment matters, but its reputation for impartiality and professionalism has over the years led mayoral and non-mayoral agencies to expand the tribunal's jurisdiction to encompass many different matters, including the following: Commission of Human Rights cases; matters brought by the Contract Resolution, the Conflict of Interest and the Loft Boards; several types of licensing cases, including contractors, riggers, taxi, marriage, day care centers and pre-schools; campaign finance, prevailing wage, padlock law enforcement, Certificate of No-Harassment determinations, consumer and worker protection, and lobbying cases, among others.

10.  At Trials, proceedings are initiated by the filing of multipage petitions resembling civil complaints. Trials can take several days, involve very high levels of evidentiary and legal complexity, and, potentially, very high penalties. Proceedings are conducted in accordance with rules promulgated in 48 RCNY Chapter 1.

11.  The Trials Division has relaxed the technical rules of evidence and procedure that apply in state and federal court but maintains decorum and formality in its proceedings.

12.  Most OATH cases are conferenced before trial. At the conference, an administrative law judge other than the trial judge meets with the parties and their representatives in an effort to resolve the matter pre-proceeding.

13. OATH Trials Division trials generally follow a traditional trial sequence: opening statements, each party's direct case with cross-examination by the other party and closing arguments. The burden of proof is on the petitioner who much prove the case by a preponderance of the evidence, the same standard applied in most civil lawsuits in court.

14. The procedural infrastructure OATH intends to create for the proposed Special Education Division is modeled on that of the Trials Division. The same sequence, the same formality, the same high standard of analysis and timeliness are anticipated.

Structure and Jurisdiction of the Hearing Division

15. The Environmental Control Board (ECB), a summons based tribunal, was created in 1971 and operated under the jurisdiction of the Department of Environmental Protection (DEP) to enforce laws relating to the cleanliness of streets, disposal of wastes, provision of a pure water supply and the prevention of air, water and noise pollution.

16. During the 2008 Charter revision, in an effort to professionalize that tribunal, ECB was added to OATH pursuant to Charter 1049-a. OATH, which at that time was hearing approximately 3000 matters a year, absorbed a tribunal that had been adjudicating about 300,000 matters a year.

17. In addition to ECB, the Health, Taxi, and Department of Consumer Affairs tribunals were also made a part of OATH. Those tribunals, in addition to Criminal Justice Reform Act matters, were consolidated into the Hearings Division.

18. In contrast to the multi-page petitions that underlie the proceedings in the Trials Division, the Hearings Division hears one-page summonses served and filed by city agencies. These adjudications are, in general, quick, taking between 20 minutes to roughly an hour or a bit more to conclude. Though heard in an informal context, the requirements of due

process are nonetheless observed. As in the Trials Division, the onus remains on the enforcement agency to prove its case by a preponderance of the evidence, and the respondent is offered an opportunity to be heard and present evidence.

19. Under the Hearings Division aegis, the adjudications of the various tribunals have been standardized and all proceed according to rules promulgated pursuant to CAPA and found in 48 RCNY Chapter 6.

20. The Hearings Division proceedings are generally open to the public and electronically recorded. The recordings are available to both the petitioners and respondents should they wish to appeal the determination to the Division's Appeals Unit.

Impartiality of the Processes in Both Divisions

21. Citing statistics that they obviously do not understand, Plaintiffs in this action assert, essentially, that OATH, or at least its Hearing Division, is the lackey of the enforcement agencies and is influenced by unidentified "external individuals."

22. Specifically, Plaintiffs allege that the Hearing Division is "neither neutral nor unbiased," and that "City[] agencies prevail (*i.e.*, violations are admitted or upheld) in the overwhelming majority of cases." … Plaintiffs' statements and the conclusions drawn from them are erroneous.

23. Plaintiffs focus on statistics compiled in the Mayor's Management Report that all involve an extremely high number of matters that are "admitted to or upheld" at OATH. For example, Plaintiffs note specifically that OATH upholds Taxi and Limousine Commisison violations in 90-94.5% of cases.

24. Plaintiffs allege that these statistics show that hearings at OATH are not impartial, because, purportedly, the agency's hearings favor the city a majority of the time. This conclusion is wrong and based on a misunderstanding of the numbers presented.

25. As noted, the outcome numbers Plaintiffs present rest on "violations admitted to and upheld." However, inclusion of the 'admitted to' summonses voids the value of the percentages for purposes of this action and undermines Plaintiffs' allegations.

26. Summonses that are "admitted to" include a) summonses that are paid by the respondent upon receipt, without challenge; and b) all summonses paid by a respondent who has agreed with the enforcement agency to settle the matter by stipulation. Summonses in those two groups are generally disposed of pre-hearing and do not make it before OATH Hearing Officers.

27. Simply put, since the individuals whose summonses fall within either of the two above- mentioned groups do not engage in adjudication, they cannot have been "found in violation" by the tribunal.

