

November 3, 2021

## WRITTEN STATEMENT ON OATH PROPOSAL

Thank you for the opportunity to comment on the proposal to amend the Rules of Practice in Title 48 of the Rules of the City of New York. Said proposal is purportedly designed to establish procedures for pre-conference and pre-trial settlement negotiations in the Trials Division of the Office of Trials & Administrative Hearings (OATH).

JOEY JACKSON LAW, PLLC., serves as counsel to the New York City Correction Officers Benevolent Association (COBA), with regard to all Disciplinary matters. As such, to extent that Correction Officers regularly face disciplinary allegations from the NYC Department of Corrections (DOC), wherein we defend their interests, we appreciate the opportunity to share our point of view respecting the instant proposal.

In doing so, please note that we must object to this proposed change unless two very important amendments are incorporated into the proposal.

First, DOC must be compelled to provide Discovery as a precondition for any settlement negotiations in the context of disciplinary matters. As such, the matter should not be deemed "joined" until we receive said Discovery. The submission of Discovery cannot be presumed or implied, but must be mandated by rule. Such a mandate should include the condition that DOC afford our office with the Discovery at least ten (10) days before any such settlement discussion can or may occur.

Second, it should be made clear in the proposed rule that notwithstanding these amendments, Correction Officers maintain the right, and OATH maintains the concomitant duty, to provide our clients with their "day in Court". Due process demands that a pre-trial conference take place if any Correction Officer wishes for an OATH Judge to preside over the settlement negotiation. Similarly, Correction Officers must always maintain the right to move their matter to trial, without any preconditions.

It must be noted that pre-trial conferences are vital to the OATH process, and often, to a Correction Officers willingness to agree to any settlement. Correction Officers must maintain the right to come before an OATH Judge to be afforded an assessment as to the relative strengths and/or weaknesses of their case. Judges play an extremely significant role in the resolution process by virtue of their knowledge and experience in dealing with similarly situated clients and factually analogous cases.

It must be made clear in any proposed amendment that the rule is neither designed nor intended to diminish or abdicate the crucial role and responsibility that OATH Judges play in the adjudication



process. Correction Officers deserve to be afforded with the wisdom and experience of every OATH Judge in the tribunal.

On that note, Correction Officers appearing before OATH, are often facing steep disciplinary penalties. These penalties have real consequences for our clients' livelihoods. Each day they are suspended is one less day of pay that they'll be receiving. And a shrinking paycheck means less money toward rent and/or mortgage payments, utility bills, car notes, day care costs, school tuition, groceries, and other critical expenses. In short, the outcome at OATH has real and enduring consequences.

OATH Judge's play a meaningful role in the pre-trial process by acting as the "agent of reality" for both sides. An OATH Judge can provide perspective, share precedent, weigh in on probabilities of success, or the lack thereof, and help to temper the expectations of either party. The role OATH Judges play as "agents of reality" cannot be overstated.

The proposed rules appears to diminish and minimize OATH's role in this critically important process. As such, if a Correction Officer wishes to have a pre-trial conference, they should not feel compelled to participate in any prior proceedings wherein OATH has no presence or defined roll.

Every Correction Officer deserve no less than that commitment, particularly considering the job they perform for this City every day. Indeed, they have earned the title of New York City's Boldest. Correction Officer have made this City safer by patrolling the toughest precincts in New York, our jails. In doing so, they are persistently subject to violent attacks by inmates and often severe and unreasonable discipline by their employer, DOC.

Any rule changes concerning OATH must consider the context in which the discipline is being sought. On that note, Correction Officers jobs have never been tougher —due in large measure to a much more hostile inmate population. During the past year, there has been a 23% surge amongst inmates incarcerated for violent felony crimes. Additionally, the last Mayor's Report notes that gang affiliated admissions were up by 6 %, and that violence amongst inmates was up by 15%.

This has led to skyrocketing assaults against Correction Officers, with such assaults increasing by 23% last year. The human side to this statistic is that more Officers are suffering debilitating injuries, including broken bones, cracked ribs, black eyes, and facial bruising and swelling about the body. This doesn't even begin to address the issue of Officers being regularly splashed with urine and feces.

