UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| E.F., *et al.*,<br><br>          Plaintiffs,<br><br>  -against-<br><br>Mayor Eric Adams, *et al.*,<br><br>          Defendants. | **Civ. No.: 21-cv-11150 (ALC)** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

                                                         **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................1

ARGUMENT ........................................................................................................................2

    A.  Defendants Fail to Explain How the OATH Plan Complies with the IDEA .......................2

    B.  Defendants' Reliance on the Backlog to Justify the OATH Plan Is Pretextual ..................3

    C.  Plaintiffs Have Standing Under Established Precedent ......................................................4

    D.  Plaintiffs Have Established Irreparable Harm ....................................................................5

    E.  Plaintiffs Do Not Seek a Mandatory Injunction .................................................................8

    F.  Defendants' Illegal Actions Are Not in the Public Interest ................................................8

    G.  Defendants Attempt to Mislead the Court on Disposition Rates at OATH .........................9

    H.  OATH IHOs Will Have Less than Five Hours Per Case ..................................................10

    I.  OATH IHOs Have a Conflict as They Will Be Under City and Mayoral Control ............12

    J.  The OSEP Opinion Letters Cited by State Defendants Are Not Binding or Relevant ......12

    K.  Plaintiffs Can Bring Claims Against State Defendants Under Educ. Law § 4404 ...........13

    L.  State Defendants Failed to Provide Public Notice of the OATH Plan .............................14

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bd. of Educ. of Fayette County, Ky v. L.M.*, 487 F.3d 307 (6th Cir. 2007) .................................. 12

*Bd. of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176 (1982)............................................................................................................... 1

*D. D. ex. rel. V.D. v. New York City Bd. of Educ.*, 480 F.3d 138 (2d Cir. 2007).......................... 12

*Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440 (2d Cir. 2015) ......................................................... 12

*Flores v. Town of Islip*, 382 F. Supp. 3d 197 (E.D.N.Y. 2019) ..................................................... 8

*Hafez v. City of Schenectady*, No. 17 Civ. 0219, 2017 WL 6387692 (N.D.N.Y. Sept. 11, 2017) ..................................................................................................................... 8

*Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148 (2d Cir. 1992) ........................................... 4, 5

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................................................... 4

*LIH v. New York City Bd. of Educ.*, 103 F. Supp. 2d 658 (E.D.N.Y. 2000) ................................ 13

*Ourbus, Inc. v. City of Ithaca, New York*, No. 19 Civ. 0356, 2019 WL 2710111 (N.D.N.Y. June 28, 2019) ....................................................................................................................... 8

*Reid v. District of* Columbia, 401 F.3d 516 (D.C. Cir. 2005)...................................................... 12

*Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019) ................................................................ 8

*Town of Burlington v. Dep't of Educ. for Comm'r of Mass.*, 736 F.2d 773 (1st Cir. 1984).......... 13

**Statutes**

20 U.S.C. § 1412............................................................................................................................ 13

20 U.S.C. § 1415................................................................................................................. 1, 2, 3, 14

N.Y. Educ. Law § 4401 ................................................................................................................ 13

**Regulations**

34 C.F.R. § 300.510 ...................................................................................................................... 11

34 C.F.R. § 300.515 ............................................................................................................... 11

**Local Provisions**

NYCBBL § 12-307 .................................................................................................................. 9

## I. INTRODUCTION[1]

Plaintiffs submit this reply and the declarations of Elisa Hyman, Esq. ("|Hyman Reply Dec.") and Vanessa Gronbach ("Gronbach Dec."), as well as the exhibits attached thereto, in further support of Plaintiffs' Motion for a Preliminary Injunction and in response to City Defendants' and State Defendants' respective oppositions.[2]

First, Plaintiffs do not "prefer"[3] and are not blessing the current impartial hearing system, as there are delays and issues with it, created by the same entities that now claim to have the magic cure. However, beleaguered parents of vulnerable children with special needs who have legitimate claims should not be faced with a Hobson's choice between a system overridden by delays, and one rife with conflict. Defendants' OATH Plan threatens due process itself because the hearing officers will be inexperienced lawyers for the very party that faces financially liability in those hearings and that is in charge of setting policy for the school district. Moreover, the rights of children with disabilities cannot be adjudicated like unpaid parking tickets or TLC licenses.

