USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _____3/1/2022_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
                                                                    :
**E.F., et al.,**                                                   :
                                                                    :
                                        **Plaintiffs,**             :       **21-CV-11150-ALC**
                                                                    :
                        **-against-**                               :       <u>**Opinion and Order**</u>
                                                                    :
**Mayor Eric Adams, et al.,**                                       :
                                                                    :
                                        **Defendants.**             :
                                                                    :
------------------------------------------------------------------ x

**ANDREW L. CARTER, JR., United States District Judge:**

On December 29, 2021, several children with eligible disabilities and their respective

parents ("Plaintiffs") commenced this putative class action against State and City Defendants[1]

under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400, *et seq.*;

the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution; 42 U.S.C. §

1983, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794 ("Section 504"); the

New York State Constitution; New York State Education Law §§ 2590-b, 2590-h, 4401, *et seq.*

(the "New York State Education Laws") and the regulations promulgated thereunder, alleging

that Defendants' plan to transfer special education hearings from the New York Department of

Education's ("NYDOE") New York City Impartial Hearing Office ("NYCIHO") to the New

York City Office of Administrative Trials and Hearings ("OATH") (collectively, the "OATH

---

[1] "State Defendants" refers to Defendants New York State Education Department (NYSED) and Dr. Betty A. Rosa, Commissioner of Education. "City Defendants" refers to Defendants Mayor Eric Adams; the New York City Board of Education; David Banks, Chancellor of the New York City School District; the New York City Department of Education (NYDOE), and Joni Kletter, Commissioner and Chief Administrative Law Judge of the Office of Administrative Trials and Hearings (OATH). Individual defendants are sued in their official capacities.

Plan") is unlawful. ECF No. 1. Plaintiffs submitted an amended complaint (the "FAC") on January 11, 2022. ECF No. 5.

Before the Court is Plaintiffs' motion for preliminary injunction seeking to restrain and enjoin Defendants from implementing the OATH Plan. They seek to enjoin Defendants from "taking any further action to (a) implement the Memorandum of Agreement dated December 1, 2021; (b) implement the Executive Order 91 issued on December 27, 2021; and (c) hire any new impartial hearing officers as employees of OATH, New York City or any of the Defendants." ECF No. 7-10, 13. For the reasons stated herein, the motion for preliminary injunction is **DENIED**.

## I.   LEGAL AND REGULATORY FRAMEWORK UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)

An important policy purpose of the Individuals with Disabilities Education Act (IDEA) is to ensure that children with disabilities have "a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs" and "that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). States receive federal financial assistance under the IDEA for making a FAPE available to children with disabilities. 20 U.S.C. § 1412(a). "The centerpiece of the IDEA's education delivery system is the individualized education program, or IEP." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 81 (2d Cir. 2005) (internal quotation marks and citations omitted). An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised" that shall go into effect no later than the beginning of each academic school year. 20 U.S.C. § 1414(d)(1)(A), § 1414(d)(2)(A).

The State of New York tasks local Committees on Special Education ("CSEs") with formulating IEPs. 20 U.S.C. § 1414(d)(1)(A)-(B); N.Y. Educ. Law § 4402(1)(b)(1). CSEs consist

of one or more of the student's parents, a special education teacher or special education provider of the student, a school psychologist, a school district representative "qualified to provide or administer or supervise special education and . . . knowledgeable about the general curriculum and the availability of resources of the school district," someone "who can interpret the instructional implications of evaluation results," and others. N.Y. Educ. Law § 4402(l)(b)(l)(a).

The IDEA mandates that "[a]ny State educational agency, State agency, or local educational agency . . . shall establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. § 1415(a). An aggrieved party may bring a complaint to initiate administrative proceedings, *see* 20 U.S.C. § 1415(b)(6), § 1415(k), and "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency. 20 U.S.C. § 1415(f)(1)(A). The impartial hearing officer ("IHO") that presides over the impartial due process hearing shall, among other things, not be "an employee of the State educational agency or the local educational agency involved in the education or care of the child; or a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. § 1415(f)(3)(A). Upon decision by the IHO, if a parent remains aggrieved, they may appeal to a State Review Officer ("SRO"). 20 U.S.C. § 1415(f)-(g); *see also* N.Y. Educ. Law § 4404(2). Once this administrative regime is exhausted, parents are permitted to seek reversal or modification of the final determination of the SRO in state court or federal district court. 20 U.S.C. § 1415(i)(2)(A).

