UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J.F. on behalf of himself and his minor child, H.F., *et al.*,

*Plaintiffs*,

- against -

MAYOR ERIC ADAMS, *et al.*,

*Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel of the City of New York*
Attorney for City Defendants
100 Church Street
New York, NY 10007

Of Counsel: David S. Thayer
Tel.: (212) 356-2649

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... III

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY .................................................................... 2

ARGUMENT .................................................................................................................................. 9

LEGAL STANDARD .................................................................................................................... 9

      POINT I ........................................................................................................................ 10

            PLAINTIFFS LACK STANDING. ........................................................ 10

      POINT II ....................................................................................................................... 15

            PLAINTIFFS' ALLEGATIONS OF BIAS AND
            INEXPERIENCE ON THE PART OF OATH
            IMPARTIAL HEARING OFFICERS ARE
            INCORRECT. ......................................................................................... 15

      POINT III ...................................................................................................................... 23

            PLAINTIFFS FAIL TO PLEAD THE EXISTENCE
            OF A SUFFICIENTLY SIMILAR
            COMPARATOR OR THAT THE
            IMPLEMENTATION OF THE OATH PLAN
            FAILS TO SATISFY RATIONAL BASIS
            REVIEW. ................................................................................................ 23

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).............................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 9, 10

*Blackman v. District of Columbia*, 321 F. Supp. 2d 99 (D.D.C. 2004) ....................... 19

*Burr ex rel. Burr v. Ambach*, 863 F.2d 1071 (2d. Cir. 1988)..................................... 18

*Camac v. Long Beach City Sch. Dist.*, No. 09 CV 5309 (DRH)(ARL), 2011 U.S. Dist. LEXIS
    79997 (E.D.N.Y. July 22, 2011) ......................................................................... 23

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016).................................. 10

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................. 10

*Doolen v. Wormuth*, 5 F.4th 125 (2d Cir. 2021) ........................................................ 14

*Dudzik v. City of New York*, No. 01 Civ. 2450 (NRB), 2003 U.S. Dist. LEXIS 1287 (S.D.N.Y.
    Jan. 21, 2003) ...................................................................................................... 21

*E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509 (4th Cir. 2014).......... 20

*Fairfield-Suisun Unified Sch. Dist. v. Dep't of Educ.*, 780 F.3d 968 (9th Cir. 2015).................. 19

*Goldin v. Greenberg*, 49 N.Y.2d 566 (1980) .............................................................. 16

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) .......................................... 24

*Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022)...................................... 12

*Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148 (2d Cir. 1992)............................... passim

*Heller v. Doe ex rel. Doe*, 509 U.S. 312 (1993) ......................................................... 24

*Hirshfield v. Cook*, 227 N.Y. 297 (1919).................................................................... 16

*Holmes ex rel. Holmes v. Sobol*, 690 F. Supp. 154 (W.D.N.Y. 1988).................... 18, 19

*James v. Fariña*, 171 A.D.3d 44 (N.Y. App. Div. 1st Dep't 2019)............................. 17

*Kamholtz v. Yates Cnty.*, No. 08-CV-6210 (MAT), 2008 U.S. Dist. LEXIS 97985 (W.D.N.Y. Dec. 3, 2008) ........................................................................................................ 23

*Karuppasamy v. U.S. Citizenship & Immigration Servs.*, 20 Civ. 7823 (ER), 2021 U.S. Dist. LEXIS 153357 (S.D.N.Y. Aug. 13, 2021) ........................................................... 9

*Louis M. ex rel. Velma M. v. Ambach*, 714 F. Supp. 1276 (N.D.N.Y. 1989) ........................ 18, 19

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................... 10

*Lunney v. United States*, 319 F.3d 550 (2d Cir. 2003) .................................................... 9

*M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082 (9th Cir. 2012) ........................................... 20

*Maloff v. N.Y.C. Comm'n on Human Rights*, 38 N.Y.2d 329 (1975) .............................. 15, 16, 17

*Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320 (E.D.N.Y. 2014) .................................. 24

*Matter of Dep't of Educ. v. Halpin*, Index No. 818/07 (N.Y.C. Off. of Admin. Trials & Hearings Aug. 9, 2007) ...................................................................................................... 16

*Matter of Victor v. N.Y.C. Office of Trials & Hearings*, Index No. 100890/2015 (N.Y. Sup. Ct. N.Y. Cnty. May 29, 2018) ....................................................................................... 21

*McAllan v. Von Essen*, 517 F. Supp. 2d 672 (S.D.N.Y. 2007) ........................................ 21

*Molinari v. Bloomberg*, 564 F.3d 587 (2d Cir. 2009) .................................................... 24

*Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95 (2d Cir. 2018) ...... 10

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2008) ...................................................... 23

*Nike, Inc. v. Already, LLC*, 663 F.3d 89 (2d Cir. 2011) ................................................... 9

*Oles v. City of New York*, No. 22-1620-cv, 2023 U.S. App. LEXIS 11074 (2d Cir. May 5, 2023) ........................................................................................................................ 14

*Sarr v. Garland*, 50 F.4th 326 (2d Cir. 2022) ............................................................ 19

*Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008) ..................................................... 10

*Sobol v. Burr*, 492 U.S. 902 (1989) ................................................................ 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................ 10, 11, 12, 14

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................ 10

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ...................................... 12

*Withrow v. Larkin*, 421 U.S. 35 (1975)........................................................... 14

**Statutes**

20 U.S.C. § 1401(19) ...................................................................................... 17

20 U.S.C. § 1415(b) .......................................................................................... 2

20 U.S.C. § 1415(f)............................................................................... passim

20 U.S.C. § 1415(i) ........................................................................................... 3

N.Y. Civ. Serv. Law § 75................................................................................. 16

N.Y. Educ. Law § 2551 .................................................................................. 16

N.Y. Educ. Law § 4404(1)................................................................................. 3

N.Y. Educ. Law § 4404(2)................................................................................. 3

N.Y. Educ. Law § 4404(3)................................................................................. 3

N.Y.C. Admin. Code § 1-102(1)...................................................................... 15

N.Y.C. Charter § 1048(1) ................................................................................ 15

N.Y.C. Charter § 1048(2) ................................................................................ 15

N.Y.C. Charter § 1150(2) ............................................................................ 15, 16

