UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     X

J.F., on behalf of himself and his minor child,
H.F.; L.V., on behalf of herself and her minor
child, N.F.; A.M. on behalf of herself and her
minor child, O.M.; M.F., on behalf of herself and
her minor child, J.W.; J.S., on behalf of herself
and her minor child, R.S.; R.H., on behalf of
himself and his minor child, M.H.; and all others
similarly situated,

                              Plaintiffs,

                    agains
                      t-

MAYOR ERIC ADAMS, in his Official Capacity;
THE CITY OF NEW YORK; CHANCELLOR
DAVID  C. BANKS, in his Official Capacity; NEW
YORK CITY DEPARTMENT OF EDUCATION;
NEW YORK CITY BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK; COMMISSIONER BETTY ROSA, in
her Official Capacity; NEW YORK STATE
EDUCATION DEPARTMENT; COMMISSIONER
ASIM REHMAN, in his Official Capacity; THE
NEW YORK CITY OFFICE OF
ADMINISTRATIVE TRIALS AND HEARINGS,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     X

Civ. No. 21-cv-11150 (ALC)


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
THE CITY AND STATE DEFENDANTS' MOTIONS TO DISMISS**


**THE LAW OFFICE OF
LAURA D. BARBIERI, PLLC**
Laura D. Barbieri, Esq.
The Law Office of
Laura D. Barbieri, PLLC
115 W 73rd Street, #1B
New York, NY 10023
(914) 819-3387 (cell)
LDBarbLaw@gmail.com

*Co-counsel for Plaintiffs*

**THE LAW OFFICE OF
ELISA HYMAN, P.C.**
Elisa Hyman, Esq.
The Law Office of
Elisa Hyman, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
Phone: (646) 572-9064
elisahyman@gmail.com

*Co-counsel for Plaintiffs*

## Table of Contents

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .............................................................................................................. 8

I.      Legal Standards.............................................................................................. 8

   A.  Rule 12(b)(1)................................................................................................. 8

   B.  Rule 12(b)(6)................................................................................................. 9

II.     Plaintiffs Have Standing To Pursue Their Claims ........................................ 10

   A.  Plaintiffs Have Standing Under Established Precedent .................................. 10

      1.  Plaintiffs Have Standing Because they Are Parents of Children with IEPs who Live in New York City and Are Entitled to a FAPE .......................................... 10

   B.  Plaintiffs Have Standing Because they Have or Have Had OATH Hearings ................... 12

   C.  Plaintiffs Have Standing Because They are Unable to Exhaust Claims Raised Here ....... 12

   D.  State Laws and Regulations are Incorporated by Reference Into the IDEA and Enforceable as IDEA Claims............................................................................... 15

III.    Plaintiffs Sufficiently Allege Violations of the IDEA Resulting from IHO Bias and Lack of Special Education Training and Experience ............................................. 16

   A.  OATH IHOs' Jurisdiction .............................................................................. 17

      1.  The OATH Plan Creates a Structural Conflict Prohibited by the IDEA ................... 17

      2.  The OATH Plan Violates Plaintiffs' Right to Hearing Officers with Expertise and Adequate Training in Special Education.............................................................. 22

      3.  Defendants Lack Jurisdiction or Authority for the OATH Plan and Are Improperly Delegating Duties Under the IDEA and State Law ............................................. 24

         i. The Board, DOE, and Chancellor Cannot Delegate the Hearing Function ................... 24

         ii. The OATH Plan Violates Section 4404 Which is Enforceable under the IDEA ........... 26

         iii. The Mayor Lacked Authority to Vest OATH with Jurisdiction     or Transfer the Hearing Functions under Other State Law........................................................ 27

      4.  The OATH Plan Violates the 2002 Order and Stipulation.......................................... 27

      5.  Defendants Failed to Give Notice or Hold Hearings.................................................. 28

      6.  On its Face, the OATH Plan Will Substantially Undermine and Prejudice the Hearing System....................................................................................................... 28

      7.  The OATH Plan Violates the Due Process Clauses of the United States and New York State Constitutions ...................................................................................... 29

      8.  The DOE's Obligations Under Section 504 Mirror Their IDEA Duties ................... 29

i

IV.     The State Defendants Are Properly Sued And Plaintiffs' Claims Are Not Barred By The Eleventh Amendment ................................................................................................................ 30

   A.  An Explicit Right of Action Exists for Children with Disabilities and Their Parents Against the State and its Agencies for Violations of the IDEA .................................. 30

   B.  An Implicit Right of Action Exists for Children with Disabilities and Their Parents Against the State and its Agencies for Violations of the IDEA ................................. 32

   C.  The *Ex Parte Young* Doctrine Applies to Plaintiffs' Claims ............................................ 35

V.     Plaintiffs Sufficiently Allege Their Due Process and Equal Protection Claims To Survive Defendants' Motions To Dismiss ............................................................................................ 36

   A.  Plaintiffs' Due Process Claims Are Sufficiently Pleaded ................................................. 36

   B.  Plaintiffs' Equal Protection Claims Are Sufficiently Pleaded ............................................ 37

VI.    Plaintiffs Sufficiently Alleged Their Section 504 Claims ................................................. 39

VII.   Plaintiffs' State Law Claims Survive Defendants' Motions To Dismiss .......................... 41

CONCLUSION ..................................................................................................................... 41

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................ 10

*B.G. by J.A.G. v. Bd. of Educ. of City of Chicago,*
  901 F.3d 903 (7th Cir. 2018) .......................................................................................... 22

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
  902 F.2d 194 (2d Cir. 1990) ............................................................................................. 9

*Bay Shore Union Free Sch. Dist. v. Kain,*
  485 F.3d 730 (2d Cir. 2007) ........................................................................................... 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................. 10, 38

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty v. Rowley,*
  458 U.S. 176 (1982) ......................................................................................... 7, 15, 26

*Burilovich ex rel. Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.,*
  208 F.3d 560 (6th Cir. 2000) .......................................................................................... 23

*Burlington v. Dep't of Educ.,*
  736 F.2d 773 (1st Cir. 1984) .......................................................................................... 26

*Burr by Burr v. Ambach,*
  863 F.2d 1071 (2d. Cir. 1988) ........................................................................................ 20
  *vacated on other grounds, Sobol v. Burr,* 492 U.S. 902 (1989) ................................... 23

*C.L. v. Scarsdale Union Free Sch. Dist.,*
  744 F.3d 826 (2d Cir. 2014) ........................................................................................... 39

*Camac v. Long Beach City Sch. Dist.,*
  No. 09 CV 5309 (DRH) (ARL), 2011 U.S. Dist. LEXIS 79997 (E.D.N.Y. July 22, 2011) ...... 37

*Cannon v. Univ. of Chicago,*
  441 U.S. 677 ................................................................................................................... 34

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ....................................................................................................... 37

*Colin K. v. Schmidt,*
  715 F.2d 1 (1st Cir. 1983) .............................................................................................. 21

*Cort v. Ash,*
  422 U.S. 66 (1975) ......................................................................................................... 33

*County of Westchester v. New York,*
  286 F.3d 150 ............................................................................................................ 33, 34

*D. D. by and through Ingram v. Los Angeles Unified School District,*
  18 F.4th 1043 (9th Cir. 2021) ........................................................................................ 23

*D.D. ex rel. V.D. v. N. Y. C. Bd. of Educ.,*
  480 F.3d 138 (2d. Cir. 2007) .......................................................................................... 16

*D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.,*
  2004 WL 633222 (E.D.N.Y. Mar. 30, 2004), *vacated in part on separate grounds,* 465 F.3d
  503 (2d Cir. 2006) .......................................................................................................... 32

*Deal v. Hamilton County Bd. of Educ.*,
    392 F.3d 840 (6th Cir. 2004).................................................................. 23
*Doe ex rel. Gonzalez v. Maher,*
    793 F.2d 1470 (9th Cir. 1986) aff'd sub nom. Honig v. Doe.........................................
*Does v. Outgoing Schools,*
    1:02-cv-06495 (JFK)........................................................................ 27
*E.F. v. Adams*,
    No. 21-CV-11150 (ALC) (S.D.N.Y. Mar. 1, 2022) ..................................... 6
*Ex parte Young*,
    209 U.S. 123 (1908)................................................................... 35, 36
*F.C. v. N.Y. City Dep't of Educ.*,
    No. 15 Civ. 6045 (PAE), 2016 WL 8716232 (Aug. 5, 2016 S.D.N.Y.) .................... 14
*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019)..................................................................... 25
*Frazier v. Fairhaven School Committee*,
    276 F.3d 52 (1st Cir. 2002) ............................................................... 23
*Gregory K. v. Longview School Dist.*,
    811 F.2d 1307 (9th Cir. 1987) ............................................................ 23
*Grissom v. Roberts*,
    902 F.3d 1162 (10th Cir. 2018) .......................................................... 38
*Hayes Through Hayes v. Unified School Dist. No. 377*,
    877 F.2d 809 (10th Cir. 1989)............................................................ 23
*Heldman ex rel. T.H. v. Sobel*,
    962 F.2d 148 (2d Cir. 1992) ......................................................... *passim*
*Heldman on Behalf of T.H. v. Sobol*,
    846 F. Supp. 285 (S.D.N.Y. 1994) ....................................................... 22
*Heller v. Doe ex rel. Doe*,
    509 U.S. 312 (1993)....................................................................... 38
*Helms v. McDaniel*,
    657 F.2d 800 (5th Cir. 1981)............................................................. 21
*Holmes by Holmes v. Sobol*,
    690 F. Supp. 154 (W.D.N.Y. 1988) ...................................................... 20
*Honig v. Doe*,
    484 U.S. 305 (1988)....................................................................... 11
*Idaho v. Coeur d'Alene Tribe*,
    521 U.S. 261 (1997)....................................................................... 36
*J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*,
    324 F. Supp. 3d 455 (S.D.N.Y. 2018)..................................................... 39
*J.S. Cave v. East Meadow Union Free School Dist.*,
    514 F.3d 240 (2d Cir. 2008) ............................................................. 23
*J.S.M. v. N.Y.C. DOE*
    20-CV-0705 (EK) (RLM) ............................................................ 14-15

