**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **J.F. ON BEHALF OF HIMSELF AND HIS MINOR CHILD, H.F., et al.,**<br><br>                              *Plaintiffs,*<br><br>        -against-<br><br>**MAYOR ERIC ADAMS, et al.,**<br><br>                              *Defendants.* | **1:21-cv-11150 (ALC)**<br><br>**OPINION** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs are six students with disabilities and their parents J.F., L.V., A.M., M.F., J.S., and R.H. and they initiated this putative action against two sets of defendants: the New York State Education Department ("NYSED") and NYSED Commissioner Dr. Betty Rosa (collectively, "State Defendants"); and the City of New York, Mayor Eric Adams, the New York City Department of Education ("DOE"), the New York City Board of Education ("NYCBOE"), Chancellor David C. Banks, the New York City Office of Administrative Trials and Hearings ("OATH"), and Commissioner Asim Rehman (collectively, the "City Defendants"). ECF No. 96, Third Amended Complaint ("TAC"). Plaintiffs assert claims under the Individuals with Disabilities Education Act ("IDEA"), the N.Y. Education Law, the Rehabilitation Act ("Section 504"), 42 U.S.C. § 1983, and both the N.Y. and U.S. Constitutions against Defendants.

Here, Plaintiffs allege the City has denied them impartial due process hearings before an Impartial hearing officer ("IHO") pursuant to the IDEA. Previously, the City compensated per diem IHOs and independent contractor IHOs (collectively, "per diem IHOs") to conduct due process hearings. In 2021, the City decided to house IHOs under OATH, an independent administrative law court. Plaintiffs claim that because OATH officers are city employees, they are conflicted as a matter of law and must recuse themselves from serving as IHOs.

Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. ECF Nos. 102, 117. After careful review, Defendants' Motions to Dismiss, ECF Nos. 102, 117, are **DENIED** with respect to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs' § 1983 claims against the NYSED and state law claims against State Defendants are **DISMISSED** pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs' claims against all Defendants under the IDEA, federal Due Process and Equal Protection Clauses, and the Rehabilitation Act are **DISMISSED** pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

### I.     Statement of Facts

The IDEA ensures that children with disabilities receive a free appropriate public education, or "FAPE." 20 U.S.C. §§ 1400(d)(1)(A)–(B). School officials, teachers, and a child's parents create an individualized education program, or "IEP" to meet a child's educational needs. *Id.* § 1414(d). The IDEA enables parents of a student with a disability to challenge the recommendations made by a school district for a student by requesting an impartial due process hearing. 20 U.S.C. § 1415(b)(6), (f)(1). The complaint generally triggers a "[p]reliminary meeting" between the school district and the parent. 20 U.S.C. § 1415(f)(1)(B)(i). If the matter is not resolved, the parties proceed to a due process hearing before an IHO. *Id.* § 1415(f)(1)(B)(ii). An IHO cannot be "an employee of the State educational agency or the local educational agency involved in the education or care of the child." *Id.* § 1415(f)(3)(A)(i)(I). IHOs cannot have "a personal or professional interest that conflicts with [their] objectivity in the hearing," and must "possess" the "knowledge" and "ability" to understand the applicable legal provisions and to conduct hearings and to render and write decisions "in accordance with appropriate, standard

legal practice." *Id.* § 1415(f)(3)(A). Absent lawful extensions, IHOs must render a final decision "not later than 45 days after the expiration of the" resolution period. 34 C.F.R. § 300.515(a). If a party is dissatisfied with an IHO's decision, they can appeal it to a state review officer ("SRO") in the NYSED's Office of State Review. 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(1)–(2). A party still dissatisfied with the SRO's decision may challenge it in state or federal court. N.Y. Educ. Law § 4404(3); 20 U.S.C. §§ 1415(i)(1)(B), (2)(A).

In New York, localities and the State have distinct roles. Local educational agencies ("LEAs") formulate IEPs, conduct due process hearings, and provide a FAPE to every student with a disability. N.Y. Educ. Law § 4402; 20 U.S.C. § 1401(19)(A). The state educational agency ("SEA") NYSED supervises school districts and trains and certifies IHOs. N.Y. Educ. Law §§ 4403, 4404(1)(c); 20 U.S.C. §§ 1401(32), 1412(a)(11). In this case, NYCDOE is the relevant LEA.

A 2019 report on New York City's system for due process hearings documented the rise in cases and case length. TAC at ¶¶ 219–22. At the time, the system relied on per diem IHOs. In response to the report, at the end of 2021, NYSED entered into a Memorandum of Agreement ("MOA") with NYCDOE and OATH, which outlined a plan to create a Special Education Unit within OATH to adjudicate due process hearings in New York City, and OATH hired full-time IHOs. MOA (Dec. 1, 2021), ECF No. 91-1, Exhibit A to TAC. OATH is a central, independent administrative law court that adjudicates issues for multiple New York City agencies. ECF No 35, Decl. of Christopher Suriano at ¶ 28. Pursuant to the MOA, OATH has hired full-time hearing officers, NYSED has trained and certified those new officers, and the officers have begun adjudicating due process complaints. *See, e.g.*, Bi-Weekly Joint Status Letters, ECF. No. 87, 88, 90, 92, 96, 98. During the transition some cases continue to be assigned to per diem

IHOs. *See id.* Both per diem and OATH IHOs are compensated by New York City. MOA at ¶ 14; TAC at ¶¶ 234–35.