28. The only pool of respondents whose outcomes are a proper subject of analysis in this matter are those respondents who appear before OATH to challenge their summonses. Only by parsing the results obtained by that set of individuals, the individuals who have engaged with the Hearing Officers, can this court properly make any determination respecting the partiality or impartiality of OATH adjudicators.

29. Examination of the results obtained by this group, however, presents a very different picture from the one presented by plaintiffs. Indeed, respondents who challenge their summonses enjoy a very high likelihood across the board of having their tickets dismissed. The MMR figures used by plaintiffs, dumping as they do both admitting and appearing respondents into the same barrel, do not reflect this reality.

- 7 -

30. Attached as Exhibit 1 is OATH's quarterly report for the last quarter of 2021. From pages 10 through of 17 are the dismissal and in violation ratios for all decisions rendered after adjudication before an OATH Hearing Officer.

31. In pie charts found on pages 10 to 13 are the statistics for the Department of Sanitation, the Department of Buildings, the Department of Transportation, Fire Department, Environmental Protection, Police Department, Parks Department, DOITT, the Business Integrity Commission, and Landmarks Preservation.

32. A review of those statistics shows a very different picture from the one painted by Plaintiffs. Over 50% of DSNY summonses are dismissed after hearing, and more than 25% of DOB's. These statistics also show dismissals of DOT summonses fluctuating between 49% in 4Q of 2020 and 52% in 4Q of 2021.

33. 82% of NYPD summonses were dismissed after hearing while DOHMH and DOITT also share the distinction of having well over 50% of their summonses dismissed when challenged.

34. For those summonses that are in fact upheld by Hearings Officers, OATH has a very robust appeals process, and violations upheld at the hearing level may be reversed on appeal.

35. The Trials Division's independence and commitment to impartiality has remained equally strong and has been confirmed by state courts.

36. This is very well illustrated in two relatively recent matters, both of which reached New York Supreme Court, involving disciplinary cases brought by the DOC. The respondents in those matters sought to have OATH redact or not publish its report and recommendation under the theory that those decisions constituted confidential disciplinary

personnel records under section 50-a of the Civil Rights Law as they remained "under the control" of the department of correction. OATH disagreed and ruled in each instance that based on the plain wording of section 50-a, its reports and recommendations were not confidential because they did not constitute documents "under the control" of the DOC.

37. The judges sided with OATH and based their conclusion, among other things, on the terms of the Charter and the Charter Review Commission's Report. Significantly, the Court found no basis to conclude that OATH was controlled by DOC, or any other agency. *E.g., Victor v. New York City Office of Trials and Hearings*, Index 100890/2015, attached hereto as Exhibit 2.

38. Litigants who appear before OATH officers recognize this independence, and the expertise that OATH officers consistently demonstrate. *See* Statement of Joey Jackson, Esq., attached hereto as Exhibit 3.

39. These matters show clearly both OATH's commitment to independence, and the court's concurrence therewith.

40. A cross section of other of the Trials Divisions' determinations further confirms its independence and commitment to neutrality. The OATH Trials Division's 40 years of independence includes ruling against current and former elected officials:

The Comptroller:
*Bd. v. Holtzman,* OATH Index No. 581/94 (Nov. 23. 1994), *aff'd in part, rev'd in part*, Conflicts of Interest Bd. Case No. 93-121 (Apr. 3, 1996), *aff'd sub nom., Holtzman v. Oliensis,* 91 N.Y.2d 488 ($7,500 fine imposed for violating Charter section 2604(b)(3) where Comptroller used her position to delay repayment of campaign loan) (OATH decision attached)

The Borough President
http://archive.citylaw.org/wp-content/uploads/sites/17/oath/11_Cases/11-1400.pdf

The City Council Speaker
http://archive.citylaw.org/wp-content/uploads/sites/17/oath/13_Cases/12-0325.pdf

A City Council Member
http://archive.citylaw.org/wp-content/uploads/sites/17/oath/17_cases/17-1098.pdf

A State Senator
http://archive.citylaw.org/wp-content/uploads/sites/17/oath/19_cases/19-747.pdf

The Trials Division has also ruled against the City for more than $1 million:
http://archive.citylaw.org/wp-content/uploads/sites/17/oath/03_Cases/03-214md.pdf

41. Simply put, OATH adjudicators are never instructed or influenced by any means to rule for or against a particular party, or reach a particular result. Instead, OATH adjudicators are entrusted with the responsibility of making an independent judgment in each case they adjudicate, based on the credible evidence presented and the relevant law, as determined by the adjudicator.

42. For these reasons, and as set forth in City Defendants' memorandum of law in opposition to Plaintiffs' application, the Court should not grant Plaintiffs any preliminary injunctive relief.

Dated:     February 2, 2022
           New York, New York

                                              s/
                                        Olga Statz, Esq.