Correction Officers are also subject to ongoing degrading sexual assaults and harassment by inmates, including being forcibly touched, verbally demeaned and psychologically tortured. Recent press reports have detailed these issues, along with the legislative efforts being undertaken by NYC Councilwomen Adrienne Adams to address them.

I mention all of the above, not to get sidetracked or to otherwise divert from the core issue of the proposed rules change, but to point out the level of fairness and consideration that must be applied here. Correction Officers deserve to have due process and deserve fairness when accused of wrongdoing, while performing an exceedingly difficult job.

2



Sometimes the discipline that DOC seeks to impose is heavy handed, and other times it's petty. If Correction Officers use force, they are besieged with accusations that the force was unnecessary and/or excessive. They are additionally taken to task because their Use of Force reports may be less than perfect. At other times, if Officers fail to use force, they are chastised for not doing so, thereby being reprimanded for what they could have, or should have, done under those circumstances.

This is not to say that there is never a circumstance in which discipline is unwarranted. It is not my intention to be unreasonable nor naive. What I am saying is that the accusations Correction Officers face are often leveled at them unfairly and imprudently. Matters that could easily be handled at the command level are converted into Memorandum of Complaints (MOCs) and unnecessarily sent to OATH for adjudication. Still, there are other circumstances in which a close call is not resolved in an Officer's favor, but is rather converted into a case, which is then sent to OATH. The net affect of this is to lead to an inordinately large volume of cases, which should not even be a case in the first place.

It is for this reason that we ask that the instant proposal be modified to permit us to have all the Discovery before the matter is deemed "joined", and before we are compelled to participate in any disciplinary negotiations. In preparing all of the Discovery prior to any negotiations, perhaps this will allow DOC to perform a closer assessment of the case themselves, and potentially reconsider whether it should actually be a case in the first place. If not, the matter can be either sent back to the command or administratively filed (dismissed). And if DOC believes it's a case, our Team can then review the Discovery, to make our assessment as to the relative merits, or lack thereof, respecting the matter— and advocate to DOC accordingly.

But if a disciplinary matter does move forward, the respective Correction Officer being disciplined should always feel as though the process is working for them. This means that if they want to see an OATH Judge, and otherwise forego a process that precludes, prohibits, or circumvents their ability to do so, they should be afforded that right.

Finally, in weighing the propriety of our comments as to the proposed rule, it is important for OATH to understand my Office's current internal practice respecting Disciplinary resolutions.

As it stands, my Firm's present protocol is for our lawyers to engage with the lawyers at DOC well in advance of any pre-trial conference. In fact, as soon as a case is placed on an OATH calendar, the Firm takes the following steps to protect our clients interests:

1. An assessment and review of the case file, including the Charges and any and all Discovery;
2. Conferring with the client to evaluate any potential liability, which includes reviewing the file with them, along with their recollection of the facts and circumstances;
3. Consultation with experts, where applicable, to examine reports, media, and any other relevant information;
4. Review of DOC's Settlement Offer and discussions with the client regarding their interest in same; and
5. Negotiations with opposing counsel on any potential resolution



As a result of the above practice, many Disciplinary cases are in fact settled prior to the OATH pre-trial conference. And in the event that the matter moves forward to a pre-trial conference and is not resolved at that point, we still attempt to resolve the matter prior to trial— if doing so will protect our clients interest. As such, ongoing settlement discussions regularly continue to take place with opposing counsel.

In conclusion, any rule change mandating any prior pre-trial conference settlement negotiation must also compel DOC to provide Discovery at least ten (10) days in advance. We cannot engage with DOC if not afforded with the tools we need to do so.

Moreover, the very basis for OATH is to adjudicate administrative disputes. OATH Judges are uniquely qualified to do just that. This responsibility should not be minimized nor abdicated. Correction Officers must always maintain the right to avail themselves of this process, and to lean on the wisdom and experience of OATH Judges, who have handled similar matters and have vast knowledge of precedent.

Correction Officers deserve to have a fair and meaningful Disciplinary process, particularly given the very difficult job they do for this City. Incorporating the two recommendations herein ensures that the process remains open, viable and just.

Very truly yours,

By: *Joey Jackson*
Joey Jackson, Esq., Principal