The delays in the current system do not justify a sacrifice of independence or experience of the current IHOs. While replacing experienced, independent IHOs with lawyers who are employed by the City might be considered a "process" to reduce the hearing backlog, it is not consistent with the "elaborate and highly specific procedural safeguards embodied in § 1415" of the IDEA. *Bd. of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 205-206 (1982). Moreover, Defendants fail to articulate how the following aspects of the OATH Plan will actually reduce the backlog: (a) lowering standards and compensation for

---

[1] Capitalized terms have the same meaning as ascribed to them in Plaintiffs' memorandum of law in support of their motion (ECF No. 8), unless otherwise provided herein.

[2] Citations herein to State Defendants' opposition ("State Opp.") and City Defendants' opposition ("City Opp.") are to Defendants' respective memoranda of law in support of their oppositions (ECF Nos. 34 and 37, respectively).

[3] City Opp. at p. 2.

1

new recruits; (b) eliminating independent contractor IHOs in favor of City-employees who will be agency lawyers; and (c) eliminating more than 50% of the existing experienced IHOs with the highest number of cases due to an arbitrary residence requirement not imposed on any other City lawyers. *See* Gronbach Dec., Hyman Reply Dec. Ex. A. Further, the City prevails in over 95% of the decisions issues in the OATH Trials Division (Hyman Reply Dec. Ex. B), which Defendants assert is the model for the OATH Plan. First Amended Complaint ("FAC"), Ex. A at 1. Thus, contrary to Defendants' claims, OATH is not the model of neutrality required by the IDEA.

## II. ARGUMENT

### A. Defendants Fail to Explain How the OATH Plan Complies With the IDEA.

Defendants do not dispute that (1) IHOs hired under the OATH Plan will be employees of and lawyers for the City, or that (2) the City is the real party in interest in the hearings because it bears the costs of providing a FAPE and any funding relief awarded in hearings. An IHO, "at a minimum, [shall] not be an employee of the State educational agency or the local educational agency involved in the education or care of the child; or a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. § 1415(f)(3)(A)(i). The IDEA presupposes that the agency involved in the education or care of the child is the real party in interest, operationally and financially responsible for FAPE.

City Defendants seem to vociferously argue that the DOE is part of the City and is a City agency.[4] However, if the IDEA prohibits the DOE from employing IHOs, and the DOE is part of the City, then the City cannot employ IHOs. Defendants are asking this Court to allow them to gloss over these *minimum* requirements,[5] merely because the OATH IHOs will not be employees

---

[4] City Opp. at pp. 17-19.
[5] *See also* Senate Report No. 94-455 (Nov. 14, 1975) at pp. 48-49 (intent of § 1415(f)(3)(A) was to strengthen due process rights and "clarify the minimum standard of impartiality" that applies to IHOs).

of the DOE, but instead will be *employees of the entity that controls the DOE or of which the DOE is admittedly a subsidiary entity*.

Defendants do not cite any legal authority to support their position, which would write away the IDEA's due process protections for the impartial hearings process. Defendants' position simply is not a permissible interpretation of the IDEA – to bar a city's school district from employing IHOs, while allowing the district's controlling entity to do so.

**B. Defendants' Reliance on the Backlog to Justify the OATH Plan Is Pretextual.**

The aspect of the OATH Plan that requires IHOs to be employees of and lawyers for the City is not designed to remedy the backlog of cases; rather, it is designed to eliminate the existing independent IHOs and give the City direct control over the IHOs, just like they tried to do in 2002, well prior to the backlog. As stated in Plaintiffs' Motion, City Defendants have identified the rising costs of special education claims, which are in the hundreds of millions of dollars, and the success rates of parents at hearings as pressing financial liabilities that need to be controlled.[6] Defendants collectively filed 151 pages in opposition; tellingly, not a single page addresses the City's financial motivation for the OATH Plan or denies that a financial motivation is looming large. Further, by watering down the IHO qualifications, imposing City residency requirements, and reducing compensation (after repeatedly identifying this factor as a barrier to recruiting qualified candidates), Defendants have successfully and intentionally swept the bench of the majority of senior IHOs.[7] Neither federal nor state law imposes a City residency requirement on IDEA IHOs, and DOE employees are not required to reside in the City.[8] Residency is waived for

---

[6] *See* Motion at pp. 6-7.

[7] *See generally* Gronbach Dec. Plaintiffs would need discovery or the ability call witnesses at a hearing to demonstrate just how stark the result will be.