## II.   FACTUAL BACKGROUND

### A.  The Merced Report and the 2019 Compliance Assurance Plan ("CAP")

In January 2018, the New York State Department of Education ("NYSED") engaged Deusdedi Merced of Special Education Solutions, a special education consultant, to independently review the NYCIHO as part of its supervisory and oversight duties as the State educational agency under the IDEA. Upon completion of the independent review, Merced prepared a report (the "Merced Report") that found, among other things, that New York City faced increasing numbers of due process complaints filed between 2014-2015 and 2018-2019. Elisa Hyman, Ex. U. at 11-12, 18-19. In May 2019, NYSED's Office of Special Education issued a Compliance Assurance Plan to the New York Department of Education ("NYDOE"), which not only documented ongoing due process issues, but also the gradual increase in the filing of due process complaints (the "CAP"). Hyman, Ex. AA at 18-19.

Due process failures referenced in the CAP included: staff shortages at NYCIHO resulting in "hearing dates being issued after the compliance date;" "limited and inadequate" space at the NYCIHO; hearings restricted to an hour due to "limited space availability;"[2] and "inadequate waiting room space for parents, attorneys, and witnesses." *Id.* at 22. It also discussed an issue with the automatic IHO appointment process whereby the first-appointed IHO was frequently unable to initiate the hearing process within the mandated timeframes. *Id.* The CAP referred to these issues as noncompliant with applicable laws and regulations, including the IDEA and the New York Education Law. *Id.* at 20. To try to address noncompliance, the CAP mandated that, *inter alia*, NYDOE expand staffing resources at NYCIHO and find additional space for hearings by June 2019. *Id.* at 24. It also required NYDOE to provide a corrective action plan to NYSED to address the "failure to provide students with disabilities and their parents all

---

[2] The CAP cited the following finding from the Merced Report: "[t]here are 10 hearing rooms with, on average, 122 calendared matters per day for those rooms." Hyman, Ex. AA at 22.

the rights and procedural safeguards required by federal and State law and regulations." *Id.* at 24-25.

Since May 2019, the NYSED has continued to monitor and supervise NYDOE and its efforts to tackle the various due process issues identified in the Merced Report and the CAP. Christopher Suriano Decl. ¶ 16-17, 26. At the same time, despite these efforts, the number of pending due process complaints in New York City continues to steadily increase. *Id.* ¶ 17-19, 24-25. At the beginning of December 2021, there were 8,985 cases without an IHO on the waitlist for assignment. *Id.* ¶ 20. As of January 21, 2022, of 16,253 open cases, 5,797 "were not resolved within the mandated timelines." *Id.* ¶ 21.

**B. December 1, 2021 Memorandum of Agreement among the New York State Department of Education, the New York Department of Education, and the New York Office of Administrative Trials and Hearings**

On December 1, 2021, the NYSED, the NYDOE, and the New York Office of Administrative Trials and Hearings ("OATH") collectively entered into a Memorandum of Agreement ("MOA") to address the significantly increasing number of due process complaints in the City of New York by "the transfer of the handling of the impartial hearing system" from the NYCIHO to OATH to "facilitate the effective management of current and future filings." FAC, Ex. A at 1. They agreed that OATH would establish a separate Special Education Unit ("Unit") to preside over impartial due process hearings commenced by parents' filing of due process complaints in New York City. *Id.* The Unit would comprise full-time IHOs ("OATH IHOs") that are recruited and hired by OATH, and those OATH IHOs would have "the authority of impartial hearing officers acting under sections 4404 and 4410 of the N.Y. Education Law, applicable State regulations, and in accordance with 20 U.S.C. § 1415" but with "terms of employment and compensation" determined by OATH. *Id.* at 1-2.

Creation of the Unit would include a transition period, which period the NYDOE, the NYSED, and the OATH intend to terminate six months after both (i) the staffing of 40 full-time OATH IHOs eligible to adjudicate hearings and (ii) the establishment of an associate secretariat-like office to handle "maintenance" and "operation" of a new electronic filing system. *Id.* at 2.[3] During the transition period, "due process complaints will continue to be filed with the New York City Impartial Hearing Office and assigned to independent impartial hearing officers" whereas "[n]ewly-filed and unassigned due process complaints may be assigned to OATH impartial hearing officers, upon OATH giving notice, in writing, to the [NYSED and NYDOE] that it is able to accept such cases." *Id.*

Upon termination of the transition period, the NYDOE will "delegate to OATH the function of appointing OATH IHOs to conduct all special education impartial hearings." *Id.* Candidates certified by the NYSED hired by OATH will be trained by NYSED. *Id.* at 3. Any uncertified candidates that meet the requirements of 8 N.Y.C.R.R. § 200.1(x)[4] will have training and certification arranged by the NYSED. *Id.* NYSED will maintain authority to de-certify OATH IHOs and OATH "understands that any IHO decertified by SED cannot work in the Unit." *Id.* OATH will develop and maintain a list of OATH IHOs, including their names and qualifications, pursuant to 34 C.F.R. § 300.511(c)(3).[5] *Id.* The MOA stipulated that the City of New York will be responsible for compensating OATH IHOs. *Id.* at 3-4.