**Other Authorities**

Brief of *Amicus Curiae* John Payton Pursuant to the Court's Aug. 22, 2003 Order, *Blackman v. District of Columbia*, Civil No. 97-1629 (PLF) (D.D.C. Sept. 22, 2003) ............................... 20

N.Y.C. Exec. Order [Adams] No. 20 (June 24, 2022)............................................. 4, 6

N.Y.C. Exec. Order [de Blasio] No. 91 (Dec. 27, 2021) ................................................ 4

N.Y.C. Off. of Admin. Trials & Hearings, *Special Education Hearings Division*, City of New

    York, https://www.nyc.gov/site/oath/about/special-education-hearings-division.page ....... 4, 22

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................................ 9

**Regulations**

34 C.F.R. § 300.514(a) .................................................................................................. 13

34 C.F.R. § 300.515(a) .................................................................................................... 2

8 C.F.R. § 1003.14(a) .................................................................................................... 19

8 C.F.R. § 1003.9(a) ...................................................................................................... 19

8 N.Y.C.R.R. § 200.1(x) ................................................................................................ 22

8 N.Y.C.R.R. § 200.2(e) .................................................................................................. 3

8 N.Y.C.R.R. § 200.21(a) ............................................................................................... 3

8 N.Y.C.R.R. § 200.5(j) ................................................................................................... 2

## PRELIMINARY STATEMENT

In this putative class action, Plaintiffs J.F., L.V., A.M., M.F., J.S., and R.H., on behalf of themselves and their minor children (collectively, "Plaintiffs"), assert claims under the Individuals with Disabilities Education Act ("IDEA"), the N.Y. Education Law, the Rehabilitation Act ("Section 504"), and both the N.Y. and U.S. Constitutions against Defendants the City of New York, Mayor Eric Adams, the New York City Department of Education ("DOE"), the New York City Board of Education, Chancellor David C. Banks, the New York City Office of Administrative Trials and Hearings ("OATH"), and Commissioner Asim Rehman (collectively, the "City Defendants").

In their Third Amended Complaint ("TAC"), Plaintiffs claim that, together with Commissioner Betty Rosa and the New York State Education Department (collectively, "State Defendants"), the City Defendants have embarked on an unlawful process by which administrative hearings filed in the City of New York under the IDEA, the N.Y. Education Law, and Section 504 will, going forward, be adjudicated by OATH. Plaintiffs assert a litany of alleged inadequacies with this plan, though they focus primarily on the alleged *per se* bias of OATH impartial hearing officers ("OATH IHOs") as City employees.

Plaintiffs, however, lack standing to bring this action. They have not alleged any concrete harms flowing from the fact that OATH IHOs may have adjudicated or are adjudicating their administrative hearings. Moreover, one Plaintiff does not even have a proceeding before OATH, two Plaintiffs have received final decisions from OATH IHOs that they neither administratively appealed nor challenged for reasons of bias, and one Plaintiff has never sought recusal of the assigned OATH IHO.

Plaintiffs also fail to allege viable claims against the City Defendants. They fail to plausibly allege that the OATH IHOs are biased or are inadequately qualified. Nor have they

1

established the existence of a proper comparator such that their Equal Protection Claim is adequately pleaded.

As such, the City Defendants respectfully submit that all claims against them should be dismissed and that the TAC should be dismissed in its entirety.

## BACKGROUND AND
## PROCEDURAL HISTORY

**A.      Framework of Due Process Hearings in New York.**

The IDEA provides that the parents of a student with a disability who wish to challenge the recommendations made by a school district for the student may request an impartial due process hearing.[1] 20 U.S.C. § 1415(b)(6), (f)(1). The IDEA, and both federal and State regulations, set forth timelines pursuant to which the parents' challenge will be considered and resolved. First, a hearing officer should be offered appointment to hear a matter within two business days from the filing of a due process complaint. 8 N.Y.C.R.R. § 200.5(j)(3)(i)(a). Second, within fifteen days of the filing of a due process Complaint, the local educational agency shall schedule a resolution session.[2] 20 U.S.C. § 1415(f)(1)(b)(i). Third, if the matter is not resolved within thirty days, a due process hearing shall commence. *Id.* § 1415(f)(1)(b)(ii). Absent lawful extensions, a hearing must be held and a decision reached within 45 days after the conclusion of the resolution period (or, within 75 days of the filing of the due process complaint). *See* 34 C.F.R. § 300.515(a); *see also* 8 N.Y.C.R.R. § 200.5(j)(5).

---

[1] A parent may seek a hearing regarding "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6).

[2] The parent and the local educational agency can agree to waive the resolution sessions. 20 U.S.C. § 1415(f)(1)(b)(i).

Impartial hearing officers ("IHOs") cannot be employees of the local or State educational agencies, cannot have "a personal or professional interest that conflicts with [their] objectivity in the hearing," and must "possess" the "knowledge" and "ability" to understand the applicable legal provisions and to conduct hearings and to render and write decisions "in accordance with appropriate, standard legal practice." 20 U.S.C. § 1415(f)(3)(A). It is the Commissioner of the New York State Education Department ("SED") who establishes training for hearing officers, promulgates the standards by which impartial hearings shall be conducted, certifies the hearing officers, and sets their compensation. N.Y. Educ. Law § 4404(1)(c); 8 N.Y.C.R.R. § 200.1(x)(4); 8 N.Y.C.R.R. § 200.21(a). The DOE maintains a list of certified hearing officers and appoints them to preside over hearings.[3] 8 N.Y.C.R.R. § 200.2(e)(1)(ii).

New York has a two-tier administrative system for considering due process complaints. N.Y. Educ. Law § 4404(2). Any determination issued by an impartial hearing officer may be appealed to SED's Office of State Review, where a State Review Officer ("SRO") will review and, where appropriate, modify the IHO's determination. *Id.* Any party aggrieved by the decision of an SRO may challenge that decision in an action in State or federal court. *Id.* § 4404(3); 20 U.S.C. § 1415(i)(2).

## B.    The December 1, 2021 Memorandum of Agreement & Transition to OATH.

The number of impartial hearings filed in the City of New York has increased substantially in recent years, and the City Defendants are aware that *Per Diem* IHOs[4] in the City

---

[3] The Department of Education's Impartial Hearing Office also performs various other functions in connection with the impartial hearing system, including recording and tracking case assignments and reporting data to the State Education Department.