iv

*Jacky W. v. New York City Bd. of Educ.*,
   848 F. Supp. 358 (E.D.N.Y. 1994) ....................................................................... 22
*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ........................................................................................... 24
*Jose P. v. Ambach*,
   669 F.2d 865 (2d Cir. 1982) .......................................................................... 30, 32
*Kamholtz v. Yates Cnty.*,
   No. 08-CV-6210 (MAT), 2008 U.S. Dist. LEXIS 97985 (W.D.N.Y. Dec. 3, 2008) ................ 37
*Kermanshah v. Kermanshah*,
   580 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................. 10
*LIH ex rel. LH v. N. Y. C. Bd. of Educ.*,
   103 F. Supp. 2d 658 (E.D.N.Y. 2000) ........................................................... 15, 26
*Louis M. by Velma M. v. Ambach*,
   714 F. Supp. 1276 (N.D.N.Y. 1989) .................................................................... 20
*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................ 9
*M.M. v. New York City Dep't of Educ.*,
   No. 15 CIV. 5846 (PKC), 2017 WL 1194685 (S.D.N.Y. Mar. 30, 2017) .............................. 41
*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) .................................................................................. 9
*Mayson by Mayson v. Teague*,
   749 F.2d 652 (11th Cir. 1984) ............................................................................. 21
*McClellan v. Cablevision of Conn., Inc.*,
   149 F.3d 161 (2d Cir. 1998) ................................................................................ 33
*Morris v. Town of Independence*,
   827 F.3d 396 (5th Cir. 2016) ............................................................................... 38
*Mrs. C. v. Wheaton*,
   916 F.2d 69 (2d Cir. 1990) .................................................................................. 18
*Mukaddam v. Permanent Mission of Saudia Arabia*,
   156 F. Supp. 2d 257 (S.D.N.Y. 2001) ................................................................... 9
*Muth v. Central Bucks Sch. Dist.*,
   839 F.2d 113 (3rd Cir. 1988) ...................................................................... 20-21, 22
*Octavia P. v. Gilhool*,
   916 F.2d 865 (3d Cir. 1990) ................................................................................ 23
*P.C.R. v. Fla. Union Free Sch. Dist.*,
   No. 16-CV-9778 (KMK), 2022 WL 337072 (S.D.N.Y. Feb. 4, 2022) ................................. 39
*Padilla v. Harris*,
   285 F. Supp. 2d 263 (D. Conn. 2003) .................................................................
*Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*,
   No. 07-CV-8828 (ER), 2013 WL 3929630 (S.D.N.Y. July 30, 2013) ................................. 39
*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ............................................................................................... 16

*Perez v. Sturgis Public Schs.*,
  143 S. Ct. 159 (2023) ........................................................................................... 35

*Perez v. Sturgis Public Schools*,
  3 F.4th 236 (6th Cir. 2021) .................................................................................. 22

*Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*,
  288 F.3d 478 (2d Cir. 2002) ................................................................................ 22

*Powell v. Nat'l Bd. of Med. Exam'rs*,
  364 F.3d 79 (2d Cir. 2004) .................................................................................. 39

*Raila v. United States*,
  355 F.3d 118 (2d Cir. 2004) ................................................................................ 25

*Reed v. Freedom Mtg. Corp.*,
  869 F. 3d 543 (7th Cir. 2017) .............................................................................. 38
  *rev'd on other grounds*, *Dellmuth v. Muth*, 491 U.S. 223 (1989);

*Reserve v. Town of Longboat Key*,
  17 F.3d 1374 (11th Cir. 1994) ............................................................................. 38

*Robert M. v. Benton*,
  634 F.2d 113 (8th Cir. 1980) ............................................................................... 21

*S.W.*,
  528 F. Supp. 2d at 287, 290-92 ........................................................................... 39

*Shipping Fin. Serv. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998) ............................................................................. 8-9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
  551 U.S. 308 (2007) ............................................................................................ 10

*Touche Ross Co. v. Redington*,
  442 U.S. 560 (1979) ............................................................................................ 33

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
  736 F.2d 773 (1st Cir. 1984), aff'd 471 U.S. 359 (1985) .................................... 15

*Transamerica Mtg. Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) .............................................................................................. 33

*Verizon v. Md., Inc. v. Pub. Serv. Com'n of Md.*,
  535 U.S. 635 (2002) ............................................................................................ 36

*Z.Q. by G.J. v. N.Y.C. Dep't of Educ.*,
  No. 22-949, 2023 WL 1486387 (Feb. 3, 2023 2d Cir.) (summary order) ............... 13

*Zvi D. by Shirley D. v. Amboch*,
  694 F.2d 904 (2d Cir. 1982) ................................................................................. 4

**Other Authorities**

*Application of a Student with a Disability*, Appeal No. 23-019 ...................... 13, 14, 37

Mayor's Executive Order 91 ........................................................................................ 28

impartial hearing decisions (published at
http://www.p12.nysed.gov/specialed/dueprocess/decisions/home.html), SRO decisions
published at https://www.sro.nysed.gov/decision-search with the decisions published by the
OATH Hearings Division (at http://a820-isys.nyc.gov/ISYS/ISYS.aspx ) .......................... 28-29

Lander, B., New York City Comptroller, Aug. 28, 2023, *Course Correction: Expanding and
strengthening special education services improves student outcomes and reduces costly due
process claims*, https://comptroller.nyc.gov/reports/course-correction/#_ednref1. ............... 3, 4

Municipal Home Rule § 11 ............................................................................................ 27
New York City Charter § 1048(4)(a)-(b) ...................................................................... 28
New York City Charter § 1098(1) ................................................................................. 27

New York City Schools Chancellor's Regulation A-710, Section VII(B)(2) ...................................

Sen. Rept. No. 94-95 (Nov. 14, 1975) ....................................................................... 17-18

Winter, J. (2023). *Parents who fight the city for a free appropriate public education*. THE NEW
YORKER, May 11, 2023. https://www.newyorker.com/news/annals-of-education/the-parents-
who-fight-the-city-for-a-free-appropriate-public-
education#:~:text=%E2%80%9CAll%20this%20money%20that%20is,a%20form%20of%20li
ght%20embezzlement. ..................................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiffs, children with eligible disabilities and their respective parents,[1] respectfully submit this memorandum of law and incorporated documents, in opposition to the City and State Defendants'[2] respective motions to dismiss (ECF Nos. 119 and 103) Plaintiffs' Third Amended Complaint (TAC) (ECF No. 94), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.).

The TAC, a putative class action, alleges *inter alia* that Defendants unlawfully and without notice to integral stakeholders, executed a memorandum of agreement (MOA) on December 1, 2021 to create and control a new City and Mayoral bureaucracy to handle and adjudicate all New York City special education due process hearings using the City's Office of Administrative Trials and Hearings (OATH) (the OATH Plan). To effectuate the OATH Plan, Defendants agreed to orchestrate the wholesale transfer of all pending and subsequently filed due process complaints from the existing independent and impartial due process hearing system that is required by the Individuals with Disabilities Education Act (IDEA or the Act) to OATH, which

---

[1] Plaintiffs are J.F., on behalf of himself and his minor child, H.F.; L.V., on behalf of herself and her minor child, N.F.; A.M. on behalf of herself and her minor child, O.M.; J.S., on behalf of herself and her minor child, R.S.; and R.H., on behalf of himself and his minor child, M.H.; and all others similarly situated. A stipulation of dismissal by the parties for Plaintiff for M.F., on behalf of herself and her minor child, J.W. was also submitted herewith to be so ordered by the Court.

[2] The City Defendants are Mayor Eric Adams, in his Official Capacity;  The City Of New York (the City); Chancellor David C. Banks, In His Official Capacity (the Chancellor); New York City Department Of Education (the DOE); and New York City Board Of Education Of The City School District Of The City Of New York (the Board). The State Defendants are Commissioner Betty Rosa, in her Official Capacity (the Commissioner); New York State Education Department (the NYSED); Commissioner Asim Rehman, in his Official Capacity; and The New York City Office Of Administrative Trials And Hearings (OATH).

would be staffed by full-time City employees, thereby eliminating the roster of impartial hearing officers who were employed as independent contractors.

The results of the OATH Plan would place the hearing officers under the control of the City, Mayor, and OATH Commissioner, who serves at the pleasure of the Mayor. Defendants' OATH Plan eviscerates the independence of the special education due process hearing system and replaces it with a system controlled entirely by the City – the party responsible for paying for special education for children with disabilities in the City of New York.

By replacing the independent hearing officers with City employees, and by creating a bureaucratic structure around the handling and adjudication of due process hearings, all of which is responsible to the Mayor, the impartiality required by the IDEA and the due process safeguards it mandates for the benefit of vulnerable disabled children and their parents was eliminated; in its place is a system rife with apparent and actual conflicts of interest that not only violate the strictures of the IDEA but chill and deter parents from enforcing their children's substantive rights.

Defendants' claimed motives in agreeing to and executing the OATH Plan were nominally to address the purported backlog of due process hearing cases; Defendants' true motives, however, were predominantly pecuniary. Defendants have consistently railed against the costs of providing children with disabilities with a Free Appropriate Public Education (FAPE) to which they are entitled. Determined to wrestle control over the special education system from the parent-centered due process hearing system required by law, Defendants engaged in a series of actions to control the special education hearing system that is supposed to provide parents and their advocates with due process and procedural safeguards required by the IDEA and ramped up their resources to challenge parents and their advocates who seek nothing

other than what the law mandates they receive –a quality education for their children with disabilities, provided and paid for by Defendants – the local and state education agencies (LEA and SEA).

Because the number of children with disabilities has increased so substantially over the past ten years, the stakes in obtaining financial control over the due process hearing system are huge. According to a recent report issued by the City's Comptroller,[3] approximately 283,000 of New York City school children have disabilities that require special education and/or services and many are missing their needed services. *Id.* Further the costs of providing the education and services to children with disabilities has significantly increased. Between FY12 and FY22, spending on special education service due process claims grew from $33 million to $372 million, a more than ten-fold increase over a decade. *Id.* Contrary to the claim of the Chancellor and Mayor, these costs are not solely the result of claims for tuition to attend nonpublic schools;[4] rather, many parents are seeking services, such as speech therapy or occupational therapy. In FY23, educational services claims represented 58% of all claims, up from 20% a decade ago.

The Comptroller also made the following findings:

- In the 2021-22 school year, 13,800 IEP recommendations for related services such as speech therapy, physical therapy, occupational therapy, or counseling for K-12 students went unfulfilled. Nearly 10,000 preschool students with disabilities missed out on their full mandated services.[1]
- In predominantly Black and Hispanic school districts, IEP related service recommendations for K-12 students were more likely to be only partially fulfilled by

---

[3] *See* Lander, B., New York City Comptroller, Aug. 28, 2023, *Course Correction: Expanding and strengthening special education services improves student outcomes and reduces costly due process claims*, https://comptroller.nyc.gov/reports/course-correction/#_ednref1.

[4] *See* Winter, J. (2023). *Parents who fight the city for a free appropriate public education*. The New Yorker, May 11, 2023. https://www.newyorker.com/news/annals-of-education/the-parents-who-fight-the-city-for-a-free-appropriate-public-education#:~:text=%E2%80%9CAll%20this%20money%20that%20is,a%20form%20of%20light%20embezzlement.