## II.    Procedural History

This action was initiated on December 29, 2021 by a different cohort of students and their parents as Plaintiffs. ECF No. 1. Plaintiffs first amended their Complaint on January 11, 2022. ECF No. 5. On May 26, 2022, Plaintiffs filed a Second Amended Complaint. ECF No. 66. The operative complaint is Plaintiffs' TAC filed on December 23, 2022. ECF No. 94.

State Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on February 3, 2023, ECF No. 102, and City Defendants moved to dismiss on June 5, 2023, ECF No. 117. Plaintiffs filed their opposition to the motions to dismiss on October 2, 2023, ECF No. 132, and Defendants filed their replies on December 15, 2023. ECF Nos. 135, 137. This matter is fully briefed.

### a.  Individual Plaintiffs' Administrative Proceedings

Some plaintiffs have made motions for the OATH IHO's to recuse. Of Plaintiffs that have made motions for the recusal of their assigned OATH IHO's and the motion was denied, Plaintiffs J.F.,[1] A.M.,[2] and J.S.[3] have not appealed the issue. Plaintiff R.H.'s counsel did not make any motion for the OATH IHO's recusal.[4] Two of L.V's proceedings were assigned to a *Per Diem* IHO, not an OATH IHO.[5]

## STANDARD OF REVIEW

## I.    Federal Rule of Civil Procedure 12(b)(1)

---

[1] Solon Decl. at ¶¶ 6-9.
[2] *Id.* at ¶¶ 15-23; Solon Reply Decl. at ¶¶ 18-19. In a new proceeding, A.M.'s counsel raised objections as to the competence of the assigned OATH IHO. *Id.* ¶ 25.
[3] Solon Decl. at ¶¶ 27-30.
[4] *Id.* at ¶ 33; Solon Reply Decl. at ¶¶ 29-30.
[5] Solon Decl. at ¶¶ 11-13.

In this Circuit, a case is "'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A challenge to a plaintiff's standing is analyzed under Rule 12(b)(1) as a question of subject matter jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) ("At issue here are defendants' Rule 12(b)(1) challenges to standing at the pleading stage.").

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed R. Civ. P. 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). Where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id*. (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). But "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id*. (citing *Makarova*, 201 F.3d at 113).

## II.      Federal Rule of Civil Procedure 12(b)(6)

In this Circuit, claims brought under statutes that lack a private right of action are analyzed under Rule 12(b)(6) as a failure to state a claim. *Fair v. Verizon Commc'n Inc.*, 621 Fed. App'x. 52, 53 (2d Cir. 2015) ("Determinations that a federal statute does not provide a private right of action are typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) . . . for failure to state a claim.") (collecting cases). When considering a motion to

dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I.   Plaintiffs Have Standing To Sue.

Defendants allege this Court lacks subject matter jurisdiction because Plaintiffs lack standing. When a dismissal is sought both on Rule 12(b)(1) and Rule 12(b)(6) grounds, "the

Court must consider the Rule 12(b)(1) motion first because disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Karuppasamy v. U.S. Citizenship & Immigr. Servs.*, No. 20 CIV. 7823 (ER), 2021 WL 3621789, at *3 (S.D.N.Y. Aug. 13, 2021) (internal quotations and citations omitted).

"For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). A standing issue may be raised at any stage in a litigation, *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)), and "the party invoking federal jurisdiction bears the burden of establishing the elements." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues . . . . [t]his inquiry involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F. 3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "When standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vasquez*, 143 F. 3d 74, 81 (2d Cir. 1998) (quoting *Warth*, 422 U.S. at 501).

"An injury-in-fact is 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 464 (S.D.N.Y. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330,

338 (2016)). "[I]t is not enough to allege a defendant violated the statute; '[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation' will have standing." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021)). *See also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("*TransUnion* makes clear that a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing."). The Supreme Court in *TransUnion* reiterated that various intangible harms can be concrete, for example, reputational harms, disclosure of private information, and "harms specified by the Constitution itself." 594 U.S. at 425. "[W]hether a harm qualifies as 'concrete' hinges on 'whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.'" *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 414). Violations of statutory procedures still require a "historical or common-law analog." *TransUnion*, 594 U.S. at 424.

"Because *TransUnion* 'narrowed the grounds for asserting standing where the injury is primarily statutory,'[] this Court must be certain that each individual named plaintiff in this action has adequately alleged Article III injury-in-fact, with the requisite concreteness, regarding each of their statutory claims[.]" *Gilbert v. AFTRA Ret. Fund*, No. 1:20-CV-10834-ALC, 2022 WL 825489, at *3 (S.D.N.Y. Mar. 18, 2022) (quoting *Faehner v. Webcollex, LLC*, No. 21-1734-CV, 2022 WL 500454, at *1 (2d Cir. 2022) (summary order)).