[8] https://www1.nyc.gov/assets/dcas/downloads/pdf/reports/100_8.pdf.

3

eight percent of the City's workforce, and 200 job titles, including all Corporation Counsel and ACS lawyers, as well as various accountants and IT professionals. *See* Hyman Reply Dec. Ex. A.[9] Had Defendants wanted to maintain a bench of experienced IHOs to reduce the backlog, they could have crafted an appropriate job description requiring prior experience as a special education IHO or even experience in special education and sought to waive the residency requirement pursuant to NYC Charter §12- 121. With due respect to our colleagues, surely IHOs with expertise in a complex federal statute, educational and clinical issues pertaining to special education are as equally hard to recruit as first and second year lawyers and accountants. Yet, instead, Defendants intentionally created a system to phase out all of the existing IHOs.

### C. Plaintiffs Have Standing Under Established Precedent.

City Defendants agree that "DOE records confirm that all of the named student Plaintiffs are currently classified as students with disabilities under the IDEA by the DOE." Hyman Reply Dec. ¶ 2. Plaintiffs' status as City parents entitled to a FAPE, without more, is sufficient to establish standing to challenge the MOA and OATH Plan. Contrary to State Defendants' arguments,[10] this is the law in the Second Circuit. *See Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148 (2d Cir. 1992).

In *Heldman*, the Commissioner argued that the plaintiff parent lacked standing to "challenge the New York procedures for the selection of hearing officers" since he had withdrawn his child from public school and had no pending impartial hearing. *Id*. at 157. The Second Circuit rejected this argument, holding that the only requirement necessary for the plaintiff to have standing to challenge the hearing system was that he was a New York state parent of a child with

---

[9] *See also* https://www.osc.state.ny.us/files/reports/osdc/pdf/report-18-2022.pdf (last visited Jan. 9, 2022).

[10] *See* State Opp. at pp 18-22.

an IEP entitled to a FAPE. *Id*. at 157-158.[11] Thus, Plaintiffs do not need to have a pending hearing before an OATH IHO to have standing to challenge the implementation of the OATH Plan. Nor is the standing "speculative" as Defendants confirmed, and the evidence shows, they are proceeding with the OATH Plan in two weeks. Gronbach Dec. ¶ 4. Defendants' argument that Plaintiffs lack standing is not only erroneous, but it also appears to be a two-step trap where the very next argument will be that Plaintiffs failed to exhaust an administrative remedy.

Further, Plaintiffs suffer an injury in fact as well as a deprivation of FAPE if they are deprived of due process rights that comply with the IDEA. *See Heldman,* 962 F.2d at 151 ("Congress intended to create procedural rights the violation of which would constitute injury in fact.").[12] Defendants cannot credibly argue that Plaintiffs are barred from enforcing these rights merely because they have a right to appeal to an SRO.[13] The existence of an appeal process does not eliminate Plaintiffs' standing or strip the Court of subject matter jurisdiction, because Plaintiffs challenge systemic deficiencies in the due process procedures. As the Second Circuit held, a parent need not exhaust this type of challenge to the IDEA's procedures through the appeals process. *Heldman*, 962 F.2d at 158-159.

**D. Plaintiffs Have Established Irreparable Harm.**

This Court should not give credence to Defendants' attempt to delegitimize Plaintiffs' systemic challenge to the OATH Plan as based on "unsupported fear" and "wild" speculation.[14] Plaintiffs' claims are, in actuality, based on the facts, supported by evidence, that: (a) the policy has already changed and the OATH Plan, as written, constitutes a *de facto* violation of the IDEA

---

[11] *See also Honig v. Doe*, 484 U.S. 305, 317-318 (1988) (20-year-old student who remained eligible for a FAPE in the state continued to have standing to challenge suspension policy).

[12] See also Plaintiffs' Motion at p. 14.

[13] State Opp. at p. 14.