The MOA concludes with a statement from OATH that the Unit will conduct its hearings "consistent with applicable federal and state laws and regulations, and in accordance with

---

[3] The MOA contemplates that NYDOE, NYSED, and OATH "may collectively agree that a different termination date is appropriate." FAC, Ex. A. at 2.

[4] 8 N.Y.C.R.R. § 200.1(x) defines "impartial hearing officer" and sets forth a range of requirements for IHOs, including qualifications, certification, and the like.

[5] 34 C.F.R. § 300.511(c)(3) reads: "Each public agency must keep a list of the persons who serve as hearing officers. The list must include a statement of the qualifications of each of those persons."

applicable administrative rules promulgated by the [NY]SED Commissioner as outlined herein and by OATH." *Id.* at 5. It further states: "Nothing in this MOA shall be construed to interfere with [NY]SED's role as the state educational agency with respect to its supervisory and monitoring obligations of the local educational agency (LEA)." *Id.*

### C. Executive Order 91 ("EO 91") Signed on December 27, 2021

By Executive Order No. 91 ("EO 91"), on December 27, 2021, then-Mayor Bill de Blasio issued an order to take effect immediately. The Executive Order stated in relevant part:

> a. OATH shall, to the extent consistent with applicable law and regulations, and consistent with and subject to the terms of the MOA, have concurrent jurisdiction over categories of adjudications arising under the federal Individuals with Disabilities Education Act and the Regulations of the Commissioner of the New York State Department of Education, parts 200 and 201 (codified at 8 NYCRR parts 200 and 201), which are currently conducted by adjudicators pursuant to a program administered by the New York City Impartial Hearing Office. These adjudications will be conducted in accordance with applicable law by both OATH and adjudicators pursuant to a program administered by the New York City Impartial Hearing Office until such time as a full transfer is effectuated."
>
> b. Oath shall coordinate with [NY]DOE and [NY]SED regarding agency rulemaking relevant to such transfer and the terms of the MOA.

FAC, Ex. B at 2. EO 91 cited Sections 1048 and 1049 of the New York City Charter[6] as authority for the Mayor, by executive order, "to consolidate administrative tribunals and

---

[6] § 1048. Office. There shall be an office of administrative trials and hearings which shall conduct adjudicatory hearings for all agencies of the city unless otherwise provided for by executive order, rule, law or pursuant to collective bargaining agreements. The office shall be directed by the chief administrative law judge, who shall be an attorney admitted to practice for at least five years in the state of New York. The chief administrative law judge shall be appointed by the mayor.

§ 1049. Powers of the chief administrative law judge. 1. The chief administrative law judge shall have authority to direct the office established pursuant to section one thousand forty-eight with respect to its management and structure and to appoint a staff of administrative law judges. Each administrative law judge shall be an attorney admitted to practice in the state of New York for at least five years. Each administrative law judge shall be appointed for a term of five years removable only for cause after notice and opportunity for a hearing on a record. 2. The chief administrative law judge shall establish rules for the conduct of hearings, in accordance with the requirements of chapter forty-five of the charter. 3. In the conduct of an adjudication, an administrative law judge may: (a) hold conferences for the settlement or simplification of the issues; (b) administer oaths and affirmations, examine witnesses, rule upon offers of proof, receive evidence, and oversee and regulate discovery procedures; (c) upon the request of an agency or any party, or

caseloads by transferring tribunals or parts thereof, or categories of adjudications to the [OATH]." *Id.* at 1.

### III.    PROCEDURAL HISTORY

On December 29, 2021, two days after EO 91 took effect, Plaintiffs commenced this action. ECF Nos. 1-3. They then filed an amended complaint on January 11, 2022, along with a motion for temporary restraining order and preliminary injunction to enjoin implementation of the OATH Plan. ECF Nos. 5-13. On January 12, 2022, this Court declined to issue a temporary restraining order against Defendants, ordered service of the motion papers on Defendants, and set a briefing schedule and show cause hearing regarding the preliminary injunction. ECF No. 18. State Defendants and City Defendants filed their opposition briefs to the preliminary injunction on February 2, 2022. ECF Nos. 34-36, 37-40. Plaintiffs submitted their reply on February 9, 2022. ECF Nos. 43-45. The Court deems this motion fully briefed. On February 16, 2022, this Court held a show cause hearing, which lasted approximately two hours, with all parties in attendance, heard arguments from the parties, and reserved its decision.