[4] These pre-OATH IHOs have variously been referred to by the parties as *per diem* IHOs and independent contractor IHOs. For the purposes of their Motion, City Defendants refer to them as "*Per Diem* IHOs."

often did not issue decisions in impartial hearings within forty-five days of the conclusion of the resolution period or within seventy-five days of the filing of due process complaints. Indeed, many impartial hearings remain pending in the City from prior school years. Further contributing to the backlog of cases was the fact that *Per Diem* IHOs frequently refused appointments or recuse themselves after assignment.

In an effort to address these issues, to ensure that due process hearings are assigned and decided within the statutory time frames, and to assist with decreasing the number of pending cases, the City Defendants coordinated with the State Defendants and executed a Memorandum of Agreement ("MOA"). (Declaration of Andrew J. Rauchberg [hereinafter "Rauchberg Decl."], Ex. 1, Feb. 2, 2022, ECF No. 40-1.) Pursuant to this MOA, the handling of the impartial hearing system is being transferred to OATH. As New York City's central administrative tribunal, OATH is independent from DOE and has decades of experience adjudicating administrative matters involving New York City agencies. (Rauchberg Decl., Ex. 1); *see also generally* N.Y.C. Off. of Admin. Trials & Hearings, *Special Education Hearings Division*, City of New York, https://www.nyc.gov/site/oath/about/special-education-hearings-division.page (last accessed June 5, 2023). Under the MOA, OATH has established a Special Education Hearings Division that has employed and will continue to employ OATH IHOs to address outstanding cases and issue decisions in new cases within the statutory time frames. See *Special Education Hearings Division*, *supra*. This plan was then further memorialized in Executive Order No. 91 ("E.O. 91"), dated December 27, 2021, which was issued by then-Mayor Bill de Blasio and subsequently ratified by the current Chancellor of DOE. E.O. 91 was subsequently revoked and replaced by Executive Order No. 20, dated June 24, 2022 (and the Chancellor ratified this Order on June 27, 2022).

Pursuant to the plan set forth in the MOA (the "OATH Plan"), OATH IHOs will be trained and certified by SED, and OATH will supervise the new special education unit and promulgate rules for overseeing and administering impartial hearings in the City of New York. (Rauchberg Decl., Ex. 1 ¶¶ 11-12, 16.) OATH will also ensure that, in addition to the timely appointment of IHOs and the issuance of timely decisions, IHOs will conduct themselves appropriately, with professionalism and decorum. (*Id.* ¶¶ 10, 16.) The City Defendants are confident that these changes will be and have already been effective and will inure to the benefit of parents of students with disabilities who invoke due process, including the Plaintiffs here.

## C.    Procedural History.

Plaintiffs are six students with disabilities and their parents who reside in New York City, who, at the time of the TAC's filing, allegedly had pending due process complaints, some of which were before OATH IHOs. (*See* TAC ¶¶ 66-88.) This action was originally commenced on December 29, 2021, by a different cohort of students and their parents. (ECF No. 1.) Shortly thereafter, on January 11, 2022, a First Amended Complaint was filed. (ECF No. 5.) On the same day, Plaintiffs moved for a temporary restraining order and preliminary injunction, seeking to enjoin the transition of the administration and adjudication of the due process system to OATH. (*See generally* ECF Nos. 7-10.) The following day, on January 12, 2022, the Court denied Plaintiffs' request for a temporary restraining order. (ECF No. 18.) Thereafter, on March 1, 2022, the Court denied Plaintiffs' motion for a preliminary injunction, concluding, *inter alia*, that several then-Plaintiffs lacked standing, and that those who did have standing had not established a likelihood of irreparable harm nor a public interest that would be served by the issuance of an injunction. (*See, e.g.*, Opinion & Order, at pp. 12, 19-21, ECF No. 46.)

Nearly three months later, on May 26, 2022, Plaintiffs filed a Second Amended Complaint. (ECF No. 66.) Then, four months later, on September 26, 2022, Plaintiffs sought leave

to file a Third Amended Complaint, (ECF No. 82), the currently operative complaint. The Court granted Plaintiffs leave to file their TAC on November 30, 2022, (ECF No. 89), and it was thereafter filed on or about December 23, 2022, (ECF No. 94).

**D.    Individual Plaintiffs.**

The TAC asserts claims under the IDEA, Section 504, 42 U.S.C. § 1983, the N.Y. and U.S. Constitutions, and the N.Y. Education Law.[5] (TAC ¶¶ 437-77.) These claims are asserted on behalf of six individual plaintiffs, and all others similarly situated. (*Id.* ¶¶ 69-89.) Consideration of the current state of affairs of each Plaintiff's administrative proceeding is relevant the consideration of their standing to bring this action.

**(a) J.F., on behalf of himself and his minor child, H.F.**

Relevant to this action, J.F. commenced one administrative proceeding on behalf of H.F. concerning the 2020-2021 and 2021-2022 school years. (Declaration of Neal P. Solon [hereinafter "Solon Decl."] ¶ 4, June 5, 2023.) This proceeding was assigned to an OATH IHO. (*Id.* ¶ 5.) J.F./H.F.'s counsel made motion on the record at a prehearing conference for the OATH IHO's recusal on September 9, 2022, and it was denied that same day on the record. (*Id.* ¶ 6.) No interlocutory administrative appeal was taken of this decision. (*Id.* ¶ 7.) Subsequently, this proceeding reached a final conclusion, with the issuance of a Findings of Fact and Decision on January 27, 2023. (*Id.* ¶ 8.) This decision was favorable to H.F. (*Id.*) No administrative appeal—on any issue, let alone on the issue of the OATH IHO's recusal—was taken from this decision. (*Id.* ¶ 9.)

---

[5] To the extent that Plaintiffs assert that OATH IHOs lack authority to hear Section 504 claims, (*e.g.*, TAC ¶ 405-06), they are mistaken. OATH's jurisdiction includes these claims. N.Y.C. Exec. Order [Adams] No. 20 (June 24, 2022), *available at* https://www.nyc.gov/assets/home/downloads/pdf/executive-orders/2022/eo-20.pdf.