DOE or not fulfilled at all, as compared to school districts with a larger percentage of white and Asian students.

- As levels of school district poverty increase, so does the likelihood that related service recommendations for K-12 students will not be fully provided.

*Id.*

At its core, the IDEA is a funding statute because the exclusion of students with disabilities from public schools was often (and continues to be) about money, meaning who was going to pay for it; the IDEA "represents an ambitious federal effort to promote the education of handicapped children and was passed in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to drop out.'" *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty v. Rowley*, 458 U.S. 176, 179 (1982). The Act's purpose therefore was to address the funding gaps and discriminatory practices at the state and local school district level, which led to children with disabilities being unserved and underserved.

Thus, to guard against the powerful financial pressures on states and local school districts that led to the exclusion of students in the first instance, the IDEA guarantees parents the right to an impartial hearing, presided over by a neutral, unbiased independent hearing officer (IHO) when disputes arise under the IDEA concerning a student's services, placement, or programing. This is the IDEA's most important due process entitlement.

As stated, these hearings most often involve "disagreements between the parent and the public agency regarding the availability of an appropriate program and who will pay for it… ." *Zvi D. by Shirley D. v. Amboch*, 694 F.2d 904, 907 (2d Cir. 1982). Accordingly, to effectuate this parent right, the IHO must be free from any conflict of interest and not be an employee of the

4

school district or the agency financially or managerially responsible for the provision of services. *See* 20 U.S.C. § 1415(f)(3)(A)(i).

The OATH Plan changes this by replacing the impartial hearing system which used state-certified Impartial Hearing Officers (IHOs) required by the IDEA with full time employees of the City's OATH, the Commissioner of which is appointed by and beholden to the Mayor, the chief executive of the City, responsible for balancing the budget and determining which "city" agencies receive what amount of funding.

By interfering and eliminating the IDEA's most important due process entitlement – the right to an impartial hearing presided over by a neutral, unbiased IHO when disputes arise over a student's placement, programming, or services, the OATH Plan caves to the financial pressures that led to the exclusion of students in the first instance – which the Comptroller's report substantiates.

This inequity is not lost on parents. As the Second Circuit explained, "[a] system perceived by parents as tainted by biased adjudicators would deter parents from fulfilling their role under the [IDEA]." *Heldman v. Sobol*, 962 F.2d 148, 155 (2d Cir. 1992).

Here, Defendants attempts to challenge the sufficiency of Plaintiffs' TAC in their respective motions must be rejected; contrary to Defendants' arguments otherwise, the TAC asserts multiple meritorious claims against both the City and State Defendants. In broadly challenging the legality of the OATH Plan, the TAC sufficiently alleges that the OATH Plan from its inception unlawfully delegated Defendants' respective authority to conduct Due Process hearings to the City's Office of Administrative Trials and Hearings.

As is evident, Defendants' flawed arguments, claiming that Plaintiffs' TAC should be dismissed, are supported only by adding prohibited assertions of "fact," or by denying Plaintiffs' allegations, or by engaging in flawed legal reasoning.

First, Second Circuit precedent as well as the prior decision of this Court, renders fatal Defendants' claim that Plaintiffs lack standing. *See Heldman ex rel. T.H. v. Sobel*, 962 F.2d 148 (2d Cir. 1992) and *see E.F. v. Adams*, No. 21-CV-11150 (ALC) (S.D.N.Y. Mar. 1, 2022).

Second, Plaintiffs' TAC cannot be challenged in the context of a motion to dismiss by claims that Plaintiffs' allegations are false, or by inserting additional allegations of "fact" (many of which Plaintiffs' directly disputed in their TAC), or by engaging in circular, sophistic, or flawed legal arguments. The Court must accept Plaintiffs' allegations as true: that the OATH Plan unlawfully abrogates and/or delegates Defendants' authority, responsibilities, and obligations as either an SEA or LEA to provide Plaintiffs with an independent due process system for considering and adjudicating complaints by Plaintiffs and other putative class parents whose children have been, are being, or will be denied FAPE; that the *only* entity other than the SED permitted to conduct due process hearings to determine a FAPE, including a determination of proper educational placements, programs, and services for children with disabilities is the DOE as LEA; and that by their unlawful delegation of regulatory authority to OATH, Defendants executed an illegal agreement that was *ultra vires* from its inception.

To justify their *ultra vires* scheme, Defendants proclaimed a seemingly laudable purpose – to potentially reduce the alleged backlog of due process complaints awaiting hearings before IHOs. However, even a laudable purpose cannot excuse the unlawful methods Defendants are alleged to have employed here.

Third, Defendants' OATH Plan violates both the Constitution of the United States and that of New York State. The Plan denies Plaintiffs both due process and equal protection. Plaintiffs received no notice of the OATH Plan and were and have been – except through this litigation – unable to challenge the new process imposed upon them. Defendants' Plan also improperly subjects City school district children with disabilities to a wholly distinct due process hearing system, controlled by the City and Mayor, rather than one which is subject to independent hearing officers, who lack any obligation to the render impartial adjudications other than in conformance with the IDEA or state law, no matter the costs that must be borne by the real party in interest – the City of New York.

Parents and parent rights are the cornerstone of the IDEA, which is designed to ensure that parents are equal partners with school districts in achieving their child's FAPE, which must meet the child's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §§ 1400(d)(1)(A)(B); *see also Rowley*, at 203 (a FAPE is "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" provided in conformity with an IEP developed pursuant to the IDEA's procedures).

As the TAC alleges, the IDEA's most important due process entitlement is the right to an impartial hearing presided over by a neutral, unbiased IHO when disputes arise under the IDEA concerning a student's services, placement, or programming. Thus, to guard against the powerful financial pressures on states and districts that led to the exclusion of students in the first instance to impact the hearing process, the IDEA guarantees the right to an IHO who (1) is free from any conflicts of interest; and (2) is not an employee of the school district or the agency financially and/or managerially responsible for the provision of services. *See* 20 U.S.C. §§ 1415(f)(3)(A)(i). The goal of these provisions is to prevent the hearing officers from being employed by the

entity financially responsible for the education of the children whose parents assert that their rights are being violated. Moreover, the Act requires that IHOs have demonstrable expertise in the area of special education and the IDEA. *See* 20 U.S.C. § 1415(f)(3)(A)(ii)-(iv).

For decades, IHOs in New York have been independent contractors certified by NYSED. Since 1993, New York State law has required school districts to appoint these independent IHOs in accordance with a neutral rotation system. *See* N.Y. Educ. Law § 4404.

Defendants' OATH Plan destroys that system and replaces it with a structurally biased process, in violation of the IDEA. Having executed and engaged in the OATH Plan, Plaintiffs, in their TAC, which numbers 477 paragraphs, alleged in detail the manner and means used by Defendants, whose joint scheme violated multiple statutory, regulatory, and constitutional mandates, pursuant to the Individuals with Disabilities Education Act (the IDEA), 20 U.S.C. §1400, *et seq.*; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794; 42 U.S.C. §1983 (Section 1983); the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution; the New York State Constitution; and New York State Education Law §§ 2590-b, 2590-h, 4401, *et seq.* (the N.Y. Educ. Law) and the regulations promulgated thereunder. TAC, *passim*.

As provided herein, each of Plaintiffs' claims is sufficiently pleaded; accordingly, Plaintiffs respectfully request, therefore, that Defendants' motions should be denied.

## ARGUMENT

I.     **LEGAL STANDARDS**

   A. **Rule 12(b)(1)**

A Rule 12(b)(1) attack on subject matter jurisdiction requires the court to accept as true all material factual allegations in the complaint. *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d

129, 131 (2d Cir. 1998); Fed. R. Civ. P. 12(b)(1). "At the pleading stage, general factual

allegations of injury resulting from the defendant's conduct may suffice, for on a motion to

dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are

necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation

omitted). A court must "[c]onstrue all ambiguities and draw [ ] all inferences in [the plaintiff's]

favor" and "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d

110, 113 (2d Cir. 2000).

In *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194 (2d Cir. 1990), the Second

Circuit held that a plaintiff's burden of proof in a jurisdictional challenge "varies depending on

the procedural posture of the litigation." The Court explained:

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the
> motion by pleading in good faith ... legally sufficient allegations of jurisdiction. At that
> preliminary stage, the plaintiff's prima facie showing may be established solely by
> allegations.

*Id.* at 197 (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985)).

Applying this standard, the court in *Mukaddam v. Permanent Mission of Saudia Arabia*, 156 F.

Supp. 2d 257 (S.D.N.Y. 2001), for example, held there, like here, because defendant submitted

no evidence in support of their Rule 12(b)(1) motion, "defendant's motion assumed the truth of

plaintiff's allegations and all inferences reasonably drawn from them." The Court did no more

than hold that it could not exclude at the pleading stage the possibility that plaintiff might prove

facts establishing jurisdiction and denied the motion. That is all that is required. *Id.* at 260.

## B.  Rule 12(b)(6)

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) tests the

legal sufficiency of a complaint, which requires "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint does not require

detailed factual allegations; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility at the pleading stage is distinct from probability, and a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and … recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted). The Court may consider documents that are "incorporated by reference." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 258 (S.D.N.Y. 2008). The Court may also consider matters subject to judicial notice, which include publicly filed documents. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

### A.  Plaintiffs Have Standing Under Established Precedent

#### 1.   Plaintiffs Have Standing Because they Are Parents of Children with IEPs who Live in New York City and Are Entitled to a FAPE

Plaintiff parents allege that they are all parents of children with IEPs in New York City that are entitled to a FAPE under the IDEA. TAC ¶¶68-89. Defendants have not disputed this critical fact. Plaintiffs' status as parents of New York City children who are entitled to a FAPE, without more, is sufficient to establish standing to challenge the MOA and the OATH Plan. Contrary to State Defendants' arguments,[5] this is the law in the Second Circuit. *See Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148 (2d Cir. 1992).

---

[5] *See* S-Mem. at 7-11.

In *Heldman,* a parent brought a structural challenge to the hearing system, alleging that the New York State rotational system for selecting hearing officers violated the IDEA because it permitted boards of education to choose hearing officers. *Id.* at 154. The plaintiff argued that the system created "a powerful economic and professional incentive for officers to rule in the board's favor" and that "[s]uch an economic stake in the outcome of a hearing … is liable to distort the outcome of the hearing." *Id.* There, the Commissioner argued that the plaintiff parent lacked standing to "challenge the New York procedures for the selection of hearing officers" since he had withdrawn his child from public school and had no pending impartial hearing. *Id*. at 157.