In *Heldman on Behalf of T.H. v. Sobol*, the Second Circuit found that under IDEA, a student's parent had standing to challenge the independence of IHOs. 962 F.2d 148, 154 (2d Cir. 1992). "Congress envisioned that compliance with the procedures set forth in IDEA would ensure that children with disabling conditions were accorded a free appropriate public education." *Id.* at 155. The Court found plaintiff adequately pleaded a violation of his due

process right to an impartial IHO under IDEA because the IHO presiding over plaintiff's hearing was biased: the IHO was recommended by opposing counsel, and opposing counsel located the IHO with the assistance of another IHO who had been found to have violated conflicts of interest rules. *Id.* at 152–56. While plaintiff asserted his due process right under IDEA and not the Constitution, the Second Circuit cited to Congress' intention "to incorporate the full protection of the Due Process Clauses" through the IDEA guarantee of "an impartial due process hearing." *Id.* at 155. Courts in the Second Circuit have long recognized that denial of "a FAPE or of an impartial due process hearing about IDEA-related concerns constitutes an injury in fact for standing purposes." *Melendez v. N.Y.C. Dep't of Educ.*, 420 F. Supp. 3d 107, 116–17 (S.D.N.Y. 2019) (citations omitted).

Plaintiffs assert standing to bring suit because in *Heldman*, "Congress . . . conferred on the parents of disabled children an enforceable legal right to an impartial hearing officer" and its denial "resulted in actual injury." 962 F.2d at 155–56. Plaintiffs posit that their "status as parents of New York City children who are entitled to a FAPE, without more, is sufficient to establish standing to challenge the MOA and the OATH Plan." ECF No. 132 at 18 (citing *Heldman*). Plaintiffs allege they were denied impartial due process hearings because the City compensates OATH IHOs, in violation of 20 U.S.C. § 1415(f)(3)(A). TAC at ¶¶ 164-69, 334. They also allege due process violations under the N.Y. Education Law, Section 504, and the U.S. Constitution.

Defendants contend Plaintiffs do not satisfy *TransUnion*'s "narrowed" standard for injury-in-fact. They argue that Plaintiffs must allege something more than a purported generalized violation of the IDEA's procedural requirements to establish injury-in-fact.

The Second Circuit has not yet directly spoken on the continued applicability of *Heldman*. However, Defendants' standing argument is untenable. *Heldman* and *TransUnion* are

not in conflict. As the Supreme Court has found, intangible harms may be concrete. *Spokeo* requires courts to analyze "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424. Here, Plaintiffs are the parents of children with disabilities in New York City, and they assert that they and their children have been harmed by Defendants' alleged denial of impartial IDEA due process hearings. In *Heldman*, the Circuit acknowledged that a parent's due process right under IDEA incorporates the Due Process Clauses of the Constitution. 962 F.2d at 154–55 ("It is elementary that the provision of a fair hearing before an impartial tribunal is a basic requirement of due process."). Therefore, the Due Process Clauses of the Constitution are a historical analogue to due process under § 415 of IDEA. "A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process." *Garland v. City of N.Y.*, 665 F. Supp. 3d 295, 304 (E.D.N.Y. 2023), *aff'd sub nom. Garland v. N.Y.C. Fire Dep't*, No. 23-663, 2024 WL 445001 (2d Cir. Feb. 6, 2024) (citing *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)). "Pre-deprivation processes 'need not be elaborate,' and the Constitution 'mandates only that such process include, at a minimum, notice and the opportunity to respond.'" *Id.* (quoting *O'Connor*, 426 F.3d at 198) (citation omitted).

In this case, Plaintiffs have alleged a denial of an impartial tribunal for their IDEA claims because the City compensates OATH IHOs, and therefore the IHOs are biased. TAC at ¶¶ 164-69, 334. The very purpose of IDEA is to protect vulnerable children with disabilities and their right to a FAPE. Due process hearings before impartial adjudicators are critical. Because due process claims under the Constitution are historically analogous to due process claims under

IDEA, Plaintiffs' procedural due process claims "constitute an injury sufficient to satisfy the standing requirement." *S.W. v. N.Y.C. Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009).

Defendants next contend that Plaintiffs' injury is speculative: because Plaintiffs have not been subject to an adverse decision of an OATH IHO, nor have alleged an IHO's specific bias or partiality, they have not been injured. Defendants also distinguish *Heldman* because unlike plaintiff in that case, Plaintiffs did not appeal denials of their motions for recusal of the OATH IHOs. But here, Plaintiffs seek system-wide declaratory and injunctive relief against the termination of "the system of independent IHOs" in an effort to prevent risk of future harm. TAC at p. 82. The Supreme Court has recognized that "material risk of future harm can satisfy the concrete-harm requirement in the context of a claim for injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 415 (citing *Spokeo*, 578 U. S., at 341–42). Defendants are already transitioning to a due process hearing system before OATH IHOs. Because Plaintiffs allege that the due process hearing system is tainted by OATH's employment of IHOs, whether or not Plaintiffs have been subject to a negative decision by an OATH IHO, or can allege an IHO's specific bias, is irrelevant to their standing in this case.