[14] State Opp. at p. 20; City Opp. at p. 1.

and state law; (b) the City is the real party in interest and in full control of the DOE; (c) Defendants' plan is designed to remove more than half of the experienced IHOs from the bench and replace them with City lawyers; (d) the Trials Division, on which OATH is based, rules in favor of the city in well over 95% of decisions (Hyman Reply Dec., Ex. B); and (e) the OATH Plan creates a substantially inferior, separate but not equal, system of due process for families in the City, as compared to wealthier families who litigate out of suburban districts.[15]

There is nothing "speculative" about whether the OATH Plan is happening. Defendants confirm that the MOA is still in place and defend the OATH Plan in their opposition papers. The MOA itself states that City employees will begin to "adjudicate impartial due process hearings *heretofore* commenced by the filing of due process complaints in the City of New York." FAC, Ex. A at 1 (emphasis added). Further, IHOs have already been hired by OATH and will be trained the last week in February. Gronbach Dec. at ¶ 4.

Further, and contrary to Defendants' arguments, the irreparable harm that will be caused by the OATH Plan is actual and imminent. Defendants deliberately are not being forthcoming about the roll-out and the precise dates on which this will begin. This Court has determined that Plaintiffs will not be allowed to call witnesses or elicit any evidence at the hearing scheduled for February 16, 2022. Thus, it is impossible for Plaintiffs or this Court to know or establish the exact dates when the OATH IHOs will start conducting hearings.

Plaintiffs are in a no-win situation. If Plaintiffs had waited until the OATH Plan was rolled out, Defendants would argue (and will surely do so) that Plaintiffs waited too long to seek relief. Plaintiffs would have had to ask the Court to undo the entire system after the new IHOs and staff were hired, offices built, new systems created, and the current IHOs gone. By the time one of the

---

[15] State Defendants also improperly conflate standing with the standard for a preliminary injunction. State Opp. at p. 20. Whether there is a showing of imminent irreparable harm or success on the merits has no relationship to standing.

Plaintiffs has an OATH IHO, it would be virtually impossible for a court to enjoin the entire OATH system and change it back to the way it was before. Plaintiffs filed this action expeditiously to try to stop the OATH Plan before it was implemented. While Plaintiffs are aware that not every single hearing will change to OATH officers overnight, the OATH Plan is being implemented. This is not a situation where Plaintiffs can wait until the entire system has been completely dismantled to seek emergency relief.

If this case were about a landmark building to be dismantled, floor-by-floor, over a period of six months, it would be easy to establish imminent harm, as removal of even one floor would be akin to destroying the entire building. Here, the fact that Defendants have decided to dismantle the hearing system slowly, floor-by-floor, cannot preclude a finding that harm is actual and imminent.[16]

### E. Plaintiffs Do Not Seek a Mandatory Injunction.

State Defendants mischaracterize the relief that Plaintiffs are seeking as a mandatory injunction to "reverse" the MOA, which State Defendants wrongly assert requires Plaintiffs to meet a higher standard.[17] State Defendants simultaneously argue that Plaintiffs' claims are unripe and Plaintiffs cannot show irreparable harm because the MOA has not been fully implemented.[18] These arguments are irreconcilable. Plaintiffs' request for relief was made before the MOA was implemented and it sought and seeks to preserve the *status quo*, which is unquestionably impartial

---

[16] It is irrelevant that a state court denied a TRO on behalf of the individual IHOs whose standing relates to their personal claims of being removed as certified IHOs (*i.e.*, losing their jobs) under state law. *See* State Opp. at 9. Here, the Plaintiffs are parents of disabled children who are asserting rights under the IDEA to an impartial, due process hearing. The OATH Plan's violation of these rights is entirely separate from the harm alleged by the IHO contractors who may be gradually phasing out of their contracted jobs and who may have damages claims.

[17] State Opp. at p. 11.

[18] State Opp. at pp. 18, 25.

7

hearings conducted by IHOs who are independent and have experience, and a hearing system that complies with the IDEA.