Several per diem IHOs also filed a lawsuit in state court on December 24, 2021 challenging the MOA under Article 78. *See Gronbach v. NYSED, et al.* (Index No. 910574-21). On December 29, 2021, the Albany County Supreme Court judge in that case denied a request for a temporary restraining order. The return date for the Article 78 proceeding was February 25, 2022.

### IV.    STANDARD OF REVIEW

---

upon the administrative law judge's own volition, subpoena the attendance of witnesses and the production of books, records, or other information; (d) regulate the course of the hearing in accordance with agency rules and chapter forty-five of the charter, provided that if agency rules are silent as to a particular matter, the rules of the office of administrative trials and hearings shall apply; (e) dispose of procedural requests or similar matters; (f) make recommended or final findings of fact or decisions, determinations or orders, as authorized by law; (g) take any other action authorized by law or agency rule consistent therewith.

New York City Charter §§ 1048-1049.

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v.*

*Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). The Second Circuit has clearly and

repeatedly articulated the general standard for granting a preliminary injunction:

> [T]he district court may grant a preliminary injunction if the moving party
> establishes (1) irreparable harm and (2) either (a) a likelihood of success on the
> merits, or (b) sufficiently serious questions going to the merits of its claims to make
> them fair ground for litigation, plus a balance of the hardships tipping decidedly in
> favor of the moving party.

*Monserrate*, 599 F.3d at 154 (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009)).

"When 'a preliminary injunction will affect government action taken in the public interest

pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable

harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest

weighing in favor of granting the injunction.'" *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620,

631 (2d Cir. 2020) (quoting *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841

F.3d 133, 143 (2d Cir. 2016) (internal quotation marks omitted)).

## V.   DISCUSSION

### A.  Justiciability

Defendants' briefs assert that Plaintiffs are not likely to succeed on the merits because

this Court lacks subject matter jurisdiction. They argue that this action is nonjusticiable on three

separate grounds: injury-in-fact, ripeness, and exhaustion. The justiciability arguments must be

addressed as a threshold matter before this Court turns to the merits of the preliminary injunction

motion. *Cf. Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 251 (2d Cir. 2008)

("Appellants' motion for preliminary injunction should therefore have been dismissed for lack of

jurisdiction, rather than on the ground that appellants are unlikely to succeed on the merits of their action.").

A party must have Article III standing—"the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 55 (2d Cir. 2016) (*citing Davis v. FEC*, 554 U.S. 724, 732 (2008)). A standing issue may be raised at any stage in a litigation, *see id.* (*citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "the party invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Under the U.S. Constitution, the jurisdiction of the federal courts is limited to "cases" and "controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 156 (2014) (*quoting Lujan*, 504 U.S. at 560). When a plaintiff seeks injunctive relief, plaintiff must show that "[s]he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)) (internal quotation marks omitted). "[A]bstract injury is not enough; rather the threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)) (internal quotation marks omitted).

### 1. Standing: Injury-in-Fact

"Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied

by the requested relief." *W.R.Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560-61). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues . . . . [t]his inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F. 3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "When standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vasquez*, 143 F. 3d 74, 81 (2d Cir. 1998) (quoting *Warth*, 422 U.S. at 501).

In *Heldman*, the Second Circuit reversed the lower court dismissal of an action on the grounds that plaintiff Edward Joseph Heldman, father of a student with eligible disabilities ("T.H."), lacked standing to sue under New York Education Law § 4404 and failed to exhaust administrative remedies where he brought an action challenging New York state procedure for selecting hearing officers as inconsistent with the IDEA. The Circuit held that the case presented a justiciable controversy because (1) "an impartial due process hearing" under section 1415 of the IDEA conferred a right on the parent of a disabled child to relief when challenging an alleged system-wide violation of the IDEA, and (2) administrative exhaustion in such a case would be futile. *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 150-51 (2d Cir. 1992). The Second Circuit reasoned that the language, legislative history, structure, and implementing regulations of the IDEA "conferred on the parents of disabled children an enforceable legal right to an impartial hearing officer" and, as applied to Heldman and assuming his allegations were true, "the New York system of selecting hearing officers . . . denied him his due process rights under the IDEA and resulted in actual injury." *Id.* at 154-56. They also concluded that the New York state

regulations designed to implement procedural protections required by the IDEA were fairly traceable to the alleged injury (*i.e.*, a denial of the due process guarantee of a neutral adjudicator). *Id.* at 156. Finally, on the redressability prong, the Second Circuit determined that "the nexus between relief and redress is easily established" because "the prospective relief w[ould] prevent future violations of Heldman's right to an impartial hearing." *Id.* at 157.