**(b) L.V., on behalf of herself and her minor child, N.F.**

L.V. commenced two due process proceedings on behalf of N.F., one on July 2, 2021, and the other on September 8, 2022. (Solon Decl. ¶ 10.) Neither proceeding is assigned to an OATH IHO, and both instead remain before a *Per Diem* IHO. (*Id.* ¶¶ 11-13.)

**(c) A.M. on behalf of herself and her minor child, O.M.**

Relevant to this action, A.M. has commenced two administrative proceedings on behalf of O.M., one concerning the 2021-2022 school year and one for the 2022-2023 school year. (Solon Decl. ¶ 14.) Both proceedings are assigned to OATH IHOs. (*Id.*) In the 2021-2022 proceeding, A.M.'s counsel made two requests on the record for the OATH IHO's recusal at prehearing conferences. (*Id.* ¶ 15.) The first was denied on April 21, 2022, on the record, and the second was later denied, again on the record, on July 1, 2022. (*See id.* ¶ 16.) That proceeding for the 2021-2022 school year has reached a final conclusion, with the issuance of a Findings of Fact and Decision on January 11, 2023. (*Id.* ¶ 17.) This decision was favorable to O.M. (*Id.*) Subsequently, Plaintiffs' counsel perfected an administrative appeal of this decision by filing a Request for Review, with said appeal focusing on whether O.M. was entitled to an award of compensatory pendency in excess of that provided by the OATH IHO. (*See id.* ¶ 18.) The appeal did not seek review of the OATH IHO's denial of the motions for recusal. (*Id.* ¶ 19.)

The 2022-2023 school year proceeding remains ongoing. (*Id.* ¶ 21.) On March 14, 2023, an application for the OATH IHO's recusal was made on the record and denied on the record the same day. (*Id.* ¶ 22.) No interlocutory administrative appeal was taken of that decision. (*Id.* ¶ 23.)

**(d) M.F., on behalf of herself and her minor child, J.W.**

Plaintiffs' counsel has represented to City Defendants' undersigned counsel that M.F. and J.W. are no longer plaintiffs in this action, and Plaintiffs' counsel has indicated that they will circulate a stipulation providing for the dismissal of these Plaintiffs from this action.

**(e) J.S., on behalf of herself and her minor child, R.S.**

J.S. commenced one administrative proceeding on behalf of R.S. concerning the 2022-2023 school year. (Solon Decl. ¶ 25.) This proceeding was assigned to an OATH IHO. (*Id.* ¶ 26.) J.S./R.S.'s counsel made a written motion for the OATH IHO's recusal on September 16, 2022, and it was denied in a written order on September 20, 2022. (*Id.* ¶ 27.) No interlocutory administrative appeal was taken of this decision. (*Id.* ¶ 28.) Subsequently, this proceeding reached a final conclusion, with the issuance of a Findings of Fact and Decision on December 16, 2022. (*Id.* ¶ 29.) This decision was favorable to R.S. (*Id.*) No administrative appeal—on any issue, let alone on the issue of the OATH IHO's recusal—was taken from this decision. (*Id.* ¶ 30.)

**(f) R.H., on behalf of himself and his minor child, M.H.**

R.H. commenced one administrative proceeding on behalf of M.H. concerning the 2022-2023 school year. (Solon Decl. ¶ 31.) This proceeding was assigned to an OATH IHO.[6] (*Id.* ¶ 32.) R.H./M.H.'s counsel has not made any motion for the OATH IHO's recusal, despite the fact that the parties have already had several appearances on the substantive hearing, and the last hearing date is scheduled to take place this week. (*See id.* ¶ 33.)

---

[6] This OATH IHO previously served as a *Per Diem* IHO and has at least ten years of experience in special education law. (Solon Decl. ¶ 32.)

**ARGUMENT**

**LEGAL STANDARD**

When a dismissal is sought both on Rule 12(b)(1) and Rule 12(b)(6) grounds, "the Court must consider the Rule 12(b)(1) motion first because disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Karuppasamy v. U.S. Citizenship & Immigration Servs.*, 20 Civ. 7823 (ER), 2021 U.S. Dist. LEXIS 153357, at *6 (S.D.N.Y. Aug. 13, 2021) (internal quotations and citations omitted). An action should be dismissed "for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Sufficient facts must be provided to "state a claim to relief that is plausible on its face[,]" *id.* at 570, which only occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint is deficient if it does not contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation. *Twombly*, 550 U.S. at 556.

Though courts must accept as true all of the factual allegations contained in a complaint when evaluating a motion to dismiss under either section of Rule 12, *Iqbal*, 556 U.S. at 678; *Lunney*, 319 F.3d at 554, this requirement is "inapplicable to legal conclusions"—a court should not give credence to "[t]hreadbare recitals of the elements of a cause of action" or "mere

conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

## POINT I

### PLAINTIFFS LACK STANDING.

As the Court has previously held, a party must have Article III standing in order to bring a federal action. (Opinion & Order, at p. 10, ECF No. 46.) A defect in a party's standing may be asserted at any point in a case, *see Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "the party invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Standing generally requires that a plaintiff demonstrates that he or she has suffered (1) an "injury-in-fact, which means 'an actual or imminent' and 'concrete and particularized' harm to a 'legally protected interest'; (2) causation of the injury, which means that the injury is 'fairly traceable' to the challenged action of the defendant; and (3) redressability, which means that it is 'likely,' not speculative, that a favorable decision by a court will redress the injury." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 103 (2d Cir. 2018) (quoting *Lujan*, 504 U.S. at 560-61).