The Second Circuit rejected the Commissioner's argument, holding that the only requirement necessary for the plaintiff to have standing to challenge the hearing system was that he was a New York state parent of a child with an IEP entitled to a FAPE. *Id*. at 157-158.[6] The court further held that the plaintiff had standing, which meant the right to lodge a systemic challenge to the legality of the impartial hearing system. According to the court, "the central role of the IDEA process rights bears witness that Congress intended to create procedural rights the violation of which would constitute injury in fact." *Id.* at 155. One of these undeniable rights is the right to an unbiased adjudicator. *Id*. at 155 (the IDEA "prohibits the use of biased adjudicator."). The court explained as follows:

> The structure of IDEA similarly attests to Congress' concern for adjudicatory independence. The Act relies on parental involvement to contribute to the determination of what constitutes an appropriate education for a child. *A system perceived by parents as tainted by biased adjudicators would deter parents from fulfilling their role under the Act*. The success of IDEA's novel approach to protecting the rights of disabled children, thus, turns on ensuring the right to adjudicative independence.

---

[6] *See also Honig v. Doe*, 484 U.S. 305, 317-318 (1988) (20-year-old student who remained eligible for a FAPE in the state continued to have standing to challenge suspension policy).

*Id*. (emphasis added).

On remand in *Heldman*, the district court explained that the IDEA's protection barring hearing officers who have a personal or professional conflict "would alone be enough to call the practice of utilizing school district employees as hearing officers into question. This regulation … reflects a longstanding and accumulating recognition that such impartiality is necessary for fair adjudication generally of hearings by officers with a potential personal interest in the outcome is inherently suspect even though its validity may depend on the circumstances." *Heldman*, 846 F. Supp. at 289.

Plaintiffs suffer an injury in fact as well as a deprivation of FAPE if they are deprived of due process rights that the IDEA requires. *See Heldman,* 962 F.2d at 151 ("Congress intended to create procedural rights the violation of which would constitute injury in fact.").

**B.  Plaintiffs Have Standing Because they Have or Have Had OATH Hearings**

Although Plaintiffs do not need to have a pending (or prior) hearing before an OATH IHO to have standing to challenge the implementation of the OATH Plan under *Heldman*, at the time of this complaint, the following Plaintiffs had or will have pending OATH hearings: A.M. o/b/o O.M.; J.F. o/b/o H.F.; J.S. o/b/o R.S.; and R.H. o/b/o M.H. TAC ¶¶69-76; 80-82; 86-88.

**C.  Plaintiffs Have Standing Because They are Unable to Exhaust Claims Raised Here**

Plaintiffs have alleged that they are not required to exhaust administrative remedies before bringing the claims raised here. TAC ¶410. Defendants erroneously contend that Plaintiffs cannot bring the instant claims without having first exhausted them. Defendants are wrong that these claims must be – or even can be- exhausted. Since the Court denied the Plaintiffs' motion for preliminary injunction on March 01, 2022 (ECF No. 46), two significant events have occurred.

Most recently, in a case involving a putative class member, a New York State Review Officer has ruled that the claims concerning OATH IHOs raised here – that their appointment causes a structural conflict and most of the IHOs are City employees without any specific IDEA experience or training – cannot be exhausted through the administrative process. *See Application of a Student with a Disability*, Appeal No. 23-019 (March 10, 2023).

Further, in a similar case raising systemic claims, the Second Circuit issued a decision holding that systemic claims involving special education rights do not need to be exhausted. *Z.Q. by G.J. v. N.Y.C. Dep't of Educ.*, No. 22-949, 2023 WL 1486387, at *4 (Feb. 3, 2023 2d Cir.) (summary order). In *Z.Q.*, the Second Circuit reiterated that exhaustion is excused where it would be futile. *Id.* at *2 (citing *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007)).

The *Z.Q.* court held that a plaintiff could establish futility by demonstrating (a) "adequate remedies are not reasonably available;" or (b) "the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.* That court further stated futility will be established where the plaintiffs allege "systemic violations," which administrative review officers "had no power to correct," or where the district "has adopted a policy or practice of general applicability that is contrary to law." *Id.* at * 2 (internal quotation marks and citation omitted).

Here, there is no question that Plaintiffs have alleged systemic claims as well as a policy and practice of general applicability that is contrary to law. *See, generally*, TAC ¶¶413; 418. As the Second Circuit in *Heldman* confirms, systemic claims raising a challenge to the IDEA's procedures need not be exhausted. *Heldman*, 962 F.2d at 158-159.

Further, given that the SRO has ruled that the claims raised here cannot be exhausted, as they are systemic in nature and are an issue for the federal court to decide, *see Application of a Student with a Disability*, Appeal No. 23-019, exhaustion is, by definition, futile. In other contexts, courts have similarly ruled that when, as here, the SRO has concluded a claim cannot be exhausted, exhaustion will not be required. *See, e.g.*, *F.C. v. N.Y. City Dep't of Educ.*, No. 15 Civ. 6045 (PAE), 2016 WL 8716232, at **13-17 (Aug. 5, 2016 S.D.N.Y.).

This Court should not give credence to Defendants' attempt to delegitimize Plaintiffs' systemic challenge to the OATH Plan as a "speculative" injury. *See* S-Mem. at 7-10. Plaintiffs' claims are, in actuality, based on the facts, supported by evidence, that: (a) Defendants' policy and practice regarding due process hearings have already changed as a result of the OATH Plan, and the OATH Plan, as written, constitutes *de facto* violations of the IDEA and New York State law; (b) Defendant City is the real party in interest and in full control of Defendant DOE; (c) Defendants' OATH Plan is designed to remove virtually all of the experienced IHOs from the bench and replace them with City lawyers; and (d) the OATH Plan creates a separate but not equal, system of due process for families within the New York City school system, as compared to wealthier families who reside and litigate their respective due process hearings outside the City in suburban school districts.[7] TAC ¶¶397-400.

There is nothing "speculative" about whether the OATH Plan has commenced; it is ongoing, and Defendants are actively engaged in deciding IDEA claims by employing an unlawful due process hearing system. TAC, *passim*.[8]

---

[7] The State Defendants also improperly conflate standing with the standard for a preliminary injunction. *See* S-Mem. at p. 20 n.14. Whether there is a showing of imminent irreparable harm or success on the merits has no relationship to standing.

[8] To the extent that Defendants infer that the OATH Plan somehow improved the due process hearing system, such inference must be rejected. Defendants admitted in their filings in *J.S.M. v.*

**D. State Laws and Regulations are Incorporated by Reference Into the IDEA and Enforceable as IDEA Claims**

The IDEA specifies that a "free appropriate public education" must "meet the standards of the State educational agency, 20 U.S.C. § 1401(9). *See also Bd. of Educ. of Hendrick Hudson Centr. School Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982). The IDEA incorporates by reference state standards, be they substantive or procedural, which exceed the federal basic floor of meaningful, beneficial educational opportunity." *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773 (1ˢᵗ Cir. 1984), *aff'd,* 471 U.S. 359 (1985). "Thus, a district court's inquiry must include a determination whether the state substantive standard exceeds the protection and services required by the federal Act. If it does, the state standard will operate to determine what an appropriate education requires for a particular child in a given state." *Id. See Mrs. C. v. Wheaton*, 916 F.2d 69 (2d Cir. 1990) (stating that the IDEA "incorporates state substantive standards as the governing federal rule only if they are consistent with, and at least as exacting as," the IDEA's provisions). *See also LIH ex rel. LH v. N. Y. C. Bd. of Educ.*, 103 F. Supp. 2d 658, 666-67 (E.D.N.Y. 2000) (holding that because state regulations incorporated into the DOE's suspension regulation were "more protective of students with disabilities than IDEA," the IDEA required the district to "meet these heightened procedural protections"); *Bay Shore Union Free School Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007) ("assuming that IDEA incorporates" Section 3602-c, making it enforceable as a federal right under the IDEA).

---

*NYC DOE*, which challenges both the State and City Defendants' compliance with IDEA, that as of July 22, 2022, OATH hearing officers had been assigned only 884 due process complaints and had issued final decisions in only 61 cases since March 2022. *See J.S.M. v. NYC DOE*, 20-CV-0705 (EK) (RLM), whereat a partial summary judgment motion is pending in the United States District Court for the Eastern District of New York (*see, e.g.*, ECF No. 142).

Plaintiffs have standing to bring these claims because the IDEA "incorporates by reference state standards, be they substantive or procedural," even where those standards afford more protections for families than the IDEA provides. *D.D. ex rel. V.D. v. N. Y. C. Bd. of Educ.*, 480 F.3d 138, 139 (2d. Cir. 2007). Since Section 4404 was amended to create a neutral rotation system to ensure IHO neutrality and avoid even the "appearance" of a conflict of interest (*see, e.g.*, TAC ¶¶3; 140-141; 444; *Heldman*), it is incorporated into the IDEA and enforceable against the Defendants.[9]

### III.   Plaintiffs Sufficiently Allege Violations of the IDEA Resulting from IHO Bias and Lack of Special Education Training and Experience

Defendants cannot prevail on their motions to dismiss by simply disagreeing with Plaintiffs' allegations or by denying Plaintiffs' allegations are true. Defendants also cannot prevail by alleging that if Plaintiffs were to succeed in proving their claims, "profound impacts on the administrative state" would result. To accept the former argument is contrary to established precedent requiring that the Court accept all allegations as true. To accept the latter argument requires the Court to allow Defendants to continue their unlawful harms simply because they argue that to do otherwise would constitute "profound" change. Indeed, though Defendants' version of the unimaginable would require Defendants' additional investments of time and money to propose and determine workable solutions; solutions might be expensive and take time; may be difficult to accomplish; or would necessitate changing practices or procedures, difficulties in complying with legal mandates cannot excuse unlawful actions or inactions.

---

[9] The cases cited by the State Defendants do not involve the IDEA and the State education statutes and thus, are not applicable here. *See* S-Mem. at 24, *citing, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Defendants essentially argue that engaging in unlawful practices is easier than complying with the law. Society and the public interest demand more from our government and elected officials.

Even though the prior due process complaint system suffered from significant flaws, Defendants cannot justify their using unlawful policies, procedures, or methods by claiming their actions were well intended. As alleged, alternate remedies to the prior due process system were proposed by multiple stakeholders; not only did Defendants fail to give proposed lawful mechanisms an opportunity to work, but Defendants also failed to even consider them. TAC ¶¶376-392. Moreover, Defendants also failed to consult with all stakeholders as the law required, to determine other potential solutions. *Id.*

### A. OATH IHOs' Jurisdiction

Plaintiffs' TAC sufficiently alleged multiple violations of the IDEA, many of which were summarized in the pursuit of a preliminary injunction. *See* ECF No. 8. Although that motion was denied by the Court, the motions before the Court must consider the sufficiency of the allegations supporting Plaintiffs' claims; these allegations must be accepted as true when challenged under Rule 12(b)(6). These stated violations are repeated again here for ready reference.