Plaintiffs have also shown causation and redressability. A plaintiff must show "that the injury is 'fairly traceable' to the challenged action of the defendant[.]" *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 103 (2d Cir. 2018) (quoting *Lujan*, 504 U.S. at 560–61). That is, a plaintiff "must demonstrate a causal nexus between the defendant's conduct and the injury." *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016). Plaintiffs allege that due to the creation and implementation of the OATH Plan, Plaintiffs are deprived of due process hearings by impartial *per diem* IHOs. Plaintiffs have also shown redressability,

"which means that it is 'likely,' not speculative, that a favorable decision by a court will redress the injury." *Nat. Res. Def.*, 894 F.3d at 103 (quoting *Lujan*, 504 U.S. at 560–61). "Plaintiffs' injuries are redressable if their requested relief can compensate them for their losses or eliminate any effects caused by [the] defendant[s'] challenged conduct.'" *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 263 (E.D.N.Y. 2021) (quoting *Janfeshan v. U.S. Customs & Border Prot.*, No. 16-CV-6915 (ARR) (LB), 2017 WL 3972461, at *6 (E.D.N.Y. Aug. 21, 2017) (citation and quotations omitted)). Enjoining Defendants from implementing the OATH Plan would redress Plaintiffs' alleged injury.

"For a district court to ignore binding Second Circuit precedent, it is not enough for a Supreme Court decision to be in tension with that precedent." *King v. Habib Bank Ltd.*, No. 20 CIV. 4322 (LGS), 2023 WL 8355359, at *1 (S.D.N.Y. Dec. 1, 2023) (citing *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003)). A district court must follow Second Circuit precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015). This Court will not upend decades of precedent finding children with disabilities and their parents have standing to challenge the impartiality of IDEA due process hearing officers. Plaintiffs have asserted that violation of their due process rights give rise to a concrete injury in fact, and that is sufficient to confer standing. *Heldman,* 962 F.2d at 154–56.

## II.    Plaintiffs' IDEA Claims Against State Defendants Must Stand.

State Defendants allege Plaintiffs' IDEA claims fail as a matter of law. State Defendants contend that Plaintiffs lack standing because they have not pleaded that there is a private right of

action against State Defendants in IDEA, and "no provision of the IDEA that expressly or impliedly authorizes their lawsuit against State Defendants[.]" ECF No. 103 at 22.

Plaintiffs contend they have standing to sue State Defendants because they allege that the State violated its oversight obligations, and that those violations were a cause of Plaintiffs' injury. TAC at ¶¶ 112–14. NYSED entered into a MOA with NYCDOE and OATH to create a Special Education Unit within OATH to adjudicate due process hearings in New York City, and OATH hired full-time IHOs. MOA. NYSED has trained and certified those new officers.

Under the IDEA, an SED is responsible for ensuring the State's compliance with the requirements of the statute. However, the statute gives the SEA general supervisory responsibilities and discretion to monitor compliance. *A.A. ex rel. J.A. v. Philips*, 386 F.3d 455, 459 (2d Cir. 2004); *see also C.L. v. Hastings-on-Hudson Union Free Sch. Dist.*, 2015 WL 1840507, at *5 (S.D.N.Y. Apr. 21, 2015). That the SED Commissioner "enjoys general supervisory authority over public education in New York, including an obligation to assure the State's obligation to comply fully with the [IDEA] . . ., is an insufficient basis upon which to impose legal responsibility upon" the Commissioner or SED. *B.J.S. v. State Educ. Dep't/Univ. of New York*, 699 F. Supp. 2d 586, 602 (W.D.N.Y. 2010) (collecting cases).

Plaintiffs allege the SED failed to exercise its oversight authority over the NYCDOE's purported failure to provide students with disabilities an impartial due process hearing. TAC at ¶¶ 112, 357-67, 440. "The State Defendants have failed to supervise, oversee, and guarantee due process rights and FAPE to Plaintiffs and others similarly situated to ensure that all IHOs will be qualified and impartial." *Id.* at ¶ 440. Plaintiffs also allege State Defendants violated § 1415 by improperly delegating its authority over due process hearings to OATH. *Id.* at ¶¶ 361; 443. Plaintiffs make specific allegations about the SED's role in purported wrongdoing. *See M.H. ex*

*rel. K.H. v. Mount Vernon City Sch. Dist.*, No. 13-cv-3596, 2014 WL 901578, at *12 (S.D.N.Y. Mar. 3, 2014) (an SED is a proper defendant where the SED "identified and detailed a district's failures to meet state-imposed targets for performance in special education"). Plaintiffs have shown that "the State was a direct contributor—even if not the only contributor—to Plaintiff's injury[.]" *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 247 (S.D.N.Y. 2000).