F. **Defendants' Illegal Actions Are Not in the Public Interest.**

State Defendants incorrectly assert that (1) because Defendants are government actors, there is a presumption that the OATH Plan is in the public interest; and (2) if public interest purportedly supports the government's decision, a court may deny an injunction on those grounds alone.[19] State Defendants cite out-of-district, irrelevant cases that do not support either argument. For example, State Defendants rely on *OurBus, Inc. v. City of Ithaca, New York*, No. 19 Civ. 0356, 2019 WL 2710111 (N.D.N.Y. June 28, 2019), in which a private bus company sought an injunction after the city revoked a location permit for the bus to pick up and drop off but offered alternative locations. The court ruled that the company failed to establish either of the first two preliminary injunction factors, and that it was in the public interest for the city to address safety concerns and regulate traffic. *Id*. at * 21. The other cases cited are similarly inapposite. *See also Hafez v. City of Schenectady*, No. 117 Civ. 0219, 2017 WL 6387692 (N.D.N.Y. Sept. 11, 2017) (landlord could not establish that his constitutional rights were violated when he was denied rental certificates by city inspectors when he failed to allow them to inspect property in accordance with building codes); *Flores v. Town of Islip*, 382 F. Supp. 3d 197, 244-245 (E.D.N.Y. 2019) (plaintiffs did not establish likelihood of success on the merits to enjoin town from holding elections and order an alternative plan); *Saget v. Trump*, 375 F.Supp.3d 280 (E.D.N.Y. 2019) (court enjoined the federal government's revocation of Temporary Protected Status for Haitian nationals).[20] Further, Plaintiffs' Motion turns on whether the OATH Plan will violate Plaintiffs' procedural due process

---

[19] State Opp. at p. 17.

[20] State Opp. at 17.

rights under the IDEA and state law implementing the IDEA. If this Court finds that the OATH Plan violates the IDEA and state law, Defendants cannot credibly contend that the implementation of this plan would be in the public interest.

### G. Defendants Attempt to Mislead the Court on Disposition Rates at OATH.

While the OATH Plan purportedly "is modeled on OATH's Trials Division,"[21] Defendants failed to address any of Plaintiffs' claims concerning Trial Division caseloads and decision rates,[22] or reveal statistics about the Trial Division win rates. Instead, City Defendants faulted Plaintiffs for relying upon the Mayor's Management Report regarding win rates in the Hearing Division.[23] Rather than reveal the damning Trial Division statistics, City Defendants tried to establish the independence of the OATH Trials division by offering an inadmissible, unsworn opinion statement from a lawyer (taken from online testimony),[24] and listing *five* decisions since 1994 in which OATH AJLs ruled against the City (in 1994, 2004, 2011, 2012 and 2017).[25]

Fortuitously, Plaintiffs have located the entire OATH Trial Division data set (updated by OATH for 2017-2021) on the NYC Open Data website.[26] *See* Hyman Reply Dec., Ex. B. This more recent and relevant data shows that the City agencies prevail in the overwhelming majority of cases, and that the agencies have discretion to accept and reject decisions in violation of the IDEA.

---

[21] FAC, Ex. A at p. 1.

[22] Nor have they addressed the inexplicable compensation differential.

[23] City Opp. at pp. 10-11.

[24] City Opp. at p. 11, fn. 5. This statement was apparently downloaded from the city's website; not prepared for this matter. *See* https://www1.nyc.gov/assets/oath/downloads/pdf/11052021-Public-Hearing-Transcript.pdf (last visited Feb. 9, 2022).

[25] *See* Declaration of Olga Statz (ECF No. 38) at pp. 8-9.

[26] *See* https://data.cityofnewyork.us/City-Government/OATH-Trials-Division-Case-Status/y3hw-z6bm (last visited Feb. 9, 2022).

For example, in 2019, out of 439 cases opened in the Trials Division that resulted in decisions, disposition rates were as follows: licenses were revoked or suspended in 259 of the 275 cases involving fitness of TLC drivers; the employee was terminated, suspended or fined in 53 of the 65 cases involving city personnel; a violation and fine were imposed in 29 of the 29 cases of the Business Integrity Board; and closure was recommended in 13 of the 13 padlock law cases. *Id.*. The data for 2020 included only 259 cases with dispositions: licensees were found in violation in 135 of the 152 TLC cases; the individual was suspended, terminated, or reprimanded in 53 out of 57 personnel cases; fines were issued in 21 of the 21 business integrity commission cases; and fines were issued and/or the building was padlocked in 12 of the 13 administrative code cases. *Id*. This is not the neutral system of unbiased hearings contemplated by the IDEA.

**H. OATH IHOs Will Have Less Than Six Hours Per Case.**

Further, the OATH Plan cannot operate as Defendants suggest without grossly curtailing parents' rights and ability to develop appropriate hearing records. While some impartial hearings may take less than two hours on the record, or are dismissed after settlement, many hearings involve multiple days of hearing, thousands of exhibits, motions and closing briefs, as well as substantial decisions. Further, records are developed at hearings that form the basis of more than 7,000 federal decisions that wind their way to the Second Circuit and even up to the U.S. Supreme Court, impacting tens of thousands of students.