Only some of the named Plaintiffs have standing in this case. Plaintiffs consist of five parents, along with their respective children with disabilities. FAC ¶ 42-47. E.F., the parent of O.F.; J.R., the parent of K.R.; and M.S., the parent of J.S. and Q.S.; have allegedly "filed impartial hearings" on behalf of their children and will continue to do so if New York City fails to offer appropriate special education services. *Id.* ¶ 43-44, 47. J.F., the parent of H.F., plans to file a hearing for the 2021-2022 school year. *Id.* ¶ 45. L.V., the parent of N.F., alleges that they "will have to file for due process in the future" based on N.F.'s "unique profile." *Id.* ¶ 46. Accepting as true all material allegations in the FAC, including that due process complaints are steadily increasing, the Court concludes that at least J.F., H.F., L.V., and N.F. adequately plead injury-in-fact. The other plaintiffs fail to allege a concrete and particularized harm because their filing of a due process complaint is entirely speculative and is contingent upon whether the DOE fails to offer that specific student with disabilities a FAPE. Even when taken as true, those plaintiffs' allegations fail to plead that the threat of injury is anything more than "hypothetical or conjectural" or that they would be in immediate danger of suffering a direct injury. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). Thus, Plaintiffs E.F., O.F., J.R., K.R., M.S., J.S., and Q.S. must be dismissed from this case for lack of standing.

**2. Ripeness**

Defendants' arguments that this case is unripe are without merit. That there appear to be many uncertainties regarding the OATH Plan is of no moment here. Defendants have already begun to implement the OATH Plan. City Defendants have started interviewing and hiring candidates for open OATH IHO positions, and NYSED-led training for uncertified candidates was scheduled to begin in late February 2022. At the February 16 hearing, Defendants reported that OATH IHOs could be assigned to special education cases as early as March 2022. City Defendants also represented that the transition period outlined in the MOA could terminate as early as July 2022. The OATH Plan is far from a proposed administrative rule or policy. *See Isaacs v. Bowen*, 865 F.2d 468 (2d Cir. 1989). Both the MOA and EO 91 have taken effect and are currently being brought into full operation; the State and City Defendants are expending real financial and human resources on its implementation.

### 3.   Exhaustion of Administrative Remedies

Defendants also argue that this Court lacks subject matter jurisdiction due to Plaintiffs' failure to exhaust administrative remedies. Not true. The Court retains subject matter jurisdiction under the futility exception to the IDEA. The Second Circuit, including in *Heldman*, has expressly recognized that a plaintiff need not exhaust the administrative process when the "pursuit of administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury." *Heldman*, 962 F.2d at 159. The *Heldman* court concluded that the plaintiff was excused from the exhaustion requirement "[b]ecause the regulation [at issue] implement[ed] a New York statute." *Id*. It also reasoned that "neither the Commissioner nor the assigned hearing officer ha[d] the authority to alter the procedure" and "it would be an exercise in futility to require Heldman to exhaust the state administrative remedies." *Id.* (citation omitted).

13

Here, Plaintiffs challenge the OATH Plan as a violation of the IDEA and, to the extent that section 4404 of the New York Education Law authorizes the OATH Plan, they challenge that state statute as a violation of the IDEA. There is no indication that state or local administrative authorities could remedy the alleged injuries resulting from the OATH Plan. The transfer of IHOs to OATH will begin as early as March 2022, as City Defendants reported during the February 16 hearing, which convinces the Court that it would be futile for Plaintiffs to go through the administrative process to seek injunctive relief.

Furthermore, the Second Circuit routinely excuses exhaustion in IDEA cases where "the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *See, e.g.*, *Cave*, 514 F.3d at 249–50 (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 114 (2d Cir. 2004)) (internal quotation marks omitted)); *see also Jose P. v. Ambach,* 669 F.2d 865 (2d Cir. 1982). This action seems to fit both categories.[7] The framework and procedures for impartial hearings is at the heart of this case. Regarding the nature and volume of complaints, Plaintiffs allege that the OATH Plan is a system-wide violation of federal and/or state law. Such complaints are "incapable of correction" through the administrative process.