Importantly, even when a statutory violation has been alleged, Article III still requires a plaintiff to present a "concrete injury" to demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). To that end, a plaintiff cannot adequate plead standing by asserting a bare procedural violation of a statute but must show an actual harm from the violation of a statute or a "risk of real harm" that flows from that violation. *Id.*; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Plaintiffs do not establish the existence of an injury-in-fact and instead variously allege in generalized—not individualized—terms that the OATH Plan has resulted or will result in violations of certain due process guarantees under the IDEA[7] and Section 504, ranging from the impartiality, (TAC ¶¶ 123-25, 353), and subject-matter experience of hearing officers, (*id.* ¶¶ 126-27, 354-56), to the pressures that the increased hiring of DOE attorneys will place on *pro se* litigants, (*id.* ¶ 272-73). Even assuming that Plaintiffs had adequately alleged violations in principle of provisions of the IDEA, Section 504, the N.Y. Constitution, or the U.S. Constitution, they have not alleged a "concrete injury" to themselves, as required by *Spokeo*, rather than making generalized claims of harm that they insist will occur to all litigants before OATH IHOs (though they provide no corroborating allegations to concretize). Instead, the TAC reads as a screed of everything that Plaintiffs believe is wrong with the OATH Plan yet does not link it to their own individually lived experiences before OATH IHOs, where all of the Plaintiffs here who have received a final Findings of Fact and Decision have prevailed. This is inadequate to establish Plaintiffs' standing to contest the OATH Plan.

Plaintiffs may assert that that their standing arises from the analysis in 1992 of the Second Circuit in *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148 (2d Cir. 1992), which examined the standing of a parent to contest the independence of IDEA hearing officers. Plaintiffs will likely assert that their contention that they have been denied a *genuinely* impartial OATH IHO constitutes an "actual injury," conferring them with standing under that case. *Heldman*, 962 F.2d at 156. However, the more recent U.S. Supreme Court conception of standing, as set forth in *Spokeo* (and

---

[7] Due process claims under the U.S. Constitution and the N.Y. Education Law are reviewed under the same standard as claims under the IDEA. *See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 n.16 (2d Cir. 2020); *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992).

the Second Circuit's recognition of this new conception in recent cases, *e.g.*, *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2214 (2021))) clearly abrogates this sweeping historical holding of *Heldman*. Instead, Plaintiffs must now allege a "concrete injury" to themselves flowing from an alleged bare statutory violation. *Spokeo*, 578 U.S. at 341.

Even if Plaintiffs had alleged that the specific OATH IHOs considering their administrative proceedings were biased due to their employment relationship with the City, Plaintiffs overread the applicability of *Heldman*. In that case, the plaintiff Heldman learned that the hearing officer assigned to his son's impartial hearing had been recommended for appointment to the relevant school district by the school district's litigation counsel *in the very same impartial hearing*. 962 F.2d at 152-53. Upon learning this, Heldman moved for recusal of the hearing officer and withdrew his hearing request pending a decision on that motion. *Id.* at 153. The hearing officer did not rule on Heldman's motion and instead held the hearing *in absentia*, without the participation of Heldman. *Id.* Immediately after this hearing *in absentia*, however, Heldman filed an action in this Court, asserting that the manner by which hearing officers were appointed in the State of New York permitted his hearing officer to have been appointed in violation of his procedural rights guaranteed by the IDEA. *See id.* Heldman's action was dismissed for lack of standing and his failure to exhaust administrative remedies. *Id.*

Meanwhile, a final decision had been rendered in the underlying administrative proceeding, but Heldman administratively appealed this decision to the New York State Commissioner of Education,[8] who concluded that the hearing officer had no authority to hold the

---

[8] At that time, the Commissioner reviewed impartial hearing decisions in the manner that the Office of State Review in the New York State Education Department does today.

hearing after the hearing request had been withdrawn and subsequently directed, *inter alia*, that a new IEP be developed for Heldman's son. *See id.* This new IEP, however, became the source of a second impartial hearing, in which Heldman again sought the recusal of the assigned hearing officer, this time in a written motion. *Id.* The hearing officer ruled on Heldman's motion, denying it. *Id.* Heldman then sought to administratively appeal that decision to the Commissioner of Education, but that appeal was denied as untimely. *Id.*

In the *Heldman* plaintiffs' appeal to the Second Circuit on the previously dismissed federal action, the Second Circuit reversed the district court's judgment on standing. Specifically, the Second Circuit held that Heldman had pleaded the existence of a violation of his due process right to a hearing officer who was impartial—because the hearing officer assigned to Heldman's case had been (i) recommended by opposing counsel to preside over the hearing and (ii) had been located with the assistance of another hearing officer who had been explicitly found to have violated conflicts of interest rules. *Id.* at 152-56.

To start, none of the Plaintiffs are in comparable procedural postures to the plaintiffs in *Heldman*. They have not withdrawn their due process complaints in light of the denials of their motions to recuse, nor have *any* of the Plaintiffs taken an administrative appeal of those denials. Instead, the Plaintiffs have had their cake and eaten it too by availing themselves of the (where applicable, uniformly favorable) decisions of the OATH IHOs, without continuing to press the issue of those OATH IHOs' alleged bias or partiality in the forums where such matters could be considered. These Plaintiffs' failure to appeal the OATH IHOs' decision on recusal is preclusive in this Court, *see* 34 C.F.R. § 300.514(a), and/or the arguments on this issue have been waived.

Plaintiffs here have also failed to allege any comparable, specific concrete bias on the part of their OATH IHOs as the *Heldman* plaintiffs had. Yet this Court must assume that

administrative judges such as OATH IHOs "are 'unbiased' absent a '*specific* showing of conflict of interest or reason for disqualification.'" *Oles v. City of New York*, No. 22-1620-cv, 2023 U.S. App. LEXIS 11074, at *3 (2d Cir. May 5, 2023) (emphasis added) (quoting *Doolen v. Wormuth*, 5 F.4th 125, 135 (2d Cir. 2021)); *see also Withrow v. Larkin*, 421 U.S. 35, 37 (1975) (emphasizing a "presumption of honesty and integrity in those serving as adjudicators"). No such specific conflict of interest has been pleaded as to any OATH IHO assigned to the Plaintiffs' proceedings, let alone that, as in *Heldman*, the assigned OATH IHOs have been recommended by DOE based on information from a discredited source.

Plaintiffs instead point to the general fact that OATH IHOs are City employees and are paid for by the City, which they claim is a violation of 20 U.S.C. § 1415(f)(3)(A), because the DOE is also an agency of the City or, alternatively, the City is the "real party-in-interest." (*E.g.*, TAC ¶¶ 164-69, 334.) But as City Defendants describe *infra*, this argument miscomprehends that provision of the IDEA so far as it goes. And in any event, Plaintiffs again fail to show how any purported bias or partiality has resulted in a concrete injury *to them*. Nor (rightly, given the presumption of honesty described in *Oles* and *Withrow*) have Plaintiffs alleged that OATH IHOs have a *personal* pecuniary interest in the outcome of a given case, such as a pay change based on the nature of their rulings.