### 1. The OATH Plan Creates a Structural Conflict Prohibited by the IDEA

As noted above, IHOs may not be "an employee of the State educational agency or the local educational agency involved in the education or care of the child" or "a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. § 1415(f)(3)(A).[10]

---

[10] The legislative history of the IDEA reflects that hearings cannot be conducted by employees of the agency, but rather "at the appropriate agency level by an impartial hearing officer, since the State or local agency or *intermediate unit will be a party to any complaint presented*." *See* Sen.

While New York City is not a named party to the due process hearings, the City is the real party-in-interest because they must pay for the special education program, placement, or services. Here, Defendants' use of City employees to decide the outcome of special education claims for which the City will be held financially responsible and which the City has repeatedly said is costing the City too much money, violates Plaintiffs' fundamental right to an impartial due process hearing. Further, Plaintiffs allege by creating a "tainted" due process system, its effect would chill and deter parents from filing claims thereby accomplishing the City's goal of reducing the number of special education claims. TAC ¶¶19, 341.

The Second Circuit has taken a strong stand on the importance of the IDEA's guarantee of neutral and impartial hearing officers. *See Heldman*, 962 F.2d at 154-155. In *Heldman,* a parent brought a structural challenge to the hearing system, alleging that the New York State rotational system for selecting hearing officers violated the IDEA because it permitted boards of education to choose hearing officers. *Id.* at 154. The plaintiff argued that the system created "a powerful economic and professional incentive for officers to rule in the board's favor" and that "[s]uch an economic stake in the outcome of a hearing … is liable to distort the outcome of the hearing." *Id.*

The Second Circuit held that the plaintiff had standing and the right to lodge a systemic challenge to the legality of the impartial hearing system. According to the *Heldman* court, "the central role of the IDEA [due] process rights bears witness that Congress intended to create procedural rights the violation of which would constitute injury in fact." *Id.* at 155. One of these

Rept. No. 94-95 (Nov. 14, 1975) at 49 (emphasis added). The language here was designed to ensure that employees of entities that were responsible for funding and providing special education, but were not LEAs, were also prevented from serving as IDEA hearing officers. *Id.* at 31.

undeniable rights is the right to an unbiased adjudicator. *Id*. at 155 (the IDEA "prohibits the use of biased adjudicator."). The court explained as follows:

> The structure of IDEA similarly attests to Congress' concern for adjudicatory independence. The Act relies on parental involvement to contribute to the determination of what constitutes an appropriate education for a child. *A system perceived by parents as tainted by biased adjudicators would deter parents from fulfilling their role under the Act.* The success of IDEA's novel approach to protecting the rights of disabled children, thus, turns on ensuring the right to adjudicative independence.

*Id*. (emphasis added).

On July 21, 1993, the New York State Legislature amended Section 4404 to create the IHO rotational system. *See Heldman on Behalf of T.H. v. Sobol*, 846 F. Supp. 285 (S.D.N.Y. 1994). The legislative history for the 1993 amendments shows that the legislature intended to ensure that the hearing system across the state would comply with the IDEA, with respect to partiality and potential conflicts, as well as the appearance of impartiality which arose when financially interested school districts had the discretion to select and appoint IHOs at will. TAC ¶¶346-47.

On remand in *Heldman*, the district court explained that the IDEA's protection barring hearing officers who have a personal or professional conflict "would alone be enough to call the practice of utilizing school district employees as hearing officers into question. This regulation … reflects a longstanding and accumulating recognition that such impartiality is necessary for fair adjudication generally of hearings by officers with a potential personal interest in the outcome is inherently suspect even though its validity may depend on the circumstances." *Id.* at 289.

This concept is consistent with judicial rules of disqualification. *See* 28 U.S.C. §455 ("[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any

proceeding in which his impartiality might reasonably be questioned"). Here, it is beyond cavil that the City-employee-as-hearing officer arrangement "might reasonably" be questioned relative to its impact on impartiality.

Further, although the IDEA does not expressly prohibit a second-tier review officer from being an employee of a state agency, the Second Circuit has interpreted the IDEA to prohibit that situation. The Second Circuit has held that the Commissioner (a named Defendant here) would not be sufficiently neutral to preside over individual appeals of impartial hearings. *See Burr by Burr v. Ambach*, 863 F.2d 1071 (2d. Cir. 1988), *vacated on other grounds*, *Sobol v. Burr*, 492 U.S. 902 (1989); *see also Holmes by Holmes v. Sobol*, 690 F. Supp. 154 (W.D.N.Y. 1988) (the Commissioner "cannot be presumed to be impartial and independent" even though not technically a NYSED employee); *Louis M. by Velma M. v. Ambach*, 714 F. Supp. 1276 (N.D.N.Y. 1989) (NYSED employees engaged in monitoring could not be review officers).

Given that the Court has held that the Commissioner would be inadequately neutral to preside over a single child's hearing, the Court should find the Commissioner to be in a similar conflict relative to whether hearing officers should be City employees. This is particularly true since NYSED and the Commissioner have, for years, sought to reduce the cost of due process by reducing the limitations period for parents to file hearings below the federal floor.[11]

Similarly, courts outside of the Second Circuit have not strictly adhered to the term "employee" in prohibiting arrangements that presented pressures and conflicts similar to those experienced by an employee. *See Muth v. Central Bucks Sch. Dist.*, 839 F.2d 113 (3rd Cir. 1988)

---

[11] Notably, for years, State Defendants have also been focused on curtailing parents' due process rights, with the goal of saving money. Their annual proposal was to reduce the current two-year statute of limitation to 180 days for tuition cases and one year for all other cases, which are mainly filed by families without resources for or access to private school. *See*, *e.g.*, Hyman Decl. Ex. HH, submitted in support of Preliminary Injunction.

(holding that "Congress has indicated its desire to provide parents with decisionmakers who are not subject to the kind of pressures that employees of an educational agency would necessarily feel"), *rev'd on other grounds*, *Dellmuth v. Muth*, 491 U.S. 223 (1989); *Colin K. v. Schmidt*, 715 F.2d 1, 5 n. 3 (1st Cir. 1983); *Helms v. McDaniel*, 657 F.2d 800, 806 n.9 (5th Cir. 1981) (members of school boards cannot preside over hearings, despite not being "employees" of a public agency), *cert. denied*, 455 U.S. 946 (1982); *Robert M. v. Benton*, 634 F.2d 1139, 1142-43 (8th Cir. 1980) (even though the superintendent was not an employee of the entity that delivered educational services, the court found that he was not impartial).

The Eleventh Circuit has stated that "the phrase 'involved in the education or care of the child [under the IDEA] extends beyond the local school system in which the child is enrolled." *Mayson by Mayson v. Teague*, 749 F.2d 652, 656 (11th Cir. 1984). As such, the court found that no school district employee in the state could serve as an IHO in another district, as the employee would be deemed to have "personal or professional interest[s] which would conflict with [his] objectivity in the hearing," thus making it "unlikely that he could be objective in evaluating a claim involving [any] local school system." *Id*.[12]

The courts in New York also have not strictly adhered to the definition of "employee," focusing instead on ensuring that individuals who could face the same kinds of pressures and potential conflicts as employees are unable to serve as IHOs. In holding that the system of boards appointing and paying independent IHOs did not violate the IDEA, one court ruled that "the

---

[12] The court explained that "employees of local education systems might be concerned about retribution and about being subjected to adverse decisions." *Id*. The Court even went so far as to disqualify university professors who had been involved in formulation of state policy: "[w]hen a university professor has taken an active part in formulating a state policy in the area of special education, it seems entirely plausible that he could become sufficiently personally or professionally invested in the policy that he would find it difficult to reverse or modify it as a due process hearing officer." *Id*. at 659.

determinative factor" in whether an individual is an employee is the "the entity's ability to exert control over an individual." *Jacky W. v. New York City Bd. of Educ.*, 848 F. Supp. 358 (E.D.N.Y. 1994). The IDEA presumes that the agency delivering services is the financially responsible party; here, however, while the cases are filed against the DOE, the City bears the cost of the hearings *and is the real party in interest*.

Here, OATH-employee hearing officers would "be concerned about retribution and about being subjected to adverse decisions," (*see Teague*, 749 F.2d at 656), especially if the costs of special education claims to the City did not decrease. Further, "Congress has indicated its desire to provide parents with decisionmakers who are not subject to the kind of pressures that employees of an educational agency would necessarily feel." *Muth*, 839 F.2d at 124 (holding that the IDEA's prohibition of employees as hearing officers applies to second-tier review officers.) Defendants' plan to use City employees as hearing officers violates the IDEA, because the OATH employees undoubtedly could be subject to the same type of pressure that Defendant Board and/or DOE employees would experience.

### 2. The OATH Plan Violates Plaintiffs' Right to Hearing Officers with Expertise and Adequate Training in Special Education

Courts interpret the IDEA to require that hearing officers have "expertise" in the area of special education, and further, to be "experts" in issues of special education law and policy. *See*, *e.g.*, *Heldman*, 962 F.2d at 159 (administrative exhaustion "prevents courts from undermining the administrative process and permits an agency to *bring its expertise to bear* on a problem") (emphasis added). *See also Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F.3d 478, 486 (2d Cir. 2002) (holding that "[t]he IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply *administrators' expertise in the area and promptly resolve grievances*")

(emphasis added); *J.S. Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240 (2d Cir. 2008) (noting that the purpose of exhaustion was to have cases first addressed through administrative expertise at the hearing level).[13]

    Courts also highlight the presumed expertise of hearing officers when deciding how much deference is due to an opinion in the context of an appeal. *See, e.g., M.H.*, 685 F.3d at 246 (holding that where the SRO "rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court ... to consider the IHO's analysis, *which is also informed by greater educational expertise than that of judges*, rather than to rely exclusively on its own less informed educational judgment") (emphasis added).[14]

    Against this tidal wave of settled case law stands the OATH Plan. As noted above, Defendants are not just seeking to control, oversee, supervise, and have the power to hire and fire hearing officers. They also are intentionally trying to clear the bench of virtually all of the *existing*, experienced hearing officers in New York City. With a hearing backlog of thousands of

---

[13] Numerous other courts have interpreted the IDEA to require that an IHO has expertise in special education beyond that of the federal judiciary. *See, e.g., D. D. by and through Ingram v. Los Angeles Unified School District*, 18 F.4th 1043 (9th Cir. 2021) ("[e]xhaustion serves Congress's intent that *educational experts*—not the courts—address deficiencies in the provision, construction, or implementation of a student's IEP in the first instance") (emphasis added); *Octavia P. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990) (holding that "[c]ourts require exhaustion where the *peculiar expertise* of an administrative hearing officer is necessary to develop a factual record") (emphasis added); *Frazier v. Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002) (same); *Perez v. Sturgis Public Schools*, 3 F.4th 236 (6th Cir. 2021) (same); *Hayes Through Hayes v. Unified School Dist. No. 377*, 877 F.2d 809 (10th Cir. 1989) (same).