As such, Plaintiffs have established Article III standing to sue the State Defendants under IDEA.

### III.   The Eleventh Amendment Bars Plaintiffs' § 1983 Claims Against the NYSED.

State Defendants next argue that the Eleventh Amendment bars Plaintiffs' § 1983 claims against NYSED. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "'Although by its terms the Amendment applies only to suits against a State by citizens of another State,' the Supreme Court has 'extended the Amendment's applicability to suits by citizens against their own States,' as '[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.'" *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021) (quoting *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "[T]here are really two discrete types of sovereign immunity: Eleventh Amendment immunity from suit in federal court, and a general sovereign immunity against all suits." *Coniff v. Vermont*, No. 2:10-CV-32, 2013 WL 5429428, at *4 (D. Vt. Sept. 30, 2013), *aff'd sub nom. Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015). Here, State Defendants argue immunity from suit in federal court bars Plaintiffs' § 1983 claims.

"There are three exceptions to Eleventh Amendment immunity. Namely, this protection does not apply if (1) a state waives its immunity; (2) Congress clearly abrogates state sovereign immunity; or (3) the suit is against a state official and seeks prospective relief." *Unkechaug Indian Nation v. New York State Dep't of Env't Conservation*, No. 18CV1132WFKAYS, 2023 WL 4054525, at *4 (E.D.N.Y. June 16, 2023) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011); *Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455–56 (1976). "[I]n *Ex parte Young*, this Court recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citing 209 U.S. 123, 159–160 (1908)). In this case, "New York has not consented to § 1983 suits in federal court," *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). State Defendants argue immunity against suits in federal court mandates the dismissal of Plaintiffs' § 1983 claims against NYSED. State Defendants concede that under *Ex parte Young*, Plaintiffs have standing to sue the NYSED Commissioner.

Plaintiffs contend that in § 1403 of IDEA Congress broadly abrogated NYSED's Eleventh Amendment Immunity, and this enables Plaintiffs to bring § 1983 claims against NYSED. Section 1403 provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." §1403. But "[t]his argument overlooks the obvious fact that § 1403(a)'s waiver of sovereign immunity extends only to claims brought *pursuant to* the IDEA, not claims brought pursuant to § 1983 or some other statute." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 480 (2d Cir. 2002) (emphasis in original). *See also Horelick v. Lamont*, No. 3:21-CV-1431-MPS,

2023 WL 5802727, at *9 (D. Conn. Sept. 7, 2023) ("Plaintiffs seem to suggest that this abrogation covers all of their claims, . . . but Congress's abrogation of claims under IDEA extends only to Plaintiffs' IDEA claims specifically."). Plaintiffs' § 1983 claims against NYSED must be dismissed because New York has not consented to § 1983 suits in federal court, and the IDEA does not abrogate NYSED's immunity to enable § 1983 claims.

### IV.   IDEA Claims.

#### a.   OATH IHOs are not Biased as a Matter of Law, Based Solely on Their Employment with the City of New York.

Plaintiffs allege that OATH IHOs are biased, depriving them of IDEA's guarantee of an impartial due process hearing. TAC at ¶¶ 16, 25–26, 39, 345. Plaintiffs do not allege that the specific OATH IHOs assigned to their administrative proceedings were biased. Rather, Plaintiffs take issue with the fact that the City compensates OATH IHOs and allege this violates 20 U.S.C. § 1415(f)(3)(A). *Id.* at ¶¶ 164–69, 334. Plaintiffs allege Defendants are "motivated to gain control of the hearings, to try to reduce the costs of the relief ordered that must be borne by the City itself[.]" FAC at ¶¶ 50, 200. They cite to the growing cost to the City for certain types of remedies in impartial hearings. *Id.* at ¶¶ 196–99. Plaintiffs also argue that "[w]hile New York City is not a named party to the due process hearings, the City is the real party-in-interest because they must pay for the special education program, placement, or services." ECF No. 132 at 26. While Plaintiffs have standing to allege that all OATH IHOs are biased, the claim fails on the merits.

The Court must "assume that ALJs [such as the OATH IHOs] are 'unbiased' absent a 'specific showing of conflict of interest or reason for disqualification.'" *Oles v. City of N.Y.*, No. 22-1620-CV, 2023 WL 3263620, at *1 (2d Cir. May 5, 2023) (quoting *Doolen v. Wormuth*, 5 F.4th 125, 135 (2d Cir. 2021)). To overcome the presumption that an adjudicator is unbiased, a

plaintiff must show the adjudicator has (1) a "direct, personal, substantial pecuniary interest," or (2) a strong "motive . . . to help the financial needs of the [employer.]" *Tumey v. Ohio*, 273 U.S. 519, 523, 535 (1927).