Special Education decisions must also be issued within a maximum of 75 days after a case is filed, unless an IHO grants an extension. 34 C.F.R. §§ 300.510, 515. The OATH Plan cannot operate as Defendants suggest even if IHOs barely allocate any time to their cases. OATH operates

from 8 a.m. to 5 p.m.[27] There are 17 mandatory holidays (three weeks).[28] If an OATH IHO takes no other time off other than lunch, each IHO can work 1,960 hours. Even if the City hires 50 full-time IHOs to hear 14,266 annual cases (Hyman Dec. Ex. A at 4), each IHO will carry a caseload of at least 285 matters cases (or 350 if State Defendants change the regulations), an allocation of less than 6.8 hours to each case, including motions, trial time, research, and writing.

As noted above, the higher-paid ALJs in the Trial's Division who handle far fewer complex cases that do not require any expertise in educational or clinical matters [29] do not preside over more than 186 cases per year and collectively, issue less than five hundred decisions annually. Hyman Dec. Ex. L, Hyman Reply Dec. Ex. B. Yet, Defendants are expecting the lesser-paid OATH IHOs, the majority of whom will have no experience either as a special education IHO or in the field of special education, to carry a large, complex case load to focus on eliminating the backlog. It would be impossible to afford families adequate access to appropriate administrative hearings using this model.

**I. OATH IHOs Have a Conflict as They Will Be Under City and Mayoral Control**

Per-session OATH IHOs who staff the OATH Hearings Division recently filed a union grievance over working conditions during COVID, and alleged failed training, lack of technical equipment, and widespread dysfunction and disorganization in the office. Hyman Reply Dec. Ex. C.[30] In response, the City made it clear that it has absolute power over OATH officers under the

---

[27] https://www1.nyc.gov/site/oath/hearings/hearing-in-person.page

[28] https://www1.nyc.gov/assets/opa/downloads/pdf/2022-list-of-holidays.pdf.

[29] The Court should take judicial notice of the vast difference in the issues, content, complexity, and length of issues that OATH hears in either the Trials or Hearing divisions and matters that have come before federally mandated IDEA IHOs.

[30] While the current civil service job code for the full-time IHOs (*see* FAC, Ex. C), is different from the job code for the per-session OATH IHOs who are members of the UFT (Hyman Reply Decl. Ex. C at 10), the MOA contemplates that OATH will be hiring part-time, *per diem* IHOs who are part of the union. *See* FAC, Ex. A at 1. The City has not asserted that Plaintiffs' representations that these IHOs will be unionized is wrong. Further, even if these job codes

11

City Charter" [OATH's] actions constitute permissible exercises of OATH's statutory management right. Specifically, [New York City Collective Bargaining Law §] 12-307(b) grants the City the authority to "exercise complete control and discretion over its organization and the technology of performing its work." Hyman Reply Dec. Ex. C at 53-54. *See also* NYCBBL § 12-307(b). Thus, the City will have complete control of any unionized IHOs, as well as any other non-unionized IHOs who are their employees.

J. **The OSEP Opinion Letters and Other Authority Are Not Binding or Relevant**

The opinion letters from the United States Department of Education's Office of Special Education and Rehabilitative Services ("OSEP") do not justify the OATH Plan.[31] Neither constitute legal authority or stand for the proposition that the IDEA permits an employee of the agency that is financially and managerially responsible for providing a FAPE to serve as an IHO or refute the numerous decisions holding that IHOs must have expertise in special education. In fact, OSEP's 2007 opinion from 2007 that the Florida Department of Education can delegate hearing functions, while reserving the authority to approve or reject the ultimate decision, is contrary to Second Circuit law. *Doe v. East Lyme Bd. of Educ.*, 962 F.3d 649, 660 (2d Cir. 2020) (an IHO must render a final decision which authority cannot be delegated) (citing *Reid v. District of Columbia*, 401 F.3d 516, 526 (D.C. Cir. 2005) (holding that an IHO may not delegate authority to an individual, such as a district employee, who would be "specifically barred from performing" the IHO's "functions.")).[32] OSEP's opinion from 2007 on the Louisiana system is also inapplicable; Louisiana statute established a state-wide independent administrative entity

---

are different, it is likely that the UFT would move to accrete them into the existing bargaining unit. Defendants have not refuted the assertion that some IHOs will be part of the UFT.