Having determined that there is subject-matter jurisdiction to preside over this case as to Plaintiffs J.F., H.F., L.V., and N.F., the Court will now turn to the merits of the motion for preliminary injunction.

---

[7] *Cave* is particularly on point here. There, the Second Circuit held that an individual plaintiff failed to exhaust administrative remedies where there was no allegation of system-wide violations of the IDEA, and plaintiff had failed to plausibly argue that the administrative process was "so structurally tainted that they would not have been afforded a fair and impartial forum to present their claims." *Cave*, 514 F.3d at 250. Contrary to the complaint in *Cave*, the FAC alleges system-wide violations of the IDEA and specifically pleads that the fair and impartial hearing system will be "structurally tainted" by transferring the system to OATH.

**B. Applicable Preliminary Injunction Standard**

It is well-established in the Second Circuit that preliminary injunctions are either prohibitory or mandatory in nature. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018). "A prohibitory injunction is one that 'forbids or restrains an act.'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) (citing *Black's Law Dictionary* 788 (7th ed. 1999)). On the other hand, a mandatory injunction "orders an affirmative act or mandates a specified course of conduct." *Id.* The standard for imposing a mandatory injunction is higher than for a prohibitory injunction. "In borderline cases injunctive provisions containing essentially the same command can be phrased either in mandatory or prohibitory terms." *N. Am. Soccer* at 36 n.4 (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994)). The "status quo" in the preliminary injunction context refers to "status quo ante," which specifically "shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Id.* at 37 n.5 (citations omitted). To determine the status quo, courts must look to "the last actual peaceable uncontested status which preceded the pending controversy." *Id.* at 37 (citing *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam) (footnote omitted)) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994)).

The preliminary injunctive relief sought here is prohibitory in nature. Plaintiffs specifically seek an order to halt implementation of the OATH Plan, which seeks to preserve the status quo by prohibiting Defendants' from further action, rather than by mandating specific affirmative action by Defendants. In *Abdul Wali*, the Second Circuit held that a preliminary injunction that would stop prison officials from continuing to interfere with the delivery of

documents from a third party to prison inmates was "more prohibitory than mandatory in nature." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1026 (2d Cir. 1985), *overruled on other grounds*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (footnote omitted). Similarly, Plaintiffs' motion asks this Court to restrain state and local government from "taking any further action" to carry out the MOA and EO 91 and from hiring any new OATH IHOs. *See* ECF No. 13. Plaintiffs' requested relief is unlike mandatory injunctions, which typically ask the non-moving party to take affirmative acts. *See, e.g.*, *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 509 (2d Cir. 2006), *opinion amended on denial of reh'g,* 480 F.3d 138 (2d Cir. 2007) (finding heightened standard applied where NYDOE and NYSED failed to immediately provide mandated educational services and preliminary injunction would require them "to immediately implement all services required by [IEPs] to all members of the plaintiff class"); *see also N. Am. Soccer*, 883 F.3d at 36-38 (holding that preliminary injunction directing United States Soccer Federation, Inc. ("USSF") to change near-decade-long relationship of federal-league sanctioning between the parties was mandatory in nature).

State Defendants attempt to recharacterize the preliminary injunction as a request to reverse the MOA and EO 91. The attempt is unavailing. Contrary to Defendants' belief, the existing impartial hearing system is the status quo ante here. The per diem IHO system administered through the NYCIHO, which pre-dated implementation of the OATH Plan and thus constitutes "[t]he last actual peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer*, 883 F.3d at 36-37. Plaintiffs commenced this action just days after EO 91 took effect, alleging that Defendants' transfer of the current hearing system to OATH is unlawful. Approximately two weeks later and several months before the anticipated completion

of the transfer to OATH,[8] Plaintiffs amended their complaint and sought emergency injunctive relief restraining Defendants from continuing to carry out the OATH Plan. The gravamen of the amended complaint is that the OATH Plan will change the current impartial hearing system, which allegedly violates Plaintiffs' due process rights under the IDEA and other applicable laws. However, as the Supreme Court advised in *Bagwell*, this Court may not permit Defendants to "seek[] shelter under a current 'status quo' precipitated by their [alleged] wrongdoing" to avoid the normal preliminary injunction standard. *Id.*

The heightened standard may also apply when, regardless of whether mandatory or not, an injunction will provide the moving party with "substantially 'all the relief that is sought.'" *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citations omitted). The Second Circuit has written that a heightened standard is justified when the injunction "once complied with, cannot be undone" or would "render a trial on the merits largely or partly meaningless, either because of temporal concerns . . . or because of the nature of the subject of the litigation." *Tom Doherty*, 60 F.3d at 35. In such a case, "the plaintiff should have to meet the higher standard of substantial, or clear showing of, likelihood of success to obtain preliminary relief." *Id.*