All in all, Plaintiffs describe a number of issues with the OATH Plan that they believe are violative of the law, but they do not allege that they themselves have actually experienced harm from those alleged violations. This is not the sort of concrete harm that establishes an injury-in-fact under *Spokeo*. And insofar as *Heldman*'s broader conception of standing has not been abrogated by *Spokeo* (and it appears plain that it has), Plaintiffs are not even

comparably positioned to the plaintiffs in *Heldman*: they have not alleged any specific evidence of bias or partiality to overcome the presumption that their OATH IHOs are unbiased.

Lastly, it is unclear whether, assuming Plaintiffs suffered an injury-in-fact, the unwinding of the OATH Plan would actually redress any injuries that they believe they are enduring. To the contrary, as the OATH Plan was implemented to address an overwhelmed and underdelivering due process system that has plagued the City in recent years, returning to that *status quo* will not inure to the benefit of the Plaintiffs and redress their grievances.

### POINT II

### PLAINTIFFS' ALLEGATIONS OF BIAS AND INEXPERIENCE ON THE PART OF OATH IMPARTIAL HEARING OFFICERS ARE INCORRECT.

**A. OATH IHOs' Jurisdiction, the Employment Bar, and Bias in Favor of the City.**

Section 1048 of the New York City Charter establishes OATH's jurisdiction. Section 1048(1) provides that the Office "shall conduct adjudicatory hearings for all agencies of the city." N.Y.C. Charter § 1048(1). Section 1048(2) authorizes the mayor to designate by executive order the Office "as the tribunal for the impartial administration and conduct of adjudicatory hearings for violations of this Charter . . . and any other laws, rules, regulations or other policies enforced or implemented by the agencies of the city through the conduct of adjudications." *Id.* § 1048(2). The New York Court of Appeals has long recognized that the Department falls within the broad definitions of "agency" set forth in the City's Charter and Administrative Code. N.Y.C. Charter § 1150(2); N.Y.C. Admin. Code § 1-102(1). In *Maloff v. N.Y.C. Comm'n on Human Rights*, 38 N.Y.2d 329 (1975), for example, the Court expressed "no

doubt" that the Department of Education (then known as the Board of Education)[9] is "a city agency" and thus falls within the jurisdiction of the City Commission on Human Rights to investigate allegations of discrimination "practiced by . . . city agencies." *Id.* at 332 (citations omitted).

However, the Court of Appeals likewise held in *Goldin v. Greenberg*, 49 N.Y.2d 566 (1980), that the Department "is an 'agency' of the City" that is "subject to municipal control" in matters *not* "strictly educational or pedagogic." *Id.* at 569 (quoting N.Y.C. Charter § 1150(2)) (citations omitted); *accord Hirshfield v. Cook*, 227 N.Y. 297, 304 (1919). The Department's status as a City agency, consistent with the literal text of the Charter's definition, places it comfortably within OATH's jurisdiction under the Charter. It is thus no surprise that OATH has a track record of adjudicating administrative matters where the DOE is a party, such as cases where OATH is adjudicating the DOE's efforts to discipline an employee under Section 75 of the New York State Civil Service Law. *E.g.*, Report & Recommendation, *Matter of Dep't of Educ. v. Halpin*, Index No. 818/07 (N.Y.C. Off. of Admin. Trials & Hearings Aug. 9, 2007), *available at* https://archive.citylaw.org/wp-content/uploads/sites/17/oath/02_Cases/07-818.pdf.

At the same time, as to matters that *are* "strictly educational or pedagogic," the DOE exercises authority that is not subject to municipal control. See *Goldin*, 49 N.Y.2d at 569 (citations omitted) ("While the status of the board as a city agency does not permit the comptroller to audit matters strictly educational or pedagogic, the board is subject to municipal control in matters not in that category."). This authority may be characterized as that of a State agency, conferring upon the Department a dual status that has been judicially recognized. *See Maloff*, 38

_____

[9] The City School District of the City of New York, commonly known as the New York City Department of Education, is a "body corporate." N.Y. Educ. Law § 2551. Its governance structure includes the Chancellor and the Board of Education.

N.Y.2d at 332 ("Although the Board is a State agency, we have held on many occasions that it is not wholly independent of municipal action. . . ."). This doctrine protects against encroachment upon the Department's exclusive State-conferred jurisdiction over educational and pedagogical matters. *Cf. James v. Fariña*, 171 A.D.3d 44, 52-53 (N.Y. App. Div. 1st Dep't 2019) (discussing the doctrine in the context of the separation of powers and noting that State courts "must refrain from" questioning "'the wisdom' of an educator in matters involving purely educational policy"). Whether or not the administration of due process hearings under the Individuals with Disabilities Education Act qualifies as a matter that is "strictly educational or pedagogic" that is protected from regulation or interference by the City has no bearing on the Department's legal authority to revocably consent to the transfer of such hearings to OATH. It similarly has no bearing on OATH's legal authority to conduct hearings for City agencies such as the DOE.

Moreover, the fact that OATH and, for some purposes, DOE, may be considered a City agency does not mean that OATH IHOs violate 20 U.S.C. § 1415(f)(3)(A). That is because that provision prohibits hearing officers from being employees of the *local educational agency* under the IDEA, defined at 20 U.S.C. § 1401(19).[10] DOE's status as a City agency for some purposes does not then mean that OATH is also a local educational agency, as it has no role in the "administrative control or direction of" the City's schools, 20 U.S.C. § 1401(19)(A), just as the Department of Consumer Affairs, the Fire Department, or every other City agency could not reasonably be considered to be the local educational agency merely because they too are City

---

[10] The term "local educational agency" means a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties as are recognized in a State as an administrative agency for its public elementary schools or secondary schools. 20 U.S.C. § 1401(19)(A).

agencies. (*See* Opinion & Order, at pp. 19-20, ECF No. 46 (describing as "convoluted" and "lack[ing] merit" Plaintiffs' arguments about how OATH IHOs, as City employees, would be beholden to the City or otherwise biased).)