[14] *See also Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004) (an IHO "is a representative of the state presumed to have both the educational expertise and the ability to resolve questions of educational methodology that the federal courts do not have."); *Gregory K. v. Longview School Dist.*, 811 F.2d 1307 (9th Cir. 1987) (expertise of the administrative hearing officers is a factor that must be weighed in considering the degree of deference); *Burilovich ex rel. Burilovich v. Bd. of Educ. of Lincoln Consol. Schs.*, 208 F.3d 560, 567 (6th Cir. 2000) (IHOs are presumed to be experts); *B.G. by J.A.G. v. Bd. of Educ. of City of Chicago*, 901 F.3d 903 (7th Cir. 2018) (same).

cases, it makes no sense for an agency to purge all of the experienced, independent IDEA hearing officers in favor of replacing them with inexperienced lawyers who are beholden to OATH and the Mayor. Unless, of course, Defendants' real objective is to "stack the deck" against parents.

### 3. Defendants Lack Jurisdiction or Authority for the OATH Plan and Are Improperly Delegating Duties Under the IDEA and State Law

By executing the MOA, the State Defendants abdicated their obligation to supervise and guarantee IDEA procedural safeguards and a FAPE. 20 U.S.C. §§ 1412(g), 1415(a).

In addition, the OATH plan also violates the IDEA and New York State law because the Mayor, DOE, the Chancellor, and NYSED lack the authority to implement it.

#### i. The Board, DOE, and Chancellor Cannot Delegate the Hearing Function

The DOE, Board, and/or Chancellor are not vested with any authority under the IDEA, or state law, to delegate the responsibilities of the impartial hearing system to OATH. The IDEA requires that the SEA and LEA "shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of" a FAPE. 20 U.S.C. §1415(a).

The IDEA does not authorize delegation of this function or the impartial hearing function. The IDEA expressly provides that the hearing "*shall* be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. §1415(f)(1)(A) (emphasis added). When interpreting a statute, the word "shall" connotes a requirement, while the word "may" implies discretion. *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016)).[15]

---

[15] Moreover, the phrase "as determined by State law or by the State educational agency" refers to whether the state has a one-tier system, in which the SEA conducts a hearing, or a two-tiered

Since the IDEA's provisions are unambiguous on this point, no further analysis should be required. *See Raila v. United States*, 355 F.3d 118, 120 (2d Cir. 2004) ("[s]tatutory construction begins with the plain text, and where the statutory language provides a clear answer, it ends there as well.") (internal quotation marks and citation omitted); *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself" and "[w]here, as here, that examination yields a clear answer, judges must stop") (citations omitted).

However, even if the Court were to delve into statutory construction, a review of the IDEA's other provisions establishes that Congress allowed certain limited core SEA or LEA functions to be delegated and/or assigned, though those provisions were not included in Section 1415. For example, the IDEA provides that the "Governor (or another individual pursuant to State law), consistent with State law, *may* assign to any public agency in the State the responsibility of" supervising and guaranteeing FAPE "with respect to children with disabilities who are convicted as adults under State law and incarcerated in adult prisons." 20 U.S.C. § 1412(a)(11)(C) (emphasis added). Similarly, the IDEA provides that "[t]he Chief Executive Officer of a State or designee of the officer" has certain obligations with respect to interagency agreements and coordination. 20 U.S.C. § 1412(a)(12). The only provision of the IDEA that pertains to "delegation" appears in 20 U.S.C. § 1464(a) ("The Secretary shall delegate to the Director of the Institute of Education Sciences responsibility to carry out this section, other than subsections (d) and (f)"). The inclusion of these express provisions for delegation, while Section

---

system where the LEA conducts a hearing. §1415(f)(1)(A). This provision was not intended and should not be read to allow unfettered delegation to an entity other than the LEA, like OATH, to conduct a hearing.

1415 does not include such a provision, establishes that Congress did not intend the most important due process function to be delegated.

None of those provisions apply here to permit Defendants to delegate the impartial hearing system to OATH. It makes sense that Congress would not have contemplated delegation of the core due process function of the IDEA to an entity that might not be subject to IDEA jurisdiction.

ii.     **The OATH Plan Violates Section 4404 Which is Enforceable under the IDEA**

The OATH Plan deprives Plaintiffs of neutral, independent hearing officers as defined by New York State Educ. Law Section 4404. As discussed *supra*, Section 4404 was amended expressly for the purpose of bringing New York State's due process system into compliance with the IDEA and by taking action to establish independent IHOs who were not subject to conflict or the appearance of conflict. *See* Hyman Decl. Ex. JJ. Section 4404 are enforceable as a federal right under the IDEA. "While the IDEA establishes a 'basic floor' of education, state law may mandate a more protective standard of educational services and procedural protection." *LIH v. N. Y. C. Bd. of Educ.*, 103 F. Supp. 2d 658, 668 (E.D.N.Y. 2000); *see also Rowley*, 458 U.S. at 203. The IDEA "incorporates by reference state standards, be they substantive or procedural, which exceed the federal basic floor of meaningful, beneficial educational opportunity." *Burlington v. Dep't of Educ.*, 736 F.2d 773, 789 (1st Cir. 1984). Here, as stated earlier, the hearing procedures are considered so important, they are deemed substantive rights under the IDEA and are therefore enforceable under the IDEA.

### iii.        The Mayor Lacked Authority to Vest OATH with Jurisdiction or Transfer the Hearing Functions under Other State Law

The responsibility for the impartial hearing system remained with the Board of Education under Section 4404. N.Y. Educ. Law § 4404(1)(a). OATH was established under the New York City Charter to hear cases involving "agencies of the city" concerning City laws, regulations, rules, and policies. *See* New York City Charter §1098(1). None of the Defendants had authority under the IDEA or State law to either (a) vest OATH with "concurrent" jurisdiction over federal and state law special education claims; or (b) transfer the impartial functions and IHOs to OATH.

Defendants' unilateral action here would be preempted by the IDEA, as it would conflict with its provisions, as set forth *supra*. 20 U.S.C. § 1415(a). The Charter could not authorize the OATH transfer because it would directly conflict with the IDEA's mandate that the LEA conduct the hearings, using neutral, experienced hearing officers, and the doctrine of preemption would apply. 20 U.S.C. § 1415(f)(1)(A); *accord*, *Evans v. Evans*, 818 F. Supp. 1215 (N.D. Ind. 1993); *Sarah M. v. Weast*, 111 F. Supp. 2d 695 (D. Md. 2000).

Further, Municipal Home Rule Law §11 prohibits enactment of any local law that supersedes a state statute "if the local law applies to or affects 'the maintenance, support or *administration of the educational system in such local government*." (emphasis added). The Mayor and other Defendants can point to no authority allowing the Chancellor, Mayor, or NYSED to vest OATH with that jurisdiction, or transfer impartial hearings from the DOE to OATH. This is the case even if the former Mayor were to have complied with the City Charter, or the DOE with their rule-making obligations, which, as discussed below, did not occur.

### 4. The OATH Plan Violates the 2002 Order and Stipulation

As discussed above, Defendants are violating the express terms of the district court's 2002 Order in *Does, et al. v. Outgoing Schools, et al.,* 1:02-cv-06495 (JFK). Defendants did not

27

provide Mr. Mayerson's firm with any notice, let alone 45 days' notice of the plan to transfer the function of the Impartial Hearing Office to OATH.

### 5. Defendants Failed to Give Notice or Hold Hearings

As noted above, the City Charter created OATH to hear cases involving New York City laws, rules, and regulations. However, even if this aspect of the Charter is not preempted by the IDEA and state law, the Mayor did not comply with the Charter in facilitating the transfer to OATH and issuing EO 91. Before the Mayor can transfer an agency's hearing functions to OATH, he must first convene a committee to study the transfer and the committee must issue a report. New York City Charter §§ 1048(4)(a)-(b). After that process, there must be notice to the public and hearings held. *Id.* Upon information and belief, the Mayor did not take any of these actions here. Further, OATH was subject to the New York City Administrative Procedures Act ("CAPA") but failed to comply with rule-making. Similarly, the Board failed to comply with its rule-making procedures pursuant to N.Y. Educ. Law § 2590(d).

### 6. On its Face, the OATH Plan Will Substantially Undermine and Prejudice the Hearing System

The evidence shows that the OATH Plan, as contemplated, would not improve, and instead, would wreak havoc on, the due process system. The OATH Hearings Division has half the number of intended administrative judges and handles only one fifth of the volume of impartial hearing cases. Even with caseloads of less than two hundred, the OATH ALJs are issuing a mere fraction of the decisions that would be needed for impartial hearings, and they involved much less complicated issues without any clinical component.[16] On the other hand, the

---

[16] *Compare* the impartial hearing decisions (published at http://www.p12.nysed.gov/specialed/dueprocess/decisions/home.html), SRO decisions published at https://www.sro.nysed.gov/decision-search with the decisions published by the OATH

Hearings Unit, which handles thousands upon thousands of cases, and boasts win rates overwhelmingly in favor of the City, is grossly inadequate as the apparent model for impartial hearings.

**7.   The OATH Plan Violates the Due Process Clauses of the United States and New York State Constitutions**

The OATH plan creates a separate and unequal system of due process for children inside New York City, compared to their peers in suburbs outside the City, like Scarsdale or Great Neck; such distinction in due process rests only on the residence of the state's children with special needs. There is no rational basis for the decision to eliminate independent IHOs for the City's children; further this decision should be subject to strict scrutiny, as it violates the Equal Protection Clause. U.S. Const. amend. XIV, § 1, NY Const. art. I § 11. Further, as the OATH Plan contemplates that the OATH IHOs will be employed, controlled, and managed by the real party-in-interest, that is, the City, it renders the plan infirm under the Due Process Clause of both the federal and New York Constitutions. U.S. Const. Amend. XIV, §1, N.Y. Const Art. I § 6.

**8.  The DOE's Obligations Under Section 504 Mirror Their IDEA Duties**

Independent of the IDEA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, requires the DOE Defendants to adopt and implement an impartial hearing process to address Section 504 disputes. 34 C.F.R. § 104.36. A district that adopts the IDEA's impartial hearing procedures complies with Section 504. *Id.* The DOE has, until the OATH Plan, elected to use the IDEA impartial hearing process for Section 504 hearings. *See* New York City Schools

---

Hearings Division (at http://a820-isys.nyc.gov/ISYS/ISYS.aspx ). The Court should take judicial notice of the stark differences in complexity of the issues and the facts.