Plaintiffs' blanket assertion that OATH IHOs are biased and beholden to the City because they are compensated by the City threatens to undo a widely accepted combination of functions scheme for administrative hearings. As State Defendants put it, "[e]xtending Plaintiffs' logic, federal judges would be biased in favor of lawyers from the Department of Justice because both are paid by the U.S. Government." ECF No. 103 at 25. The same is true of immigration judges, which are housed under the Department of Justice's Executive Office for Immigration Review,[6] but adjudicate proceedings commenced by the Department of Homeland Security, another federal agency. *Sarr v. Garland*, 50 F.4th 326, 332 (2d Cir. 2022) (citing 8 C.F.R. § 1003.14(a)).

The Second Circuit has also rejected the "argument that the City of New York's Office of Administrative Trials and Hearings is itself unconstitutional (at the state and federal levels) . . . because it performs a judicial function but is a part of the executive branch" as "baseless" and it "does not in and of itself violate the federal constitution[.]" *Purcell v. N.Y.C. Dep't of Corr.*, 111 F. App'x 57, 60 (2d Cir. 2004). Courts have found that IDEA endorses the use of administrative tribunals to adjudicate disputes. The court in *Blackman v. District of Columbia* determined that, "the creation of a central hearings panel to conduct administrative hearings for a municipality, including the administrative due process hearings required by the IDEA, is permissible under the IDEA and, if properly constituted, such a centralized hearings panel can be consistent with the IDEA." 321 F. Supp. 2d 99, 103 (D.D.C. 2004). Courts have long acknowledged OATH's status

---

[6] 8 C.F.R. § 1003.9(a), (d).

as an independent administrative tribunal. *See Matter of Victor v. N.Y.C. Office of Trials & Hearings*, Index No. 100890/2015 (N.Y. Sup. Ct. N.Y. Cnty. May 29, 2018), ECF No. 38-2 (finding OATH was not controlled by the Department of Correction); *Dudzik v. City of N.Y.*, No. 01 CIV. 2450 (NRB), 2003 WL 203226, at *1 (S.D.N.Y. Jan. 29, 2003) (describing OATH as "an independent city charter agency that is authorized to conduct adjudicatory hearings for city agencies").

Plaintiffs have not pointed to concrete evidence to overcome the presumption that the OATH IHOs' are unbiased. They have not shown that OATH IHOs have a "direct, personal, substantial pecuniary interest," or a strong "motive . . . to help the financial needs of the [employer.]" *Tumey*, 273 U.S. at 523, 535. In this Court's opinion declining to grant Plaintiffs' preliminary injunction, we expressed skepticism over Plaintiffs' assertion that per diem IHOs would not also be biased by virtue of being compensated by the City, the same as OATH IHOs. MOA at ¶ 14; TAC ¶¶ 234–35. "Plaintiffs claim that because OATH IHOs would be City employees, they are also employees of the NYDOE. No compelling evidence is provided to support the accusation that OATH would be beholden to the City or would otherwise be biased in adjudicating cases." *E.F. v. Adams*, No. 21-CV-11150-ALC, 2022 WL 601999, at *10 (S.D.N.Y. Mar. 1, 2022). The same holds true now, and Plaintiffs have not presented compelling evidence to warrant drawing a distinction over the impartiality of per diem IHOs and OATH IHOs. Therefore, Plaintiffs cannot bring their claims on the allegation that OATH IHOs are biased, based solely on their employment with New York City.

### b. Defendants Have Not Improperly Delegated Their Duties Under IDEA.

Plaintiffs allege that Defendants improperly delegated their duties to OATH in violation of 20 U.S.C. § 1415(f)(1)(A), which reads due process hearings "shall be conducted by the [SEA] or by the [LEA]." TAC at ¶¶ 61, 361–65, 443.

18

Yet, the U.S. Department of Education has endorsed the use of central hearing offices such as OATH to adjudicate IDEA due process hearings, and the central hearing office acts at the request of the SEA or LEA. "Generally, neither the courts nor [the U.S. Office of Special Education and Rehabilitative Services] have interpreted the 'conducted by' language [in IDEA]. . . to literally mean that only individuals under contract to the [SEA] or [LEA] can preside at IDEA due process hearings." Letter from Stephanie S. Lee, Director of OSEP, to David K. Greer at 1 (Sept. 12, 2002).[7] Because the "IDEA does not preclude the [SEA] from assigning the responsibility to conduct hearings to an entity other than the SEA . . . [s]everal States transfer responsibility for conducting due process hearings to another agency . . . to avoid a conflict of interest." Letter from Stephanie S. Lee, Director, OSEP at 2 (Dec. 10, 2003).[8]

The *Blackman* court found that central hearings panels are "permissible under the IDEA and . . . can be consistent with the IDEA." 321 F. Supp. 2d at 103. Defendants cite to the fact that sixteen States and the District of Columbia have historically used central hearing panels. *See* Brief of Amicus Curiae John Payton Pursuant to the Court's Aug. 22, 2003 Order, at pp. 42–47, *Blackman*, Civil No. 97-1629 (PLF) (D.D.C. Sept. 22, 2003), ECF No. 1349.