[31] State Opp. at p. 32.

[32] *See also Bd. of Educ. of Fayette County, Ky. v. L.M.*, 478 F.3d 307, 316 6th Cir. 2007).

that is not under the control, custody or oversight of any school district or municipality.

Further, Defendants erroneously equate use of a centralized hearing panel with its OATH plan.[33] Even if centralization of a neutral panel is deemed permissible, it does not follow that the panel can be run by the City or that City lawyer-employees can be IHOs, given the unique structure of the education system in New York, the role of the Mayor and the fact that the City is the financially responsible party, both for services and hearing remedies. Further, the former structure in *Blackman v. District of Columbia*, 321 F.Supp.2d 99 (D.D.C. 2004), is not akin to the OATH proposal. In fact, hearings are no longer heard by a centralized panel in D.C. and are presided over by independent contractors with extensive experience in special education, arbitration, and mediation.[34] Moreover, that other districts may also violate the IDEA does not provide grounds for Defendants to do so Nor should New York be following the lead of states like Louisiana and Florida, when it comes to civil rights.

**K. Plaintiffs Can Bring Claims Against State Defendants Under Section 4404.**

State Defendants incorrectly assert that the Eleventh Amendment bars Plaintiffs' claims that State Defendants violated N.Y. Educ. Law § 4404.[35] However, Plaintiffs can bring these claims because the IDEA "incorporates by reference state standards, be they substantive or procedural," where those standards afford more protections for families than the IDEA provides. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 480 F.3d 138, 139 (2d. Cir. 2007); Plaintiffs' Motion at 46. Since Section 4404 was amended to create a neutral rotation system to ensure IHO

---

[33] City Opp. at 16.

[34] https://osse.dc.gov/page/odr-cadre-impartial-hearing-officers

[35] State Opp. at p. 38.

13

neutrality and avoid even the "appearance" of a conflict (Hyman Decl. [No. 9] Ex. JJ), it is incorporated into the IDEA and enforceable against State Defendants.[36]

State Defendants make this spurious Eleventh Amendment argument because they know that the OATH Plan does not comply with state law. As stated in Plaintiffs' Motion, the IDEA and the state law implementing the IDEA require that (a) hearings "shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency" (20 U.S.C. § 1415(f)(1)(A)), (b) the "board of education" or "state agency" "shall appoint" an IHO to preside over a hearing (N.Y. Educ. Law § 4401(1)(a)), and (c) IHOs must be selected according to the rotational selection system pursuant to Section 4401(1)(c).

**L. State Defendants Failed to Provide Public Notice of the OATH Plan.**

Section 1412 of the IDEA requires each State to have "in effect policies and procedures to ensure that the State meets" the conditions enumerated in that section. 20 U.S.C. § 1412(a). One of these conditions is that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section 1415 of this title." § 1412(6)(A). In turn, Section 1412(a)(19) (entitled "Public participation") provides that "[p]rior to the adoption of any policies and procedures needed to comply with this section (including any amendments to such policies and procedures), the State [must] ensure[] that there are public hearings, adequate notice of the hearings, and an opportunity for comment available to the general public…." State Defendants cannot dispute that they violated Section 1412(a)(19) by adopting the OATH Plan without public notice. This violation is more evidence of Defendants' blatant disregard of the procedural safeguards due to parents.

---

[36] The cases cited State Defendants' opposition do not involve IDEA and state education statutes, and thus are not applicable here. State Opp. at 38 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) and *Kelly v. N.Y. Civil Serv. Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016)).

## VII. CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Emergency Relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Dated: February 9, 2022
New York, New York

Respectfully Submitted,

| MAYERSON & ASSOCIATES | THE LAW OFFICE OF ELISA HYMAN, P.C. |
|---|---|
| /s/ Gary Mayerson<br>By_____<br>Gary S. Mayerson<br>330 West 38th Street<br>New York, NY 10018<br>Phone: (212) 265-7200<br>Fax: (212) 265-1735<br>Gary@mayerslaw.com<br><br>*Co-counsel for Plaintiffs* | /s/ Elisa Hyman<br>By_____<br>Elisa Hyman<br>1115 Broadway, 12th Floor<br>New York, NY 10010<br>Phone: (646) 572-9064<br>Fax: (646) 572-9065<br>elisahyman@gmail.com<br><br>*Co-counsel for Plaintiffs* |