Here, the requested preliminary injunction would provide all the relief sought, but a trial on the merits would not be meaningless because the injunction could be undone. Plaintiffs seek preliminary relief that would become permanent if they prevailed at trial. But "the fact that the plaintiff would get no additional relief if he prevailed at trial on the merits should not deprive him of his remedy." *Id.* at 34 (citing *Developments in the Law—Injunctions,* 78 Harv. L. Rev. 994, 1058 (1965)). If enjoined, Defendants could just restart the process of transferring the

---

[8] City Defendants represented at the February 16 hearing that the OATH Plan was set to be fully implemented in or about July 2022.

impartial hearing system to OATH if they prevailed on the merits, so "there is no reason to impose a higher standard" in this case. *Id.* at 35.

Because the preliminary injunction sought is (i) prohibitory in nature and (ii) its issuance could be undone, the normal preliminary injunction standard applies here. As written *supra*, Plaintiffs' must demonstrate "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Agudath*, 983 F.3d at 631.

### 1. Irreparable Harm

To establish irreparable harm, "a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation omitted). "[I]rreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

Plaintiffs have failed to demonstrate that irreparable harm is likely absent a preliminary injunction. The Court construes the alleged irreparable harm as the system-wide violation of Plaintiffs' right to an impartial due process hearing conducted by an impartial hearing officer. Pl.'s Mem. at 58 (collecting cases).[9] The Court concludes that Plaintiffs have failed to meet their burden of showing irreparable injury.

---

[9] They also assert that the integrity of the impartial hearing system will be destroyed, that significant hiring of administrative staff under the OATH Plan will be impossible to reverse, and that no existing per diem IHOs will be available to preside over unassigned hearings on the current waitlist. Pl.'s Mem. at 58. Plaintiffs provide no legal support for these alleged harms; they are entirely speculative and not actual and imminent. For example, at the February 16 hearing, Defendants represented that any pending hearings on the current waitlist would be assigned to an existing per diem IHO and that approximately 6 or 7 per diem IHOs would transfer to OATH. The MOA also stipulates that "due process complaints will continue to be filed with the New York City Impartial Hearing Office and assigned to independent impartial hearing officers" during the transition period and that only newly filed and unassigned cases may be assigned to OATH IHOs upon notice from OATH that they are ready for those cases. FAC, Ex. A.

*First*, there is no actual or imminent harm facing Plaintiffs. For instance, none have provided evidence showing that they have pending due process complaints, that they have seized the opportunity to request an impartial hearing regarding a due process complaint, or that an OATH IHO has been assigned to the case.[10] Plaintiffs lack evidence of an imminent hearing before an OATH IHO, so there is no ongoing real or actual threat of harm.

*Second*, even assuming, arguendo, that an OATH IHO was assigned to one of Plaintiffs' pending cases,[11] there is insufficient evidence that they lack the requisite knowledge or would be inherently biased because they are paid by the City of New York (the "City"). Regarding expertise, the evidence reflects that approximately 6 or 7 of the per diem IHOs will transition to OATH, that training and certification of OATH IHOs will *continue* to be led by the NYSED, that no IHO candidate may hear cases unless and until they are certified by NYSED, and that NYSED reserves authority to de-certify OATH IHOs which would prohibit them from hearing cases.

And even though OATH IHOs will be compensated by the City, Plaintiffs' convoluted allegation that the City would be a real party-in-interest in hearings before OATH IHOs lacks merit. Plaintiffs claim that because OATH IHOs would be City employees, they are also employees of the NYDOE. No compelling evidence is provided to support the accusation that OATH would be beholden to the City or would otherwise be biased in adjudicating cases. At this time, it is unclear to this Court how day-to-day management of hearings by the OATH would be any different from day-to-day management by the NYCIHO. Plaintiffs also acknowledged

---

[10] City Defendants estimated that OATH IHOs would be assigned to cases, and would likewise start hearing cases, as early as March 2022.
[11] A handful of Plaintiffs allege that they plan to or will file for impartial hearings. FAC ¶ 45-46. For satisfying injury-in-fact, the pleading standard applies, and courts take all materials allegations in the complaint as true. *Vasquez*, 143 F. 3d at 81. But a motion for preliminary injunctive relief requires more than allegations.

during the February 16 hearing that any individual parent's concerns about impartiality of any individual OATH IHO could be asserted before the IHO, raised on appeal before the SRO, and raised (again) before a state or federal court on judicial review.