   Plaintiffs' arguments to the contrary would also have profound impacts on the administrative state. Governments the nation over, including the federal government, rely on persons employed by the government to adjudicate cases against the same government, including district judges, immigration judges, and social security administrative law judges. Plaintiffs' citations in the TAC to *Burr ex rel. Burr v. Ambach*, 863 F.2d 1071 (2d. Cir. 1988); *Holmes ex rel. Holmes v. Sobol*, 690 F. Supp. 154 (W.D.N.Y. 1988); *Louis M. ex rel. Velma M. v. Ambach*, 714 F. Supp. 1276 (N.D.N.Y. 1989), do not establish that this is improper.

   *Burr*, which Plaintiffs correctly note was in any event vacated by the Supreme Court, *Sobol v. Burr*, 492 U.S. 902 (1989), merely determined that the "impartiality requirement" in the Education of the Handicapped Act (the IDEA's predecessor statute) served to bar "employees of the state educational agency [*i.e.*, the Commissioner] from conducting reviews involving state-sponsored schools." 863 F.2d at 1077. The district court decisions reach similar conclusions. *Holmes*, 690 F. Supp. at 161 (concluding, on a preliminary injunction motion, that Commissioner was "directly involved in establishing and executing policies governing the education of handicapped children and, therefore, cannot be presumed to be impartial and independent in his review of decisions from local hearing officers"); *Louis M.*, 714 F. Supp. at 1282 ("The Commissioner's unfettered discretion to reject the decision of the impartial hearing officer results in a deprivation of due process.").

   By contrast, OATH IHOs are *not* employees of the local educational agency, DOE, in the way that the Commissioner was the employee of the State educational agency, SED. Nor

does, for example, the DOE's Chancellor have reviewing authority over the OATH IHOs' decisions as the Commissioner problematically had done; OATH IHOs are not merely providing recommendations for a subsequent "unfettered" discretionary review by the Chancellor. *Louis M.*, 714 F. Supp. at 1282. And OATH IHOs do not have direct executive involvement in policies concerning the education of students with disabilities like the Commissioner (or the Chancellor, for that matter). *Holmes*, 690 F. Supp. at 161.

To the contrary, OATH IHOs may be in a position more comparable to that of immigration judges, which are administratively housed under the U.S. Department of Justice's Executive Office for Immigration Review, *see* 8 C.F.R. § 1003.9(a), (d), but independently adjudicate proceedings commenced by another agency within the same federal government, the U.S. Department of Homeland Security, *see Sarr v. Garland*, 50 F.4th 326, 332 (2d Cir. 2022) (indicating that immigration proceeding begins with filing of charging document by DHS) (citing 8 C.F.R. § 1003.14(a)). All of this goes to show that, merely by being City government employees, OATH IHOs cannot be said to be beholden to other City governmental agencies. (*See* Opinion & Order, at pp. 19-20, ECF No. 46 (again, describing as "convoluted" and "lack[ing] merit" Plaintiffs' arguments on this front).)

Additionally, other governments rely on standing administrative tribunals, like OATH, to adjudicate administrative disputes, even explicitly in the IDEA context. Indeed, "the creation of a central hearings panel to conduct administrative hearings for a municipality, including the administrative due process hearings required by the IDEA, is permissible under the IDEA and, if properly constituted, such a centralized hearings panel can be consistent with the IDEA." *Blackman v. District of Columbia*, 321 F. Supp. 2d 99, 103 (D.D.C. 2004); *see also Fairfield-Suisun Unified Sch. Dist. v. Dep't of Educ.*, 780 F.3d 968, 969 (9th Cir. 2015) (citing *M.M. v.*

*Lafayette Sch. Dist.*, 681 F.3d 1082, 1085, 1092 (9th Cir. 2012)) (noting that due process hearings in California are conducted by the "Office of Administrative Hearings, a state agency independent of" the State Education Department); *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 515 (4th Cir. 2014). In fact, over a dozen States and the District of Columbia have historically used such panels. *See generally* Brief of *Amicus Curiae* John Payton Pursuant to the Court's Aug. 22, 2003 Order, at pp. 42-47, *Blackman v. District of Columbia*, Civil No. 97-1629 (PLF) (D.D.C. Sept. 22, 2003), ECF No. 1349. Clearly, the fact that OATH and DOE (for some purposes) may both be City agencies does not mean that OATH IHOs are *per se* partial or biased because they are City employees.

Admittedly, since their earlier complaints, Plaintiffs now appear to be walking back their argument that OATH IHOs, as City employees, are *per se* prohibited from service as IHOs under 20 U.S.C. § 1415(f)(3)(A)(i)(I)'s employment bar, but instead appear to assert that, as City employees, they are likely to be biased in favor of the DOE under 20 U.S.C. § 1415(f)(3)(A)(i)(II) because they are paid by the City and thus have a financial interest in finding for DOE because the City remains the "real party in interest." (*E.g.*, TAC ¶¶ 60, 124, 164.) This is nonsensical because, as the Court has previously noted, *Per Diem* IHOs are also paid by the City. (*See* Opinion & Order, at p. 19, ECF No. 46.) OATH's independence thus cannot seriously be questioned in this way.

Indeed, courts have time and again both upheld OATH's assertion of independence from other City agencies and noted that independence favorably. For example, in *Matter of Victor v. N.Y.C. Office of Trials & Hearings*, the petitioner, a correction officer employed by the New York City Department of Correction, argued that OATH should be prohibited from taking certain actions because, in relevant part, OATH is "under the control of the Department of Correction." *Matter of Victor v. N.Y.C. Office of Trials & Hearings*, Index No. 100890/2015 (N.Y. Sup. Ct.

N.Y. Cnty. May 29, 2018), *located at* ECF No. 38-2. In opposition, OATH disputed that it was in any way under the "control" of the Department of Correction, and pointed to the extensive legislative history establishing OATH as an "independent administrative tribunal." The Court agreed, finding no basis to accept the petitioner's argument, or to conclude that decisions issued by the Office of Administrative Trials and Hearings are controlled by the Department of Correction, or any other agency. *Id.*

Other courts have likewise noted OATH's independence with favor. For example, in *Dudzik v. City of New York*, this Court observed that OATH is an "independent" City charter agency that had conducted an "independent" underlying hearing. *Dudzik v. City of New York*, No. 01 Civ. 2450 (NRB), 2003 U.S. Dist. LEXIS 1287, at \*2 (S.D.N.Y. Jan. 21, 2003); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 682, 684 (S.D.N.Y. 2007) (also noting that OATH is an "independent" agency that conducted an "independent" hearing, at which the plaintiff had a "full and fair opportunity" to litigate his claims).