Chancellor's Regulation A-710, Section VII(B)(2).[17] The OATH Plan fails to even mention Section 504.

## IV. The State Defendants Are Properly Sued And Plaintiffs' Claims Are Not Barred By The Eleventh Amendment

### A. An Explicit Right of Action Exists for Children with Disabilities and Their Parents Against the State and its Agencies for Violations of the IDEA

The State Defendants' assertion that it has no liability for violations of the IDEA is flatly wrong. Both Defendants are jointly legally and practically liable for systemic noncompliance with the IDEA requirements (*see, e.g.*, 20 U.S.C. §1415(f); 34 C.F.R. §§300.33, 300.500, 300.515(a)). State Defendants are legally responsible to "ensure" that the IDEA's requirements are met, *see, e.g.*, 34 C.F.R. § 300.515(a), and have direct obligations to certify, train, and discipline IHOs, establish guidelines for IHO assignments and recusals. §4404. Similarly, the DOE as an LEA shares liability with NYSED, the SEA. *Jose P. v. Ambach*, 669 F.2d 865, 870-71 (2d Cir. 1982); *accord Doe ex rel. Gonzalez v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986), *aff'd sub nom. Honig v. Doe*, 484 U.S. 305 (1988) (exemplifying a decision wherein the State was held equally responsible).

Moreover, the State Defendants' denial of statutory responsibility under the IDEA directly conflicts with the purposes of the IDEA. Congress enacted the IDEA and its predecessor statutes "to assure that all children with disabilities have available to them ... a free appropriate public education ... ." 20 U.S.C. § 1400(c).[5] To effectuate this goal, Congress placed the ultimate responsibility of compliance with the state education agency ("SEA"), declaring that in order for the State to receive federal IDEA funds, the SEA "shall be responsible for assuring that the

---

[17] *See* https://www.schools.nyc.gov/docs/default-source/default-document-library/a-710-1-20-2011-final-remediated-wcag2-0.

requirements of this [Act] are carried out ... ." 20 U.S.C. § 1412(6). The federal regulations

issued under Section 1412(6), 34 C.F.R. section 300.600 explain in a note that the language of

this provision:

> [Section 1412(6)] ... reflects the desire of the Congress for a central point of responsibility and accountability in the education of children with disabilities within each State. With respect to SEA responsibility, the Senate Report on Pub.L. 94–142 includes the following statements:

> This provision is included specifically to assure a single line of responsibility with regard to the education of handicapped children, and to assure that the implementation of all provisions of this Act and in carrying out the right to education for handicapped children, *the State educational agency shall be the responsible agency* ***.

> Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many states, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the Committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a central agency overseeing the education of handicapped children, *so that failure to deliver services or the violation of the rights of handicapped children is squarely the responsibility of one agency.*

[Emphasis added]. Thus, the provisions of the IDEA delegate to the SEAs the responsibility for

compliance as well as the supervisory power to implement policies and procedures to make

certain that LEAs have complied with the Act.

Finally, the statute provides that if the LEA is unable or unwilling to provide services in

compliance with the Act, the SEA must provide services directly to such students. 20 U.S.C. §

1414(d)(1).

It is beyond dispute that neither the City nor the State Defendants can individually

remedy the problems with the due process system (which is likely why they joined to execute the

unlawful MOA); rather, Plaintiffs assert and sufficiently pleaded that both City and State

Defendants are responsible for the violations of the IDEA described in detail in the TAC. *See*

TAC, *passim*; *see also, e.g.*, *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 2004 WL 633222, at *23

(E.D.N.Y. Mar. 30, 2004), *vacated in part on separate grounds*, 465 F.3d 503 (2d Cir. 2006). In

*D.D.*, the court expressly held that both the DOE and the NYSED could be held liable for

systemic violations of the IDEA where one entity alone could not provide the "complete relief."

*Id.* As alleged in their TAC, both the City and State Defendants are jointly responsible for

delegating what Plaintiffs assert are non-delegable legal obligations for complying with the

IDEA. *Id.; Jose P.*, 669 F.2d 870-71 (where the DOE and NYSED were jointly responsible for

systemic failures in NYC education system, and an injunction was issued against both).

### B. An Implicit Right of Action Exists for Children with Disabilities and Their Parents Against the State and its Agencies for Violations of the IDEA

The State Defendants' argument (S-Mem. Point II) claiming there is "no provision of the

IDEA that expressly or impliedly authorizes" Plaintiffs' suit against the State Defendants must be

rejected as a matter of law. Section 1403, entitled, "Abrogation of State sovereign immunity,"

provides as follows: "A State shall not be immune under the 11th amendment to the Constitution

of the United States from suit in Federal court for a violation of this *chapter*." §1403 (emphasis

supplied). Congress explicitly intended and provided that a State could be held liable for a

violation of any provision of the IDEA. By abrogating State immunity in its general provisions

(ch.33, subch. I, part A), applicable to the IDEA in its entirety, and not simply to violations of

procedural safeguards provided in §1415, Congress intended to broadly abrogate State immunity

for a violation of any IDEA provision. Clearly, Congress could have restricted its immunity

abrogation to specific provisions of the Act. But by its express language Congress chose

otherwise.

Under the IDEA, §1403 demonstrates that Congress intended a broad abrogation of a

state's immunity for "a violation of *this chapter*," for any violation under the IDEA. This broad

elimination of Eleventh Amendment immunity was the price Congress exacted from states for their acceptance of federal funds under the IDEA. In so doing, Congress intended to permit expansive implied rights of action against States and their agencies for violations of the IDEA.

As with any question regarding the existence of a statutory cause of action, the court begins with the principles of statutory construction. *Touche Ross Co. v. Redington*, 442 U.S. 560, 568 (1979). Here, the text of the IDEA provides significant evidence of Congressional intent to give children with disabilities and their parents expansive rights of action against States. *See, e.g.*, §1415(i)(2)(A). To ensure that children and parents receive the benefits of the funding statute Congress created, it explicitly provided for civil actions on behalf of "any party aggrieved by particular findings or a decision rendered under subsection 1415. *Id.* Although the Supreme Court established a four-factor test to determine whether a federal statute created a private right of action in *Cort v. Ash*, 422 U.S. 66 (1975), it later clarified that the second factor – Congressional intent – was "dispositive." *Transamerica Mtg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 23-24 (1979); *see also McClellan v. Cablevision of Conn., Inc.*, 149 F.3d 161, 164 (2d Cir. 1998) (explaining that the other factors were simply proxies for Congressional intent).

Plaintiffs note the *per curium* decision in *County of Westchester v. New York*, 286 F.3d 150, 152 n.2, which Defendants' cite (see S-Mem. at 13), rejected the county's argument that §1403 reflected Congressional intent to create rights other than those explicitly provided for in §1415. However, that decision is neither precedent nor dispositive of the issue here.

First, there, the court considered whether an implicit private right of action existed for a county, which was delineated as an "intermediary," because counties were not provided with any explicit rights to enforce violations of the IDEA. Here, Plaintiffs are children with disabilities and their parents, the parties for whom the IDEA was created, and for whom an explicit private

33

right of action exists, *see* 20 U.S.C. §1415; this explicit right created by Congress strongly suggests Congress's consideration and intention to create implicit rights exist as well. *See* analysis of the Court in *Cannon v. Univ. of Chicago*, 441 U.S. 677, 687-710, finding a private right of action under Title IX for individuals aggrieved by discrimination.

Second, the court's reasoning in *County of Westchester*, which suggested that abrogation of immunity applied only to actions or proceedings *otherwise authorized by the IDEA*, failed to consider the language differences between §1415 and §1403. In §1415, the right of action applies to violations of subsections (f) and (k) only. Section 1403 applies to any violation *of the chapter* – a broader more expansive provision, abrogating immunity for any violation of the chapter and not simply for the two specific subdivisions of the IDEA.

Third, the remedies available under §1403(b) also suggests Congress's intent to create an expansive implied right of action. Section 1403(b) provides that "[i]n a suit against a State for a violation of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as those remedies are available for such a violation in the suit against any public entity other than a State." 20 U.S.C. §1403(b). By providing that remedies shall be available for a violation of the IDEA as provided for at law and in equity, Congress evidences again a more expansive statute than the remedies available for violations of §1415(f) and (k). Specifically, the remedies available under §1415 do not include monetary damages. Section 1403(b), however, clearly authorizes monetary damages, which should be available in suits against States and their agencies.

Accordingly, for these reasons, and consistent with Congressional intent demonstrated in §1403, an implicit right of action against states and their agencies should be recognized on behalf

of Plaintiffs – children with disabilities and their parents for violations as stated in Plaintiffs'

TAC.

Moreover, the Supreme Court's decision in *Perez v. Sturgis Public Schs.*, 143 S. Ct. 159

(2023), supports Plaintiffs' claims under Section 1983 for violations of provisions of the IDEA.

As the Court stated, Section 1415(l) sets forth a general rule: "Nothing in IDEA shall be

construed to restrict" the ability to seek "remedies" under "other Federal laws protecting the

rights of children with disabilities." As recognized by the Court, with respect to monetary

damages sought under the ADA, the exception provision requiring exhaustion does not apply

since such remedies are not available under the IDEA. Similarly here, because the remedies

available to Plaintiffs under Section 1983 for violations of federal laws, include other provisions

in the *chapter*, §1401, *et seq.*

The State Defendants' argument that it cannot be sued under the IDEA because sections

1415(f) or (k) apply only to LEAs also fails for similar reasons. First, the duties imposed by the

IDEA Section 1415 apply to the SEA and the State as a whole. Here, Plaintiffs' claims against

the State Defendants also arise under the exact provisions the State Defendants acknowledge

expressly provide a right of action – Section 1415(f). Specifically, the TAC charges the State

Defendants with violating Section 1415, by *inter alia*, improperly delegating its authority over

due process hearings to OATH. TAC ¶¶ 361; 443.

## C. The *Ex Parte Young* Doctrine Applies to Plaintiffs' Claims

Plaintiffs' claims against the State Defendants survive their motion to dismiss given the

*Ex parte Young* exception to the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). *Ex*

*parte Young* permits suits for prospective declaratory or injunctive relief if suit is brought against

a state official acting in an official capacity. *Id.* This doctrine, however, is subject to several

constraints, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997), including the following: (1) the action must seek only prospective injunctive relief; it may not challenge past conduct; (2) the action must address an ongoing federal violation; (3) the action cannot be based on state law; and (4) the official sued must have a connection with the law and direct responsibility for enforcing it. *Ex parte Young,* 209 U.S. at 157 (official sued must have some connection to enforcement of allegedly unconstitutional act); *Verizon v. Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635 (2002) (*Ex parte Young* applies where complaint alleges ongoing violation of federal law and seeks relief properly characterized as prospective).