Because the Department of Education and various states endorse the use of central hearing panels such as OATH to conduct IDEA due process hearings, Plaintiffs have not met their burden to show Defendants improperly delegated their duties to OATH . Defendants' decision to house IHOs under OATH, an administrative law court, rather than under the prior per diem IHO system to conduct due process hearings, is permissible under the IDEA. Plaintiffs also allege State Defendants failed to fulfill their supervisory duty under IDEA. TAC at ¶¶ 358, 440.

---

[7] https://sites.ed.gov/idea/idea-files/policy-letter-september-12-2002-to-louisiana-assistant-legislative-auditor-david-k-greer/.

[8] https://sites.ed.gov/idea/idea-files/policy-letter-december-10-2003-to-individual-personally-identifiable-information-redacted/.

Since the OATH Plan complies with IDEA, Plaintiffs' claim against State Defendants for failure to supervise the City's compliance with IDEA must be dismissed.

Plaintiffs allege the OATH Plan violates students with disabilities' right to a FAPE. Procedural violations "ordinarily will not result in a FAPE denial[.]" *A.M. v. N.Y.C. Dep't of Educ.*, 845 F.3d 523, 541 (2d Cir. 2017). *See also T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) ("Not every violation of these procedural safeguards rises to the level of the denial of a FAPE."). As detailed above, because Defendants' use of OATH to adjudicate due process hearings complies with the IDEA, Plaintiffs have failed to establish a procedural violation, and Plaintiffs have not shown that students were denied a FAPE.

### c. OATH IHOs Are Qualified.

Plaintiffs contend that OATH IHOs lack sufficient qualifications to adjudicate IDEA due process hearings. TAC at ¶¶ 62, 283, 284, 354–56, 398, 439. They claim this violates IDEA § 1415(f)(3)(A). Plaintiffs' allegations about OATH IHOs' lack of expertise are conclusory and fail because OATH IHO requirements for hiring, certification, and training exceed IDEA requirements. *See* 8 N.Y.C.R.R. § 200.1(x) (listing requirements for New York IHOs, encompassing requirements under § 1415(f)(3)(A) and more). For example, OATH IHOs are required to have been admitted to the practice of law for four years (TAC at ¶ 277), while State regulations require just one year of admission to the bar (8 N.Y.C.R.R. § 200.1(x)(1)). Thus, Plaintiffs' challenge to OATH IHOs' qualifications is without merit and must be dismissed.

### V. Plaintiffs Have Not Adequately Alleged Claims Under the Federal Due Process and Equal Protection Clauses.

Plaintiff asserts the OATH Plan violates the due process and equal protection clauses of the Constitution. As this Court has already found, Plaintiffs have failed to assert a due process

claim. Plaintiffs have not overcome the presumption of OATH IHOs' impartiality, nor have they demonstrated why the use of administrative tribunals to adjudicate disputes is improper.

The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). The Court must first determine which level of scrutiny is applicable. When a case "involves a challenge to state action that neither burdens a suspect class nor impinges on a fundamental right, the challenged [action] is subject to rational basis review. *Moxie Owl, Inc. v. Cuomo*, 527 F. Supp. 3d 196, 201 (N.D.N.Y. 2021) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Under rational basis, a statute is presumed constitutional, and a plaintiff bears the burden of negating "every conceivable basis which might support" it. *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012). A plaintiff "must discredit any conceivable basis which could be advanced to support the challenged provisions, regardless of whether that basis has a foundation in the record, or actually motivated the legislature." *Beatie v. City of N.Y.*, 123 F.3d 707, 713 (2d Cir. 1997) (internal citations omitted). "The rational basis test is a very deferential standard and precludes second-guessing [the legislature's] 'wisdom, fairness, or logic of legislative choices.'" *United States v. Green*, 222 F. Supp. 3d 267, 276 (W.D.N.Y. 2016), *aff'd but criticized sub nom. United States v. Amalfi*, 47 F.4th 114 (2d Cir. 2022) (quoting *Heller,* 509 U.S. at 319, 113).

Here, Plaintiffs allege that Defendants' OATH Plan "treats children with disabilities, including Plaintiffs and others similarly situated who reside in New York City differently from similarly situated children with disabilities who live outside of the City." TAC at ¶ 467. They also allege Defendants' OATH Plan is "motivated by an intent to discriminate against Plaintiffs and others similarly situated in New York City and deprive them of their rights under the IDEA

and New York law[,]" *Id.* at ¶ 469, and the OATH Plan "should be subject to strict scrutiny[,]" *Id.* at ¶ 399.