*Third,* the alleged harm is not irreparable because the current record does not show that it "cannot be adequately redressed by final relief on the merits." *Kamerling*, 295 F.3d at 214. Though the Court would be remiss in failing to acknowledge that undoing the transfer of the hearing system to OATH after a trial on the merits may require additional time and human resources, there is no evidence that it could not be undone. There is also no evidence that cases could not later be re-assigned to or reheard before an impartial adjudicator if Plaintiffs happened to prevail on the merits at trial.

*Fourth* and finally, Plaintiffs cite a handful of cases for the proposition that irreparable harm is self-evident because the OATH Plan is a denial of a FAPE. Pl.'s Mem. at 58. But those cases are distinguishable for two reasons. First, the injunctions in the cases did not seek to enjoin system-wide policies or practices under the IDEA. Plaintiffs here do. Second, there was no dispute in many of those cases that defendants had denied plaintiffs a FAPE. For example, in *M.W.,* defendants admitted that they had denied the aggrieved student a FAPE for over eleven years. *See M.W. v. New York City Dep't of Educ.*, No. 15-CV-5029, 2015 WL 5025368 (S.D.N.Y. Aug. 25, 2015). Likewise, D.C. Public Schools (DCPS) in *Massey* admitted to its failure to comply with IDEA-mandated procedural safeguards by failing to meet the mandated deadline for impartial hearings. *See Massey v. District of* Columbia, 400 F.Supp.2d 66 (D.D.C. Nov. 3, 2005). Defendants here do not admit or concede that the OATH Plan would deny a FAPE to Plaintiffs. In fact, as discussed *infra*, they contend that the per diem IHO system is

20

mired with due process issues that is *currently* harming parents and students with disabilities throughout New York City.

### 2.   Balance of the Equities

The public interest factor does not favor granting the injunction. Plaintiffs argue that the balance of equities favors a preliminary injunction because the OATH Plan attempts to sidestep the state legislature's solution for clearing the case backlog. Pl.'s Mem. at 59. The Court is unpersuaded that the balance of the equities favors enjoining the transfer of IHOs to OATH currently.

Based upon the record before this Court, the public interest cannot be served by enjoining implementation of the OATH Plan. The significant delays in hearings beyond mandated deadlines, and the resolution of due process complaints documented in the Merced Report and the CAP, demonstrate that students with disabilities and their parents are being harmed by the *current* per diem system. The Parties are aware that the existing backlog consists of thousands of unassigned and unresolved special education cases. State and City Defendants set forth the OATH Plan to try to alleviate this ongoing harm. "[A] movant for preliminary injunction must demonstrate . . . a balance of hardships tipping in his or her favor." *Blum v. Schlegel*, 18 F.3d 1005, 1016 (2d Cir. 1994). When balanced against the speculative and remote harm that Plaintiffs allege may occur absent injunction, the equities tip heavily in favor of government action.

### C.   Automatic Injunction Based on Pendency

Plaintiffs suggest that an automatic injunction to preserve the status quo is warranted under the IDEA's "stay-put" or "pendency" provision. 20 U.S.C. § 1415(j).[12] But that provision

---

[12] Plaintiffs devote only a half-page of their 60-page opening brief to this argument. It is not well-supported.

expressly applies to pending cases. No named plaintiff in this case currently has a pending due process complaint. Moreover, Plaintiffs provide no support for the proposition that Congress intended Section 1415(j) to apply to cases pending in federal court that challenge systemwide hearing procedures. Therefore, no automatic injunction should attach here.

## VI.   CONCLUSION

Because Plaintiffs' motion fails to demonstrate irreparable harm absent injunction and because the balance of the equities weighs against imposing the injunction, it is hereby **DENIED**. The motion fails on two of the three requisite prongs, and therefore this Court need not reach the "likelihood of success on the merits." The Clerk of Court is respectfully directed to terminate Plaintiffs E.F., O.F., J.R., K.R., M.S., J.S., and Q.S. from this case for lack of Article III standing.

In light of the allegations raised in this case, the Court directs the Parties to file joint status reports every fourteen (14) days, starting from the date this Opinion and Order is issued, to include the status of (1) the implementation of the OATH Plan and (2) the Article 78 proceedings in New York state court in *Gronbach v. NYSED, et al.* (Index No. 910574-21). The Parties are also encouraged to consider settlement, perhaps through the negotiation of a proposed consent decree, for judicial approval.

**SO ORDERED.**

**Dated**: March 1, 2022
New York, New York

_____
**The Hon. Andrew L. Carter, Jr.**
**United States District Judge**