Hoping to undermine this indisputable independence, Plaintiffs make much of the fact that OATH IHOs are hired as "Executive Agency Counsel," but this is of no moment. "Executive Agency Counsel" is a civil service title that New York City agencies use to hire senior-level attorneys at higher salaries into a broad range of legal positions requiring a specified degree of skill or experience. Had Plaintiffs conducted even the most cursory review of open City jobs, they would have seen the breadth of legal positions in City government that fall under this civil service title. For Plaintiff's argument, what is more pertinent than this broadly-defined civil service title is the *actual* job description and the actual job function for the position, and here the OATH IHOs are charged with, *inter alia*, assuring "compliance with federal and state laws and regulations," which obviously encompasses affording due process. (Declaration of Elisa Hyman,

Ex. E, at p. E-3, ECF No. 9-5 (containing sample of early job posting for OATH IHO).) Further, OATH IHOs are each appointed to a four-year term, insuring their independence and impartiality. N.Y.C. Off. of Admin. Trials & Hearings, *Special Education Hearings Division*, City of New York, https://www.nyc.gov/site/oath/about/special-education-hearings-division.page (last accessed June 5, 2023).

Plaintiffs thus fail to allege sufficient facts permitting a plausible inference that either all OATH IHOs or the specific OATH IHOs in their own cases are biased against them and in favor of the DOE in such a way to deprive them of due process.

**B.** **Expertise of the OATH IHOs.**

In conclusory terms, Plaintiffs assert that OATH IHOs lack necessary expertise to adjudicate hearings under the IDEA, (*e.g.*, TAC ¶¶ 354-56), but they do not allege any information specific to the OATH IHOs before whom they appear; that is, Plaintiffs' do not allege a concrete harm to themselves. To the contrary, Plaintiffs' own allegations highlight that an earlier OATH job posting required that candidates have been admitted to the practice of law for four years, (TAC ¶ 277), but this actually exceeds the requirements under State regulations, which require just *one year* of admission to the bar, 8 N.Y.C.R.R. § 200.1(x)(1), and also exceeds the IDEA's requirement that IHOs merely possess the knowledge of the IDEA and ability to conduct hearings, 20 U.S.C. § (f)(3)(A)(ii)-(iv). In other words, to the degree Plaintiffs rely on OATH's job postings as evidence, the requirements in OATH's job postings are, in fact, *more stringent* than the pre-existing qualifications. Plaintiffs have further failed to allege the existence of a due process right to a particular degree of experience, and again, they make no allegations that the specific OATH IHOs assigned to their proceedings lack the requisite knowledge. In fact, one of the Plaintiff's proceedings is pending before an OATH IHO who previously served as a *Per Diem* IHO and has worked in the field of special education law for approximately ten years. (Solon Decl. ¶ 32.)

Plaintiffs' allegations about OATH IHOs' expertise (or alleged lack thereof) are conclusory (or outright wrong), and thus fail to adequately state a claim.

POINT III

**PLAINTIFFS FAIL TO PLEAD THE EXISTENCE OF A SUFFICIENTLY SIMILAR COMPARATOR OR THAT THE IMPLEMENTATION OF THE OATH PLAN FAILS TO SATISFY RATIONAL BASIS REVIEW.**

Plaintiffs asserting an Equal Protection violation must allege the existence of a similarly situated comparator: "Specifically, such plaintiffs must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Camac v. Long Beach City Sch. Dist.*, No. 09 CV 5309 (DRH)(ARL), 2011 U.S. Dist. LEXIS 79997, at *46-47 (E.D.N.Y. July 22, 2011) (citations and quotations marks omitted). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical." *Kamholtz v. Yates Cnty.*, No. 08-CV-6210 (MAT), 2008 U.S. Dist. LEXIS 97985, at *16-17 (W.D.N.Y. Dec. 3, 2008) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2008)). Plaintiffs here allege that students in the City of New York receive different treatment from students in school districts elsewhere in the State. (*E.g.*, TAC ¶ 397.) This is an improper comparator, however.

The more appropriate comparator to a student receiving due process from an OATH IHO in the City of New York would instead be a student receiving due process from a *Per Diem* IHO in the City of New York, not a student living in a completely different school district

elsewhere in the State and whose hearing is not commenced within the attendant context of the IDEA due process system in New York City. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000) (requiring that comparators be similar "in all material respects"). Plaintiffs have not adequately alleged facts describing such a comparator, and as such, their Equal Protection claim collapses under scrutiny and must be dismissed.

Even assuming that Plaintiffs had identified the correct comparators, the OATH Plan does not require strict scrutiny, which only applies to burdens upon a fundamental right or a suspect class,[11] *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009), and the OATH Plan clearly satisfies rational basis review. The Plan's goal to establish a standing administrative forum staffed by competent and professional adjudicators was clearly undertaken to remedy pervasive impediments to the timely adjudication of due process complaints. This was undoubtedly a rational response to the then existing a state of affairs and is, in any event, subject to a "strong presumption of validity." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319 (1993).

---

[11] Persons with a disability have not been held to constitute a suspect class. *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 340 (E.D.N.Y. 2014) ("Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review.").

## CONCLUSION

For the reasons set forth herein, the City Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety, issue an order dismissing the Third Amended Complaint and denying any and all claims for relief sought therein against the City Defendants, granting judgment to the City Defendants, and awarding to the City Defendants such other and further relief as the Court may deem just and proper.

Dated:      June 5, 2022
            New York, New York

> HON. SYLVIA O. HINDS-RADIX
> *Corporation Counsel of the City of New York*
> Attorney for the City Defendants
> 100 Church Street
> New York, NY 10007
> t: (212) 356-2649
> f: (212) 356-1148
> e: dthayer@law.nyc.gov
>
> By:    /s/ David S. Thayer
>        DAVID S. THAYER
>        *Assistant Corporation Counsel*