Plaintiffs' prayer for relief includes multiple requests for prospective injunctive relief. *See generally* TAC Prayer for Relief. At this stage of the proceedings, the Court need not determine the *scope* of prospective injunctive relief that *could* be awarded, since such a determination does not affect the cognizability of Plaintiffs' official-capacity claims. Since Plaintiffs' §1983 claims seek prospective injunctive relief, which is the type of relief that can be pursued in an official-capacity suit under *Ex parte Young*, notwithstanding the Eleventh Amendment, the State Defendants' motion to dismiss should be denied.

## V.    Plaintiffs Sufficiently Allege Their Due Process and Equal Protection Claims To Survive Defendants' Motions To Dismiss

### A.  Plaintiffs' Due Process Claims Are Sufficiently Pleaded

Plaintiffs allege that because the City is the real party in interest, and that the IHOs will be employed, controlled, and managed by the City, the OATH Plan suffers from a constitutional deprivation of due process. *See, e.g.*, TAC ¶334.

The OATH Plan also deprived Plaintiffs of notice and opportunity to be heard. At no time prior to the initiation of the OATH Plan were parents given notice of the plan or an opportunity to dispute it. TAC ¶¶397-400.

Although certain Plaintiffs raised the issue of IHOs conflict of interest at their individual

due process hearing, IHOs are without jurisdiction to consider systemic violations of the IDEA.

*See Application of a Student with a Disability*, Appeal No. 23-019  *** (finding that systemic

violations cannot be exhausted since IHOs have no jurisdiction to consider them). Accordingly,

Plaintiffs' pleaded allegations are sufficient to state the claim.

### B.  Plaintiffs' Equal Protection Claims Are Sufficiently Pleaded

The Equal Protection Clause is "essentially a direction that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Here, Plaintiffs allege the OATH Plan violates the Equal Protection Clauses in both the United

States and New York State Constitutions because children with disabilities within the New York

City school district are treated dissimilarly from children with disabilities in other school districts

within New York State. *See, e.g.*, TAC ¶¶397, 398.

The City Defendants challenge Plaintiffs' equal protection claims by alleging that

Plaintiffs' selected "comparator" – children with disabilities who bring due process claims

outside the New York City school district, is an "improper" one, and suggest instead the

existence of a "more appropriate" comparator. *See* C-Mem. at 23-24.[18] Such an argument,

---

[18] Defendants suggest that the appropriate comparator is an OATH IHO v. a non-OATH IHO
within the New York City school district. *Id.* The City's cited case law (*see* C-Mem. at 23),
however, fails to support dismissal of Plaintiffs' claims using either comparator: *Camac v. Long
Beach City Sch. Dist.*, No. 09 CV 5309 (DRH) (ARL), 2011 U.S. Dist. LEXIS 79997, at **46-47
(E.D.N.Y. July 22, 2011), and *Kamholtz v. Yates Cnty.*, No. 08-CV-6210 (MAT), 2008 U.S. Dist.
LEXIS 97985, at **16-17 (W.D.N.Y. Dec. 3, 2008), both involve equal protection claims that
pertain to a "class of one," which does not apply to the putative class action Plaintiffs' describe
in their TAC. Even under the "class of one" standard, however, Plaintiffs' allegations are
sufficient to defeat a motion to dismiss. *See, e.g., Padilla v. Harris*, 285 F. Supp. 2d 263 (D.
Conn. 2003) ("The Court cannot ignore the plain language of the Supreme Court in [*Village of
Willowbrook v. Olech*, 528 U.S. 562 (2000)], which alleges that a plaintiff had been 'intentionally
treated differently from others similarly situated and that there is no rational basis for the

however, does not require the dismissal of Plaintiffs' equal protection claims. Rather, it is indicative of the fact-intensive nature of the "comparator" determination. *See, e.g., Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018) (whether the plaintiff is sufficiently "similarly-situated" in all relevant respects is a particularly fact-intensive inquiry). As such, selection of the most appropriate comparator should not be determined on a motion to dismiss.[19] Instead, such a determination requires a developed record, necessitating discovery; nor can the determination be resolved on summary judgment. *See, e.g.*, *Reed v. Freedom Mtg. Corp.*, 869 F. 3d 543, 549 (7th Cir. 2017) (ruling that the determination of whether a claimant and its comparators are "similarly situated" for purposes of equal protection is a question for the factfinder); *Morris v. Town of Independence*, 827 F.3d 396, 402 (5th Cir. 2016) (same); *Reserve v. Town of Longboat Key*, 17 F.3d 1374, 1381 (11th Cir. 1994) (same).

Whether the OATH Plan requires a rational basis or strict scrutiny review, neither analysis can be undertaken on a motion to dismiss. *See, e.g., Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319 (1993) (cited by Defendant City, C-Mem. at 24) (deciding standard of review on motion for summary judgment). Indeed, the necessity for the City Defendants to rely on added facts in its memorandum of law to "justify" its contention that rational basis review must be applied – facts which Plaintiffs dispute and which are contrary to those in the TAC (*see, e.g.*, TAC ¶¶461-473) – handily demonstrates that such an issue cannot be determined on a motion to dismiss.

---

difference in treatment' were sufficient to state a claim for denial of equal protection." 528 U.S. at 564.).

[19] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) ("While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out in detail the facts upon which he bases his claim' . . . Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."). Plaintiffs' TAC meets this standard.

The State Defendants' arguments suffer from deficiencies similar to those of the City Defendants. Specifically, rather than assess *whether* Plaintiffs' TAC sufficiently states a claim under the Equal Protection Clauses of the Constitutions of the United States and the State of New York, the State Defendants dispute Plaintiffs allegations – asserting as a "fact" that the OATH Plan is rationally related to a legitimate governmental interest, *see* S-Mem. at 23; Defendants further argue that dismissal is appropriate because Plaintiffs failed to plead sufficient allegations to "prove" their claims. *Id.* Neither showing is required given legal precedent, *see Olech*, *supra*, n.17.

Further, the State Defendants misstate the sufficiency of Plaintiffs' intent allegations, citing only to TAC ¶469. *Id.* Here, ¶470 of the TAC further expands Plaintiffs' allegations of discriminatory intent. These intent allegations, combined with those in TAC ¶¶ 397-400 and in the Fifth Claim, are sufficient to withstand Defendants' motions to dismiss Plaintiffs' Equal Protections Claims (*see* TAC, ¶¶464-473, Plaintiffs' Fifth Claim for Relief). Accordingly, Defendants' motions must be denied.

## VI. Plaintiffs Sufficiently Alleged Their Section 504 Claims

To state a claim under the Rehabilitation Act for educational discrimination against a student with disabilities, a plaintiff must allege adequately "(1) that [ ]he is a 'qualified individual' with a disability; (2) that the defendants are subject to the Act; and (3) that [ ]he was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y]." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). Courts in this Circuit have recognized that such claims "may be predicated on the claim that a disabled student was 'denied

access to a free appropriate education, as compared to the free appropriate education non-disabled students receive.'" *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014) (quoting *S.W. by J.W.*, 528 F. Supp. 2d at 290).

      Defendants here allege Plaintiffs have failed to adequately alleged that they were denied services because of their respective disabilities. To satisfy this requirement, Plaintiffs must plead "something more than a mere violation of the IDEA ... ." *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 468 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). Plaintiffs must allege facts from which the Court can plausibly infer that Defendants "acted in bad faith or with gross misjudgment when administering disability services." *Id.* at 467 (collecting cases and concluding that plaintiffs stated claims under the Rehabilitation Act [and the ADA] because those statutes do not require proof "that [d]efendants acted with animosity or ill will"); *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828 (ER), 2013 WL 3929630, at *11 (S.D.N.Y. July 30, 2013) (noting that discrimination under the Rehabilitation Act can be "inferred" when a school district "acts with gross negligence or reckless indifference in depriving a student of access to a FAPE") (citation omitted). Merely alleging a systemic violation is not sufficient to meet this standard. *See P.C.R. v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2022 WL 337072, at *26 (S.D.N.Y. Feb. 4, 2022) (quoting *A.K. v. Westhampton Beach Sch. Dist.*, No. 17-CV-866, 2019 WL 4736969, at *14 (E.D.N.Y. Sept. 27, 2019)).

      Additionally, a Section 504 claim predicated on the denial of a FAPE "requires proof of bad faith or gross misjudgment." *C.L.*, 744 F.3d at 841. Courts have used this same standard to evaluate Section 504 claims alleging systemic IDEA violations as well. *See S.W.*, 528 F. Supp. 2d at 287, 290-92 (requiring proof of bad faith or gross misjudgment for Section 504 claims

alleging systemic IDEA violations). *See also M.M. v. New York City Dep't of Educ.*, No. 15 CIV. 5846 (PKC), 2017 WL 1194685, at *13 (S.D.N.Y. Mar. 30, 2017) (analyzing Defendants' motion to dismiss Plaintiff's Rehabilitation Act claim alleging the denial of FAPE).

Here, Plaintiffs allege that Section 504 requires Defendants to adopt and implement an independent hearing process to address disputes arising under Section 504. 34 C.F.R. §104.36. A district that adopts an independent hearing system complies with Section 504. *Id.* As alleged, because the OATH Plan failed to include hearings under Section 504, it is fatally flawed and violates the IDEA. These allegations are sufficient to establish bad faith and gross misjudgment.

## VII.   Plaintiffs' State Law Claims Survive Defendants' Motions To Dismiss

For the same reasons Plaintiffs' provide in Point II, D, *supra*, the State Defendants' arguments that state law claims must be dismissed should be rejected. Similarly, as Plaintiffs' argue in Point IV, *supra*, the IDEA clearly identifies that States have direct responsibilities to ensure due process hearings are properly conducted. These arguments are incorporated here, necessitating again that Defendants' motion be denied.

## CONCLUSION

For all the reasons stated herein, this Court should deny the City and State Defendants' Motions to Dismiss in their entirety and either issue the relief requested by Plaintiffs in their Prayer for Relief or permit Plaintiffs to commence discovery sufficient to establish each of Plaintiffs' claims.

Respectfully submitted,

**THE LAW OFFICE OF**
**LAURA D. BARBIERI, PLLC**

By: _____
Laura D. Barbieri
The Law Office of

**THE LAW OFFICE OF**
**ELISA HYMAN, P.C.**

By: _____
Elisa Hyman, Esq.
The Law Office of

Laura D. Barbieri, PLLC
115 W 73rd Street, #1B
New York, NY 10023
(914) 819-3387 (cell)
LDBarbLaw@gmail.com

*Co-counsel for Plaintiffs*

Elisa Hyman, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
Phone: (646) 572-9064
elisahyman@gmail.com

*Co-counsel for Plaintiffs*

Dated: October 2, 2023
       New York, NY