Plaintiffs appear to assert three bases of classes / fundamental rights: geographic location, persons with disabilities, and the right to public education. The OATH Plan does not implicate a suspect class or a fundamental right. Plaintiffs allege discrimination on the basis of geographic location, and compare the treatment of Plaintiffs in New York City versus similarly situated children residing outside of the City. But geographic location is not a suspect class. *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1078 (2d Cir. 2021) (finding distinction between teachers in New York City and teachers elsewhere in the state did not implicate a suspect class). "Persons with disabilities are not a suspect class and review of their equal protection claims [is] subject to rational basis review." *Puccinelli v. S. Connecticut State Univ.*, No. 3:21-CV-00763 (SVN), 2022 WL 6770967, at *10 (D. Conn. Oct. 11, 2022) (quoting *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 340 (E.D.N.Y. 2014). "The Fourteenth Amendment does not protect a public education as a substantive fundamental right." *Handberry v. Thompson*, 436 F.3d 52, 70 (2d Cir. 2006). *See also Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."). As such, the OATH Plan is subject to rational basis review.

The Court must then consider "any conceivable basis which could be advanced to support the challenged provision[]." *Beatie*, 123 F.3d at 713. The OATH Plan easily satisfies rational basis review. It was created in response to the City's backlog of due process hearings, and OATH hired full-time IHOs. MOA. Beyond Plaintiffs' conclusory claim that Defendants' OATH Plan is "motivated by an intent to discriminate against Plaintiffs and others similarly situated in

New York City[,]" FAC at ¶ 469, Plaintiffs have not provided factual support for this assertion.
Plaintiffs' Equal Protection and Due Process claims must be dismissed.

### VI.    Plaintiffs' Rehabilitation Act Claims Must Be Dismissed.

Plaintiffs allege Defendants violated § 504 of the Rehabilitation Act. TAC at ¶¶ 452–56.
"A prima facie violation of Section 504 requires proof from the plaintiff that '(1) he is a
'[disabled] person' under the Rehabilitation Act; (2) he is 'otherwise qualified' for the program;
(3) he is excluded from benefits solely because of his [disability]; and (4) the program or special
service receives federal funding." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d
Cir. 2014). "Such a claim, however, requires proof of bad faith or gross misjudgment." *Id. See
also Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997)
("[S]omething more than a mere violation of the IDEA is necessary in order to show a violation
of Section 504"), *aff'd mem.* 208 F.3d 204 (2d Cir. 2000). A plaintiff must allege that their denial
of benefits occurred "by reason of . . . disability," 42 U.S.C. § 12132, and that allegation must be
"construed broadly." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir. 2003). "Courts in
this district will therefore dismiss Section 504 claims that 'are, in actuality, merely restatements
of [a plaintiff's] IDEA claims[.]'" *Y.D. v. N.Y.C. Dep't of Educ.*, No. 14CV1137-LTS, 2016 WL
698139, at *6 (S.D.N.Y. Feb. 19, 2016) (quoting *Pinn ex rel. Steven P. v. Harrison Central
School Dist.*, 473 F. Supp. 2d 477, 484 (S.D.N.Y. 2007)).

Here, Plaintiffs allege City Defendants violated Section 504 by implementing the OATH
Plan, TAC at ¶ 455, and "Defendants' conduct is knowing, intentional, reckless, and gross[,]" *Id.*
at ¶ 453. Defendants contend Plaintiffs' Rehabilitation Act claims fail as a matter of law as
Plaintiffs have not shown that they were discriminated against solely because of their disabilities.
"Where a plaintiff asserts denial of a free appropriate public education . . ., plaintiff must
demonstrate bad faith or gross misjudgment." *Pinn*, 473 F. Supp. 2d at 483. However,

"Plaintiff[s'] Section 504 cause of action is no more than a restatement of [their] IDEA claim." *Y.D.*, 2016 WL 698139, at *6. Plaintiffs have not shown that Defendants acted with ill will. Nor have they pleaded facts to support the contention that Defendants were solely motivated by Plaintiffs' disability, or that the OATH Plan indeed deprives students of a FAPE. Plaintiffs' Rehabilitation Act claims must be dismissed.

### VII.   State Law Claims

Plaintiffs allege state law claims under the New York State Constitution, New York State Education Law, New York State Education Regulations, and the New York City Charter. TAC at ¶¶ 461, 466, 475–76. State Defendants argue sovereign immunity bars Plaintiffs from bringing these claims against State Defendants.

Under the Eleventh Amendment, plaintiffs are prohibited from suing the state and its officials "on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–103, 106 (1984).  *See also Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020). Sovereign immunity also bars Plaintiffs' New York City Charter claims, TAC ¶ 476. *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("The City of New York does not have the power to abrogate the immunity of the State"). Therefore, Plaintiffs' state law claims against State Defendants must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 102, 117, are **DENIED** with respect to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiffs' § 1983 claims against the NYSED and state law claims against State Defendants are **DISMISSED** pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs' claims against all Defendants under the IDEA, federal Due Process and Equal Protection Clauses, and the Rehabilitation Act are **DISMISSED** pursuant to Fed.R.Civ.P. 12(b)(6).

This Court has twice granted Plaintiffs leave to amend their Complaint. The Court is doubtful that further amendments will cure the deficiencies in Plaintiffs' Complaint, Plaintiff may file a motion for leave to amend, if any, by **April 12, 2024**.

**SO ORDERED.**

**Dated:** **March 29, 2024**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**